# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOELSONGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:06CV774-MHT |
| SHELLEY BROADCASTING | ) | |
| COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS'
### MOTION FOR SUMMARY JUDGMENT

Plaintiffs submit this memorandum in support of their motion, pursuant to Fed. R. Civ. P. 56, for summary judgment adjudging defendants Shelley Broadcasting Company, Inc., Stage Door Development, Inc., and H. Jack Mizell as infringers under the Copyright Law.

## I.    PRELIMINARY STATEMENT

This is the third action by copyright owners and members of the American Society of Composers, Authors and Publishers ("ASCAP") against defendants Shelley Broadcasting Company, Inc., Stage Door Development, Inc. and H. Jack Mizell for willful copyright infringement by unauthorized public performance of plaintiffs' copyrighted musical compositions.  In this case, as in the previous two cases, the infringements occurred by broadcast over radio stations owned and operated by defendants.  As the Court may recall, the first such case, Bencap, Inc. et al. v Shelley Broadacasting Company Inc., et al., Civil Action No. CV-93-A-696 (filed June 7, 1993), resulted in the entry of a Consent Judgment.  In the second case,

1

Simpleville Music et al. v. H. Jack Mizell, Case Number 1:04cv393-T (filed April 23, 2004), the Court entered a summary judgment against Mizell on September 14, 2006.[1]  See 451 F. Supp. 2d 1293 (M.D. Ala. 2006).

Following its decision in September, in which the Court awarded plaintiffs $11,250 in statutory damages and instructed plaintiffs to file their request for attorneys' fees and costs, Plaintiffs' submitted their initial motion for attorneys' fees and costs on September 28, 2006, and subsequently submitted supplemental requests for additional attorneys' fees as they continued to accrue for work performed after that date.  Mizell appealed the Court's decision to the Eleventh Circuit on November 3, 2006, but his appeal was dismissed on December 28, 2006 because Mizell failed to file his brief and record excerpts within the time period prescribed by the appellate court.   Plaintiffs' motion for attorneys' fees and costs in the Simpleville Music action, now totaling $91,466.36, remains pending before the Court, and no portion of the existing judgment in that case has been paid.

The infringing performances on which this case is based occurred by broadcast over radio station WGEA, licensed by the Federal Communications Commission to operate in Geneva, Alabama, on February 25 and 27, 2006; and by broadcast over WRJM-FM, also licensed by the Federal Communications Commission to operate in Geneva, Alabama, on February 24, 25 and 26, 2006, all dates on which defendants owned, operated and controlled both radio stations.

---

[1] Earlier, the court had entered a default judgment against Shelley Broadcasting and Stage Door Development in the amount of $48,000 when no attorney appeared to represent those defendants.  That judgment has not been paid.

Among the many copyrighted songs publicly performed by defendants' radio stations are the 20 songs[2] on which this action is based: "WE DIDN'T START THE FIRE," "LITTLE WING," "HEY THERE," "BEGIN THE BEGUINE," "PINK HOUSES," "PANAMA," "THIS WILL BE (AN EVERLASTING LOVE)," "RASPBERY BERET," "FAITH," "MASTER OF PUPPETS," "LITTLE RED CORVETTE," "LIGHT MY FIRE," "BIG YELLOW TAXI," "JUMP," "RIKKI, DON'T LOSE THAT NUMBER," "GOD WILL MAKE A WAY," "SINCE I DON'T HAVE YOU," "WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)," "SMALL TOWN" and "1999."

Plaintiffs are, of course, members of ASCAP. They own the copyrights in the songs listed above and seek remedies provided by the U.S. Copyright Law (17 U.S.C. §§ 502(a), 504(c), and 505 (1976)): (1) an injunction prohibiting further infringing performances of any copyrighted musical compositions in the ASCAP repertory; (2) statutory damages in the amount of $5,000 in each cause of action; and (3) costs, including reasonable attorneys' fees.

Defendants were fully aware of their obligation to obtain permission to perform plaintiffs' songs -- either by license from ASCAP or directly from ASCAP's members -- and had no such permission when the infringing performances occurred. In fact, since August 8, 2003, when ASCAP terminated the licenses previously in effect for radio stations WGEA and WRJM-FM for breach and default, the two radio stations have not been authorized to perform copyrighted musical compositions in the ASCAP repertory. (See Affidavit of Pamela Blank, ¶ 9). Despite repeated communications from ASCAP representatives informing defendants of

---

[2] The complaint alleges 21 counts of infringement. Plaintiffs are dropping the count based on the song "Anotherloverholenyohead" (Count 8 on Schedule A to the Complaint) because the performance of the song is inaudible on plaintiffs' tape recordings of defendants' broadcasts.

their liability under the United States Copyright Law, and despite pending litigation against defendants for copyright infringement, they continued to perform copyrighted music without permission during the hours that the two radio stations were on the air.  As a result, plaintiffs filed this third action for willful copyright infringement.

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

The following undisputed facts are derived from the pleadings; documentary evidence; Mr. Mizell's statements under oath; and uncontroverted affidavit testimony.

## A.    PROOF OF PLAINTIFFS' COPYRIGHT OWNERSHIP

Plaintiffs own valid copyrights in the songs in suit.  To establish this fact, plaintiffs are submitting with their motion true and correct copies of the copyright registration certificates.  These copies are attached as exhibits to the Affidavit of Mary Jenkins.  Ms. Jenkins is the ASCAP employee in charge of maintaining pertinent copyright records generally, and specifically, copyright registration certificates, assignments and other documents which demonstrate copyright ownership of songs involved in actions such as the case at bar.  (Jenkins Aff., ¶ 2).  Attached to Ms. Jenkins' affidavit are copies of the copyright registration certificates and other relevant documents pertaining to the 20 songs in suit.  (Id., Exhibits A-G, I-U) . The evidence of copyright ownership is uncontroverted; Mr. Mizell has admitted as much by failing to respond to plaintiffs' requests for admissions, which are deemed admitted.  (See Plaintiffs' Requests for Admissions, nos. 9-12; Fed. R. Civ. P. 36(a)).[3]

---

[3] Under Fed. R. Civ. P. 36(a), Mizell's failure to respond to plaintiffs' Requests for Admissions means that the matters set forth in the Requests are deemed admitted.  Such admissions have been held sufficient to support a motion for summary judgment in virtually identical ASCAP-assisted infringement cases.  See, e.g., Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc., 656 F. Supp. 826, 827-28 (M.D. Fla. 1987); Milene Music, Inc. v. Gotauco,

B.     <u>PROOF OF DEFENDANTS' INTENTIONAL CONDUCT</u>

Not only did defendants lack permission to perform plaintiffs copyrighted works by radio broadcast, defendants' infringing conduct was willful.  It is uncontroverted that defendants lacked permission – whether by an ASCAP license or otherwise – to perform plaintiffs' copyrighted works on the dates in question.  (<u>See</u> Defendants' Answers to Interrogatories, nos. 26, 36; Plaintiffs' Requests for Admission, nos. 13-14; Fed. R. Civ. P. 36(a); Mizell Dep., p. 118, line 22 – p. 119, line 11; Blank Aff., ¶¶ 9, 26).[4]  The facts establishing defendants' willfulness are recounted in the affidavit of Pamela Blank, an Account Manager in ASCAP's Broadcast Licensing Department.  Briefly, the facts are that before this lawsuit was filed (indeed, before the second infringement action against the defendants had been filed) ASCAP repeatedly offered defendants an ASCAP license agreement which would have permitted defendants to play plaintiffs' copyrighted works legally and informed defendants of the risk that their conduct would violate the Copyright Law.  Nevertheless, defendants consistently refused ASCAP's offers of a license but continued their infringing conduct.  Defendants also rejected all attempts to resolve ASCAP's members infringement claims without litigation.  (Blank Aff., ¶¶ 11-28). The fact of the prior litigation by ASCAP members against defendants further alerted defendants to the requirements of the Copyright Law and the potential consequences when that law is violated.  (<u>See id.</u> at ¶¶ 14, 30).  Stated simply, defendants -- sued twice previously by other members of ASCAP -- chose again to violate the Copyright Law by failing either to take the steps required to reinstate their ASCAP licenses or to seek permission directly from ASCAP's

---

551 F. Supp. 1288, 1292 (D.R.I. 1982); <u>Shapiro, Bernstein and Co., Inc. v. Log Cabin Club Ass'n.</u>, 365 F. Supp. 325, 327 (N.D.W. Va. 1973).

[4]  All citations to the Mizell deposition and the Blank affidavit are references to the Mizell deposition taken in the <u>Simpleville Music</u> action and the Blank affidavit submitted in support of plaintiffs' summary judgment motion in that action.

members to perform ASCAP's members' music by broadcast over radio stations WGEA and WRJM-FM. (See id. & ¶¶ 11-28).

The evidence that defendants knew – before the dates of the infringing performances on which this action is based – that ASCAP members own copyrights to many musical selections of the type routinely broadcast over the Stations, and that unauthorized performance of such copyrighted musical compositions constitutes copyright infringement under the United States Copyright Law is uncontroverted, and defendants have admitted as much. (See Plaintiffs' Requests for Admissions, nos. 19-24; Fed. R. Civ. P. 36(a); Mizell Dep., p. 111, lines 12-17; p. 119, line 3 – p. 120, line 13).

The Blank affidavit includes the license agreements previously in effect between ASCAP and defendants -- the same licenses held by thousands of radio stations throughout the United States. (See id. at ¶ 20 & Exhibit A). The terms of these licenses were determined to be reasonable by a federal judge. (See id.). The Blank affidavit also demonstrates that if defendants were properly licensed by ASCAP to date for radio stations WGEA and WRJM-FM, they would have paid approximately $8,600 in license fees. (Id. at ¶ 31).

C.    PROOF OF DEFENDANTS' JOINT LIABILITY

The three defendants are, of course, intimately related. The individual defendant, H. Jack Mizell, is, and was at the time of the infringing performances, the president, sole officer, and 100% owner of defendants Shelley Broadcasting Company, Inc. and Stage Door Development, Inc. (Defendants' Answers to Interrogatories, nos. 8-9; Mizell Dep. pp. 21, 23, 32-33). Shelley Broadcasting Company, Inc. owns radio station WGEA, and is licensed by the Federal Communications Commission as such. (Mizell Dep., p. 32, lines 17-21). Stage Door Development, Inc. owns radio station WRJM. (Mizell Dep., p. 32, lines 12-16). Mizell is the

6

manager and sole employee of WRJM.  (Defendants' Answers to Interrogatories, nos. 11, 14).

While Shelley Broadcasting Company employs a "manager" for radio station WGEA, Mizell

maintains sole authority to hire and fire employees at both stations, owns 100% of the

corporations that own the stations, operates both stations for profit, and has a financial interest in

the operation of the stations.  (Defendants' Answers to Interrogatories, nos. 10, 13, 19; Mizell

Dep., pp. 22-23, 32-33, 58-60; Plaintiffs' Requests for Admissions, nos. 25-26; Fed. R. Civ. P.

36(a)).  Defendant Mizell has admitted, among other things, that during all relevant times:

- He has been president, sole officer and 100% owner of both Shelley
  Communications, Inc. and Stage Door Development Inc. (Mizell Dep. p. 21,
  lines 15-23; p. 23, lines 5-7; p. 32, line 22 - p. 33, line 2; p. 33, lines 19-21;
  see also Plaintiffs' Requests for Admissions, nos. 1-2; Fed. R. Civ. P. 36(a));

- He is entitled to the profits generated by the operation of radio stations
  WGEA and WRJM-FM, and he has a financial interest in their operation
  (Mizell Dep. p. 33, lines 6-10; see also Plaintiffs' Requests for Admissions,
  nos. 25-26; Fed. R. Civ. P. 36(a));

- He has the sole authority to hire and fire employees of the stations (Mizell
  Dep. p. 58, line 7 - p. 60, line 11; Defendants' Answers to Interrogatories, no.
  19);

- He is the one responsible for the broadcasting and business activities of both
  stations (Mizell Dep. p. 49, line 22 - p. 50, line 8; see also Plaintiffs' Requests
  for Admissions, no. 3-6; Fed. R. Civ. P. 36(a)).


D.     PROOF OF PERFORMANCE

        The musical compositions listed on Exhibit A to the Complaint in this case were

performed, without permission, by broadcast over either radio station WGEA or radio station

WRJM in late February, 2006.  The affidavits of Jerry Glaze and Oleksander Kuzyszyn establish

that the following songs were performed by broadcast over radio station WGEA on February 25

or 27, 2006:  "WE DIDN'T START THE FIRE," LITTLE WING," HEY THERE," "BEGIN

THE BEGUINE,"  "PINK HOUSES," "PANAMA," "THIS WILL BE (AN EVERLASTING

LOVE)," "RASPBERRY BERET," and "FAITH." (Glaze Aff., ¶ 3; Kuzyszyn Aff., ¶¶ 5-6) The Glaze and Kuzyszyn affidavits also establish that the following songs were performed by broadcast over radio station WRJM-FM on February 24, 25 or 26, 2006: "MASTER OF PUPPETS," "LITTLE RED CORVETTE," "LIGHT MY FIRE," "BIG YELLOW TAXI," "JUMP," "RIKKI, DON'T LOSE THAT NUMBER," "GOD WILL MAKE A WAY," "SINCE I DON'T HAVE YOU," "WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)," "SMALL TOWN" and "1999." (Glaze Aff., ¶ 4; Kuzyszyn Aff., ¶¶ 5-6). In addition, defendants have effectively admitted the fact of performance by not responding to plaintiffs' requests for admission. (Plaintiffs' Requests for Admissions, no. 15; Fed. R. Civ. P. 36(a)).

The proof of performance is also contained in the audio cassette tapes, recorded by Mr. Glaze, which capture the broadcast of defendants' radio stations on the dates in question. Mr. Mizell has conceded that the recordings provide the best proof of what was broadcast over the stations. (See Defendants' Answers to Interrogatories, no. 25). The Kuzyszyn affidavit establishes that the tape recordings contain the unauthorized performances of plaintiffs' songs on which this action is based. (Kuzyszyn Aff., ¶ 6).

### III.    THE ISSUES TO BE DETERMINED BY THE COURT

On this record, we may summarize the issues before the Court as follows:

- Are the defendants liable as infringers and is summary judgment appropriate?

- If the defendants are liable as infringers, what are the appropriate remedies and, in particular, what amount of statutory damages should be awarded plaintiffs?

We shall now demonstrate that summary judgment for the plaintiffs is appropriate, as are the remedies they seek.

## IV.    ARGUMENT

A.    THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

As set forth in Almo Music Corp. v. 77 East Adams, Inc., 647 F. Supp. 123, 124 (N.D. Ill. 1986), the elements of copyright infringement by unauthorized public performance are:

(1)    the originality and authorship of the compositions involved;

(2)    compliance with the formalities required to secure a copyright under Title 17, United States Code;

(3)    plaintiffs' ownership of the copyrights of the relevant compositions;

(4)    defendants' public performance of the compositions;

(5)    defendants' failure to obtain permission from the plaintiffs or their representatives for such performance.[5]

As shown below, plaintiffs have satisfied each element.

### 1.    PLAINTIFFS OWN VALID COPYRIGHTS IN THE SONGS IN SUIT

Plaintiffs have conclusively established the first three elements of their case -- ownership of valid copyrights in the songs in suit -- through the submission of copies of copyright certificates annexed to the Jenkins affidavit.  Copyright registration certificates constitute prima facie evidence of the facts stated therein, 17 U.S.C. § 410(c), and, with the other pertinent documents, establish proof of plaintiffs' ownership of valid copyrights in the compositions in

_____

[5]Although this case and others treat a defendant's failure to obtain permission as an element of plaintiffs' proof, this element is in the nature of an affirmative defense -- it is for the defendant to plead and affirmatively prove that he was authorized to perform plaintiffs' songs.  See Fed. R. Civ. P. 8(c).

suit. <u>Simpleville Music et al. v. H. Jack Mizell</u>, 451 F. Supp. 2d 1293, 1296 (M.D. Ala. 2006).[6]

<u>See also</u> <u>Warner Bros., Inc. v. Lobster Pot, Inc.</u>, 582 F. Supp. 478, 481 (N.D. Ohio 1984); <u>Flyte Tyme Tunes v. Miszkiewcz</u>, 715 F. Supp. 919, 921 (E.D. Wis. 1989).

2.  DEFENDANTS PERFORMED PLAINTIFFS' SONGS WITHOUT PERMISSION

The Glaze and Kuzyszyn affidavits establish that the songs listed in counts 1 through 7 and 9 through 10 on Schedule A to the complaint were performed by broadcast over radio station WGEA on February 25 and 27, 2006, and that the songs listed in counts 11 through 21 on Schedule A to the complaint were performed by broadcast over radio station WJRM-FM on February 24, 25 and 26, 2006. <u>See, e.g.</u>, <u>Nick-O-Val Music Co. v. P.O.S. Radio, Inc.</u>, 656 F. Supp. 826 (M.D. Fla. 1987); <u>Boz Scaggs v. KND Corp.</u>, 491 F. Supp. 908 (D. Conn. 1980). As set forth in section II.B. and II.D. above, the proof of performance is uncontroverted, as is the proof that these performances were done without permission.

3.  DEFENDANT MIZELL IS JOINTLY LIABLE ALONG WITH THE
    CORPORATE DEFENDANTS FOR THE INFRINGING PERFORMANCES

An action for copyright infringement is a tort action, and all who participate in the tortious activity are jointly and vicariously liable as tortfeasors. <u>See, e.g.</u>, <u>Screen Gems - Columbia Music, Inc. v. Metlis & Lebow Corp.</u>, 453 F.2d 552, 554 (2d Cir. 1972); <u>Boz Scaggs v. KND Corp.</u>, 491 F. Supp. 908; <u>Italian Book Corp. v. Palms Sheepshead Country Club, Inc.</u>, 186 U.S.P.Q. 326, 327 (E.D.N.Y. 1975). Clearly, Shelley Broadcasting Company, Inc. and Stage Door Development, Inc., as the owners and FCC licensees of the two stations over which the infringing performances were broadcast, are liable for the infringements. Just as clearly, Mizell is personally liable for those acts. See <u>Simpleville Music</u>, 451 F. Supp. 2d at 1299 ("[A]s

---

[6] For the Court's convenience, a copy of the reported decision is attached to this Memorandum.

the president, owner, and sole stockholder of the companies that own WGEA and WRJM-FM, [Mizell] is liable for any infringement occurring at the stations."). Mizell was actively involved in both corporations' principal business activities – the operation of radio stations WGEA and WRJM-FM – and he admittedly derives direct financial benefit therefrom. (Mizell Dep. p. 33, lines 6-10; see also Plaintiffs' Requests for Admissions, nos. 25-26; Fed. R. Civ. P. 36(a)). As Mr. Mizell testified, he is solely responsible for the broadcasting and business activities of both stations. (Mizell Dep. p. 49, line 22 - p. 50, line 8). He is "the supervising, dominant figure at the two radio stations." Simpleville Music, 451 F. Supp. 2d at 1299. By any standard, Mizell is vicariously liable with his corporations as an infringer. See, e.g, Boz Scaggs Music v. KND Corp., 908 F. Supp. at 913-914; and Meadowgreen Music Co. v. Voice In The Wilderness Broadcasting, Inc., 789 F. Supp. 823, 826 (E.D. Tex. 1992) (both cases stand for the proposition that a corporate officer who has a direct financial interest in a radio station and the right and ability to supervise its activities is to be held vicariously liable for the resulting infringements).

## 4. THE PUTATIVE "DEFENSES" ARE LEGALLY INSUFFICIENT

Defendants' answer pleads a litany of defenses, in addition to denying the factual averments of the complaint and pleading "the general issue." These defenses are both factually and legally insufficient to prevent the imposition of liability, however. For the reasons set forth below.

Defendants' denial of plaintiffs' factual averments, pleading of "the general issue," assertion of "failure to state a claim," and denial of indebtedness (first, second, ninth, and tenth defenses) are without merit.[7] Plaintiffs have pleaded in their Complaint, and in connection with

---

[7] To the extent these defenses are meant to allude to the defenses raised by Mizell in the Simpleville Music case, the Court found each of those to be "meritless." See 451 F. Supp. at 1296-99.

this motion have satisfied their burden of proof as to, the elements of a prima facie claim of copyright infringement; plaintiffs' proof on those elements is uncontroverted.  See Simpleville Music, 451 F. Supp. 2d at 1295 (in opposition to a properly-supported motion for summary judgment, "[t]he non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings").

Defendants' assertion that the Court lacks jurisdiction (third defense) is meritless.  This case is brought under a statute of the United States – the Copyright Law, 17 U.S.C. § 501 et seq – and the Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

Defendants' assertion that the Court lacks personal jurisdiction over them, or that venue is improper (fourth, fifth, and sixth defenses), is equally meritless.  H. Jack Mizell lives at 285 East Broad Street in Ozark, Alabama, which is also the address for both corporate defendants. (Defendants' Answers to Interrogatories, nos. 1, 6, 7).  As residents of Alabama, all defendants are subject to the general jurisdiction of the courts of this State, and they have been served personally with a summons in this case.  Therefore, the Court's personal jurisdiction over them has been established.  See Fed. R. Civ. P. 4(k)(1)(A).  The radio stations whose broadcasts constitute the infringing performances on which this action is based are also located within the Middle District – in Ozark and in Geneva, Alabama.  (Mizell Dep., p. 25, line 14 – p. 26, line 8). Clearly, venue is proper in this District not only because the defendants all reside here, but also because a substantial part of the events giving rise to the claims occurred here.  See 28 U.S.C. § 1391(b).

Defendants' assertion of insufficient process and insufficient service of process (seventh and eighth defenses) are also meritless.  After refusing service by certified mail, defendants were

served personally with a copy of the complaint and the alias summons (Doc. 3) by a process server at 285 East Broad Street in Ozark, Alabama, Mizell's place of residence and the corporations' business address.  (See Doc. Nos. 4, 5, and 6).  Service was therefore perfected.  See Fed. R. Civ. P. 4(e)(2) & 4(h)(1).  Regarding the insufficient process defense, the alias summonses with which defendants were served complied in all respects with the requirements of Rule 4(a) and were signed, sealed, and issued by the Clerk for service on defendants in compliance with Rule 4(b).  (See Doc. 3; Fed. R. Civ. P. 4(a) & (b)).  Therefore, the process served on defendants was sufficient.

Defendants' Nineteenth Defense invokes the Alabama Rules of Civil Procedure, which simply do not apply in this federal case.  Defendants' remaining defenses alleging violations of various constitutional rights are apparently predicated on their mistaken notion that plaintiffs are seeking common law punitive damages, which are not applicable in this case.  Plaintiffs seek statutory damages and other remedies available under the Copyright Law.  (See generally Complaint).[8]  The statutory damages requested by plaintiffs are well within the appropriate range for copyright infringement actions such as this, as provided for in 17 U.S.C. § 504(c)(2).  In fact, considering that the range of damages in plaintiffs' prayer for relief could have totaled up to $150,000 for each cause of action ($3,150,000 in the aggregate) plaintiffs request for $5,000 per cause of action ($105,000 in the aggregate) is on the low end of the permissible range.

Moreover, statutory damages are intended to achieve a variety of goals, including compensating copyright holders for actual harm that is caused, deterring defendants and other would be infringers from infringing in the future, providing an incentive for copyright owners to

---

[8]As the leading treatise on copyright law makes clear, most courts have held that the federal copyright statute effectively forecloses an award of punitive damages, primarily because of the availability of statutory damages ranging up to $150,000 per infringement under 17 U.S.C. § 504(c)(2). 4 *Nimmer On Copyright*, § 14.02[C][2], pp. 14-33-14-34 (2006).

protect their rights, and finally, punishing unlawful conduct.

The Copyright Act has built-in "caps" or ceilings, for awards of statutory damages and those caps serve to constrain and limit the potential damages that any particular defendant can be assessed, thereby eliminating any argument that statutory damages sought by plaintiffs in this action could be unconstitutionally excessive or disproportionate.[9]

*                    *                    *

Because plaintiffs have established each element of a claim of copyright infringement, defendants have failed to offer any valid defenses, and there are no genuine issues of material fact, plaintiffs are entitled to the entry of summary judgment in their favor.  Among the many decisions granting summary judgments in virtually identical cases include this Court's decision in <u>Simpleville Music et al. v. Mizell</u>, 451 F. Supp. 2d 1293, cited above.  As in that case, plaintiffs here are entitled to judgment as a matter of law.

B.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF, STATUTORY
      DAMAGES, AND COSTS INCLUDING REASONABLE ATTORNEYS' FEES

1.    <u>Injunctive Relief</u>

17 U.S.C. § 502(a) provides:

> Any court having jurisdiction of a civil action arising under this title may...grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

---

[9] <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 231-32 (1952)  <u>International Korwin Corp. v. Kowalczyk</u>, 855 F.2d 375; <u>Dream Dealers Music v. Parker</u>, 924 F. Supp. at 1153; <u>Meadowgreen Music v. Voice In The Wilderness Broadcasting, Inc.</u>, 789 F. Supp. at 826-827; <u>Coleman v. Payne</u>, 698 F. Supp. 704 (W.D. Mich. 1988); and <u>Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.</u>, 656 F. Supp. 826 (M.D. Fla. 1987).

As the Blank affidavit demonstrates, defendants continue to perform ASCAP's members' music on a regular basis by broadcast over radio stations WGEA and WRJM-FM without an ASCAP license. (See Blank Aff., ¶ 14; see also Plaintiffs' Requests for Admissions, nos. 16-18; Fed. R. Civ. P. 36(a)). Each day brings the risk (if not the certainty) of additional copyright infringements by broadcast over defendants' stations. Moreover, defendants' continuing infringements are willful: after defendants' long history of contact with ASCAP and their unsuccessful attempts to defend the copyright infringement claims in the Simpleville Music case, defendants certainly know that their conduct puts them at risk of infringing the copyrights of these plaintiffs and, indeed, of other copyright owners not represented here. With that history, defendants' continuing infringing behavior is clearly willful. They simply refuse to comply with the law.

Under these circumstances, permanent injunctive relief is appropriate. As the Court noted in Simpleville Music, "the court may, as a general matter, [enter permanent injunctive relief] only when there is a substantial likelihood of further infringement of a plaintiff's copyrights. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14-06[B] (2006)." 451 F. Supp. 3d at 1300.[10] Plaintiffs respectfully suggest that defendants' pattern of recalcitrant behavior suggests there is a substantial likelihood of further infringing performances, absent injunctive relief. Therefore, plaintiffs are entitled to an injunction prohibiting further infringing performances. See, e.g., All Nations Music  v. Christian Family Network, Inc., 989 F. Supp. at

---

[10] This Court, in Simpleville Music, held that an evidentiary hearing would be necessary before awarding plaintiffs injunctive relief because "[t]he record, on plaintiffs' summary-judgment motion is unclear whether Mizell's failure to honor the plaintiffs copyrights was in good or bad faith." Id at 1300. In order to save time and expense, plaintiffs in that action did not request such a hearing and declined to seek injunctive relief. However, in the current action, after all that has transpired, it is clear that defendants have not acted in good faith and no evidentiary hearing on the issue is required on the issue of injunctive relief.

869; Dream Dealers Music v. Parker, 924 F. Supp. 1146, 1152-1153 (S.D. Ala. 1996); and

Meadowgreen Music Co. v. Voice In The Wilderness Broadcasting, Inc., 789 F. Supp at 826.

Recognizing that plaintiffs in this type of action represent all of ASCAP's members, courts routinely enjoin defendants from performing any or all music in the ASCAP repertory. See, e.g., Harrison Music Corp. v. Tesfaye, 293 F. Supp. 2d 80, 83 (D.D.C. 2003); All Nations Music v. Christian Family Network, Inc., 989 F. Supp. at 869; and Brockman Music v. Mass Bay Lines, Inc., 7 U.S.P.Q. 2d 1089, 1091 (D. Mass. 1988). We respectfully submit that plaintiffs are entitled to similar relief.

2.    Statutory Damages

The Copyright Act, 17 U.S.C. § 504(c)(1), provides in pertinent part:

> [T]he copyright owner may elect. . .to recover, instead of actual damages and profits, an award of statutory damages. . .in a sum of not less than $750 or more than $30,000 as the court considers just.

In cases such as this, where plaintiffs seek statutory rather than actual damages and where defendants knowingly and deliberately infringed plaintiffs' copyrights, courts typically award substantially more than minimum statutory damages and more than the infringer would have paid in license fees. See, e.g., International Korwin Corp. v. Kowalczyk, 855 F.2d 375; Dream Dealers Music v. Parker, 924 F. Supp. at 1153; Meadowgreen Music v. Voice In The Wilderness Broadcasting, Inc., 789 F. Supp. at 826-827; and Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc., 656 F. Supp. 826 (M.D. Fla. 1987) (in each case, the damages awarded were substantially in excess of the amount of license fees the infringer "saved" by avoiding payment of license fees to ASCAP).

In <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 231-32 (1952), the United States Supreme Court held that merely awarding plaintiffs damages equal to lost profits does not sufficiently deter infringements. Thus, courts should formulate a damage award that will achieve the deterrent purposes of the statutory damages provision. The Court said:

> . . . [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The . . . statutory rule, formulated after long experience . . . also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious or unprofitable invasion of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate the statutory policy.

344 U.S. at 233.

Factors to be considered include "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind -- whether willful, knowing, or merely innocent." <u>Boz Scaggs Music v. KND Corporation</u>, 491 F. Supp. at 914.

As in the cases cited, plaintiffs in this action are offering no proof of actual damages. Typically, plaintiffs in such as this seek damages in an amount related to the license fees the infringer has "saved" by his or her infringer conduct. Here, however, that simply will not suffice; rather, Plaintiffs respectfully urge the Court to award statutory damages in an amount sufficient to impress on defendants the gravity of the situation -- $5,000 per infringement.

In another "ASCAP" case, the court in <u>Milene Music, Inc. v. Gotuaco</u>, 551 F. Supp. 1288 (D.R.I. 1982), observed that when an infringer's conduct is particularly egregious an examination of more than the license fees owed is necessary in formulating appropriate damage awards, "[c]ourts thus have focused on the element of intent, and the per infringement award

17

tends understandably to escalate in direct proportion to the blameworthiness of the conduct." Id. at 1296.

In Coleman v. Payne, 698 F. Supp. 704 (W.D. Mich. 1988), the defendant owned a radio station but refused to obtain an ASCAP license and was also sued by members of ASCAP three times.  In awarding $5,000 for each of 10 infringements when license fees would have totaled approximately $5,450, the court noted that such an award was warranted "both as compensation for their [plaintiffs'] loss and as a means to deter this defendant, and others like him, from further copyright violations." Id. at 708.  See also Broadcast Music Inc. v. Entertainment Complex, 198 F. Supp. 2d 1291 (N.D. Ala. 2002) (total damage award of $43,000; license fees would have totaled approximately $14,400); Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F. Supp. 511, 516 (D. P.R. 1993); Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229-30 (7th Cir. 1991) (total damage award of $40,000; approximately three times the amount of license fees); Golden Torch Music Corp. V. Pier III Café, Inc., 684 F. Supp, 772 (D.  Conn. 1988) (total damage award of $8,000; license fees would have totaled approximately $1,500); and Nick-O-Val Music, Co., Inc. v. P.O.S. Radio, Inc., 656 F. Supp. 826 (M.D. Fla. 1987) (estimated license fees in the amount of $22,000; damages totaling $50,000).

C.    Costs and Attorneys' Fees

17 U.S.C. § 505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

In Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994), the Supreme Court pronounced the rule with respect to attorneys' fees in copyright cases:

18

. . . Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.

510 U.S. at 534.

In an earlier "ASCAP" case, Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, Judge Blumenfeld applied the same analysis prescribed by the Supreme Court in determining that the plaintiffs were entitled to attorneys' fees:

. . . Some of the considerations that might justify the denial of fees include the presence of a complex or novel issue of law that the defendants litigate vigorously and in good faith [citation omitted]; the defendants' status as innocent, rather than willful or knowing, infringers, [citation omitted]; bad faith on the plaintiffs' part in prosecuting the action [citation omitted]; or a good faith attempt by the defendants to avoid infringement [citation omitted].

None of these justifications for denying an award of fees is present in this case. Quite the contrary, liability is unquestionable on both the law and the facts; the defendants' conduct, whatever their precise state of mind, was certainly not innocent; they repeatedly rebuffed offers to resolve the dispute prior to the commencement of litigation; their defense efforts in this action have been spare; and they made no attempt whatsoever to avoid infringement although they were well aware of the law's requirements. While statutory damages are assessed in lieu of actual damages, "the counsel fees provision was designed 'to penalize the losing party as [well as] to compensate the prevailing party.'" [citations omitted]. Equity dictates that the defendants be required to pay the plaintiffs an allowance for attorneys' fees.

Id. at 915 (emphasis in original). Similarly, in Milene Music, Inc. v. Gotauco, on facts again very similar to those in this case, Judge Selya concluded:

The defendants have deliberately and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce their proprietary interests in the copyrights. The defendants, in the Court's view, have come forward with no justification for their actions, nor any colorable grounds whatever upon which defense or mitigation could be predicated. The Court believes that this litigation fairly cries out for an award of attorneys' fees.

19

551 F. Supp. at 1298.  See also Dream Dealers Music v. Parker, 924 F. Supp. at 1153-1154; and Little Mole Music v. Spike Inv., Inc., 720 F. Supp. 751, 757 (W.D. Mo. 1989) (awards of attorneys' fees "are in keeping with the policy behind the Copyright Act's fee shifting provision, for often the actual value of the recovery in copyright infringement actions may not be commensurate with the attorneys' fees incurred to obtain the recovery.  Without the fee-shifting provision, copyright owners would doubtless be exceedingly reluctant to enforce their rights in such cases.").

This case, too, "cries out for an award of attorneys' fees." Milene Music, Inc. v. Gotauco, 551 F. Supp. at 1298.  Defendants have not only continued to violate the Copyright Law but also have failed to come forward with any justification for their actions or any "colorable grounds" for a defense.  Id.  Therefore, this Court, too, should award the Plaintiffs their costs including reasonable attorneys' fees. [11]

CONCLUSION

Upon the record before the Court and for the reasons set forth above, plaintiffs should be granted summary judgment awarding injunctive relief, statutory damages of $5,000 per infringement, and costs including reasonable attorneys' fees.

---

[11]Plaintiffs' counsel is also submitting herewith an affidavit setting forth attorneys' fees and costs incurred in connection with this action as of February 6, 2007.

Dated:  February 8, 2007

Respectfully submitted,

s/ Dylan C. Black

Dylan C. Black (ASB-6595-K72D)
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
(205) 521-8000; Facsimile: (205) 521-8800
E-mail: dblack@bradleyarant.com
One of the Attorneys for Plaintiffs

OF COUNSEL:
James W. Gewin
BRADLEY ARANT ROSE & WHITE LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000; Facsimile (205) 521-8800

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Steve McGowan
119 S. Foster Street, Ste. 101
Dothan, Alabama 36301
wula@aol.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None

s/ Dylan C. Black
Dylan C. Black (ASB-6595-K72D)
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
(205) 521-8000; Facsimile: (205) 521-8800
E-mail: dblack@bradleyarant.com

22

Westlaw.

451 F.Supp.2d 1293                                              Page 1
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
**(Cite as: 451 F.Supp.2d 1293)**

**C**
Briefs and Other Related Documents
Simpleville Music v. MizellM.D.Ala.,2006.
United States District Court,M.D. Alabama,Southern
Division.
**SIMPLEVILLE** MUSIC, et al., Plaintiffs,
v.
H. Jack **MIZELL**, Defendant.
**Civil Action No. 1:04cv393-MHT.**

Sept. 14, 2006.

**Background:** Members of American Society of
Composers, Authors and Publishers (ASCAP) sued
owner of radio stations, claiming unauthorized
broadcast of their copyrighted songs. Members
moved for summary judgment.

**Holdings:** The District Court, Myron H. Thompson,
J., held that:

(1) presentation to stations of free promotional
compact discs (cds) did not allow for royalty-free
playing of music on cds;

(2) royalties were required to be paid when incidental
music was broadcast;

(3) royalties were required, even where music was
performed by non-ASCAP members;

(4) Copyright Act exemption, when religious music
was performed as part of church service, did not
extend to broadcast of service;

(5) owner's lack of intent to violate Copyright Act
was not defense to royalties liability;

(6) owner of stations was liable despite absence of
personal participation in song selection; and

(7) owner was not entitled to jury trial on issue of
damages.

Judgment for claimants.
West Headnotes
[1] **Copyrights and Intellectual Property** 99
☞66

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(J) Infringement
      99I(J)1 What Constitutes Infringement
        99k66 k. Musical Works. Most Cited
Cases
To establish a prima-facie copyright infringement
case for a musical composition, a plaintiff may prove
(1) ownership of a valid copyright and (2) public
performance of the copyrighted work without
authorization. 17 U.S.C.A. § 106(4).

[2] **Copyrights and Intellectual Property** 99
☞48

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(E) Transfer
      99k48 k. Licenses in General. Most Cited
Cases
Radio station, receiving free promotional compact
discs (cds), was not licensed by holders of copyrights
to play copyrighted music contained in cds without
paying fees. 17 U.S.C.A. § 106(4).

[3] **Copyrights and Intellectual Property** 99
☞48.1

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(E) Transfer
      99k48.1 k. Compulsory License; Copyright
Royalty Tribunal. Most Cited Cases
Radio station was required to pay royalties to
American Society of Composers, Authors and
Publishers (ASCAP), for music aired as background,
transition (bumper), or other incidental uses. 17
U.S.C.A. § 106(4).

[4] **Copyrights and Intellectual Property** 99
☞48.1

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(E) Transfer
      99k48.1 k. Compulsory License; Copyright
Royalty Tribunal. Most Cited Cases
Radio station was required to pay royalties to
American Society of Composers, Authors and
Publishers (ASCAP), even though music subject to

451 F.Supp.2d 1293
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
(Cite as: 451 F.Supp.2d 1293)

ASCAP license was performed by non-ASCAP members. 17 U.S.C.A. § 106(4).

**[5] Copyrights and Intellectual Property 99 ⬥48.1**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(E) Transfer
            99k48.1 k. Compulsory License; Copyright Royalty Tribunal. Most Cited Cases

**Copyrights and Intellectual Property 99 ⬥67.2**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.2 k. Sound Recordings. Most Cited Cases
Religious exemption to copyright requirements, for performance of music of a religious nature in course of services at place of worship, did not excuse requirement that radio station pay royalties to American Society of Composers, Authors and Publishers (ASCAP) when broadcasting religious service at which copyrighted music was performed; broadcast was separate performance, not occurring at place of worship. 17 U.S.C.A. § 110(3).

**[6] Copyrights and Intellectual Property 99 ⬥67.2**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.2 k. Sound Recordings. Most Cited Cases
Radio station operator's lack of intent to violate copyrights did not preclude determination that Copyright Act was violated through broadcast of music without authorization of American Society of Composers, Authors and Publishers (ASCAP), even though five songs in question were broadcast during syndicated radio shows, and another was broadcast as part of national television commercial. 17 U.S.C.A. § 106(4).

**[7] Copyrights and Intellectual Property 99 ⬥77**

99 Copyrights and Intellectual Property
    99I Copyrights

        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons Liable. Most Cited Cases
Owner of radio stations was personally liable, by virtue of his position, for Copyright Act violations occurring when copyrighted songs were broadcast without obtaining permission of American Society of Composers, Authors and Publishers (ASCAP), even though owner claimed no personal participation in music selection. 17 U.S.C.A. § 106(4).

**[8] Jury 230 ⬥14(1.1)**

230 Jury
    230II Right to Trial by Jury
        230k14 Particular Actions and Proceedings
            230k14(1.1) k. Patent and Copyright Cases. Most Cited Cases
Radio station owner, found to have violated Copyright Act by playing copyrighted songs without American Society of Composers, Authors and Publishers (ASCAP) authorization, was not entitled to jury trial on issue of damages; claimants had agreed to accept minimum statutory damages of $750 per song, and number of infringing songs was known, making computation of damages simple and obviating need for jury. U.S.C.A. Const.Amend. 7; 17 C.F.R. § 504(c).

*1294 Dylan Cook Black, James William Gewin, Bradley Scott Burleson, Bradley Arant Rose & White LLP, Birmingham, AL, Richard H. Reimer, American Society of Composers, Authors and Publishers, New York, NY, for Plaintiff.
Steve G. McGowan, Steve McGowan LLC, Dothan, AL, for Defendant.

OPINION
MYRON H. THOMPSON, District Judge.
The plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP"), to which they have granted a non-exclusive right to license public performances of their copyrighted musical compositions. [FN1] The plaintiffs *1295 brought this lawsuit against defendant H. Jack Mizell, charging that he violated the Copyright Act, 17 U.S.C. § 101-1332, by playing ASCAP's copyrighted musical compositions on the radio without authorization. This court has jurisdiction under 28 U.S.C. § 1338(a) (copyright) and § 1331 (federal question). Currently before the court is the plaintiffs' motion for summary judgment. The motion will be

451 F.Supp.2d 1293
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
(Cite as: 451 F.Supp.2d 1293)

Page 3

granted for the reasons that follow.

> FN1. The plaintiffs are Simpleville Music; New Hidden Valley Music Co.; BMG Songs, Inc.; Famous Music Corporation; Sony/ATV Tunes LLC; WB Music Corp.; Lanny Wolfe Music Company; Integrity Music, Inc. d/b/a Integrity's Hosanna Music; Lensongs Publishing; Universal-MCA Music Publishing, a Division of Universal Studios, Inc.; Doors Music Company; Hulex Music/WB Music Corp.; J. Albert & Son (USA) Inc.; and Pure Songs and Frank Music Corp.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would be not proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115-17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. FACTS

Mizell is the owner of Shelley Broadcasting, Inc. and Stage Door Development, Inc., and these two companies, in turn, operate radio stations WGEA and

WRJM-FM, respectively. On September 20 and 21, 2003, WGEA broadcasted seven of the plaintiffs' ASCAP copyrighted compositions, and, on September 21 and 22, WRJM-FM broadcasted an additional eight. Neither station had ASCAP's permission to perform these compositions.

The 15 broadcasted songs are "I Can Only Imagine," "Any Day Now," "Stranger In My House," "Walking In Memphis," "Lovin' All Night," "Maybe God Is Tryin' To Tell You Somethin'," "His Hand In Mine," "More Than Wonderful," "Above All," "Love Is Alive," "L.A. Woman," "Hip To Be Square," "Highway To Hell," "Smokin'," and "Luck Be A Lady Tonight."

## III. DISCUSSION

[1] To establish a prima-facie copyright infringement case for a musical composition, a plaintiff may prove (1) ownership of a valid copyright and (2) "public performance" of the copyrighted work without authorization. 17 U.S.C. § 106(4) (subject to other provisions in the Copyright Act that provide that certain uses of copyrighted materials are not infringements despite § 106, "the owner of copyright ... has the exclusive rights ... in the case of ... musical ... works ... to *1296 perform the copyrighted work publicly"); *cf. Feist Publications, Inc. v. Rural Telephone Service Co., Inc.* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); *A & M Records v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001) ( "Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.").

The plaintiffs have satisfied the first element by submitting copies of the copyright registration certificates. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

With regard to the second element, the plaintiffs have presented the affidavits of Jerry Glaze, who recorded

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

451 F.Supp.2d 1293
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
(Cite as: 451 F.Supp.2d 1293)

the broadcasts of radio stations WGEA and WRJM-FM on the days in dispute, and Alex Kuzyszyn, who listened to the tapes and identified that the 15 compositions constituting the basis of this suit were found on the tape recordings. The evidence supplied by Mizell either admits that these compositions were broadcast on radio stations WGEA and WRJM-FM or concedes that they may have been played. And the law is settled that a radio broadcast constitutes a "performance" within the meaning and coverage of copyright law. _Twentieth Century Music Corp. v. Aiken,_ 422 U.S. 151, 161, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975) ("Broadcasters perform."); 2 Melville B. Nimmer & David Nimmer, _Nimmer on Copyright_ § 8.14[B][1] (2006) ("the act of broadcasting a work is itself a performance of that work"); _see also_ 17 U.S.C. § 101 ("To 'perform' a work means to recite ... it, either directly or by means of any device or process ...."). Mizell also admits that he did not have permission from the plaintiffs or ASCAP to broadcast the 15 songs.

However, Mizell asserts an array of defenses to the copyright claims. He argues that there was no infringement because (1) the compositions were played from promotional CDs; (2) the compositions were played as incidental, background, or bumper music; [FN2] (3) the composition performers were not ASCAP members; (4) the compositions fall within the religious exemption to copyright laws; (5) he did not intend to violate copyright laws; and (6) he did not personally control the content of the broadcasts. Mizell also requests a jury trial so that it may determine the appropriate amount of statutory damages. The court will discuss the validity of each defense.

> FN2. "Bumper music ... refers to the short clips of music used to buffer transitions between programming elements, such as when a syndicated program takes a break for local station identification or 'goes to commercial.' " _http:// en. wikip edia.org/wiki/B umper-music._

### 1. Promotional CDs

[2] Mizell contends that he could play the songs without permission because they came off promotional CDs. According to him, his stations have had a policy of playing only promotional, royalty-free music since 1991, and the ASCAP songs he played came from free CDs the radio stations received, royalty-free, from either Compact Disc

Xpress (CDX) or Crossroads. [FN3] Promotional CDs are CDs that *1297 are distributed for free and for which the writer and publisher will not collect royalties. 6 Melville B. Nimmer & David Nimmer, _Nimmer on Copyright_ § 30.02 (2006).

> FN3. Def. Supplemental Reply Memorandum (Doc. No. 74), Mizell Affidavit, p. 1.

However, the fact that a copyright holder grants recording companies the right to make and distribute promotional copies of their songs does not mean that it waives its right to collect fees when a radio station wishes to broadcast publically from the promotional copy. _Chappell & Co. v. Middletown Farmers Market & Auction Co.,_ 334 F.2d 303, 305 (3rd Cir.1964) ("The surrender of one monopoly-the right to make mechanical reproductions-does not carry with it the right to publicly perform the copyrighted musical composition.").

Moreover, while Mizell provides multiple examples of music subscription services that pay the licensing fees for the subscriber, [FN4] none of these examples includes CDX or Crossroads, the two publishers of the CDs Mizell contends are promotional. In fact, the copies of the CD sleeves that accompanied the CDX CDs include the following cautionary language: "NOT FOR SALE: for promotional use only. Warning all rights reserved. Unauthorized duplication is a violation of applicable law." [FN5]

> FN4. Mizell's radio stations currently have an agreement with TM Century® to use their Imagio ™ MegaMusic production libraries, which provide production music beds of 60 seconds or less duration, and various sound effects and combinations of sound effects. The radio stations also use Premier Radio Network's Plug and Play Imaging service which contains pre-produced promos and liners for radio stations along with edited hit music bumpers.

> FN5. Def. Reply in Opposition to Summary Judgment (Doc. No. 60), Parker Affidavit, Exhibit 1-A.

It is apparent that Mizell is using the term "promotional" out of context. The language on the CD sleeve defines the terms of its free, but restricted,

transfer. The CD itself is promotional, its licensing for public performance is not. A radio station that receives a CD labeled "for promotional use only," which means that the station did not have to pay for the CD, must still obtain permission before broadcasting its contents. *See Chappell,* 334 F.2d at 305.

Mizell's promotional-CD defense is meritless.

### 2. Incidental or Background Use

[3] Mizell used several ASCAP songs as background or bumper music. He asserts that, because ASCAP does not pay royalties to its members for background, bumper, or other incidental uses, he may use those songs as such without paying any licensing fees.

Background music is not exempt from being subject to licensing fees. *See Schumann v. Albuquerque Corp.,* 664 F.Supp. 473, 477 (D.N.M.1987) (Bratton, J.) ("The fact that the song might have been used as background to a community calendar does not render its performance fair use under § 107."). Additionally, courts do allow incidental use fees. *See United States v. American Socy. of Composers,* 981 F.Supp. 199 (S.D.N.Y.1997) (Conner, J.) (ASCAP's incidental use fee of 0.06% is reasonable). Mizell's background-use defense is meritless.

### 3. Non-ASCAP Performers

Mizell argues that the plaintiffs cannot claim copyright infringement when the performers of the offending compositions are not ASCAP members.

[4] The copyright owner has an interest in the composition itself, regardless of the performer. 17 U.S.C. § 501(b). "The legal or beneficial *owner* of an exclusive right under a copyright is entitled, subject *1298 to the requirements of [17 U.S.C. § ]411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." *Id.* (emphasis added). Mizell's non-ASCAP-performer defense is meritless.

### 4. Religious Exemption

[5] Mizell argues that the 'religious exemption' allowed him to broadcast some of the copyrighted compositions because they were performed during church services. 17 U.S.C. § 110(3) creates an

exemption to copyright-law requirements for the "performance of a nondramatic literary or musical work or of a dramatico-musical work of a religious nature, or display of a work, in the course of services at a place of worship or other religious assembly."

The critical language here is "at a place of worship or other religious assembly"; the exception says nothing about broadcasts in general and, more specifically, broadcasts from a place of worship. True, it could be argued the exemption should apply where, although the songs are being broadcast, there is an audience at the place of worship; in short, the exemption, it could be argued, should apply because the conditions to the exemption have been satisfied. Thus, it could be argued, the exemption should apply to all simultaneous performances as long as one of the performances falls within the exemption.

However, the law is clear that radio broadcasting is itself a separate public performance which can constitute an infringement. *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 161, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975) ( "Broadcasters perform."); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.14[B][1] (2006) ("the act of broadcasting a work is itself a performance of that work"); *see also* 17 U.S.C. § 101 ("To 'perform' a work means to recite ... it, either directly or by means of any device or process ...."). Thus, the mere fact that a radio broadcast of a song is simultaneous with the playing of the song at a place of worship does not mean that broadcast falls within the religious exemption; playing to the audience at the place of worship and playing to a broadcast audience are separate public performances. *See* H.R.Rep. No. 94-1476, at 55 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668 ("[A] singer is performing when he or she sings a song; a broadcasting network is performing when it transmits his or her performance ...; a local broadcaster is performing when it transmits the network broadcast; a cable television system is performing when it retransmits the broadcast to its subscribers ...."); *see also, Schumann v. Albuquerque Corp.,* 664 F.Supp. 473, 475 (D.N.M.1987) (Bratton, J.) (radio broadcast is a separate performance from live performance).

This understanding of the religious exemption is supported by its legislative history, which provides that the exemption does "not extend to religious broadcasts or other transmissions to the public at large, even where the transmissions were sent from the place of worship." H. Rep. No. 94-1476, at 84, *reprinted in* 1976 U.S.C.C.A.N. at 5698-99.

451 F.Supp.2d 1293
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
**(Cite as: 451 F.Supp.2d 1293)**

Accordingly, the court concludes that the religious exemption does not allow Mizell to broadcast copyrighted songs, performed during church services, without authorization, for such broadcasts are not "at a place of worship". *Id.* Mizell's religious-exemption defense is meritless.

### 5. Lack of Intent

[6] Mizell protests that he did not intend to play copyrighted material and took measures to protect against such infringements. However, "intention to infringe is not essential under the [Copyright] Act." *1299*Buck v. Jewell-LaSalle Realty Co.,* 283 U.S. 191, 198, 51 S.Ct. 410, 75 L.Ed. 971 (1931). *See U.S. Songs, Inc. v. Downside Lenox, Inc.,* 771 F.Supp. 1220, 1228 (N.D.Ga.1991) (Hall, J.) ("[T]he law is clear that lack of intent to infringe does not shield the infringer from liability."); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08 (2006) ("In actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability.").

Admittedly, five of the songs in this case were broadcast during syndicated radio shows, while one song was broadcast as part of a national television commercial. Nevertheless, "a broadcaster who is aware of his obligations under copyright law remains responsible for ensuring that copyrighted music is not aired without permission." *Jobete Music Co., Inc. v. Johnson Communications, Inc.,* 285 F.Supp.2d 1077, 1089 (S.D.Ohio 2003) (Rice, C.J.) (where defendant was liable for copyright infringement for airing an NBC commercial that played "This Will Be (An Everlasting Love)" in the background without permission). Although Mizell did not produce the commercial or the radio shows himself, he was still responsible for ensuring that all of the licensing fees were paid. Consequently, Mizell's no-intent defense is meritless.

### 6. Personal Participation in Infringement

[7] Mizell denies liability on the ground that he did not personally participate in the infringement. However, as the president, owner, and sole stockholder of the companies that own WGEA and WRJM-FM, he is liable for any infringement occurring at the stations. A person "including a corporate officer, who has the ability to supervise

infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers,* 756 F.2d 801, 811 (11th Cir.1985) (citation omitted); *see also Chi-Boy Music v. Towne Tavern, Inc.,* 779 F.Supp. 527, 530 (N.D.Ala.1991) (Hancock, J.). Similarly, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements." *Quartet Music v. Kissimmee Broadcasting, Inc.,* 795 F.Supp. 1100, 1103 (M.D.Fl.1992) (Kellam, J.). The record is clear that Mizell fits the bill of being the supervising, dominant figure at the two radio stations.

Mizell's no-personal-participation defense is meritless.

### 7. Judge or Jury Trial

[8] Mizell demands a jury on damages. 17 U.S.C. § 504(c) explains that "an infringer of copyright is liable for either-(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c).1" Subsection (c) further details that a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages ... with respect to any one work ... of not less than $ 750 or more than $ 30,000 as the court considers just."

Although the statute itself does not require a jury trial, the Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 355, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

*1300* The plaintiffs argue that a jury trial is unnecessary because they will accept the minimum statutory award of $ 750 per violation. "*Feltner* ... establish[ed] ... that cases under § 504(a) are normal civil actions subject to the normal allocation of functions between judge and jury." *BMG Music v. Gonzalez,* 430 F.3d 888, 892 (7th Cir.2005), *cert.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

451 F.Supp.2d 1293
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
(Cite as: 451 F.Supp.2d 1293)

denied, --- U.S. ----, 126 S.Ct. 2032, 164 L.Ed.2d 782 (2006). "When there is a material dispute of fact to be resolved or discretion to be exercised in selecting a financial award, then either side is entitled to a jury; if there is no material dispute and a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible." *Id.* at 892-893.

Here, because the plaintiffs are seeking the statutory minimum and because the plaintiffs are asserting only one violation per song and because the record establishes as a matter of law that the violations occurred, the law has eliminated any discretion as to damages, and summary judgment is appropriate. *See id.* (holding that, because there were no disputed facts as to the statutory minimum award, summary judgment was proper as to damages); *Lava Records, LLC v. Ates,* No. Civ.A.05-1314, 2006 WL 1914166, at *3 (W.D.La. July 11, 2006) (James, J.) (finding that because the plaintiffs sought only the minimum statutory amount and courts have routinely held that an award of $ 750.00 per work is appropriately awarded by summary judgment, there was no need for jury trial on the issue of damages); *Capitol Records v. Lyons,* No. Civ.A.3:03-CV-2018-L, 2004 WL 1732324, at *3 (N.D.Tex. Aug.2, 2004) (Ramirez, Mag. J.) (finding that no hearing was necessary prior to an award of the minimum $ 750.00 per work where defendant defaulted and his acts of infringement were deemed admitted).

In short, because there is nothing for a jury to decide here as to damages, a jury is unnecessary.

## 8. Injunctive Relief

The plaintiffs request that the court permanently enjoin Mizell from publicly performing the 15 songs. While the court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," 17 U.S.C. § 502(a), that grant is not unlimited; the court may, as a general matter, do so only when there is a substantial likelihood of further infringement of a plaintiff's copyrights. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14-06[B] (2006); *see also U.S. Songs, Inc. v. Downside Lenox, Inc.,* 771 F.Supp. 1220, 1229 (N.D.Ga.1991) (Hall, J.).

The record, on the plaintiffs' summary-judgment motion, is unclear whether Mizell's failure to honor the plaintiffs' copyrights was in good or bad faith. The court therefore believes that the prudent course

to follow is to have an evidentiary hearing specifically addressing whether injunctive relief is needed and, if so, what form that relief should take. Of course, this assumes that the plaintiffs still want such relief in the wake of the final judgment entered today. Therefore, the plaintiffs will have seven days from the date of this opinion to inform the court in writing if they want such relief, and, if they do, the court will set the matter down for an evidentiary hearing. If the plaintiffs fail to make this request within the time allowed, the court will assume that they have abandoned such relief.

## IV. CONCLUSION

Because the plaintiffs have proven each of the elements of copyright infringement as to each of the 15 songs, and because Mizell has failed to offer valid defenses, an **1301 appropriate summary judgment in favor of the plaintiffs will be entered. The assessment will be the minimum statutory fee of $ 750 for each of the 15 infringements, for a total of $ 11,250 (15 x $ 750 = $ 11,250).

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The motion for summary judgment filed by plaintiffs Simpleville Music, New Hidden Valley Music Co., BMG Songs, Inc.; Famous Music Corporation, Sony/ATV Tunes LLC, WB Music Corp., Lanny Wolfe Music Company, Integrity Music, Inc. d/b/a Integrity's Hosanna Music, Lensongs Publishing, Universal-MCA Music Publishing, a Division of Universal Studios, Inc., Doors Music Company, Hulex Music/WB Music Corp., J. Albert & Son (USA) Inc., and Pure Songs and Frank Music Corp. (Doc. No. 55) is granted.

(2) Judgment is entered in favor of plaintiffs Simpleville Music, New Hidden Valley Music Co., BMG Songs, Inc.; Famous Music Corporation, Sony/ATV Tunes LLC, WB Music Corp., Lanny Wolfe Music Company, Integrity Music, Inc. d/b/a Integrity's Hosanna Music, Lensongs Publishing, Universal-MCA Music Publishing, a Division of Universal Studios, Inc., Doors Music Company, Hulex Music/WB Music Corp., J. Albert & Son (USA) Inc., and Pure Songs and Frank Music Corp. and against defendant H. Jack Mizell.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

451 F.Supp.2d 1293                                                                              Page 8
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246
**(Cite as: 451 F.Supp.2d 1293)**


(3) Plaintiffs Simpleville Music, New Hidden Valley
Music Co., BMG Songs, Inc.;    Famous Music
Corporation, Sony/ATV Tunes LLC, WB Music
Corp., Lanny Wolfe Music Company, Integrity
Music, Inc. d/b/a Integrity's Hosanna Music,
Lensongs    Publishing,    Universal-MCA    Music
Publishing, a Division of Universal Studios, Inc.,
Doors Music Company, Hulex Music/WB Music
Corp., J. Albert & Son (USA) Inc., and Pure Songs
and Frank Music Corp. shall have and recover from
defendant Mizell the sum of $ 11,250.00.

(4) Any request for injunctive relief must be filed by
no later than September 21, 2006.

(5) Any request for attorneys' fees and expenses must
be filed by no later than September 28, 2006.

It is further ORDERED that costs are taxed against
defendant Mizell, for which execution may issue.

The clerk of the court is DIRECTED to enter this
document on the civil docket as a final judgment
pursuant to Rule 58 of the Federal Rules of Civil
Procedure.

M.D.Ala.,2006.
Simpleville Music v. Mizell
451 F.Supp.2d 1293, 2006 Copr.L.Dec. P 29,246

Briefs and Other Related Documents (Back to top)

• 2004 WL 3040243 (Trial Motion, Memorandum
and Affidavit) Mizell's Cause for Failure to Appear
(Sep. 9, 2004) Original Image of this Document with
Appendix (PDF)
• 2004 WL 3040235 (Trial Pleading) Answer to
Plaintiffs' Complaint (May 10, 2004) Original Image
of this Document (PDF)
• 1:04cv00393 (Docket) (Apr. 23, 2004)
• 2004 WL 3040215 (Trial Pleading) Complaint
(2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.