**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOELSONGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:06cv774-MHT |
| SHELLEY BROADCASTING COMPANY, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' EVIDENTIARY SUBMISSION**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Joelsongs, et al. submit this Evidentiary Submission in Support of Motion for

Summary Judgment.  These materials are:

1.      Affidavit of Mary A. Jenkins, with Exhibits A-U

2.      Affidavit of Pamela Blank, with Exhibits A-B

3.      Affidavit of Jerry Glaze

4.      Affidavit of Oleksander Kuzyszyn

5.      Affidavit of Dylan C. Black

6.      Plaintiffs' Requests for Admissions, deemed admitted by operation of Fed. R.

Civ. P. 36(a)

7.      Defendants' Answers to Interrogatories

7.      Excerpts from Deposition of H. Jack Mizell, taken on May 1, 2006, in <u>Simpleville</u>

<u>Music, et al. v. Shelley Broadcasting Company, Inc., et al</u>., United States District Court for the

Middle District of Alabama, Southern Division, Case Number 1:06cv774-MHT.


Dated:  February 8, 2007


                                                Respectfully submitted,

                                                s/ Dylan C. Black
                                                Dylan C. Black (ASB-6595-K72D)
                                                Bradley Arant Rose & White LLP
                                                1819 Fifth Avenue North
                                                Birmingham, AL 35203-2119
                                                (205) 521-8000; Facsimile: (205) 521-8800
                                                E-mail: dblack@bradleyarant.com
                                                One of the Attorneys for Plaintiffs

OF COUNSEL:
James W. Gewin
BRADLEY ARANT ROSE & WHITE LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000; Facsimile (205) 521-8800

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on February 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Steve G. McGowan
    119 S. Foster Street, Suite 101
    Dothan, AL  36301

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    None

          s/ Dylan C. Black
          Dylan C. Black (ASB-6595-K72D)

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOELSONGS, EXPERIENCE HENDRIX, L.L.C., RICHARD ADLER D/B/A LAKSHMI PUJA MUSIC LTD., JUDITH COULTER AND JANIE COULTER HARTBARGER D/B/A J & J ROSS CO., WARNER BROS., VAN HALEN MUSIC COMPANY, CHAPPELL & CO., INC., JAY'S ENTERPRISES, INC., CONTROVERSY MUSIC, CREEPING DEATH MUSIC, DOORS MUSIC COMPANY, SIQUOMB PUBLISHING CORP., UNIVERSAL STUDIOS INC. (MCA MUSIC PUBLISHING DIVISION), INTEGRITY'S HOSANNA MUSIC, BONNYVIEW MUSIC CORP. AND SOUND III, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 1:06CV774-SRW |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| SHELLEY BROADCASTING COMPANY, INC., STAGE DOOR DEVELOPMENT, INC. AND H. JACK MIZELL, | ) ) ) ) | |
| Defendants. | ) | |

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK  )


MARY A. JENKINS , being sworn, states:

1.    Since 1996, I have been and continue to be employed as a paralegal in the Legal Services Department of the American Society of Composers, Authors and Publishers (ASCAP), the performing rights licensing organization of which each of the plaintiffs in this action is a member. I have personal knowledge of the facts set forth below, and make this affidavit in support of plaintiffs' motion for summary judgment.

2.    My duties as a paralegal include maintaining certain business records consisting of documents necessary for ASCAP's conduct of infringement litigation on ASCAP's members' behalf. These documents consist of photocopies of original copyright certificates, assignments, certificates of mergers and amendments of corporate charters, and all other documents proving the chain of title of copyright ownership for each of more than 8,600 songs which have been the subjects of copyright infringement actions virtually identical to this case. A separate file consisting of copyright registration certificates, assignments, certificates of mergers and amendments of corporate charters, and all other documents tracing the chain of title to the copyright owner is maintained for each song. When necessary, I personally order certified copies of each of these documents from the United States Copyright Office and the offices of the various Secretaries of State where such documents are maintained as public records. Of course, the principal purpose served by these documents is to have available to counsel for the plaintiffs in this and all other infringement actions such documents as will prove, prima facie, that the plaintiffs are indeed the owners of valid copyrights in the songs in suit.

3.    At the request of plaintiffs' counsel, I have reviewed the copyright registration certificates for each of the songs listed in this action, as well as pertinent assignments of copyright. Attached as Exhibits A through U, respectively, are true and correct copies of the copyright

2

certificates, assignments, notices of termination, merger certificates and other documents

demonstrating the chain of title of ownership for each of the following songs listed on Schedule A to

the Complaint herein: "WE DIDN'T START THE FIRE," "LITTLE WING," "HEY THERE,"

"BEGIN THE BEGUINE," "PINK HOUSES," "PANAMA," "THIS WILL BE (AN EVERLASTING

LOVE)," "ANOTHERLOVERHOLENYOHEAD," "RASPBERRY BERET," "FAITH," "MASTER

OF PUPPETS," "LITTLE RED CORVETTE," "LIGHT MY FIRE," "BIG YELLOW TAXI,"

"JUMP," "RIKKI, DON'T LOSE THAT NUMBER," "GOD WILL MAKE A WAY," "SINCE I

DON'T HAVE YOU," "WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)," "SMALL

TOWN" and "1999." A copy of the sheet music for each song is also attached as part of each exhibit.

    4.    Finally, I have confirmed through ASCAP's membership records, also maintained

in the regular course of ASCAP's business, that each plaintiff is now and was, when the

infringements occurred, a member of ASCAP. A printout from ASCAP's computerized

membership database showing each plaintiff's membership status is also attached as part of each

exhibit.

_____
/ MARY A. JENKINS

Sworn to before me this

5ᵗʰ _____ day of February, 2007

_____
NOTARY PUBLIC

SUSAN HAUGH
Notary Public, State of ew York
No. 01HA4722612
Qualified in Queens County
Certificate Filed in New York County
Commission Expires _9/30/2010_

3

# EXHIBIT A

UNITED STATES COPYRIGHT OFFICE · THE LIBRARY OF CONGRESS

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTRATION NUMBER

PA    458 308

PA    PAU

EFFECTIVE DATE OF REGISTRATION

APR 10 1990

Month    Day    Year

REGISTER OF COPYRIGHTS

OFFICIAL SEAL

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

TITLE OF THIS WORK ▼ "WE DIDN'T START THE FIRE"

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions
words and music

**2**

NAME OF AUTHOR ▼      Billy Joel

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

a

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NOTE
Under the law, the "author" of a "work made for hire" is

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed ▼
author of words and music

b

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

c

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
1989  ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ October  Day ▶ 1  Year ▶ 1989
U.S.A.  ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Joel Songs
c/o EMI Blackwood Music Inc.
810 Seventh Ave., New York, NY 10019

APPLICATION RECEIVED
APR 10 1990
ONE DEPOSIT RECEIVED
APR 10 1990    *
TWO DEPOSITS RECEIVED

See instructions before completing this space

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
by virtue of written agreement

REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE OFFICE USE ONLY

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

*032282467*
□ 032282467

**✱ SPECIAL RELIEF GRANTED under 202.20(d) or the C.O. Regulations**

| | |
|---|---|
| EXAMINED BY | |
| CHECKED BY | |
| ☐ CORRESPONDENCE Yes | |
| ☐ DEPOSIT ACCOUNT FUNDS USED | |

FORM PA

FOR COPYRIGHT OFFICE USE ONLY

PA   458 308

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼    Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work complete only 6b for a compilation
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼    Account Number ▼

EMI BLACKWOOD MUSIC INC.    #DAO 17582

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Linda Santiago
EMI Blackwood Music, Inc.
810 Seventh Avenue
New York, NY 10019   Area Code & Telephone Number ▶ (212) 830-2010

**7**

Be sure to give your daytime phone number

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
X☐ authorized agent of Claimants of space 4
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
Linda Santiago    date ▶ 3/14/90

Handwritten signature (X) ▼

**8**

**MAIL CERTIFICATE TO**

Certificate will be mailed in window envelope

| Name ▼ |
|---|
| EMI BLACKWOOD MUSIC INC. |
| Number/Street/Apartment Number ▼ |
| 1290 Avenue of the Americas |
| City/State/Zip ▼ |
| New York, NY 10019 |

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**9**

\* 17 U.S.C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2500.

REPRODUCED WITH PERMISSION OF THE COPYRIGHT OWNER

# WE DIDN'T START THE FIRE

Words and Music by
BILLY JOEL



© 1989 JOEL SONGS
All Rights Controlled and Administered by EMI BLACKWOOD MUSIC INC.

10/20/2004  13:25    4147748387    HAL LEONARD    PAGE  05



We did - n't start the fi - re. It was al - ways burn - ing since the world's been turn - ing. We did - n't start the fi - re. No, we did - n't light it, but we tried to fight it.

Jo - seph Sta - lin, Ma - len - kov,
Hem - ing - way, Eich - mann,
Birth Con - trol, Ho Chi Minh,

Nas - ser and Pro - ko - fi - ev, Rock - e - fel - ler, Cam - pa - nel - la, Com - mu - nist Bloc.
Stran - ger In A Strange Land. Dyl - an, Ber - lin, Bay of Pigs In - va - sion.
Rich - ard Nix - on back a - gain. Moon - shot, Wood - stock, Wa - ter - gate, Punk Rock.



10/20/2004 13:26 4147748387 HAL LEONARD PAGE 06







10/20/2004  13:26    4147748387    HAL LEONARD    PAGE  05

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0093196                      NAME: JOELSONGS

  CAE CODE            : 086414760
  CLASS               : P
  SOCIETY             : ASCAP
  DISTRIBUTION        : DOMESTIC & FOREIGN
  ASCAP STATUS        : CURRENT MEMBER
  MEMBERSHIP AGRMNT   : RETURNED SIGNED
  ROYALTY HOLD        : SEE CMNTS.
  SOC SEC #             XXX-XX-1842
  APPLICATION HOLD    : NO

  APPLICATION DATE    : 07 / 29 / 2004
  ELECTION DATE       : 01 / 09 / 2004
  CREDITED DATE       : 07 / 01 / 2003

  BMI RELEASE EFF     : 12 / 31 / 2003
  REPRESENTATIVE      : JOEL WILLIAM


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT B



LIBRARY OF CONGRESS

Copyright Office
of the United States

WASHINGTON, D.C.

## ADDITIONAL CERTIFICATE OF REGISTRATION
## OF A CLAIM TO COPYRIGHT



THIS IS TO CERTIFY THAT THE STATE-
MENTS SET FORTH IN THE ATTACHED
HAVE BEEN MADE A PART OF THE
RECORDS OF THE COPYRIGHT OFFICE
WITH CLAIM OF COPYRIGHT REGIS-
TERED UNDER NUMBER
Eu 31441

IN TESTIMONY WHEREOF,
THE SEAL OF THIS OFFICE IS
AFFIXED HERETO ON

January 2, 1992

REGISTER OF COPYRIGHTS
United States of America
REGISTER OF COPYRIGHTS

C-731 October 1982-20,000

Page 1

**FORM E FOREIGN**

| CLASS | REGISTRATION NO. |
|---|---|
| E | Eu 31441 |

# Application for Registration of a Claim to Copyright

In a musical composition the author of which is not a citizen or domiciliary of the United States of America and which was not first published in the United States of America

DO NOT WRITE HERE

**Instructions:** Make sure that all applicable spaces have been completed before you submit the form. The application must be SIGNED at line 9. For published works the application should not be submitted until after the date of publication given in line 4(a), and should state the facts which existed on that date. For further information, see page 4.

Pages 1 and 2 should be typewritten or printed with pen and ink. Pages 3 and 4 should contain exactly the same information as pages 1 and 2, but may be carbon copies.

Mail all pages of the application to the Register of Copyrights, Library of Congress, Washington, D.C., 20540, U.S.A.

together with the items specified in either Option A or B:

☐ **Option A:** One copy of the musical composition and a fee of $6. Make remittance payable to the Register of Copyrights.

☐ **Option B:** Two copies of the musical composition and a catalog card. This option is not available for unpublished works or if the author or proprietor is a U.S. citizen, domiciliary, or resident on the date application is filed. Option B is available only if the copies, a properly completed application, and catalog card are received in the Copyright Office within 6 months of the date of first publication.

**1. Copyright Claimant(s) and Address(es):** Give the name(s) and address(es) of the copyright owner(s). In the case of published works the name(s) should ordinarily be the same as in the notice of copyright on the copies of the work deposited.

Name ......... SEA-LARK ENTERPRISES, INC. and YAMETA CO., LTD. .........

Address ......... 25 WEST 56 STREET .........
NEW YORK, NEW YORK 10019 .........

Name .................................................................

Address .................................................................

**2. Title:** ......... LITTLE WING .........
(Give the title of the musical composition as it appears on the copies)

**3. Authors:** Citizenship and domicile information must be given. Where a work was made for hire, the employer is the author. Authors include composers of music, authors of words, arrangers, compilers, etc. If the copyright claim is based on new matter (see line 5), give information about the author of the new matter.

Name ......... JIMI HENDRIX .........
(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship ......... ENGLAND .........
(Name of country)

Domiciled in U.S.A. Yes ___ No _X_ Address ......... LONDON, ENGLAND .........
Author of ......... WORDS & MUSIC .........
(State which: words, music, arrangement, etc.)

Name .................................................................
(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship .................................................................
(Name of country)

Domiciled in U.S.A. Yes ___ No ___ Address .................................................................
Author of .................................................................
(State which: words, music, arrangement, etc.)

Name .................................................................
(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship .................................................................
(Name of country)

Domiciled in U.S.A. Yes ___ No ___ Address .................................................................
Author of .................................................................
(State which: words, music, arrangement, etc.)

➤➤➤ **(NOTE: Leave all spaces of line 4 blank unless your work has been PUBLISHED.)** ◄◄◄

**4. (a) Date of Publication:** Give the complete date when copies of this particular version of the musical composition were first placed on sale, sold, or publicly distributed. The date when copies were made or printed should not be confused with the date of publication. (NOTE: The full date (month, day, and year) must be given.)

......... (Month) ......... (Day) ......... (Year) .........

**(b) Place of Publication:** Give the name of the country in which this particular version of the musical composition was first published.

➤➤➤ **(NOTE: Leave all spaces of line 5 blank unless the instructions below apply to your work.)** ◄◄◄

**5. Previous Registration or Publication:** If a claim to copyright in any substantial part of this work was previously registered in the U.S. Copyright Office in unpublished form, or if any substantial part of the work was previously published anywhere, give requested information.

Was work previously registered? Yes ___ No ___ Date of registration ......... Registration number .........

Was work previously published? Yes ___ No ___ Date of publication ......... Registration number .........

Is there any substantial NEW MATTER in this version? Yes ___ No ___ If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version. (New matter may consist of musical arrangement, compilation, editorial revision, and the like, as well as additional words and music.)

EXAMINER

*Complete all applicable spaces on next page*

6. If registration fee is to be charged to a deposit account established in the Copyright Office, give name of account:

................SEA-LARK ENTERPRISES, INC...............

7. Name and address of person or organization to whom correspondence or refund, if any, should be sent:

Name ...SEA-LARK ENTERPRISES, INC..... Address ...25 WEST 56 STREET, N.Y...

8. Send certificate to:

(Type or print name and address)

| | |
|---|---|
| Name | SEA-LARK ENTERPRISES, INC. |
| Address | 25 WEST 56 STREET |
| | (Number and street) |
| | NEW YORK CITY    NEW YORK    10019 |
| | (City)     (State)     (ZIP code) |

**Certification:** (NOTE: Application not acceptable unless signed)

I CERTIFY that the statements made by me in this application are correct to the best of my knowledge.

................................................................
(Signature of copyright claimant or duly authorized agent)

## Application Forms

Copies of the following forms will be supplied by the Copyright Office without charge upon request.

Class A — Form A—Published book manufactured in the United States of America.

Class A or B
(Form A-B Foreign—Book or periodical manufactured outside the United States of America (except works subject to the ad interim provisions of the copyright law).
Form A-B Ad Interim—Book or periodical in the English language manufactured and first published outside the United States of America.

Class B
Form B—Periodical manufactured in the United States of America.
Form BB—Contribution to a periodical manufactured in the United States of America.

Class C — Form C—Lecture or similar production prepared for oral delivery.

Class D — Form D—Dramatic or dramatico-musical composition.

Class E
(Form E—Musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America.
Form E Foreign—Musical composition the author of which is not a citizen or domiciliary of the United States of America and which was not first published in the United States of America.

Class F — Form F—Map.

Class G — Form G—Work of art or a model or design for a work of art.

Class H — Form H—Reproduction of a work of art.

Class I — Form I—Drawing or plastic work of a scientific or technical character.

Class J — Form J—Photograph.

Class K
Form K—Print or pictorial illustration.
Form KK—Print or label used for an article of merchandise.

Class L or M
Form L-M—Motion picture.
Form R—Renewal copyright.
Form U—Notice of use of copyrighted music on mechanical instruments.

| | FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|---|
| Application received JAN -9 1968 | | |
| One copy received JAN -9 1968 | | |
| Two copies received | | |
| Catalog card received | | |
| Fee received | | |
| Renewal | | |

U.S. GOVERNMENT PRINTING OFFICE : 1967 O—246-827

*Copyright Office of the United States*

**THE LIBRARY OF CONGRESS**

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-MENT WAS RECORDED IN THE COPYRIGHT OFFICE ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

27Mar89

| VOLUME | PAGE |
|--------|------|
| 2408 | 292 |

| VOLUME | PAGE |
|--------|------|
| 2408 | 307 |

OFFICIAL SEAL

Register of Copyrights and Assistant Librarian for Copyright Services

Certificate of Recordation
C-762 September 1987—40,000

  
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATION

STATE OF CALIFORNIA     )
                        )   ss:
COUNTY OF LOS ANGELES   )

The undersigned, being duly sworn, does state and certify as follows:

1.    That he is the President, and therefore the authorized representative of BELLA GODIVA MUSIC, INC., a party in interest to the within transaction. BELLA GODIVA MUSIC, INC. is the owner of all rights, title and interests in and to those musical compositions specified on SCHEDULE A to the AGREEMENT which is attached hereto and made an integral part hereof.

2.    That the AGREEMENT attached hereto, dated December 1, 1987, is a true and accurate copy of that certain original signed AGREEMENT by and between the following entities:   BELLA GODIVA MUSIC, INC.; WARNER/CHAPPELL MUSIC, INC. (owner of UNICHAPPELL MUSIC, INC., successor-in-interest to SIX CONTINENTS MUSIC PUBLISHING, INC.); ARISTA MUSIC, INC. (successor-in-interest to INTERWORLD MUSIC GROUP); and AARON SCHROEDER (sucessor-in-interest to SEA LARK ENTERPRISES, INC.).

3.    That the foregoing entities, on behalf of themselves, their succesors and assigns, have assigned, transferred, quitclaimed and set over unto BELLA GODIVA MUSIC, INC., all of their respective rights, title and interests in and to those musical compositions which are written and composed by JIMI HENDRIX, and which are specified on SCHEDULE A to the attached

1

1

2  AGREEMENT, all of which documents are attached hereto and

3  incorporated by this reference as if set forth at length.

4      The Undersigned hereby certifies under penalty of perjury

5  under the laws of the United Sttes of America that the attached

6  AGREEMENT is a true copy of the original document.

7      Executed on this _2nd_ day of _October_, 1988, in

   Los Angeles, California.

8

9

10  LEO BRANTON

11  President
    Bella Godiva Music, Inc.

12

13

14

    STATE OF CALIFORNIA    )
15                          ) ss:
    COUNTY OF LOS ANGELES  )

16

17      On this _2nd_ day of _October_, 1988, before me,
    a Notary Public in and for said county and state, personally
18  appeared LEO BRANTON, President of BELLA GODIVA MUSIC, INC.,
    personally known to me (or proved to me on the basis of
19  satisfactory evidence) to be the person who executed the within
    CERTIFICATION as President of the corporation therein named, and
20  acknowledged to me that said corporation executed it.

21      Witness my hand and official seal:

22

23

    Notary Public
24

OFFICIAL SEAL
LARRY ALLMAN
Notary Public–California
LOS ANGELES COUNTY
My Comm. Exp. Apr. 26, 1991

25

26

27

28

2

LITTLE WING



# CERTIFICATE OF REGISTRATION

**FORM RE**
For Renewal of a Work
UNITED STATES COPYRIGHT OFFICE

RE 735-894

UNITED STATES COPYRIGHT OFFICE

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

EFFECTIVE DATE OF RENEWAL REGISTRATION

SEP 17 1996

Month   Day   Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (RE/CON).**

---

RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM ▼ (See Instructions)

**1**
Name ... James A. Hendrix
Address ... 11832  64th Avenue South, Seattle, Washington 98178
Claiming as ... The next of kin of the deceased author, Jimi Hendrix, there being no will. (Use appropriate statement from Instructions)

**2**
Name .......
Address .......
Claiming as .......

**3**
Name .......
Address .......
Claiming as .......

---

**2**  TITLE OF WORK IN WHICH RENEWAL IS CLAIMED ▼

"Little Wing"

RENEWABLE MATTER ▼

Words  and  Music

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or other composite work, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼

---

**3**  AUTHOR(S) OF RENEWABLE MATTER ▼

James Marshall ("Jimi") Hendrix

---

**4**  ORIGINAL REGISTRATION NUMBER ▼  ORIGINAL COPYRIGHT CLAIMANT ▼

EU  31441    Yameta Co. Ltd. of the Bahamas  and *
~~c/o~~ Sea-Lark Enterprises, Inc.

ORIGINAL DATE OF COPYRIGHT
If the original registration for this work was made in published form, give:
DATE OF PUBLICATION: ...... [Month] [Day] [Year]  } OR { If the original registration for this work was made in unpublished form, give DATE OF REGISTRATION: 01  09  68 [Month] [Day] [Year]

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-8) on the reverse side of this page.  • See detailed instructions.  • Sign the form at space 7.

NOV 0 5 1996

DO NOT WRITE HERE

081811.89

*Amended by Copyright Office

RENEWAL APPLICATION RECEIVED

SEP 17 1956

CORRESPONDENCE  ☐ YES

EXAMINED BY

CHECKED BY

FORM RE

FOR
COPYRIGHT
OFFICE
USE
ONLY

### DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (RE/CON).

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON)

**1**
- Title of Contribution ............................................................
- Title of Periodical ......................................... Vol. .......... No. ......... Issue Date ..........
- Date of Publication .......................................... Registration Number: ..........
  (Month)    (Day)    (Year)

**2**
- Title of Contribution ............................................................
- Title of Periodical ......................................... Vol. .......... No. ......... Issue Date ..........
- Date of Publication .......................................... Registration Number: ..........
  (Month)    (Day)    (Year)

**3**
- Title of Contribution ............................................................
- Title of Periodical ......................................... Vol. .......... No. ......... Issue Date ..........
- Date of Publication .......................................... Registration Number: ..........
  (Month)    (Day)    (Year)

**4**
- Title of Contribution ............................................................
- Title of Periodical ......................................... Vol. .......... No. ......... Issue Date ..........
- Date of Publication .......................................... Registration Number: ..........
  (Month)    (Day)    (Year)

**DEPOSIT ACCOUNT:** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name _____

Account Number _____

**CORRESPONDENCE:** Give name and address to which correspondence about this application should be sent.

Name ► Experience Hendrix, L.L.C.

Address ► 83 - King Street  Suite 606

Seattle, Washington  98104
(City)                      (State)    (ZIP)

Area Code and Telephone Number ► (206) 223-5464

**CERTIFICATION*** I, the undersigned, hereby certify that I am the: (Check one)
☒ renewal claimant    ☐ duly authorized agent of
_____
(Name of renewal claimant) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name ▼    James A. Hendrix    Date ▼ 9/12/96

Handwritten signature (λ) ▼    James A. Hendrix

**MAIL CERTIFI-CATE TO**

Name ▼ Experience Hendrix, L.L.C.
Attention:  Rebecca Wilcots

Number/Street/Apt ▼
83 - King Street  Suite 606

City/State/ZIP ▼
Seattle, Washington  98104

**Certificate will be mailed in window envelope**

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 7

SEND ALL ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights

MAIL TO:
Register of Copyrights
Library of Congress
Washington, D.C. 20559



*17 U.S.C § 506(e). Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

April 1993—40,000

*Copyright
Office
of the
United
States*

*THE
LIBRARY
OF
CONGRESS*

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

11Sep95

| VOLUME | PAGE |
|--------|------|
| 3155 | 352 |

| VOLUME | PAGE |
|--------|------|
| 3155 | 368 |



OFFICIAL SEAL

*Marybeth Peters*

Register of
Copyrights and
Associate
Librarian for
Copyright
Services

Certificate of Recordation
C-762 August 1994—50,000

**DOCUMENT COVER SHEET**
For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)   SEP 11 1995

| | Month | Day | Year |
|---|---|---|---|
| Volume | 3155 | Page | 352 |
| Volume | 3155 | Page | 368 |

DO NOT WRITE ABOVE THIS LINE.

REMITTANCE _____

## To the Register of Copyrights:
*Please record the accompanying original document or copy thereof.*   FUNDS RECEIVED _____

**1** NAME OF THE PARTY OR PARTIES TO THE DOCUMENT, AS THEY APPEAR IN THE DOCUMENT.

Party 1:   **SEE ATTACHED**
(assignor, grantor, etc.)
(address)

Party 2:
(assignee, grantee, etc.)
(address)

**2** DESCRIPTION OF THE DOCUMENT:
[X] Transfer of Copyright
[ ] Security Interest
[ ] Change of Name of Owner
[ ] Termination of Transfer(s) [Section 304]
[ ] Shareware
[ ] Life, Identity, Death Statement [Section 302]
[ ] Transfer of Mask Works
[ ] Other _____

**3** TITLE(S) OF WORK(S), REGISTRATION NUMBER(S), AUTHOR(S), AND OTHER INFORMATION TO IDENTIFY WORK.

| Title | Registration Number | Author |
|---|---|---|
| SEE ATTACHED | | Jimi Hendrix |
| ASSIGNMENT | | |

Additional sheet(s) attached?
[X] yes
[ ] no
If so, how many?   16

**4** [XX] Document is complete by its own terms.
[ ] Document is not complete. Record "as is."

**5** Number of titles in Document:   176

**6** Amount of fee enclosed or authorized to be charged to a Deposit Account   $200

**7** Account number   N/A
Account name _____

**8** Date of execution and/or effective date of accompanying document   August 11, 1995
(month)   (day)   (year)

**9** AFFIRMATION:* I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document.

*James A. Hendrix*
Signature
9/7/95
Date

**10** CERTIFICATION: * Complete this certification if a photocopy of the original signed document is submitted in lieu of a document bearing the actual signature.
I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

_____
Signature

Duly Authorized Agent of:

_____
Date

MAIL
RECORDA-
TION TO:

Name ▼
O. Yale Lewis, Jr.
Hendricks & Lewis

Number/Street/Apartment Number ▼
999 Third Avenue, Suite 2675

City/State/ZIP ▼
Seattle, Washington 98104

YOU MUST:
• Complete all necessary spaces
• Sign your cover sheet in space 9

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Two copies of the Document Cover Sheet
2. Fee in check or money order payable to *Register of Copyrights*
3. Document

MAIL TO:
Documents Unit, Cataloging Division,
Copyright Office, Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

## Assignment of Copyrights

KNOW ALL MEN BY THESE PRESENTS: That in consideration of the payment of One Dollar ($1.00) and other good and valuable consideration, receipt whereof is hereby acknowledged, the undersigned jointly and severally hereby sell, convey, grant, assign, transfer and set over unto Experience Hendrix, L.L.C. (the "Company"), and its representatives, successors and assigns, any and all of the undersigned's right, title, claims and interest including, without limitation, all copyrights and renewals and extensions of copyrights, and all contingent and reversionary rights (the "Copyrights"), throughout the universe in perpetuity in and to the following works (collectively the "Works"):

(i)    all compositions composed, written, owned or controlled, in whole or in part, directly or indirectly, by the artist ("Artist") known as Jimi Hendrix;

(ii)    all U.S. and foreign registrations of copyrights, including the following United States registrations owned by Bella Godiva Music, Inc., pursuant to original registration or assignment of copyrights effective as of December 1, 1987, which assignment was recorded with the United States Copyright Office on March 27, 1989, at Volume 2408, pages 292-307.

| Reg. No. | Title |
| --- | --- |
| EU 75822 | 1983 A Merman I Should Turn To Be |
| EP 252365 | 1983 A Merman I Should Turn To Be |
| EU 81103 | 1983 A Merman I Should Turn To Be |
| EU 997682 | 51st Anniversary |
| EU 31440 | Ain't No Telling |
| EU 232619 | Angel |
| EP 306317 | Angel |
| EU 999693 | Are You Experienced |
| EP 259290 | Are You Experienced |
| EU 232617 | Astro Man |
| EP 364217 | Axis:  Bold As Love |
| EU 232620 | Belly Button Window |
| EU 319324 | Bleeding Heart |
| EU 33082 | Bold As Love |
| PA 83-522 | Bold As Love |
| EU 410733 | Born a Hootchie Kootchie Man |
| EU 410737 | Burning Desire |
| EU 224890 | C-Sharp Blues |
| EU 999691 | Can You See Me |
| EP 259291 | Can You See Me |
| EU 578499 | Captain Coconut |
| EU 33078 | Castles Made of Sand |
| PAP 564093 | Cherokee Mist |
| EU 410738 | Coming Down Hard On Me Baby |
| EU 150556 | Cradle of the Gypsy Son |
| N 23357 | Crash Landing |

| Reg. No. | Title |
|----------|-------|
| PA 347 565 | Jimi Plays Monterey |
| SR 68 973 | Jimi Plays Monterey |
| N 380 | Johnny B. Goode/ Lover Man |
| EU 33081 | Little Miss Lover |
| PA 83-524 | Little Miss Lover |
| EU 31441 | Little Wing |
| EP 355452 | Little Wing |
| PA 83-523 | Little Wing |
| EU 76077 | Long Hot Summer Night |
| EP 252374 | Long Hot Summer Night |
| EU 81102 | Long Hot Summer Night |
| EU 268827 | Look Over Yonder |
| EU 999699 | Love Or Confusion |
| EP 259294 | Love Or Confusion |
| EU 245514 | Lover Man |
| EU 181756 | Machine Gun |
| EU 188893 | Machine Gun |
| EU 999700 | Manic Depression |
| EP 259295 | Manic Depression |
| EU 999697 | May This Be Love |
| EP 259296 | May This Be Love |
| EU 188892 | Message Of Love |
| EU 181753 | Message To Love |
| EU 321581 | Midnight |
| N 30878 | Midnight Lightnin' |
| EU 284755 | Midnight Lightning |
| EU 75208 | Moon, Turn The Tides. . . Gently, Gently Away |
| EP 252366 | Moon, Turn The Tides. . . Gently, Gently Away |
| EU 81101 | Moon, Turn The Tides. . . Gently, Gently Away |
| EU 229403 | Mr. Bad Luck |
| EP 338214 | Mr. Bad Luck, Taking Care of No Business, Stars That Play With Laughing Sam's Dice & Untitled Instrumental all contained in the Jimi Hendrix Anthology |
| EU 236146 | My Friend |
| EU 232622 | Night Bird Flying |
| SR 16-971 | Nine To The Universe |
| EP 287447 | On The Other Side Of The Fence |
| EU 698266 | Once I Had A Woman |
| EU 33080 | One Rainy Wish |
| EU 10730 | Ooh-Ah |
| EU 258689 | Pali Gap |
| EU 578500 | Peace in Mississippi |
| EU 181754 | Power of Soul |
| EU 188894 | Power of Soul |
| EU 245515 | Psycho |
| EU 11766 | Purple Haze |

| Reg. No. | Title |
|---|---|
| EU 81097 | Voodoo Child (Slight Return) |
| PA 83-525 | Voodoo Child (Slight Return) |
| EU 75882 | Voodoo Chile |
| EP 252370 | Voodoo Chile |
| EU 81095 | Voodoo Chile |
| EU 31439 | Wait Until Tomorrow |
| N 8369 | War Heros |
| EP 308152 | War Heros |
| EU 181755 | Who Knows |
| EU 188891 | Who Knows |
| EP 338213 | Who Knows, Power to Love, and Message of Love all contained in the Jimi Hendrix Anthology |
| EU 31443 | You've Got Me Floating |

(iii)    all U.S. and foreign registrations of copyrights by Are you Experienced? Ltd., including but not limited to the following:

| Reg. No. | Title |
|---|---|
| PA 602 594 | "Experience" (as performed by Jimi Hendrix) |
| PA 602 593 | "Jimi Plays Berkeley" (as performed by Jimi Hendrix) |

(iv)    all audiovisual works embodying the performances of Artist, to the extent that such works are owned by the undersigned;

(v)    all promotional and publicity materials, posters, artwork materials, record covers, photographs and other materials embodying the name, likeness, image, signature or other representations of Artist;

(vi)    all sound or audio recordings and compilations thereof, whether mastered or unmastered, and regardless of form, embodying the performances and compositions of Artist;

(vii)    all computer software, hardware and code involving or incorporating the name, likeness, image, signature, music and performances of Artist;

(viii)    all written or printed materials related to Artist, to the extent owned by the undersigned; and

(ix)    all sheet music or music folios of compositions of Artist.


The undersigned acknowledge the Company's exclusive rights, title and interests in the Copyrights and all registrations thereof, and will not at any time do or cause to be done any act contesting or in any way impairing or intending to impair such rights, title and interests and full exercise thereof.

IN WITNESS WHEREOF, the undersigned have executed this Assignment of Copyrights as of the 11th day of August, 1995.

BELLA GODIVA MUSIC, INC.

Dated: _August 9, 1995_    By: _Gloria H. Selsem_

---

State of _CALIFORNIA_

County of _SANTA CLARA_

On _AUGUST 9, 1995_ before me, _ALICE M. SMITH_
(DATE)                        (NAME, TITLE OF OFFICER, I.E., JANE DOE, NOTARY PUBLIC)

personally appeared _GLORIA H. FERREN_
(NAME(S) OF SIGNER(S))

☒ personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Alice M. Smith_
(SIGNATURE OF NOTARY)

[SEAL]
Alice M. Smith
Comm. #977838
NOTARY PUBLIC - CALIFORNIA
SOLANO COUNTY
Comm. Expires Nov. 8, 1996

CAPACITY CLAIMED BY SIGNER(S)

☐ INDIVIDUAL(S)
☐ CORPORATE
  OFFICER(S) _____
               (TITLE(S))
☐ PARTNERS
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

_____
_____

SIGNER IS REPRESENTING:
(NAME OF PERSON(S) OR ENTITY(IES))

_____
_____
_____

---

ATTENTION NOTARY: The information requested below is OPTIONAL. It could, however, prevent fraudulent attachment of this certificate to any unauthorized document.

THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:

Title or Type of Document _ASSIGNMENT OF COPYRIGHTS_

Number of Pages _____ Date of Document _____

Signer(s) Other Than Named Above _____

OTTS FORM 239 — ALL PURPOSE ACKNOWLEDGMENT WITH SIGNER CAPACITY/REPRESENTATION Rev 12-92    ©1992 WOLCOTTS FORMS, INC.

ASSIGNMENT OF COPYRIGHTS - 6

# LITTLE WING

Words and Music by JIMI HENDRIX



Copyright © 1968 by BELLA GODIVA MUSIC, INC.
This arrangement Copyright © 1989 by BELLA GODIVA MUSIC, INC.
All Rights Reserved   International Copyright Reserved













```
MBR18DS              P U B L I S H E R    I N F O R M A T I O N
 M-CODE:   0124400                        NAME: EXPERIENCE HENDRIX LLC


 CAE CODE            : 338387727
 CLASS               :   P
 SOCIETY             : ASCAP
 DISTRIBUTION        : DOMESTIC & FOREIGN
 ASCAP STATUS        : CURRENT MEMBER
 MEMBERSHIP AGRMNT   : RETURNED SIGNED
 ROYALTY HOLD        : BANK DEPOSITS
 TAX ID  #             XX-XXX9142
 APPLICATION HOLD    : NO

 APPLICATION DATE    : 01 / 07 / 1969
 ELECTION DATE       : 01 / 30 / 1969
 CREDITED DATE       : 04 / 01 / 1968

 TRANSFER            : 04 / 18 / 1996
 REPRESENTATIVE      : HENDRIX JANIE


ACTIONS:   1-ENTER NEXT ACTION CODE:   CMNT
           2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT C

PAGE 1α

Additional Certificate (17 U.S.C. 215)

REGISTRATION NO.    CLASS

# CERTIFICATE OF REGISTRATION

## OF A CLAIM TO COPYRIGHT IN A MUSICAL COMPOSITION

Ep    80012    **E**

THIS IS TO CERTIFY that the following statements for the work herein named have been made a part of the records of the Copyright Office.   In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



1. COPYRIGHT CLAIMANT OR CLAIMANTS (Full NAMES and ADDRESSES):

FRANK MUSIC CORP.

2. TITLE OF MUSICAL COMPOSITION ............ HEY THERE

3. COMPOSERS, AUTHORS, ETC.  Full name, pseudonym, if any, year of birth and designation of authorship (such as music, words, arrangement, etc.) are requested for cataloging purposes.  Citizenship *must* be given.

(a) Name Richard Adler
    (First) (Middle) (Last)
    Citizenship U.S.A.
    (Give name of country)

    Pseudonym ............    Author of Words and Music
    (State which: words, music, arrangement, etc.)

    Domicile 160 Riverside Drive, New York, N.Y.    Birth ............
    (Address)    (Year)

(b) Name Jerry Ross,
    (First) (Middle) (Last)
    Citizenship U.S.A.
    (Give name of country)

    Pseudonym ............    Author of Words and Music
    (State which: words, music, arrangement, etc.)

    Domicile 5000 Broadway, New York, N.Y.    Birth ............
    (Address)    (Year)

(c) Name ............
    (First) (Middle) (Last)
    Citizenship ............
    (Give name of country)

    Pseudonym ............    Author of ............
    (State which: words, music, arrangement, etc.)

    Domicile ............    Birth ............
    (Address)    (Year)

4. SEND CERTIFICATE TO: (If refund or other communications are to be sent to another person, give his name in space 5.)

Name    Frank Music Corp.

Address    119 West 57th St.
    (Number and street)

    New York, N.Y.
    (City)    (Zone)    (State)

| DATES OF RECEIPT IN COPYRIGHT OFFICE |
| --- |
| APPLICATION |
| APR 27 1954 |
| ONE COPY |
| |
| TWO COPIES |
| APR 27 1954 |
| FEE |

16—63835–2

TURN THIS PAGE

5. Name ............    Address ............

6. FOR PUBLISHED WORKS ONLY (Date first placed on sale, sold, or publicly distributed).  Fill in  PAGE 2a
*either (a) or (b)*:

(a) If first published in the United States _____ April 20, 1954 _____
                                                           (Month, day, and year)
(b) If first published outside the United States:
        __April 20, 1954__ at __Toronto, Canada_____
        (Month, day, and year)                        (City and country)

7. FOR NEW VERSION OF PREVIOUS WORK:

(a) Give brief statement of new matter in this version _____

_____

(b) State which of authors in item 3 wrote the new matter _____

_____

(c) Give title of previous work if different from present title _____

_____

(d) If previous work was registered, give registration number and date (if known) _____

_____ Eu-354371, March 23, 1954 _____

* * * *

# INSTRUCTIONS FOR SECURING REGISTRATION OF COPYRIGHT IN A MUSICAL COMPOSITION

## Published Musical Composition

Copyright may be secured for a musical composition published in the first instance (that is, reproduced and actually placed on sale, sold or publicly distributed), if each copy so published bears the statutory notice of copyright upon the title page or upon the first page of music, namely, the word "Copyright" or abbreviation "Copr.," followed by the year date of publication and the name of the copyright proprietor. The "date of publication" is defined in the copyright law as "the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority." The law provides that promptly after such publication with the prescribed notice of copyright, there shall be deposited in the Copyright Office two complete copies of the best edition thereof then published, which should be accompanied by application Form E and the registration fee of $4.

## Unpublished Musical Composition

Copyright may also be secured for an unpublished musical composition by the deposit in the Copyright Office of one complete copy, accompanied by application Form E and the registration fee of $4. Space 6 of the application should not be filled in when the application is used for an unpublished musical composition. Do not send your only copy, as the one submitted for registration will be retained. If a musical composition is registered as unpublished and is later reproduced in copies and published with the copyright notice, a second registration should be made in accordance with the instructions for published musical compositions. The year date in the notice of copyright should be the year in which copyright was originally secured for the work in unpublished form. If substantial new matter is added to the original work, the notice of copyright should contain both dates. A song-poem (words without music) is properly designated as a "book" and is not subject to copyright registration prior to publication.

## Explanation of the Word "Author" and Duration of Copyright

The word "author" in the case of a musical composition includes not only composers of original music and words but also arrangers, revisers, compilers and the like. The copyright law also provides that "the word 'author' shall include an employer in the case of works made for hire," and in such instances space 3 of the application should so indicate. The first term of copyright is 28 years, which is computed in the case of a work published in the first instance from the date of publication; and in the case of an unpublished work, from the date of registration. In the twenty-eighth year a renewal application (Form R furnished upon request) may be made to secure a second term of 28 years.

## New Versions of Musical Compositions

If a new version is made of a copyrighted musical composition (when produced with the consent of the proprietor of the copyright of such work) or of one which is in the public domain, copyright may be secured for the new matter which it contains by following the procedure outlined above. It is particularly important, however, that item 7 on pages 2 and 2a be filled out for such works as well as the applicable items on pages 1 and 1a.

U. S. GOVERNMENT PRINTING OFFICE   16—63836-2

UNITED STATES COPYRIGHT OFF

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 304 of title 17, United States Code, attests that renewal registration has been made for the work identified below. The information has been made a part of the Copyright Office records.

*David L. Ladd*

REGISTER OF COPYRIGHTS
*United States of America*

| REGISTRATION NUMBER |
| --- |
| RE      120-308 |

| EFFECTIVE DATE OF RENEWAL REGISTRATION |
| --- |
| 01 FEB 1982 |
| (Month)    (Day)    (Year) |

DO NOT WRITE ABOVE THIS LINE.    FOR COPYRIGHT OFFICE USE ONLY

---

**① Renewal Claimant(s)**

RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM: (See Instructions)

**1**
Name Mr. Richard Adler
Address 8 East 83rd Street, New York, NY 10028
Claiming as the co-author & co-composer
(Use appropriate statement from instructions)

**2**
Name Mrs. Judith Coulter
Address Sterling Rd., Harrison, NY 10528
Claiming as the widow of co-author & co-composer, Jerry Ross
(Use appropriate statement from instructions)

**3**
Name Mrs. Janie Coulter Hartbarger
Address 450 Scarborough Rd., Briarcliff Manor, NY 10510
Claiming as the child of the deceased co-author & co-composer, Jerry Ross
(Use appropriate statement from instructions)

---

**② Work Renewed**

TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:
(THE PAJAMA GAME) HEY, THERE; FROM THE MUSICAL COMEDY THE PAJAMA GAME

RENEWABLE MATTER:

CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:
Title of periodical or composite work: ...........................................
If a periodical or other serial, give: Vol. ........... No. ........... Issue Date ...........

---

**③ Author(s)**

AUTHOR(S) OF RENEWABLE MATTER:
W & M - Richard Adler & Jerry Ross (pseud.)

---

**④ Facts of Original Registration**

| ORIGINAL REGISTRATION NUMBER: | ORIGINAL COPYRIGHT CLAIMANT: |
| --- | --- |
| EP-80012 | Frank Music Corp., New York; |

ORIGINAL DATE OF COPYRIGHT:
• If the original registration for this work was made in published form, give:
DATE OF PUBLICATION: Apr. 20, 1954
or
• If the original registration for this work was made in unpublished fo give:
DATE OF REGISTRATION: ...........
(Month)    (Day)

| | |
|---|---|
| RE   120-308 | EXAMINED BY: ........<br>CHECKED BY: ........   -1. FEB. 1982<br>DEPOSIT ACCOUNT<br>FUNDS USED: ☑<br>REMITTANCE NUMBER AND DATE: |

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON).

**5**

Renewal for Group of Works

**1**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**2**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**3**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**4**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**5**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**6**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**7**
Title of Contribution: .................................................
Title of Periodical: ............................. Vol...... No...... Issue Date ......
Date of Publication: ............................. Registration Number: ......
    (Month)    (Day)    (Year)

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: **AGAC**
Account Number: **019577**

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: .................................................
Address: .................................................
                                        (Apt.)
.................................................
    (City)        (State)        (ZIP)

**6**

Fee and Correspondence

**CERTIFICATION:** I, the undersigned, hereby certify that I am the: (Check one)
☐ renewal claimant    ☑ duly authorized agent of: **Mr. Richard Adler & Mrs. Judith Coulter**
                                        (Name of renewal agent)
of the work identified in this application, and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) *Marianne Conlin*

Typed or printed name: **Marianne Conlin**

Date: **Dec. 31, 1981**

**7**

Certification (Application must be signed)

**MAIL CERTIFICATE TO**

.......**American Guild Of Authors & Composers**......
                    (Name)
.......**40 West 57th Street**.......
        (Number, Street and Apartment Number)
.......**New York, NY   10019**.......
    (City)        (State)        (ZIP code)

(Certificate will be mailed in window envelope)

**8**

Address for Return of Certificate

Apr. 1978—100,00

# 1976-1985

No.

Rec'd     SEP 1 8 1981

# Agreement Between

RICHARD ADLER, doing business as

RICHARD ADLER MUSIC

**AND**

**American Society
OF
Composers, Authors & Publishers**

**1 LINCOLN PLAZA
NEW YORK, N. Y. 10023**

**Dated:** Sept. 16, 1981



**AGREEMENT** made between the Undersigned (for brevity called *"Owner"*) and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called *"Society"*), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form): provided, however, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at any time and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this agreement shall be for a period commencing on the date hereof and expiring on the 31st day of December, 1985.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4.  The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5.  The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6.  The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7.  It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of distribution and classification as determined by the Classification Committee of each group, in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the *Owner* within his class may be changed.

8.  The *Owner* agrees that his classification in the *Society*, as determined from time to time by the Classification Committee of his group and/or The Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate classification.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership.

9.  "Public Performance" Defined.  The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10.  "Musical Works" Defined.  The phrase *"musical works"* shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11.  The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12.  The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in U. S. A. v. ASCAP as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in U. S. A. v. ASCAP, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this......*16*.......day of.....*September*.................., 19.*81*

RICHARD ADLER, d/b/a/ RICHARD ADLER MUSIC

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS,

Society {

By ....................................................
                          President

Owner {  ....................................................
           ....................................................

Dated:_____

American Society of Composers,
 Authors and Publishers
1 Lincoln Plaza
New York, New York  10023

         Re:  Transfer from Richard Adler, doing business
              as Richard Adler Music, to Lakshmi Puja
              Music Ltd.

Gentlemen:

         In order to induce the Society to recognize Lakshmi Puja
Music Ltd. (hereinafter called the "corporation") as successor to
the membership of Richard Adler, doing business as Richard Adler
Music (hereinafter called the "proprietorship"), we hereby
represent that the proprietorship has assigned to the corporation
its entire right, title and interest in all of its musical composi-
tions, whether published or unpublished, together with its entire
business and goodwill; and the corporation has assumed all obli-
gations of the proprietorship.

         We hereby request that the Society's Board of Directors
name the corporation as successor to the membership of the proprie-
torship.

         We agree, upon request, to furnish such documents evi-
dencing the foregoing as you may require.

                         Very truly yours,

                         RICHARD ADLER, doing business as
                         RICHARD ADLER MUSIC
                         By_____
                                   Owner

                         LAKSHMI PUJA MUSIC LTD.
                         By_____
                                   Officer

## 1986-1995

No.

Rec'd   4/18/90

# Agreement Between

LAKSHMI PUJA MUSIC LTD.

AND

**American Society**
OF
**Composers, Authors & Publishers**
**1 LINCOLN PLAZA**
**NEW YORK, N. Y. 10023**

**Dated:** April 3, 1990



**AGREEMENT** made between the Undersigned (for brevity called "*Owner*") and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called "*Society*"), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form): provided, however, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at any time and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this agreement shall be for a period commencing on the date hereof and expiring on the 31st day of December, 1995.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of distribution and classification as determined by the Classification Committee of each group, in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the *Owner* within his class may be changed.

8. The *Owner* agrees that his classification in the *Society* as determined from time to time by the Classification Committee of his group and/or The Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate classification.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership.

9. "**Public Performance**" **Defined.** The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. "**Musical Works**" **Defined.** The phrase *"musical works"* shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in U. S. A. v. ASCAP as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in U. S. A. v. ASCAP, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this......3...........day of.....April.................................................., 19...90.

LAKSHMI PUJA MUSIC LTD.

Owner { By ...........................................
Officer

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS,

Society { By ...........................................
President

0012770    P

A

# MEMBERSHIP EXTENSION AGREEMENT

American Society of Composers,
Authors and Publishers
ASCAP Building
One Lincoln Plaza
New York, New York 10023

Ladies and Gentlemen:

With respect to the membership agreement *("the Agreement")* entered into between us (hereinafter *"Owner"* and *"Society,"* respectively) for periods through December 31, 1995, *Owner* and *Society* hereby agree to extend the *Agreement* for all purposes for a further period commencing January 1, 1996, subject to the following:

1. Paragraph 2 of the *Agreement* is hereby amended to read as follows:
   *"2. The term of this Agreement shall be for a period commencing on the date hereof and continuing indefinitely thereafter unless terminated by either party in accordance with the Articles of Association."*

2. The final clause of Paragraph 7 of the *Agreement* is hereby amended to read as follows:
   *"7. . . . in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time."*

3. Paragraph 8 of the *Agreement* is hereby amended to read as follows:
   *"8. The Owner agrees that the apportionment and distribution of royalties by the Society as determined from time to time by the Board of Directors of the Society, in case of appeal by him, shall be final, conclusive and binding upon him.*

   *"The Society shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the Society's membership a just, fair, equitable and accurate apportionment and distribution of royalties.*

   *"The Society shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership."*

Sincerely,    LAKSHMI PUJA MUSIC LTD

(MUST BE SIGNED BY AN OFFICER)

By: _____          Richard Adler
          Signature                              Print name and title if applicable

Date: 5/23/95

ACCEPTED:
AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

By: _____

MEMCAT   ICODE: 0012770   MEMBER CATALOGUE - PERFORMED TITLES FOR PUBLISHER LAKSHMI PUJA MUSIC LT05/25/06   PAGE 3

| TITLE | TCODE | TYPE | ENTITLED PARTIES | SOCIETY | REP | SHARE |
|---|---|---|---|---|---|---|
| GOODFELLAS CUES | 37-8047763-1 | W | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| | | P | LAKSHMI PUJA MUSIC LTD | ASCAP | YES | 50.00 |
| GYPSY GIRL | 37-0063316-4 | D | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | P | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | P | SPOONE MUSIC CORPORATION | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| | | P | RICHARD ADLER MUSIC | ASCAP | YES | 50.00 |
| HAPPY CRICKET THE FR KWAMIN | 38-0099937-6 | W | ADLER, RICHARD | ASCAP | YES | 100.00 |
| | | W | ADLER, RICHARD | NONMEMB | YES | |
| | | P | RICHARD ADLER MUSIC | ASCAP | YES | 100.00 |
| HEART (FR DAMN YANKEES) | 38-0003042-0 | D | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | D | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | D | FRANK MUSIC CORP | ASCAP | YES | 50.00 |
| | | P | ADLER RICHARD MUSIC | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| HER IS (FR THE PAJAMA GAME) | 38-0003975-2 | W | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | W | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | P | FRANK MUSIC CORP | ASCAP | YES | 50.00 |
| | | P | RICHARD ADLER MUSIC | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| HERNANDO S HIDEAWAY (FR THE P | 38-0004424-6 | D | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | D | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | D | FRANK MUSIC CORP | ASCAP | YES | 50.00 |
| | | P | ADLER RICHARD MUSIC | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| HEY THERE (FR THE PAJAMA GAME | 38-0004818-0 | D | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | D | ROSS, JERRY | ASCAP | YES | 50.00 |
| | | D | FRANK MUSIC CORP | ASCAP | YES | 50.00 |
| | | P | J & J ROSS CO | ASCAP | YES | 50.00 |
| | | P | ADLER RICHARD MUSIC | ASCAP | YES | 50.00 |
| HUGGIN MY PILLOW | 38-0008695-1 | W | ADLER, RICHARD | ASCAP | YES | 50.00 |
| | | W | ALLEN, ROBERT | ASCAP | YES | 50.00 |
| | | P | INTERNATIONAL KORWIN CORP | ASCAP | YES | 50.00 |
| | | P | RICHARD ADLER MUSIC | ASCAP | YES | 50.00 |
| | | P | CHARLIE DEITCHER PRODUCTIONS | ASCAP | YES | 50.00 |
| I ASK MYSELF | 39-0060570-0 | D | ADLER, RICHARD | ASCAP | YES | 75.00 |
| | | A | DAVIS, BILL C | UNKNOWN | | 25.00 |
| | | P | ADLER RICHARD MUSIC | ASCAP | YES | 75.00 |
| | | P | BILL C DAVIS | UNKNOWN | | 25.00 |
| I DON T WANT TO BE A FLY FR | 39-0001449-2 | W | ADLER, RICHARD | ASCAP | YES | 100.00 |
| | | P | ANDREW MUSIC CORPORATION | ASCAP | YES | 100.00 |
| | | P | RICHARD ADLER MUSIC | | | |

R1                                          Membership Number: 0700930     P

April 3, 1985

American Society of Composers,
  Authors and Publishers
ASCAP Building
One Lincoln Plaza
New York, New York   10023

Gentlemen:

          With respect to the membership agreement entered
into between us for the period January 1, 1976 through
December 31, 1985, you and the undersigned hereby agree to
extend the agreement and all the terms, conditions and pro-
visions thereof for all purposes for a further period of ten
(10) years, so that it shall expire on the 31st day of
December, 1995, instead of on the 31st day of December, 1985.

          The signature of the Society's President under the
word "ACCEPTED" together with the signature of the undersigned,
will make this a valid, binding and enforceable agreement
between us.

                         Sincerely yours,

                         COULTER JUDITH
                         HARTBARGER JANIE COULTER

                         Co-partners, doing business as
                         J & J ROSS CO

                         By _____
                                      Partner

ACCEPTED:

AMERICAN SOCIETY OF COMPOSERS,
    AUTHORS AND PUBLISHERS

By: _____
            President



© 1954 FRANK MUSIC CORP.
© Renewed 1982 RICHARD ADLER MUSIC and J&J ROSS COMPANY
All rights administered by AGAC, 40 West 57th Street, New York, NY 10019
International Copyright Secured   Made in U.S.A.   All Rights Reserved



MBR18DS            P U B L I S H E R    I N F O R M A T I O N
M-CODE:  0012770                         NAME: LAKSHMI PUJA MUSIC LTD

CAE CODE            : 129050890
CLASS               : P
SOCIETY             : ASCAP                    S E E -
DISTRIBUTION        : DOMESTIC & FOREIGN         SONGWRITERS GUILD
ASCAP STATUS        : CURRENT MEMBER             ADMINISTRATIONS THE
MEMBERSHIP AGRMNT   : RETURNED SIGNED            M-CODE IS 0016075
ROYALTY HOLD        : PICKUP
TAX ID  #            XX-XXX7302
APPLICATION HOLD    : NO

APPLICATION DATE    : 09 / 18 / 1981
ELECTION DATE       : 11 / 24 / 1981
CREDITED DATE       : 04 / 01 / 1981

TRANSFER            : 04 / 20 / 1990
REPRESENTATIVE      : ADLER RICHARD


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION

```
MBR18DS            P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0700930                        NAME: J & J ROSS CO


CAE CODE           : 046111515
CLASS              : P
SOCIETY            : ASCAP                  S E E -
DISTRIBUTION       : DOMESTIC & FOREIGN        SONGWRITERS GUILD
ASCAP STATUS       : CURRENT MEMBER            ADMINISTRATIONS THE
MEMBERSHIP AGRMNT  : RETURNED SIGNED           M-CODE IS 0016075
ROYALTY HOLD       : PICKUP
SOC SEC #            XXX-XX-6581
APPLICATION HOLD   : NO

APPLICATION DATE   : 11 / 08 / 1978
ELECTION DATE      : 01 / 16 / 1979
CREDITED DATE      : 07 / 01 / 1978


REPRESENTATIVE     : COULTER JANIE


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT D

CLASS E pub No. 50931

# C O P Y R I G H T   O F F I C E
## OF THE UNITED STATES OF AMERICA

### THE LIBRARY OF CONGRESS :: WASHINGTON

### CERTIFICATE OF COPYRIGHT REGISTRATION

*This is to certify,* in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that TWO copies of the musical composition named herein have been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years for said work has been duly made in the name of

Harms, Inc.,
1250 - Sixth Ave..
New York, N.Y.

Title:   Begin the Beguine. From "Jubilee."
Words and music by Cole Porter, of U.S.
With guitar acc....

Date of publication in the United States   Oct. 16. 1935.

Copies received   Oct. 16 1935

*Barbara Ringer*

REGISTER OF COPYRIGHTS

[SEAL]

CCR 1
(Nov, 1977-2,000)

# Certificate of Registration of a Claim to Renewal Copyright

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Barbara Ringer*

Register of Copyrights
United States of America

REGISTRATION NO.

R 303090

DO NOT WRITE HERE

1. Renewal Claimant(s), Address(es), and Statement of Claim:

   (a) Name .......... Cole Porter

   Address .......... c/o Waldorf-Astoria Hotel, Park Ave. & 50th St., New York, N.Y.

   Claiming as .... composer of the words and music

   (b) Name ..........

   Address ..........

   Claiming as ..........

   (c) Name ..........

   Address ..........

   Claiming as ..........

2. (a) Title:

   .......... BEGIN THE BEGUINE

   .......... from "Jubilee"

   (b) Renewable Matter:

   (c) Contribution to Periodical or Other Composite Work:

   .......... (Title of periodical or composite work)

   If a periodical, give: Vol. ..........; No. ..........; Date ..........

3. Authors of Renewable Matter:

   .......... Cole Porter — Words & Music

4. Facts of Original Registration:

   Original registration number: Class .... E. pub. ...... No. .... 50931 ..........

   If registered as published, give date of publication .......... October 16, 1935 ..........

   If registered as unpublished, give date of registration ..........

   Original copyright claimant .......... HARMS, INC.

   16—63829-4

   *See next page*

5. **Deposit account:**

MUSIC PUBLISHERS HOLDING CORP.

6. **Send correspondence to:**

Name ___ MUSIC PUBLISHERS HOLDING CORP. _____ Address ___ 488 Madison Ave., New York 22, N.Y.

7. **Send certificate to:**

Name

MUSIC PUBLISHERS HOLDING CORP.

Address

488 Madison Ave.

(Number and street)

New York 22, N.Y.

(City)          (Zone)          (State)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if an acceptable claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on January 1, 1940, would be eligible for renewal between January 1, 1967, and January 1, 1968.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington 25, D. C. The application should be accompanied by the registration fee of $2.00. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*
2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* and/or *the child (children) of the deceased author.*
3. The author's executors, if the author left a will and if there is no surviving widow, widower, or child. State the claim as: *the executors of the author.*
4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author, there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*
2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*
3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)
4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*
5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br><br>OCT 18 1962 | |
| Fee received | |

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS

### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS



Date of Recordation

**Sept. 13, 1962**

Volume

Pages

**1138**          **295**

CERTIFICATION A (JUNE 1961 20,000)

KNOW ALL MEN BY THESE PRESENTS, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, to me in hand paid, receipt of which is hereby acknowledged, I, _____

_____ COLE PORTER _____, by Walter Evans, my Attorney-in Fact, do hereby sell, assign, transfer and set over unto

HARMS, INC. _____, its successors and assigns, the renewal copyright of the following composition(s):

* MY MOST INTIMATE FRIEND
* MY LOU-LOU
* THE BEGUINE
* GOOD MORNING, MISS STANDING
* FEATHERMORE
* EV'RYBOD-EE WHO'S ANYBOD-EE
* OUR CROWN
* OPENING TO BEACH SCENE
* ERIC
* MR. AND MRS. SMITH
* SUNDAY MORNING BREAKFAST TIME
* SIX LITTLE WIVES
* THE KLING KLING BIRD
* WALTZ DOWN THE AISLE
* WHAT A NICE MUNICIPAL PARK
* WHEN ME, MOWGLI, LOVE
* YOURS
* WHEN LOVE COMES YOUR WAY
* WHY SHOULDN'T I
* ME AND MARIE

IN WITNESS WHEREOF, I have hereunto set my hand and seal this

__12th__ day of ____September____, 1962.

_____
COLE PORTER

By: _____
Walter Evans, Attorney-in-Fact

* from the production "Jubilee"

bf



## State of Delaware

## Office of Secretary of State.

*I,* Robert H. Reed, *Secretary of State of the State of Delaware,* do hereby certify *that the above and foregoing is a true and correct copy of* Certificate of Ownership of the "MUSIC PUBLISHERS HOLDING CORPORATION", a corporation organized and existing under the laws of the State of Delaware, merging the "HARMS INC." and "REMICK MUSIC CORPORATION", corporations organized and existing under the laws of the State of New York, pursuant to Section 253 of the General Corporation Law of the State of Delaware, as received and filed in this office the twenty-seventh day of October, A.D. 1967, at 11 o'clock A.M.

In Testimony Whereof, *I have hereunto set my hand and official seal at Dover this* _____ thirtieth _____ *day of* _____ October _____ *in the year of our Lord one thousand nine hundred and* _____ seventy-four.

Robert H. Reed          *Secretary of State*

G. A. Biddle            *Ass't Secretary of State*

FORM 120

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

HARMS INC.

AND

REMICK MUSIC CORPORATION

INTO

MUSIC PUBLISHERS HOLDING CORPORATION

* * * * *

MUSIC PUBLISHERS HOLDING CORPORATION, a corporation

organized and existing under the laws of Delaware. DO

HEREBY CERTIFY:

FIRST:  That this corporation was incorporated on

the 9th day of January, 1929, pursuant to the General

Corporation Law of the State of Delaware.

SECOND:  That this corporation owns all of the

outstanding shares of the stock of HARMS INC., a corporation

incorporated on the 27th day of December, 1928, pursuant to

the Stock Corporation Law of the State of New York.

That this corporation owns all of the outstanding

shares of the stock of REMICK MUSIC CORPORATION, a corporation

incorporated on the 11th day of May 1929, pursuant to the

Stock Corporation Law of the State of New York.

THIRD: That this corporation by the following resolutions of its Board of Directors, duly adopted by the unanimous written consent of its members, filed with the minutes of the board, on the 18th day of October , 1967, determined to and did merge into itself said HARMS INC. and REMICK MUSIC CORPORATION:

RESOLVED, that MUSIC PUBLISHERS HOLDING CORPORATION merge, and it hereby does merge into itself said HARMS INC. and REMICK MUSIC CORPORATION, and assumes all of their obligations; and

FURTHER RESOLVED, that the merger shall become effective on October 23, 1967.

FURTHER RESOLVED, That the proper officers of this corporation be and they hereby are directed to make and execute, under the corporate seal of this corporation, a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said HARMS INC. and REMICK MUSIC CORPORATION and assume their liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger.

IN WITNESS WHEREOF, said MUSIC PUBLISHERS HOLDING CORPORATION has caused its corporate seal to be affixed and this certificate to be signed by Victor Blau, its President and M. William Krasilovsky, its Assistant Secretary this 18th day of October A.D. 1967.

MUSIC PUBLISHERS HOLDING CORPORATION

By _____
    Victor Blau - President

By _____
    M. William Krasilovsky
    Assistant Secretary

(CORPORATE SEAL)

-2-

STATE OF NEW YORK )
                 ) ss:
COUNTY OF NEW YORK)

BE IT REMEMBERED that on this 18th day of October, 1967, personally came before me, a Notary Public in and for the County and State aforesaid, Victor Blau, President and M. William Krasilovsky, Assistant Secretary of MUSIC PUBLISHERS HOLDING CORPORATION, a corporation of the State of Delaware, and they duly executed said certificate before me and severally acknowledged the said certificate to be their act and deed and the act and deed of said corporation and the facts stated therein are true; that the signatures of the said officers are in the handwriting of each of said officers respectively; and that the seal affixed to said certificate is the common or corporate seal of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

Notary Public

(SEAL)

bjk



# State of DELAWARE

Office of SECRETARY OF STATE

*I, Glenn C. Kenton Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of* Certificate of Ownership of the "WARNER BROS.- SEVEN ARTS, INC.", merging the "MUSIC PUBLISHERS HOLDING CORPORATION", pursuant to Section 253 of the General Corporation Law of the State of Delaware, as received and filed in this office the fifteenth day of November, A.D. 1967, at 10 o'clock A.M.

*In Testimony Whereof, I have hereunto set my hand and official seal at Dover this* ___seventh___ *day of* ___November___ *in the year of our Lord one thousand nine hundred and* ___seventy-nine.___



———————————————
Glenn C. Kenton, Secretary of State

FORM 120

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

MUSIC PUBLISHERS HOLDING CORPORATION

INTO

WARNER BROS. - SEVEN ARTS, INC.

* * * * *

WARNER BROS. - SEVEN ARTS, INC., a corporation organized and existing under the laws of Delaware, DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the 18th day of July, 1960, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of Music Publishers Holding Corporation, a corporation incorporated on the 9th day of January, 1929, pursuant to the General Corporation Law of the State of Delaware.

THIRD: That this corporation, by the following resolutions of its Board of Directors, duly adopted, by the unanimous written consent of its members, filed with the minutes of the board, determined to and did merge into itself said Music Publishers Holding Corporation:

RESOLVED, that WARNER BROS. - SEVEN ARTS, INC. merge, and it hereby does merge into itself said Music Publishers Holding Corporation, and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware.

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute, under the corporate seal of this corporation, a Certificate of Ownership and merger setting forth a copy of the resolutions to merge said Music Publishers Holding Corporation and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy in the office of the Recorder of Deeds of Kent County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

IN WITNESS WHEREOF, said WARNER BROS. - SEVEN ARTS, INC. has caused its corporate seal to be affixed and this certificate to be signed by SIDNEY LEVIN

its Vice-President and SIDNEY KIWITT

Assistant Secretary this ___13___ day of

November A.D. 1967.

WARNER BROS. - SEVEN ARTS, INC.

By _____
Vice President

By _____
Asst. Secretary

(CORPORATE SEAL)

- 2 -

STATE OF NEW YORK ⎫
                ⎬ ss:
COUNTY OF NEW YORK ⎭

        BE IT REMEMBERED that on this *13th* day of

November, 1967, personally came before me, a Notary

Public in and for the County and State aforesaid

   SIDNEY LEVIN        Vice President and SIDNEY KINITT

    Assistant   Secretary of WARNER BROS. - SEVEN ARTS,

INC., a corporation of the State of Delaware, and they

duly executed said certificate before me and severally

acknowledged the said certificate to be their act and deed

and the act and deed of said corporation and the facts

stated therein are true; that the signatures of the said

officers are in the handwriting of each of said officers

respectively; and that the seal affixed to said

certificate is the common or corporate seal of said

corporation.

      IN WITNESS WHEREOF, I have hereunto set my

hand and seal of office the day and year aforesaid.

                            _____
                              Notary Public

                         STEPHEN R. LANGENTHAL
                  Notary Public, State of New York
                      No. 31-2252225
                   Qualified in New York County
               Commission Expires March 30, 1969

(SEAL)

- 3 -

bjk



# State
# of
# DELAWARE

Office of SECRETARY OF STATE

*I, Glenn C. Kenton Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of*

Certificate of Amendment of the "Warner Bros.-Seven Arts, Inc.", as received and filed in this office the twenty-eighth day of November, A.D. 1969, at 9 o'clock A.M.

*In Testimony Whereof, I have hereunto set my hand and official seal at Dover this* ___seventh___ *day of* ___November___ *in the year of our Lord one thousand nine hundred and* ___seventy-nine.___



_Glenn C. Kenton_

Glenn C. Kenton, Secretary of State

FORM 121

CERTIFICATE OF AMENDMENT

OF

CERTIFICATE OF INCORPORATION

OF

WARNER BROS.-SEVEN ARTS, INC.

----------

Adopted in accordance with the provisions of Section 242
of the General Corporation Law of the State of Delaware

----------

The undersigned, being the holders of record
of all outstanding shares of stock of Warner Bros.-Seven
Arts, Inc., a corporation existing under the laws of the
State of Delaware, do hereby certify under the seal of
the said corporation as follows:

FIRST:  That the Certificate of Incorporation
of said corporation has been amended as follows:

By striking out the whole of Article First
thereof as it now exists and inserting in lieu and in-
stead thereof a new Article First, reading as follows:

The name of the corporation is WARNER BROS.,
INC.

SECOND:  That such amendment has been duly
adopted in accordance with the provisions of the General
Corporation Law of the State of Delaware by the unanimous

-1-

written consent of all of the stockholders entitled to
vote in accordance with the provisions of Section 228
of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, we have signed this cert-
ificate and caused the corporate seal of the corporation
to be hereunto affixed this    24    day of  Nov-       ,
1969.


                            KINNEY NATIONAL SERVICE, INC.

                        By  _Richard E. Seley_
                            Richard E. Seley
                            Vice-President


-2-

STATE OF NEW YORK      }
                       }   SS.:
COUNTY OF NEW YORK     }

    BE IT REMEMBERED that on this 24 day of November 1969, personally came before me *Ethel Ratner*   , a Notary Public in and for the County and State aforesaid, Richard E. Seley   , party to the foregoing certificate, known to me personally to be such, and duly acknowledged the said certificate to be his act and deed, and that the facts therein stated are true.

    GIVEN under my hand and seal of office the day and year aforesaid.

           *Ethel Ratner*
           —————————————————
           **ETHEL RATNER**
          Notary Public, State of New York
          No. 60-8500375 Qual. West. Co.
         Certs. filed in N.Y. & Westchester Cos.
         Commission Expires March 30, 1970

3

VS27

*Deluxe Edition*

Bb EDITION

# Begin The Beguine

Words and Music by
COLE PORTER



WARNER BROS. PUBLICATIONS INC.
75 Rockefeller Plaza • New York, N.Y. 10019

$2.50
In U.S.A.

# BEGIN THE BEGUINE

Words and Music by
COLE PORTER



© 1935, 1944 WARNER BROS. INC.
Copyrights Renewed





Begin The Beguine - 8







Begin The Beguine - 6

Page: 1 Document Name: untitled

```
MBR18DS           P U B L I S H E R   I N F O R M A T I O N
 M-CODE:  1426756                    NAME: WARNER BROS INC
                                          (WARNER BROS MUSIC DIV)

 CAE CODE           : 058855632
 CLASS              : P
 SOCIETY            : ASCAP
 DISTRIBUTION       : DOMESTIC & FOREIGN
 ASCAP STATUS       : CURRENT MEMBER
 MEMBERSHIP AGRMNT  : RETURNED SIGNED
 ROYALTY HOLD       : GROUP MAILING
 TAX ID # #           XX-XXX6913
 APPLICATION HOLD   : NO

 APPLICATION DATE   :    /    /
 ELECTION DATE      : 03 / 02 / 1914
 CREDITED DATE      :    /    /


 REPRESENTATIVE     : MORGENSTERN JAY


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:31:08 PM

# EXHIBIT E

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

REGISTER OF COPYRIGHTS
*United States of America*

PA    206-122

(PA)          PAU

EFFECTIVE DATE OF REGISTRATION

DEC 1 4 1983

Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

PINK HOUSES

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See Instructions

WORDS AND MUSIC

## 2

**NAME OF AUTHOR ▼**

**a** Riva Music Inc. as employer for hire of John Cougar Mellencamp

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

**b**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**c**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1983 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ OCTOBER Day ▶ 13th Year ▶ 1983
USA ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

RIVA MUSIC INC.,
2 NEW KINGS ROAD,
LONDON S.W.6. 4SA., ENGLAND.

APPLICATION RECEIVED
14 DEC 1983
ONE DEPOSIT RECEIVED
14 DEC 1983
TWO DEPOSITS RECEIVED

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

REMITTANCE NUMBER AND DATE
68076 DEC 14 83

FORM PA

PA 206-122

CHECKED BY

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
Yes ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼      **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                    **Account Number** ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

RIVA MUSIC LIMITED.,
2 NEW KINGS ROAD,
LONDON S.W.6. 4SA.,
ENGLAND.

Area Code & Telephone Number ▶ 01-731 4131

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
DENNIS P. COLLOPY                                   date ▶ 1ST DECEMBER, 1983.

Handwritten signature (X) ▼ DPCollopy

**8**

**MAIL
CERTIFI-
CATE TO**

Certificate
will be
mailed in
window
envelope

Name ▼
RIVA MUSIC LIMITED,

Number/Street/Apartment Number ▼
2 NEW KINGS ROAD,

City/State/ZIP ▼
LONDON S.W.6. 4SA, ENGLAND.

**Have you:**
• Completed all necessary
  spaces?
• Signed your application in space
  8?
• Enclosed check or money order
  for $10 payable to Register of
  Copyrights?
• Enclosed your deposit material
  with the application and fee?
MAIL TO: Register of Copyrights,
Library of Congress, Washington,
D.C. 20559.

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE: 1981: 355-306

## GENERAL ASSIGNMENT

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned (jointly and severally "Assignor"), Assignor hereby assigns, transfers sets over and conveys to Windswept Pacific Entertainment Co., a California joint venture, and its successors and assigns ("Assignee") all of Assignor's right, title and interest in and to:

A.   All agreements pursuant to which Assignor acquired its interests in the "Compositions" (as such term is defined in that certain Agreement dated as of May 19, 1989, by and between Assignor and Assignee [the "Purchase Agreement"]) including all of Assignor's rights, entitlements and interests under such agreements;

B.   All agreements pursuant to which Assignor acquired interests in musical compositions other than copyright ownership, including those agreements listed in Section 1.X(ii) to the Purchase Agreement, and all of Assignor's rights, entitlements and interests under such agreements;

C.   All licenses, songwriter, administration, subpublishing and other agreements relating to musical compositions (whether or not a Composition);

D.   All items and materials identified on Exhibit B to the Purchase Agreement; and

E.   All advances heretofore made to songwriters and others as listed on Exhibit E to the Purchase Agreement, including the right to recoup the same.

Assignor acknowledges that Assignee has and is hereby granted the sole and exclusive right to administer the foregoing throughout the universe in perpetuity.

This Assignment is made pursuant to and shall be subject to the Copyright Purchase Agreement dated as of July 1, 1990, between Assignor and Assignee, and Assignee shall be entitled to the benefits of such Agreement.

Executed this 31st day of August, 1990, as of the 1st day of July, 1990, at Los Angeles, California.

"ASSIGNOR"

RIVA MUSIC LTD.

By:_____
    An Authorized Signatory

RIVA MUSIC, INC.

By:_____
    An Authorized Signatory

G.H. MUSIC, LTD.

By:_____
    An Authorized Signatory

H.G. MUSIC, INC.

By:_____
    An Authorized Signatory

AVIR MUSIC, INC.

By:_____
    An Authorized Signatory

No.

Rec'd

NOV 14 1988

# Agreement Between

WINDSWEPT PACIFIC ENTERTAINMENT
CO., a Joint Venture between
S/K MUSIC L.P. and FUJIPACIFIC
MUSIC (USA), INC., d/b/a
FULL KEEL MUSIC CO.


**AND**

**American Society**
**OF**
**Composers, Authors & Publishers**

**1 LINCOLN PLAZA**
**NEW YORK, N. Y. 10023**


**Dated:**  NOVEMBER 10, 1988



**AGREEMENT** made between the Undersigned (for brevity called *"Owner"*) and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called *"Society"*), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form): provided, however, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at any time and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this agreement shall be for a period commencing on the date hereof and expiring on the 31st day of December, 1995.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of distribution and classification as determined by the Classification Committee of each group, in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the *Owner* within his class may be changed.

8. The *Owner* agrees that his classification in the *Society* as determined from time to time by the Classification Committee of his group and/or The Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate classification.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined.** The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined.** The phrase *"musical works"* shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in U. S. A. v. ASCAP as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in U. S. A. v. ASCAP, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this......**10th**......day of............ ..........**November**.........................., 19.......**8 8**

WINDSWEPT PACIFIC ENTERTAINMENT CO., a Joint Venture between S/K MUSIC L.P. and FUJIPACIFIC MUSIC (USA), INC., d/b/a FULL-KEEL MUSIC CO.

Owner {

By ............................ Joint Venturer

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,

Society {

By ............................................
President



JENNIFER INSOGNA
SENIOR VICE PRESIDENT
GENERAL & COPYRIGHT ADMINISTRATION



EMI Music Publishing

August 11, 1999

**BY HAND**
**URGENT/IMPORTANT**

ASCAP
One Lincoln Plaza
New York, New York 10023

Att: Ellen Meltzer-Zahn
Att: Shirley McCollin
Att: Phyllis O' Rourke
Att: Paula Katz
Att: Richard Reimer
Att: Robert Stein

RE: WINDSWEPT PACIFIC ENTERTAINMENT CO. – ASSET PURCHASE

Gentleperson:

This letter will serve as notice of EMI's purchase as of June 30, 1999 of compositions contained in the catalogs controlled by Windswept Pacific Entertainment Co. in accordance with the attached Exhibits and Schedules. All purchased compositions are now controlled by us in the following companies:

**EMI FULL KEEL MUSIC CO. (ASCAP)**
**EMI LONGITUDE MUSIC CO. (BMI)**

Previous Windswept catalog names include but are not limited to:

**LONGITUDE MUSIC CO.**
**WINDSWEPT MUSIC**
**FULL KEEL MUSIC CO.**
**WINDSWEPT PACIFIC SONGS**
**FULL NELSON MUSIC**
**HARRICK MUSIC INC.**
**SHERLYN PUBLISHING CO. INC.**
**SATURDAY MUSIC INC.**
                    **AND MANY OTHERS**

Would you please see to it that all of your records are changed as soon as possible. *As you will note all income regardless of when earned is to be paid to EMI.*

Windswept Notification
Page 2.

All royalties and correspondence should be directed as follows:

Royalties                                   Correspondence

c/o EMI Music Publishing                    c/o EMI Music Publishing
810 Seventh Avenue                          810 Seventh Avenue
36th floor                                  36th floor
New York, New York 10019                    New York, New York 10019
Att: Vice President, Royalties              Att: Senior Vice President, Copyright Administration

***Further to my previous discussions with Ellen and Paula, please immediately forward to me any documents you may need executed to effect the name change of these catalogs to EMI FULL KEEL MUSIC CO.***

Please do not hesitate to call on me if you have any questions.

Many thanks.

Kind regards,                               Receipt Confirmed:

Jennifer Insogna                            By: _____
                                            ASCAP

                                            Date: _____

Encls.

B. Adams, M. Bandier, J. Boris, A. Ashby, R. Faxon, R. Flax, R. Levatino, C. Miller, J. Rosenthal, L. Santiago, N. Weshkoff, J. LoFrumento, A. Wallace

Windswept Pacific Entertainment Co.
d/b/a Full Keel Music Co. and Windswept Music
9320 Wilshire Boulevard, Suite 200
Beverly Hills, California 90212

EMI Music Publishing
1290 Avenue of the Americas
New York, New York 10104

June 30, 1999

American Society of Composers and Publishers

Gentlemen:

Please be advised that as of the above date Windswept Pacific Entertainment Co. d/b/a Full Keel Music Co. and Windswept Music ("Windswept") has entered into an Asset Purchase Agreement (the "Agreement") with EMI Virgin Music, Inc. ("EMI").

Pursuant to the Agreement, Windswept has transferred to EMI all of Windswept's interest in all Compositions contained in the Full Keel Music Co. and/or Windswept Music, their predecessors and licensees, Account No. 10067 as of June 30, 1999, **excluding only those compositions (i) set forth in Schedule A ("Excluded Compositions") which have been retained by Windswept and which have been or will be transferred to Windswept Holdings LLC d/b/a Music of Windswept or retained by Windswept Pacific Music Limited or (ii) owned or controlled by one of the entities set forth on Schedule B ("Excluded Entities").**

Accordingly, Windswept hereby irrevocably authorized and direct you to:

1.    **Except for amounts due in connection with the Excluded Compositions owned or controlled by an Excluded Entity,** pay all amounts now or hereafter due and payable to Windswept in connection with ASCAP Account No. 10067, only in respect of the transferred compositions to EMI at: EMI Music Publishing Worldwide, 810 Seventh Avenue, New York, New York 10019, Attention: Vice President, Royalty Department; and

ascap.mixed.dirltr

American Society of Composers and Publishers
June 30, 1999
Page 2


2.      Render all related statements and activity reports, notices, claims and other
        correspondence and any other information in any other form or media **related
        only to the transferred compositions** directly to EMI at the address listed
        directly above.

Kindly acknowledge your receipt of this letter by signing and returning (in the enclosed
envelope) the enclosed copy of this letter.

This letter constitutes an irrevocable letter of instruction from Windswept to you.

                                        Very truly yours,

                                        WINDSWEPT PACIFIC ENTERTAINMENT CO.
                                        d/b/a Full Keel Music Co. and Windswept Songs


                                        By:_____

ACCEPTED AND AGREED:

EMI VIRGIN MUSIC, INC.

By:_____

RECEIPT IS HEREBY ACKNOWLEDGED:

AMERICAN SOCIETY OF
   COMPOSERS AND PUBLISHERS (ASCAP)



By:_____

ascap.mixed.dirltr

**ASCAP
PUBLISHER
APPLICATION**

(PLEASE TYPE OR PRINT IN BLOCK LETTERS)

**1. COMPANY NAME** (cleared and reserved)    EMI Full Keel Music
(EMI Full Keel Music is a d/b/a for EMI Virgin Music I:

**2. BUSINESS ADDRESS:**    ATTN: Joanne Boris
                                    C/O (IF APPLICABLE)

810 Seventh Avenue                     37th Floor
STREET                                 APT OR SUITE # (IF APPLICABLE)
New York                               NY                    10019
CITY                                   STATE                 ZIP CODE
Telephone number  (  212   )  830-2000    FAX number (if applicable) (        )

**ALTERNATE ADDRESS,** only fill out if you would like your royalties and performance statements sent to a *different* address

                                            C/O (IF APPLICABLE)
STREET                                 APT OR SUITE # (IF APPLICABLE)
CITY                                   STATE                 ZIP CODE
Telephone number  (        )    FAX number (if applicable): (        )

**3. THIS COMPANY WAS FORMED AS A:** (check one)
☐ **Sole Proprietorship** (fill out A, below)
☐ **Partnership or Joint Venture** (fill out B, below)
☐ **Corporation or Limited Liability Company (LLC)** (fill out C, below)
X Other — EMI Full Keel Music is a d/b/a for EMI Virgin Music Inc.

**A. SOLE PROPRIETORSHIP:**
                    SOCIAL SECURITY #                    TAX IDENTIFICATION # (TIN)

                    OWNER'S NAME (FIRST NAME, LAST NAME)

☐ Company name   ☐ My name doing business as (d/b/a) Company name

**B. PARTNERSHIP OR JOINT VENTURE:** TIN _____    Year Established;
LIST ALL PARTNERS (first name, last name)              SOCIAL SECURITY #

**C. CORPORATION OR LLC:** TIN 13-2894144  State of Incorporation  New York  Date of Charter 09 / 23 / 76
LIST ALL OFFICERS OR MEMBERS (first name, last name)
Martin Bandier — President and Chairman
Clark Miller — Vice President and Secretary
Roger Faxon — Vice President and Assistant Secretary
Todd Darr — Treasurer

LIST ALL STOCKHOLDERS (Corporations Only) OR ALL OWNERS (LLC's Only)
Virgin Holdings Inc. — 100%

(continued on back)

provided in its Articles of Association (which are hereby incorporated by reference), as now in force or hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others, to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings, to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation, of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time.

8. The *Owner* agrees that the apportionment and distribution of royalties by the *Society* as determined from time to time by the Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate apportionment and distribution of royalties.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined** The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations of a musical number or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless", and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined** The phrase *"musical works"* shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in *U.S.A. y ASCAP* as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in *U.S.A v ASCAP*, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this _____ of _____ _____

day    month    year

Owner { Sign your name here _____

Roger Fason

Society {

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,

By _____

President and Chairman of the Board

Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0010067                          NAME: EMI FULL KEEL MUSIC

CAE CODE             : 344301696
CLASS                : P
SOCIETY              : ASCAP
DISTRIBUTION         : DOMESTIC & FOREIGN
ASCAP STATUS         : CURRENT MEMBER
MEMBERSHIP AGRMNT    : RETURNED SIGNED
ROYALTY HOLD         : PICKUP
TAX ID  #              XX-XXX4144
APPLICATION HOLD     : NO

APPLICATION DATE     : 11 / 14 / 1988
ELECTION DATE        : 12 / 02 / 1988
CREDITED DATE        : 04 / 01 / 1988


REPRESENTATIVE       : FAXON ROGER


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# PINK HOUSES

Medium Rock beat

Words and Music by
JOHN MELLENCAMP



Copyright © 1983 WINDSWEPT PACIFIC ENTERTAINMENT CO.
d/b/a FULL KEEL MUSIC CO., 4450 Lakeside Drive, Suite 200, Burbank, CA. 91505
International Copyright Secured    Made in U.S.A.
All Rights Reserved







lit - tle pink hous - es for you and me, oh _____ yeah, for you and me.

{ There's a
  Well, there's

# EXHIBIT F

# CERTIFICATE OF COPYRIGHT REGISTRATION



**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

**PA    215-901**

PA                    PAU

EFFECTIVE DATE OF REGISTRATION

*Dhvid Ladd*

**REGISTER OF COPYRIGHTS**
*United States of America*

**JUL 02 1984**

Month        Day        Year

OFFICIAL SEAL

S, Bolewski

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1
**TITLE OF THIS WORK ▼**

PANAMA

**PREVIOUS OR ALTERNATIVE TITLES ▼**

None

**NATURE OF THIS WORK ▼** See instructions

Words and Music

## 2
**NAME OF AUTHOR ▼**

a  Van Halen Music Company

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
{ Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?        ☐ Yes ☒ No
Pseudonymous?   ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

**NOTE**

under the law,
e "author" of a
ork made for
"ra" is generally
he employer,
not the em-
ployee (see in-
structions). For
any part of this
work that was
"made for hire"
check "Yes" in
the space pro-
vided, give the
employer (or
other person for
whom the work
was prepared)
as "Author" of
that part, and
leave the space
for dates of birth
and death blank.

**NAME OF AUTHOR ▼**

b

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of country
OR { Citizen of ▶ _____
{ Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?        ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

c

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
{ Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?        ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3
**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1983 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ January    Day ▶ 9    Year ▶ 1984
U.S.A.    ◀ Nation

## 4
**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼

Van Halen Music Company
c/o Bushkin, Gaims, Gaines & Jonas
2029 Century Park East, 25th Floor
Los Angeles, California 90067

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼

APPLICATION RECEIVED
JUL -2 1984
ONE DEPOSIT RECEIVED
JUL -2 1984
TWO DEPOSITS RECEIVED
JUL -2 1984
REMITTANCE NUMBER AND DATE

251297 JUL 2 8 4

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    **DO NOT WRITE HERE**

\* Date in notice = 1983

EXAMINED BY _____

CHECKED BY _____

☐ CORRESPONDENCE
  Yes

☐ DEPOSIT ACCOUNT
  FUNDS USED

FORM PA

FOR
COPYRIGHT
OFFICE
USE
ONLY

PA    215-901

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼        **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a.  **Preexisting Material**   Identify any preexisting work or works that this work is based on or incorporates. ▼

b.  **Material Added to This Work**   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                            **Account Number** ▼

**7**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼
Fredric W. Ansis, Esq.
Bushkin, Gaims, Gaines & Jonas
2029 Century Park East, 25th Floor
Los Angeles, California 90067
Area Code & Telephone Number ▶    (213) 553-6666

Be sure to
give your
daytime phone
◀ number.

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Van Halen Music Company
                Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
    David Lee Roth                                    date ▶ June 27, 1984

Handwritten signature (X) ▼
_David Lee Roth_

**MAIL
CERTIFI-
CATE TO**

Name ▼
Van Halen Music Company
c/o Bushkin, Gaims, Gaines & Jonas
Number/Street/Apartment Number ▼
2029 Century Park East, 25th Floor
City/State/ZIP ▼ Los Angeles, California 90067
Attention: Fredric W. Ansis, Esq.

**Certificate
will be
mailed in
window
envelope**

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**9**

\* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

# PANAMA

Words and Music by
EDWARD VAN HALEN, ALEX VAN HALEN,
MICHAEL ANTHONY and DAVID LEE ROTH



© 1983 VAN HALEN MUSIC COMPANY
All Rights Reserved

Jump    back.
Ain't noth - in' like it,    her



22





24





26

```
MBR18DS           P U B L I S H E R   I N F O R M A T I O N
M-CODE:  1396475                       NAME: VAN HALEN MUSIC

CAE CODE             : 075072677
CLASS                : P
SOCIETY              : ASCAP                    S E E -
DISTRIBUTION         : DOMESTIC & FOREIGN          W B MUSIC CORP
ASCAP STATUS         : CURRENT MEMBER
MEMBERSHIP AGRMNT    : RETURNED SIGNED             M-CODE IS 1420280
ROYALTY HOLD         : GROUP MAILING
SOC SEC #            : XXX-XX-6597
APPLICATION HOLD     : NO

APPLICATION DATE     : 04 / 25 / 1979   BOARD DATE       : 05 / 24 / 1979
ELECTION DATE        : 02 / 16 / 1978
CREDITED DATE        : 07 / 01 / 1977


REPRESENTATIVE       : VANHALEN EDWARD


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT G

# FORM PA

UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Barbara Ringer*

Register of Copyrights
United States of America

| REGISTRATION NUMBER |
|---|
| PA 85-849 |
| (PA) PAU |

| EFFECTIVE DATE OF REGISTRATION |
|---|
| Feb. 26 1979 |
| (Month) (Day) (Year) |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**① Title**

TITLE OF THIS WORK:

THIS WILL BE (AN EVERLASTING LOVE)

NATURE OF THIS WORK: (See instructions)

words and music

PREVIOUS OR ALTERNATIVE TITLES:

---

**② Author(s)**

**IMPORTANT:** Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**

NAME OF AUTHOR: Chuck Jackson

Was this author's contribution to the work a "work made for hire"? Yes ... No. X

DATES OF BIRTH AND DEATH:
Born ... Died ...
(Year) (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ... U.S.A. } or { Domiciled in ... U.S.A. ...
(Name of Country) (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No. X
Pseudonymous? Yes ... No ...
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
words and music

**2**

NAME OF AUTHOR: Marvin Yancy

Was this author's contribution to the work a "work made for hire"? Yes. No. X

DATES OF BIRTH AND DEATH:
Born ... Died ...
(Year) (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ... U.S.A. } or { Domiciled in ... U.S.A. ...
(Name of Country) (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No. X
Pseudonymous? Yes ... No. X
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
words and music

**3**

NAME OF AUTHOR: Chappell & Co., Inc. and Jay's Enterprises, Inc.

Was this author's contribution to the work a "work made for hire"? Yes. X No ...

DATES OF BIRTH AND DEATH:
Born ... Died ...
(Year) (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ... U.S.A. } or { Domiciled in ... U.S.A. ...
(Name of Country) (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No ...
Pseudonymous? Yes ... No ...
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
arrangement for piano/vocal

---

**③ Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:

Year 1979

(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:

Date ... January 23, 1979 ...
(Month) (Day) (Year)

Nation United States of America
(Name of Country)

(Complete this block ONLY if this work has been published.)

---

**④ Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):

Chappell & Co., Inc.
810 Seventh Avenue
New York, NY 10019

Jay's Enterprises, Inc.
3909 North Seeley
Chicago, IL 60618

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

by assignment from authors of words and music

---

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• Follow detailed instructions attached • Sign the form at line 8

DO NOT WRITE HERE

Page 1 of ... pages

| | CHECKED BY | FEB 26 79 | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|---|---|
| | CORRESPONDENCE. ☐ Yes | DEPOSIT RECEIVED FEB 26 79 | |
| PA    85-849 | DEPOSIT ACCOUNT FUNDS USED. ☑ | REMITTANCE NUMBER AND DATE | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**PREVIOUS REGISTRATION:**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ... X ... No .........

- If your answer is "Yes," why is another registration being sought?  (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☒ This is a changed version of the work, as shown by line 6 of the application.

- If your answer is "Yes," give:  Previous Registration Number .. Ep 343255 ... Year of Registration ..... 1975 ........

**(5) Previous Registration**

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL. (Identify any preexisting work or works that the work is based on or incorporates.)

..... words and music ............

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

.. arrangement for piano/vocal .......

**(6) Compilation or Derivative Work**

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: .... Chappell & Co., Inc. .........

Account Number: .. DA 021717 ........

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: .. Chappell & Co., Inc. (Greg Boals)

Address: .810 Seventh Avenue .. _(Apt.)_

.... New York, NY .. 10019 ..
_(City)_            _(State)_        _(Zip)_

**(7) Fee and Correspondence**

**CERTIFICATION:** ✱ I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of .. Chappell & Co., Inc. .
_(Name of author or other copyright claimant, or owner of exclusive right(s))_
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) _Gregory K. Boals_

Typed or printed name. ... Gregory K. Boals ...... Date: 2/22/79

**(8) Certification (Application must be signed)**

MAIL CERTIFICATE
.... Chappell & Co., Inc. (Copyright) ....
_(Name)_
810 Seventh Avenue
_(Number, Street and Apartment Number)_
New York, NY .. 10019 ..
_(City)_        _(State)_    _(Zip code)_

MAIL CERTIFICATE
09 JUL 1979
(Certificate will be mailed in window envelope)

**(9) Address For Return of Certificate**

+ 17 U.S.C. §506(e) FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

U.S. GOVERNMENT PRINTING OFFICE: 1978 - 261 - 032/9                                        Feb. 1978 - 100,000

Recorded in Washington  9/8/75  V. 1556  P. 378-379

IN CONSIDERATION of the sum of One ($1.00) Dollar and other good and valuable consideration to the Undersigned, in hand paid, at or before the ensealing and delivery of these presents, receipt of which is hereby duly acknowledged, the Undersigned does hereby sell, assign, transfer and set over unto JAY'S ENTERPRISES, INC. its successors and assigns an undivided fifty (50%) percent of each of the copyrights for the world in and to the compositions listed on the attached schedule subject to all the terms and conditions set forth in an agreement dated 25th day of October 1974 between Jay's Enterprises, Inc. and Chappell & Co., Inc.

IN WITNESS WHEREOF, the Undersigned has caused these presents to be executed by its duly authorized officer the 26th day of June 1975.

CHAPPELL & CO., INC.

By _Philip B. Wattenberg_

## S C H E D U L E

| TITLES | WRITERS |
|---|---|
| SAME THING IT TOOK | Charles Jackson/ Marvin Yancy/Ed Townsend |
| JOEY | Chuck Jackson/ Marvin Yancy |
| INSEPARABLE | Chuck Jackson/ Marvin Yancy |
| I CAN'T SAY NO IF YOU ASK ME | Chuck Jackson/ Marvin Yancy |
| YOU CAN'T GET SOMETHING FOR NOTHING | Chuck Jackson/ Marvin Yancy |
| HOW COME YOU WON'T STAY HERE | Marvin Yancy/ Charles Jackson |
| THIS WILL BE (AN EVERLASTING LOVE) | Chuck Jackson/ Marvin Yancy |
| YOU | Marvin Yancy/ Charles Jackson/ Jerry Butler |
| YOUR FACE STAYS ON MY MIND | Marvin Yancy/ Charles Jackson |
| AND I LOVE HIM SO MUCH | Marvin Yancy/ Charles Jackson |

2

# THIS WILL BE

## (AN EVERLASTING LOVE)

Words & Music by
MARVIN YANCY & CHUCK JACKSON



Copyright © 1975 by Jay's Enterprises, Inc. and Chappell & Co., Inc.
Chappell & Co., Inc., administrator
International Copyright Secured     Made in U.S.A.
ALL RIGHTS RESERVED including public performance for profit
Any copying, arranging or adapting of this work without the consent of the owner is an infringement of copyright







you and me,    Yes - sir - ree,    e - ter - nal - ly

Hug-ging and squeez-ing and kiss-ing and pleas-ing to-geth-er for-ev-er thru rain or what-ev - er.

This will be    you and me.    So

long as I'm liv-ing my love I'll be giv-ing to you. I'll be serv-ing 'cause you're so de-serv-ing.

DISTRIBUTED BY
chappell music company
810 Seventh Avenue, New York, N.Y. 10019
Exclusive Agent in Canada
CHAPPELL & CO., LTD, Toronto

A POLYGRAM COMPANY

0117341-101
PRINTED IN U.S.A.

Page: 1 Document Name: untitled

```
MBR18DS           P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0261000                  NAME: CHAPPELL-CO INC

  CAE CODE           : 005876870        PSEU: CHAPPELL & COMPANY INC
  CLASS              : P
  SOCIETY            : ASCAP
  DISTRIBUTION       : DOMESTIC & FOREIGN
  ASCAP STATUS       : CURRENT MEMBER
  MEMBERSHIP AGRMNT  : RETURNED SIGNED
  ROYALTY HOLD       : GROUP MAILING
  TAX ID  #            XX-XXX6913
  APPLICATION HOLD   : NO

  APPLICATION DATE   : 12 / 02 / 1920
  ELECTION DATE      : 12 / 17 / 1920
  CREDITED DATE      : 04 / 01 / 1920


  REPRESENTATIVE     : MORGENSTERN JAY R


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:34:07 PM

Page: 1 Document Name: untitled

```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0711550                       NAME: JAY'S ENTERPRISES INC

CAE CODE          : 087465339
CLASS             :   P
SOCIETY           : ASCAP                   S E E -
DISTRIBUTION      : DOMESTIC & FOREIGN         CHAPPELL-CO INC
ASCAP STATUS      : CURRENT MEMBER
MEMBERSHIP AGRMNT : RETURNED SIGNED           M-CODE IS 0261000
ROYALTY HOLD      : GROUP MAILING
TAX ID  #           XX-XXX3071
APPLICATION HOLD  : NO

APPLICATION DATE  : 07 / 28 / 1975
ELECTION DATE     : 08 / 21 / 1975
CREDITED DATE     : 01 / 01 / 1975


REPRESENTATIVE    :


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:34:46 PM

# EXHIBIT H

# CERTIFICATE OF COPYRIGHT REGISTRATION



**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA   291 374

~~PA~~        PAU

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
*United States of America*

OFFICIAL SEAL

EFFECTIVE DATE OF REGISTRATION

**APR 21 1986**

| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

"ANOTHERLOVERHOLENYOHEAD

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Words and Music

**2** NAME OF AUTHOR ▼
**a** Prince Nelson aka Prince

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☒ No
Pseudonymous?    ☐ Yes  ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the em...

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

NAME OF AUTHOR ▼
**b**

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?    ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?    ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
1986 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ March   Day ▶ 31   Year ▶ 1986
United States ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2.▼
CONTROVERSY MUSIC
c/o Manatt, Phelps, Rothenberg, Tunney & Phillips
11355 West Olympic Blvd.
Los Angeles, CA 90064

See instructions before completing this space.

APPLICATION RECEIVED
APR 21 1986
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
APR 21 1986
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼
Controversy Music is sole proprietorship of Author.

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.        • Sign the form at line 8.

DO NOT WRITE
Page 1 of 2

FORM PA

PA  291 374

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

**a.** **Preexisting Material**  Identify any preexisting work or works that this work is based on or incorporates. ▼

**b.** **Material Added to This Work**  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                    **Account Number** ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

Ms. Judie Castano
c/o Manatt, Phelps, Rothenberg, Tunney & Phillips
11355 West Olympic Blvd.
Los Angeles, CA 90064

Area Code & Telephone Number ▶  (213) 312-4000

Be sure to
give your
daytime phone
◀ number

**8**

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☑ authorized agent of___ Controversy Music

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

L. Lee Phillips                                    date ▶ April 7, 1986

Handwritten signature (X) ▼

**MAIL
CERTIFI-
CATE TO**

Name ▼  CONTROVERSY MUSIC
c/o Manatt, Phelps, Rothenberg, Tunney & Phillips

Number/Street/Apartment Number ▼
11355 West Olympic Blvd.

**Certificate
will be
mailed in
window
envelope**

City/State/ZIP ▼  Los Angeles, California 90064
Attn: Ms. Judie Castano

Have you:
• Completed all necessary
  spaces?
• Signed your application in space
  8?
• Enclosed check or money order
  for $10 payable to Register of
  Copyrights?
• Enclosed your deposit material
  with the application and fee?

MAIL TO: Register of Copyrights,
Library of Congress, Washington,
D.C. 20559.

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in
connection with the application, shall be fined not more than $2,500.

# Anotherloverholenyohead



© 1986 Controversy Music

All Rights Reserved





(INTRO 3)  Ami⁷  C⁹₆  D⁹         2

(SIM →)

(REPEAT & FADE)

(VERSE : 2)

WE WERE BROTHERS AND SISTERS
UNITED - ALL 4 LOVE
NOW ALL OF A SUDDEN U TRY 2 FIGHT IT
U SAY YOU'VE HAD ENOUGH
EVEN THOUGH WE'VE HAD BIG FUN
U WANT ANOTHER SOMEONE
4 YO HAPPILY EVER AFTER BE
SURE AS THERE'S A SUN
I'M GONNA BE THE 1 AND IF
U DON'T UNDERSTAND FACE 2 FACE
I'LL BEG U IDWN ON MY KNEES

(CHORUS)

YALE MUSIC PAPERS · 2443 Riverside Drive

Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0309425                     NAME: CONTROVERSY MUSIC


CAE CODE            : 051282502
CLASS               : P
SOCIETY             : ASCAP                    S E E -
DISTRIBUTION        : DOMESTIC & FOREIGN          UNIVERSAL MUSIC CORPORATION
ASCAP STATUS        : CURRENT MEMBER
MEMBERSHIP AGRMNT   : RETURNED SIGNED             M-CODE IS 1388000
ROYALTY HOLD        : FEDERAL EXPRESS
SOC SEC #             XXX-XX-0807
APPLICATION HOLD    : NO

APPLICATION DATE    : 05 / 05 / 1981
ELECTION DATE       : 11 / 24 / 1981
CREDITED DATE       : 04 / 01 / 1981


REPRESENTATIVE      : NELSON PRINCE ROGERS


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;    PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:35:06 PM

# EXHIBIT I

Additional Certificate (17 U.S.C. 706)

# CERTIFICATE OF COPYRIGHT REGISTRATION



OFFICIAL SEAL

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
*United States of America*

# FORM PA
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA    255-668

PA                    PAU

EFFECTIVE DATE OF REGISTRATION

June    19    1985
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

"RASPBERRY BERET"

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Words and Music

---

**2** NAME OF AUTHOR ▼

a    Prince Nelson

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

b    NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

c    NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1985 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month ▶ * April Day ▶ 22 Year ▶ 1985
USA ◀ Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2.▼

Controversy Music
c/o Manatt, Phelps, Rothenberg & Tunney
11355 West Olympic Boulevard
Los Angeles, California 90064

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼
Prince Nelson is sole proprietor
of Controversy Music

APPLICATION RECEIVED
MAY 13 1985    JUN 19 1985
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUN 19 1985
REMITTANCE NUMBER AND DATE
596965

DO NOT WRITE HERE
OFFICE USE ONLY

U.S. SPECIAL

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ____ pages

\*    Added by C.O. per authority telephone
conversation with Judie Castano 8/7/85.

| | |
|---|---|
| EXAMINED BY | FORM PA |
| CHECKED BY | |

☑ CORRESPONDENCE Yes      FOR COPYRIGHT OFFICE USE ONLY

☐ DEPOSIT ACCOUNT FUNDS USED

PA     255-668

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION**   Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☒ Yes ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

\*   ☒ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼     **Year of Registration** ▼

      PAU   705-005            1985

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

**a.**   **Preexisting Material**   Identify any preexisting work or works that this work is based on or incorporates. ▼

**b.**   **Material Added to This Work**   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

See instructions before completing this space.

**6**

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼            **Account Number** ▼

**7**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

CONTROVERSY MUSIC
c/o Manatt, Phelps, Rothenberg & Tunney
11355 West Olympic Boulevard, 10th Floor
Los Angeles, California 90064

         Area Code & Telephone Number ▶

Be sure to give your daytime phone number.

**CERTIFICATION\***   I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of   Controversy Music

     Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**Typed or printed name and date ▼** If this is a published work, this date must be the same as or later than the date of publication given in space 3.

L. Lee Phillips                date ▶

    Handwritten signature (X)

**8**

**MAIL CERTIFI-CATE TO**

Name ▼   CONTROVERSY MUSIC
        c/o Manatt, Phelps, Rothenberg & Tunney

Number/Street/Apartment Number ▼
11355 West Olympic Boulevard, 10th Floor

City/State/ZIP ▼
Los Angeles, California 90064
       Attn: Mr. Kirk Wentzell

**Certificate will be mailed in window envelope**

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to *Register of Copyrights?*
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559

**9**

\* 17 U.S.C. § 506(e): Any person who knowingly makes a false statement of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

✩ U.S. GOVERNMENT PRINTING OFFICE: 1983: 381-278/506                            Sept. 1983—500,000

# Raspberry Beret

WORDS AND MUSIC BY
PRINCE



© 1985   CONTROVERSY MUSIC



"RASPBERRY BERET"    PAGE 2 OF 5



"RASPBERRY BERET"    PAGE 4 OF 5





"RASPBERRY BERET"                    PAGE 5 OF 5

Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0309425                  NAME: CONTROVERSY MUSIC

  CAE CODE           : 051282502
  CLASS              : P
  SOCIETY            : ASCAP                    S E E -
  DISTRIBUTION       : DOMESTIC & FOREIGN          UNIVERSAL MUSIC CORPORATION
  ASCAP STATUS       : CURRENT MEMBER
  MEMBERSHIP AGRMNT  : RETURNED SIGNED             M-CODE IS 1388000
  ROYALTY HOLD       : FEDERAL EXPRESS
  SOC SEC #            XXX-XX-0807
  APPLICATION HOLD   : NO

  APPLICATION DATE   : 05 / 05 / 1981
  ELECTION DATE      : 11 / 24 / 1981
  CREDITED DATE      : 04 / 01 / 1981


  REPRESENTATIVE     : NELSON PRINCE ROGERS


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:35:31 PM

# EXHIBIT J

Case 1:06-cv-03378-NRB-THK   Document 71-5   Filed 02/20/2008   Page 1 of 36

# CERTIFICATE OF COPYRIGHT REGISTRATION



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS

## FORM PA
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA   359 271

| PA | PAU |

EFFECTIVE DATE OF REGISTRATION

JAN 15 1988

| Month | Day | Year |

OFFICIAL SEAL **DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

FAITH

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

WORDS & MUSIC

## 2

**NAME OF AUTHOR ▼**

a    GEORGE MICHAEL, pseudonym for GEORGE PANAYIOTOU

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.K.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☒ No
Pseudonymous?  ☒ Yes  ☐ No

**NOTE**
Under the law, the "author" of a "work made for

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed ▼
WORDS & MUSIC

**NAME OF AUTHOR ▼**

b

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1987 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ OCTOBER   Day ▶ 26   Year ▶ 1987
U.S.A.   ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

MORRISON-LEAHY MUSIC LTD.
c/o CHAPPELL INTERNATIONAL
14 New Burlington, London W1X 2LR

APPLICATION RECEIVED
JAN 15 1988
ONE DEPOSIT RECEIVED
JAN 15 1988
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

BY ASSIGNMENT

**MORE ON BACK ▶**

DO NOT WRITE HERE

Case 1:06-cv-01202-GK    Document 17-5    Filed 02/08/2007    Page 43 of 50

EXAMINED BY          FORM PA

CHECKED BY

☐ CORRESPONDENCE  
    ☐ Yes

☐ DEPOSIT ACCOUNT  
    FUNDS USED

FOR COPYRIGHT OFFICE USE ONLY

PA    359 271

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼     Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Pre-existing Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work, and in which copyright is claimed ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼          Account Number ▼

CHAPPELL & CO., INC.         DA 059587

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

CHAPPELL & CO., INC.  
810 7th Ave.  
New York, NY 10019

Area Code & Telephone Number ▶ (212) 399-6910

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   SAME AS SPACE #4
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3

DAVID COHEN      date ▶ 1/4/87

Handwritten signature (X) ▼

MAIL CERTIFICATE TO

Name ▼  
CHAPPELL & CO., INC.

Number/Street/Apartment Number ▼  
810 7th Avenue

City/State/ZIP ▼  
New York, NY 10019

Certificate will be mailed in window envelope

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application in space 9?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559

# chappell international



A member of
the Chappell
and Intersong
Music Group

MUSIC PUBLISHERS
SINCE 1811

Warner/Chappell Music Inc ("Chappell USA")
810 Seventh Avenue
New York
NY 10019
USA

Morrison Leahy Music Ltd ("MLM")
1 Star Street
London W2 1QD

Dated: 21st December 1987

Dear Sirs,

Reference is made to the sub-publishing agreement dated 1st January 1982
between MLM and this Company as modified by letter agreements dated 26th
February 1982 ("the Jam Agreement"), 14th June 1982, 14th September 1983,
26th March 1985 ("the 1985 Letter Agreement") and 21st December 1987
[herein collectively referred to as "the Agreement"].

Now for good and valuable consideration, each to the other, the receipt and
sufficiency of which are hereby acknowledged, it is agreed as follows:

1.  This Company hereby assigns, transfers and set over unto Chappell USA
    the entire benefit and burden of the Agreement with effect from
    1st January 1988, PROVIDED THAT nothing herein contained shall exclude
    or limit this Company's liabilities to you under the Agreement in
    respect of royalty accountings or any other matters arising prior to
    1st January 1988.

2.  Paragraph 4(c) of the 1985 Letter Agreement is deleted with effect
    from 1st January 1988 and replaced as follows:

    "(c) The Publisher shall procure that, with effect from the accounting
    date for the accounting period ended 31st December 1987,
    royalties in respect of the Compositions (irrespective of when
    earned) arising in the Licensed Territory excluding the USA only
    shall be accounted for and (subject to recoupment of the advance
    payments) paid to the Owner (or its designee) within 90 (ninety)
    days following the close of the semi-annual period during which
    the relevant income shall have been received and that the
    Publisher's sub-publisher in the UK shall also make quarterly on
    account payments in respect of royalties arising in the Licensed
    Territory excluding the USA in accordance (mutatis mutandis) with
    paragraph 4(a) above. Such direct royalty accountings and
    payments and quarterly on account payments shall be made in
    pounds sterling."

3.  Notwithstanding paragraph 1 above, this Company shall remain
    responsible for the receipt and servicing of all copyright data
    delivered pursuant to the Agreement and other administrative matters
    unless and until joint written notification to the contrary is sent
    from Chappell USA and MLM to this Company.

.../2

- 2 -

4.  Chappell USA warrants and undertakes to MLM to observe and perform all
    the terms and conditions of the Agreement.

5.  Save as hereby varied all the terms and conditions of the Agreement
    shall continue in full force and effect.

Your signature below will indicate your acceptance of and agreement to the
foregoing.

Yours faithfully
CHAPPELL INTERNATIONAL
 MUSIC PUBLISHERS LIMITED


by .................................

                                        WARNER/CHAPPELL MUSIC INC

and .................................

                                        MORRISON LEAHY MUSIC LTD

## Confirmation of Merger, Name Change and
## Continuance of Ownership of Copyright Interests

KNOW ALL MEN BY THESE PRESENTS, that (1) CHAPPELL ACQUISITION CORP. merged into and with CHAPPELL & CO., INC. on October 7, 1987; (2) CHAPPELL & CO., INC., the surviving corporation in such merger, changed its name on October 7, 1987 to WARNER/CHAPPELL, INC. and on October 7, 1987 further changed its name to WARNER/CHAPPELL MUSIC, INC.; and (3) all of the right, title and interest of CHAPPELL & CO., INC. of any kind or nature in and to any and all copyrights in which CHAPPELL & CO., INC. had any interest on the date of such merger, including, but not limited to, those described on the Schedule of Copyrights attached hereto as Exhibit A, and any and all renewals and extensions thereof which may be secured under the laws now or hereafter pertaining to copyright renewals and extensions, for good and valuable consideration, receipt of which is hereby acknowledged, by reason of such merger, continue to vest in WARNER/CHAPPELL MUSIC, INC., by operation of law.

IN WITNESS WHEREOF, WARNER/CHAPPELL MUSIC, INC. has caused this document to be signed in its corporate name by its authorized officer this *14th* day of *October*, 1987.

WARNER/CHAPPELL MUSIC, INC.

By _____

STATE OF NEW YORK  )
                   :  SS:
COUNTY OF NEW YORK )

On *October 14*, 1987, before me, the under-signed, a Notary Public in and for said County and State, personally appeared _____, proved to me on the basis of satisfactory evidence to be _____ of Warner/Chappell Music, Inc., and acknowledged to me that __he executed it.

_____

JOAN PINCUS
NOTARY PUBLIC, State of New York
No. 60-4661970
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires June 30, 1989

# Faith

Words and Music by
GEORGE MICHAEL





Well I guess it would be nice
-by.

if I ___ could
I know ___ you're



touch your bo — dy
ask - ing me ___ to stay

I know ___ not
stay please please

ev - 'ry - bo — dy
please don't go ___

dy
away.

Copyright © 1987 by Morrison-Leahy Music, Ltd.
Published in the U.S.A. by Chappell & Co., Inc.
International Copyright Secured    ALL RIGHTS RESERVED    Printed in the U.S.A.
Unauthorized copying, arranging, adapting, recording or public performance is an infringement of copyright.
Infringers are liable under the law.





5

Page: 1 Document Name: untitled

```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0261000                  NAME: CHAPPELL-CO INC

CAE CODE          : 005876870       PSEU: CHAPPELL & COMPANY INC
CLASS             : P
SOCIETY           : ASCAP
DISTRIBUTION      : DOMESTIC & FOREIGN
ASCAP STATUS      : CURRENT MEMBER
MEMBERSHIP AGRMNT : RETURNED SIGNED
ROYALTY HOLD      : GROUP MAILING
TAX ID  #           XX-XXX6913
APPLICATION HOLD  : NO

APPLICATION DATE  : 12 / 02 / 1920
ELECTION DATE     : 12 / 17 / 1920
CREDITED DATE     : 04 / 01 / 1920


  REPRESENTATIVE    : MORGENSTERN JAY R


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:35:58 PM

# EXHIBIT K

# CERTIFICATE OF COPYRIGHT REGISTRATION



**OFFICIAL SEAL**

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

**REGISTER OF COPYRIGHTS**
*United States of America*

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**PA** 290 087
PA                    PAU

EFFECTIVE DATE OF REGISTRATION

APR 29 1986
Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**
**TITLE OF THIS WORK ▼**
"MASTER OF PUPPETS"

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions
WORDS AND MUSIC

**2**
**NAME OF AUTHOR ▼**
**a** JAMES HETFIELD

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for..."

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
WORDS AND MUSIC

**NAME OF AUTHOR ▼**
**b** LARS ULRICH

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
WORDS AND MUSIC

**NAME OF AUTHOR ▼**
**c** KIRK HAMMET

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
WORDS AND MUSIC

**3**
**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1985 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ February Day ▶ 24 Year ▶ 1986
United States ◀ Nation

**4**
**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼
CREEPING DEATH MUSIC
c/o MANATT, PHELPS, ROTHENBERG, et al.
11355 WEST OLYMPIC BOULEVARD
LOS ANGELES, CA 90064

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼
PURSUANT TO WRITTEN AGREEMENT

See instructions before completing this space.

APPLICATION RECEIVED
APR 29 1986
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
APR 29 1986
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE OFFICE USE ONLY

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 7 pages

| EXAMINED BY | W | FORM PA |
|---|---|---|
| CHECKED BY | | |

PA 290 087

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼ **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼     **Account Number** ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
MR. KIRK WENTZELL
c/o MANATT, PHELPS, ROTHENBERG, et al.
11355 WEST OLYMPIC BOULEVARD
LOS ANGELES, CA 90064
Area Code & Telephone Number ▶ (213) 312-4231

**8**

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of___CREEPING DEATH MUSIC____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
JUDIE CASTANO     date ▶ APRIL 10, 1986

Handwritten signature (X) ▼ _Judie Castano_

| MAIL CERTIFICATE TO | Name ▼ CREEPING DEATH MUSIC, c/o Manatt, Phelps, Rothenberg, Tunney & Phillips | Have you: • Completed all necessary spaces? • Signed your application in space 8? • Enclosed check or money order for $10 payable to Register of Copyrights? • Enclosed your deposit material with the application and fee? MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559. |
|---|---|---|
| Certificate will be mailed in window envelope | Number/Street/Apartment Number ▼ 11355 WEST OLYMPIC BOULEVARD City/State/ZIP ▼ Los Angeles, CA 90064 Attn:Kirk Wentzell | |

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE: 1985—491—550/20,014     February 1985—200,000

# CONTINUATION SHEET FOR FORM PA

**UNITED STATES COPYRIGHT OFFICE**

- If at all possible, try to fit the information called for into the spaces provided on Form PA.
- If you do not have space enough for all of the information you need to give on Form PA, use this continuation sheet and submit it with Form PA.
- If you submit this continuation sheet, clip (do not tape or staple) it to Form PA and fold the two together before submitting them.
- **PART A** of this sheet is intended to identify the basic application. **PART B** is a continuation of Space 2. **PART C** (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6. The other spaces on Form PA call for specific items of information, and should not need continuation.

| REGISTRATION NUMBER |
|---|
| PA 290 087 |
| PA PAU |

EFFECTIVE DATE OF REGISTRATION
APR 29 1986
(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED
APR 29 1986
Page _3_ of _4_ pages

---

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

---

**(A)**
**Identification of Application**

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on Form PA, submitted for the following work:
- **TITLE:** (Give the title as given under the heading "Title of this Work" in Space 1 of Form PA.)
"MASTER OF PUPPETS"
- **NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):** (Give the name and address of at least one copyright claimant as given in Space 4 of Form PA.) CREEPING DEATH MUSIC c/o Manatt, Phelps et al
11355 West Olympic Blvd., Los Angeles, CA 90064

---

**(B)**
**Continuation of Space 2**

| | |
|---|---|
| **NAME OF AUTHOR:** Cliff Burton | **DATES OF BIRTH AND DEATH:** Born ......... Died ......... (Year) (Year) |
| Was this author's contribution to the work a "work made for hire"? Yes...... No X | |
| [X] **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................... } or { Domiciled in ........USA......... (Name of Country) (Name of Country) | **WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes...... No...X Pseudonymous? Yes...... No....X |
| **AUTHOR OF:** (Briefly describe nature of this author's contribution) Words and Music | If the answer to either of these questions is "Yes," see detailed instructions attached. |

| | |
|---|---|
| **NAME OF AUTHOR:** | **DATES OF BIRTH AND DEATH:** Born ......... Died ......... (Year) (Year) |
| Was this author's contribution to the work a "work made for hire"? Yes...... No...... | |
| [ ] **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................... } or { Domiciled in ................... (Name of Country) (Name of Country) | **WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes...... No...... Pseudonymous? Yes...... No...... |
| **AUTHOR OF:** (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |

| | |
|---|---|
| **NAME OF AUTHOR:** | **DATES OF BIRTH AND DEATH:** Born ......... Died ......... (Year) (Year) |
| Was this author's contribution to the work a "work made for hire"? Yes...... No...... | |
| [ ] **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................... } or { Domiciled in ................... (Name of Country) (Name of Country) | **WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes...... No...... Pseudonymous? Yes...... No...... |
| **AUTHOR OF:** (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |

| | |
|---|---|
| **NAME OF AUTHOR:** | **DATES OF BIRTH AND DEATH:** Born ......... Died ......... (Year) (Year) |
| Was this author's contribution to the work a "work made for hire"? Yes...... No...... | |
| [ ] **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................... } or { Domiciled in ................... (Name of Country) (Name of Country) | **WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes...... No...... Pseudonymous? Yes...... No...... |
| **AUTHOR OF:** (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |

| | |
|---|---|
| **NAME OF AUTHOR:** | **DATES OF BIRTH AND DEATH:** Born ......... Died ......... (Year) (Year) |
| Was this author's contribution to the work a "work made for hire"? Yes...... No...... | |
| [ ] **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................... } or { Domiciled in ................... (Name of Country) (Name of Country) | **WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes...... No...... Pseudonymous? Yes...... No...... |
| **AUTHOR OF:** (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |

Use the reverse side of this sheet if you need more space for
- Further continuation of Space 2
- Continuation of Spaces 1, 4, or 6 of Form PA

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?    Yes......  No......

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                      (Name of Country)

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**DATES OF BIRTH AND DEATH:**

Born .......... Died ..........
(Year)          (Year)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?      Yes...... No.....
Pseudonymous?  Yes...... No.....

If the answer to either of these questions is "Yes," see detailed instructions attached.

**B** Continuation of Space 2

---

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?    Yes......  No......

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                      (Name of Country)

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**DATES OF BIRTH AND DEATH:**

Born .......... Died ..........
(Year)          (Year)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?      Yes...... No.....
Pseudonymous?  Yes...... No.....

If the answer to either of these questions is "Yes," see detailed instructions attached.

---

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?    Yes......  No......

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                      (Name of Country)

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**DATES OF BIRTH AND DEATH:**

Born .......... Died ..........
(Year)          (Year)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?      Yes...... No.....
Pseudonymous?  Yes...... No.....

If the answer to either of these questions is "Yes," see detailed instructions attached.

---

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?    Yes......  No......

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                      (Name of Country)

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**DATES OF BIRTH AND DEATH:**

Born .......... Died ..........
(Year)          (Year)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?      Yes...... No.....
Pseudonymous?  Yes...... No.....

If the answer to either of these questions is "Yes," see detailed instructions attached.

---

**CONTINUATION OF** (Check which):     ☐ Space 1     ☐ Space 4     ☐ Space 6

**C** Continuation of other Spaces



SENT BY:Manatt, Phelps, etc at 1 5-14-92 ; 1:58PM ;







```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0003498                         NAME: CREEPING DEATH MUSIC

CAE CODE           : 126252400
CLASS              : P
SOCIETY            : ASCAP
DISTRIBUTION       : DOMESTIC & FOREIGN
ASCAP STATUS       : CURRENT MEMBER
MEMBERSHIP AGRMNT  : RETURNED SIGNED
ROYALTY HOLD       : NO HOLD
TAX ID  #            XX-XXX7496
APPLICATION HOLD   : NO

APPLICATION DATE   : 09 / 03 / 1985
ELECTION DATE      : 09 / 12 / 1985
CREDITED DATE      : 01 / 01 / 1985


REPRESENTATIVE     : LARS ULRICH


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:36:06 PM

# EXHIBIT L

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

REGISTER OF COPYRIGHTS
*United States of America*

OFFICIAL SEAL

REGISTRATION NUMBER

**PA** 157-923

PA ☐ PAU ☐

EFFECTIVE DATE OF REGISTRATION

**DEC 06 1982**
Month — Day — Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

"LITTLE RED CORVETTE"

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

Words and Music

**2**

**a** **NAME OF AUTHOR ▼** Prince Nelson

DATES OF BIRTH AND DEATH
Year Born ▼ — Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

DATES OF BIRTH AND DEATH
Year Born ▼ — Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

DATES OF BIRTH AND DEATH
Year Born ▼ — Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1982 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ October Day ▶ 27 Year ▶ 1982
United States ◀ Nation

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Controversy Music
c/o Manatt, Phelps
1888 Century Park East
Los Angeles, California 90067

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Controversy Music is sole proprietorship
of Prince Nelson

APPLICATION RECEIVED
06 DEC 1982
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
06 DEC 1982
REMITTANCE NUMBER AND DATE

63237 DEC 6 82

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.

DO NOT WRITE HERE

FORM PA

PA    157-923

EXAMINED BY _____

CHECKED BY _____

☐ CORRESPONDENCE
   Yes

☐ DEPOSIT ACCOUNT
   FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☒ Yes   ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☒ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼    **Year of Registration** ▼

PAU 440-508        1982

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a.  **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

_____

b.  **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

_____

See instructions
before completing
this space.

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼    **Account Number** ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Ms. Judie Castano
1888 Century Park East
Los Angeles, California 90067

Area Code & Telephone Number ▶ (213) 556-5507

Be sure to
give your
daytime phone
number.

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of  Controversy Music
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**Typed or printed name and date ▼** If this is a published work, this date must be the same as or later than the date of publication given in space 3.

L. Lee Phillips        date ▶ 11/19/82

Handwritten signature (X) ▼ _____

**MAIL CERTIFI-CATE TO**

Name ▼ Ms. Judie Castano
Manatt, Phelps, Rothenberg & Tunney

Number/Street/Apartment Number ▼
1888 Century Park East, 21st Floor

City/State/ZIP ▼
Los Angeles, California 90067

**Have you:**
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**Certificate will be mailed in window envelope**

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Nov. 1981 700,000

2

# LITTLE RED CORVETTE

Words and Music by
PRINCE



guess I should have known___ by the way you parked your car___ side-ways___
2.(See additional lyrics)

___ that it would-n't last.    See, you're the kind-a per-son that be-

Little Red Corvette - 4 - 1
2893LSMX - 4 - 1
International Copyright Secured    Copyright © 1982 Controversy Music    All Rights Reserved
Made In U.S.A.



lieves in mak-in' out once;— love 'em and leave 'em fast.  I

guess I must be dumb, 'cause you had a poc-ket full of hor-ses,—

Tro-jan, and some of them used.— But it was Sat-ur-day night, I guess that

makes it all—right; and you say, "What have I got to lose?"  1. 2. I say

Little Red Corvette · 4 · 2
2893LSMX · 4 · 2

Little Red Corvette - 4 - 3
2893LSMX - 4 - 3



**Verse 2:** Guess I should have closed my eyes
When you drove me to the place
Where your horses run free,
'Cause I felt a little ill
When I saw all the pictures of the
Jockeys that were there before me.
Believe it or not, I started to worry.
I wondered if I had enough class,
But it was Saturday night.
I guess that makes it all right;
And you say, "Baby, have you got enough gas?"
Oh yeah.
(To Chorus:)

**Chorus 4:**
Little red Corvette; honey, you gotta slow down.
Little red Corvette; 'cause if you don't you're
Gonna run into the ground. . .

Little Red Corvette - 4 - 4
2895LSMX - 4 - 4

Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0309425                         NAME: CONTROVERSY MUSIC

CAE CODE           : 051282502
CLASS              : P
SOCIETY            : ASCAP                   S E E -
DISTRIBUTION       : DOMESTIC & FOREIGN         UNIVERSAL MUSIC CORPORATION
ASCAP STATUS       : CURRENT MEMBER
MEMBERSHIP AGRMNT  : RETURNED SIGNED            M-CODE IS 1388000
ROYALTY HOLD       : FEDERAL EXPRESS
SOC SEC #            XXX-XX-0807
APPLICATION HOLD   : NO

APPLICATION DATE   : 05 / 05 / 1981
ELECTION DATE      : 11 / 24 / 1981
CREDITED DATE      : 04 / 01 / 1981


REPRESENTATIVE     : NELSON PRINCE ROGERS


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT M

Page 3

Additional Certificate (17 U.S.C. 215)

# Certificate
## Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United
States of America or which was first published in the United States of America

This is To Certify that the statements set forth in this certificate have been made
a part of the records of the Copyright Office. In witness whereof the seal of the
Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

**FORM E**

| CLASS | REGISTRATION NO. |
|-------|------------------|
| **E** | Ep 237314 |
|  | DO NOT WRITE HERE |

**1. Copyright Claimant(s) and Address(es):**

Name _____ NIPPER MUSIC

Address _____ 1855 Broadway, New York, New York 10023

Name _____

Address _____

**2. Title:** _____ LIGHT MY FIRE

(Title of the musical composition)

**3. Authors:**

Name _____ THE DOORS ('Robert Krieger)
(Legal name followed by pseudonym if latter appears on the copies) _____ Citizenship: U.S.A. X _____ Other _____
(Check if U.S. citizen) (Name of country)
Domiciled in U.S.A. Yes X No _____ Address c/o Fink, 9777 Wilshire Blvd. Author of music & words
Beverly Hills, Calif. (State which: words, music, arrangement, etc.)

Name _____ THE DOORS (James Morrison)
(Legal name followed by pseudonym if latter appears on the copies) _____ Citizenship: U.S.A. X _____ Other _____
(Check if U.S. citizen) (Name of country)
Domiciled in U.S.A. Yes X No _____ Address c/o Fink (same as above) Author of music & words
(State which: words, music, arrangement, etc.)

Name _____ THE DOORS (John Densmore & Raymond Manzarek)
(Legal name followed by pseudonym if latter appears on the copies) _____ Citizenship: U.S.A. X _____ Other _____
(Check if U.S. citizen) (Name of country)
Domiciled in U.S.A. Yes X No _____ Address c/o Fink (same as above) Author of music & words
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

July 5, 1967
(Month) (Day) (Year)

**(b) Place of Publication:**

UNITED STATES OF AMERICA
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes X No _____ Date of registration Jan. 9, 1967 Registration number Eu 973902
Was work previously published? Yes _____ No _____ Date of publication _____ Registration number _____
Is there any substantial NEW MATTER in this version? Yes _____ No _____ If your answer is "Yes," give a brief general
statement of the nature of the NEW MATTER in this version.

| EXAMINER |
|----------|
|  |

*Complete all applicable spaces on next page*

**6. Deposit account:**

**7. Send correspondence to:**

Name Carole Ingrao, NIPPER MUSIC    Address 1855 Broadway, N.Y., N.Y. 10023

**8. Send certificate to:**

(Type or print name and address)

Name    NIPPER MUSIC

Address    1855 Broadway
_____
(Number and street)

New York, New York 10023
(City)                    (State)                    (ZIP code)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. *The word "Copyright," the abbreviation "Copr.," or the symbol "©."* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.

2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.

3. *The name of the copyright owner (or owners).* Example: © John Doe 1968.
NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

| | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| Application received  OCT 23 1967 | |
| SEP--7-1967    OCT--3--1967 | |
| One copy received | |
| Two copies received | |
| SEP -7 1967 | |
| Fee received | |
| 19288  SEP -7 '67 | |

## ASSIGNMENT

In consideration of the sum of One ($1.00) Dollar and other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned does hereby assign (subject to all of the terms and provisions of all existing agreements between/the parties herein named and The Doors) unto NIPPER MUSIC COMPANY INC. and DOORS MUSIC COMPANY, their successors and assigns, the copyrights in and to the musical compositions listed on the attached schedule, and all of the right, title and interest of the undersigned, vested and contingent, therein and thereto.

IN WITNESS WHEREOF, the undersigned has set its hand this third day of April, 1969.

NIPPER MUSIC COMPANY INC.

By _____
Jac Holzman
President

---

**Copyright Office of the United States of America**

### THE LIBRARY OF CONGRESS
#### WASHINGTON

L969.

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

_____
REGISTER OF COPYRIGHTS

HARRIS
of New York
County
March 30, 1970

Date of Recordation

Apr69

340        Pages
           154-155

IFICATION A (FEB. 1968-15,000)

<u>SCHEDULE</u>

Applicable Compositions:

| <u>Composition:</u> | <u>Copyright Regis. No.:</u> |
|---|---|
| When The Music's Over | Eu 17988 |
| I Can't See Your Face | Eu 17985 |
| My Eyes Have Seen You | Eu 17989 |
| People Are Strange | Eu 9348 |
| Moonlight Drive | Eu 17984 |
| Unhappy Girl | Eu 11420 |
| Love Me Two Times | Eu 17983 |
| You're Lost Little Girl | Eu 17982 |
| Strange Days | Eu 17981 |
| The End | Eu 973904 |
| Take It As It Comes | Eu 950835 (V.1270, P. 416)* |
| End Of The Night | Eu 950836 (V.1270, P. 416)* |
| I Looked At You | Eu 953995 (V.1270, P. 416)* |
| Light My Fire | Eu 973902 |
| Twentieth Century Fox | Eu 953997 (V.1270, P. 416)* |
| The Crystal Ship | Eu 973903 |
| Soul Kitchen | Eu 953996 (V.1270, P. 416)* |
| Break On Through(To The Other Side) | Eu 953998 (V.1270, P. 416)* |
| Five To One | Eu 57930 |
| Yes The River Knows | Eu 57928 |
| We Could Be So Good Together | Eu 17987 |
| My Wild Love | Eu 57931 |
| Spanish Caravan | Eu 57927 |
| The Unknown Soldier | Eu 34152 |
| Wintertime Love | Eu 57925 |
| Summer's Almost Gone | Eu 57929 |
| Not To Touch The Earth | Eu 57924 |
| Love Street | Eu 57926 |
| Hello, I Love You | Eu 57932 |
| Touch Me | Eu 97574 |
| Wild Child | Eu 78083 |
| Wishful Sinful | Eu 78084 |
| Who Scared You | Copyright Pending |

*Compositions previously assigned. Volume and Page No. indicated beside the Copyright Registration number.

*RECORDED: 3/13/70 · Vol 1375 pages 190-198*

THIS AGREEMENT made this 10th day of February 1970, between NIPPER MUSIC COMPANY, INC. (hereinafter referred to as "Nipper") and DOORS MUSIC CO. (hereinafter sometimes referred to as "Doors").

## W I T N E S S E T H :

WHEREAS, John Paul Densmore, Robert Allen Krieger, Raymond D. Manzarek and James Douglas Morrison (hereinafter collectively referred to as the "Writers") heretofore entered into a songwriting contract with Nipper dated as of November 23, 1966 relating to all musical compositions written in whole or in part by Writers or any of them during the term of said songwriting contract (said musical compositions being hereinafter referred to as the "Compositions");

WHEREAS, said songwriting contract provided for the payment to Writers of songwriters' royalties, as more fully set forth therein, and further provided for the payment to Writers of fifty percent (50%) of the "Net Profit From The Compositions" (as said phrase is defined in the songwriting contract;

WHEREAS, Writers heretofore entered into a partnership agreement among themselves to engage in the music publishing business under the fictitious firm name of "Doors Music Co.";

WHEREAS, Writers heretofore assigned to Doors all of their rights to receive their aforementioned share of

"Net Profit From The Compositions" under the songwriting contract;

WHEREAS, the songwriting contract was amended and modified by an agreement dated October 22, 1968 between Nipper and Doors (the songwriting contract, as so amended and modified, being hereinafter referred to as the "Songwriting Contract");

WHEREAS, under the amending and modifying agreement dated October 22, 1968 Nipper agreed that all of the Compositions and all of the copyrights therein and thereto would be jointly owned by Nipper and Doors and pursuant thereto Nipper did in fact cause the Compositions to be assigned and conveyed to Nipper and Doors jointly;

WHEREAS, Doors has presented to Nipper certain claims with respect to its understanding and the understanding of Writers concerning the rights assigned to Nipper pursuant to the Songwriting Contract and concerning certain reversionary rights allegedly retained by Writers or Doors;

WHEREAS, Nipper acknowledges that the Songwriting Contract has, pursuant to its provisions, expired on August 29, 1969;

WHEREAS, Nipper and Doors have mutually agreed that, in view of the claims hereinabove referred to and of the expiration of the Songwriting Contract, it would be to their best interests for Nipper (without acknowledging the validity of the claims made by Writers or Doors) to assign to Doors

-2-

Nipper's remaining interest, if any, in the Compositions
and in all rights therein and thereto, as more fully
provided below.

NOW, THEREFORE, in consideration of the mutual cove-
nants contained herein and for other good and valuable con-
sideration, the receipt of which is hereby acknowledged, the
parties hereto agree as follows:

1. Nipper does hereby give, grant, sell, assign,
transfer and forever set over to Doors all of its right,
title and interest, if any, of any and every kind and character
whatsoever, whether now or hereafter existing, whether or not
now known, recognized or contemplated, in and to the Composi-
tions and all portions thereof, including, without limitation,
the Compositions set forth in Schedule "A" attached hereto and
by this reference made a part hereof, and the complete and un-
conditional and unencumbered title in and to each and every such
Composition, throughout the world, for all purposes whatsoever.

2. Without in any manner limiting or derogating from
the general grant of rights contained in this agreement, Nipper
hereby gives, grants, sells, assigns, transfers and sets over
to Doors all of Nipper's interest, if any, in the entire
worldwide, absolute, unqualified, sole and exclusive common
law rights, copyrights, renewal rights, titles, themes, mecha-
nical reproduction rights, public performance rights, synchro-
nization rights and rights to print, publish and sell printed
editions, all with respect to the Compositions.

-3-

3. Nipper represents and warrants specifically that, except for any rights already owned by Writers or Doors, it is the sole and exclusive owner of all rights whatsoever being conveyed to Doors pursuant to the provisions hereof, in and to the Compositions, including, without limitation, the copyrights, renewal rights, titles and themes of the Compositions; and that, except as enumerated in Schedule "B" hereof, it has not heretofore conveyed, sold, granted, assigned, transferred, mortgaged, encumbered, pledged or hypothecated any of said Compositions or said rights, copyrights, renewal rights, titles or themes and that there is no litigation pending affecting the Compositions or any use thereof except in regard to "Spanish Caravan".

4. Nipper hereby conveys and assigns to Doors all royalties, fees and other monies and all rights to royalties, fees and other monies which have heretofore been earned or accrued with respect to the Compositions or any of them and which have not yet been paid to Nipper and all royalties, fees and other monies and all rights to royalties, fees and other monies which shall hereafter be earned or accrued with respect to the Compositions or any of them. Nipper agrees that it shall promptly pay to Doors any and all such royalties, fees or other monies which may at any time hereafter be received by Nipper. All monies received by Nipper prior to the date of the execution of this agreement shall be disbursed in accordance with the Songwriting Contract.

-4-

5. Nipper hereby appoints Doors its attorney in fact, irrevocably, and for the sole benefit of Doors, to institute and prosecute such proceedings as Doors may deem expedient to protect the rights herein granted or purported to be granted and to effect the recovery by Doors of damage profits, penalties and costs for the infringement of said and to secure to Doors the full benefit of all of the right herein granted or purported to be granted. Doors may at it expense sue in its own name or may use Nipper's name, and option may join Nipper as party plaintiff or defendant in suit or proceeding brought for such purpose or purposes. All actions and causes of action for all past and future infringements of any of the rights granted or purported to granted herein to Doors, and all judgments, damages, profit penalties and costs recovered for such infringement or any of them are hereby assigned to Doors. Nipper hereby acknow ledges that any and all powers of attorney heretofore grant to Nipper by Writers or Doors under the Songwriting Contra otherwise are hereby revoked.

6. Nipper agrees to indemnify Doors for any loss damage or expense it may suffer or incur as a result of any final non-appealable judgment of a court of law or compete jurisdiction in connection with any misrepresentation or breach by Nipper of any provision of this agreement. Door shall give Nipper prompt written notice of any claim or action covered by said indemnity, and Nipper shall have th right to appoint counsel, at its expense, to participate the defense of Doors against said claim or action.

7. Nipper hereby agrees duly to execute, acknowl and deliver and to procure the due execution, acknowledgme

-5-

Revised 1/7/70

and delivery to Doors of any and all additional assignments and other instruments which in the sole judgment of Doors *as prepared by Doors* may be deemed necessary or expedient to effectuate or evidence the purpose or intent of this agreement.

8. All or any part of Doors' rights hereunder may be licensed, transferred or assigned by Doors. All rights, licenses, powers, privileges and authority of Doors hereunder may be exercised by Doors and/or by any person authorized or licensed by Doors to do so, directly or indirectly.

9. Simultaneously herewith Nipper is delivering to Doors the original certificates of copyright registration with respect to all of the Compositions and all other instruments or documents pertaining to such copyrights, true copies of each and every mechanical license, synchronization license, printing license, subpublishing agreement, collection agreement, or any other instrument or document affecting or covering the Compositions or any of them. Nipper shall make available to Doors its books and records pertaining to all royalties, fees and other monies heretofore received with respect to the Compositions or any of them.

10. Doors does hereby confirm and agree that all mechanical licenses heretofore issued by Nipper, including all of those issued to The Elektra Corporation, are hereby ratified and confirmed, and shall remain in full force and effect.

11. (a) Doors agree that they will grant to The Elektra Corporation a mechanical license for each album recorded by the writers as performers for Elektra at an aggregate mechanical royalty rate equal to the difference between 22¢ and any royalty which Elektra is obligated to

-6-

Revised 1/7/70

pay to any other publisher for the right to record other musical compositions embodied in such album.

(b)  Doors agree that they will grant to The Elektra Corporation a mechanical license for each 45 rpm single record recorded by writers as performers at an aggregate mechanical royalty rate equal to the difference between 4¢ and any royalty which Elektra is obligated to any other publisher for the right to record other musical compositions embodied in such 45 rpm single record.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

NIPPER MUSIC COMPANY, INC.

By: _____

DOORS MUSIC CO.

By: _____

-7-

Revised 1/7/70

List of All Musical Compositions Covered

By the Foregoing Agreement Between Nipper

Music Company, Inc. and Doors Music Co.

| Title of Composition: | Copyright Regis. No.: |
|---|---|
| When The Music's Over | Eu 17988 |
| I Can't See Your Face | Eu 17985 |
| My Eyes Have Seen You | Eu 17989 |
| People Are Strange | Eu 9348 |
| Moonlight Drive | Eu 17984 |
| Unhappy Girl | Eu 11420 |
| Love Me Two Times | Eu 17983 |
| You're Lost Little Girl | Eu 17982 |
| Strange Days | Eu 17981 |
| The End | Eu 973904 |
| Take It As It Comes | Eu 950835 (V.1270, P. |
| End Of The Night | Eu 950836 (V.1270, P. |
| I Looked At You | Eu 953995 (V.1270, P. |
| Light My Fire | Eu 973902 |
| Twentieth Century Fox | Eu 953997 (V.1270, P. |
| The Crystal Ship | Eu 973903 |
| Soul Kitchen | Eu 953996 (V.1270, P. |
| Break On Through(To The Other Side) | Eu 953998 (V.1270, P. |
| Five To One | Eu 57930 |
| Yes The River Knows | Eu 57928 |
| We Could Be So Good Together | Eu 17987 |
| My Wild Love | Eu 57931 |
| Spanish Caravan | Eu 57927 |
| The Unknown Soldier | Eu 34152 |
| Wintertime Love | Eu 57925 |
| Summer's Almost Gone | Eu 57929 |
| Not To Touch The Earth | Eu 57924 |
| Love Street | Eu 57926 |
| Hello I Love You | Eu 57932 |
| Touch Me | Eu 97574 |
| Wild Child | Eu 78083 |
| Wishful Sinful | Eu 78084 |
| Who Scared You | Eu 104845 |
| Do It | Eu 127363 |
| Easy Ride | Eu 118132 |
| Runnin' Blue | Eu 127361 |
| Shaman's Blues | Eu 127362 |
| The Soft Parade | Eu 127360 |
| Tell All The People | Eu 118133 |

*Compositions previously assigned.  Volume and Page No.
indicated beside the Copyright Registration number.

Schedule "A"

**1976-1985**

No.

**Rec'd** May 9, 1978

# Agreement Between

JOHN PAUL DENSMORE, ROBERT A. KRIEGER,
RAYMOND D. MANZAREK, COLUMBUS B. COURSON,
PEARL M. COURSON, GEORGE S. MORRISON and
CLARA MORRISON, Co-Partners, doing business as
DOORS MUSIC COMPANY

**AND**

**American Society**
**OF**
**Composers, Authors & Publishers**

**1 LINCOLN PLAZA**
**NEW YORK, N. Y. 10023**

**Dated:** May 25, 1978



4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of distribution and classification as determined by the Classification Committee of each group, in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the *Owner* within his class may be changed.

8. The *Owner* agrees that his classification in the *Society* as determined from time to time by the Classification Committee of his group and/or The Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate classification.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership.

9. "Public Performance" Defined. The term "*public performance*" shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. "Musical Works" Defined. The phrase "*musical works*" shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in U. S. A. v. ASCAP as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in U. S. A. v. ASCAP, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and terms.

SIGNED, SEALED AND DELIVERED, on this........25th....day of.....May.........................................................., 19....78....

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS,

*Society*

By .................................................
President

*Owner*

JOHN PAUL DENSMORE, ROBERT A. KRIEGER, RAYMOND D. MANZAREK, COLUMBUS B. COURSON, PEARL M. COURSON, GEORGE S. MORRISON and CLARA MORRISON, Co-Partners, doing business as DOORS MUSIC COMPANY

By..................................................
Partner

# CERTIFICATE OF REGISTRATION

**FORM RE**



UNITED STATES COPYRIGHT OFFICE

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

RE 713-592

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*



OFFICIAL SEAL

EFFECTIVE DATE OF RENEWAL REGISTRATION

DEC 20 1995

Month    Day    Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (RE/CON).**

## 1 RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM ▼ (See Instructions)

**1** Name ...... ROBERT KRIEGER

Address ...... c/o Fitzgerald Hartley, 50 West Main St., Ventura, CA  93001

Claiming as ...... AUTHOR

(Use appropriate statement from instructions)

**2** Name ......

Address ......

Claiming as ......

**3** Name ......

Address ......

Claiming as ......

## 2 TITLE OF WORK IN WHICH RENEWAL IS CLAIMED ▼

LIGHT MY FIRE

**RENEWABLE MATTER ▼**

WORDS AND MUSIC

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or other composite work, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:    Volume ▼    Number ▼    Issue Date ▼

## 3 AUTHOR(S) OF RENEWABLE MATTER ▼

THE DOORS (JAMES MORRISON, ROBERT KRIEGER,
JOHN DENSMORE AND RAYMOND MANZAREK)

## 4 ORIGINAL REGISTRATION NUMBER ▼ ORIGINAL COPYRIGHT CLAIMANT ▼

Ep 237314    NIPPER MUSIC

**ORIGINAL DATE OF COPYRIGHT**

If the original registration for this work was made in published form, give:

DATE OF PUBLICATION:    July 5, 1967

(Month)    (Day)    (Year)

OR

If the original registration for this work was made in unpublished form, give:

DATE OF REGISTRATION:

(Month)    (Day)    (Year)

**MORE ON BACK ▶**    • Complete all applicable spaces (numbers 5-8) on the reverse side of this page.    • See detailed instructions.    • Sign the form at space 7.

DO NOT WRITE HERE

Page 1 of _____ pages

0796255445

# Light My Fire

Words & Music by The Doors



© Copyright 1967 by NIPPER MUSIC COMPANY, INC.    All Rights Reserved





```
MBR18DS            P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0382525                       NAME: DOORS MUSIC COMPANY


CAE CODE           : 041943490
CLASS              : P
SOCIETY            : ASCAP
DISTRIBUTION       : DOMESTIC & FOREIGN
ASCAP STATUS       : CURRENT MEMBER
MEMBERSHIP AGRMNT  : RETURNED SIGNED
ROYALTY HOLD       : NO HOLD
SOC SEC #            XXX-XX-4449
APPLICATION HOLD   : NO

APPLICATION DATE   : 05 / 08 / 1978
ELECTION DATE      : 10 / 15 / 1969
CREDITED DATE      :    /    /

TRANSFER           : 05 / 25 / 1978
REPRESENTATIVE     : GREENE ROBERT L


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT N



**"Beck, Cheryl"**
**<cbeck@manatt.com>**
01/26/2007 10:11 PM

To: <MJenkins@ascap.com>
cc:
Subject: RE: "BIG YELLOW TAXI"  (Joni Mitchell)

Hi Mary.  I am well thank you.  How have you been?  I hope you had a
wonderful holiday.

"Big Yellow Taxi" is now published by Crazy Crow Music. As all Siquomb
compositions came up for renewal, we moved them to the Crazy Crow
catalog.  Since this is a dba of Joni's, we did not prepare any
assignments.

I just checked ACE and saw that ASCAP's records still show Siquomb
Publishing for "Big Yellow Taxi".  We will notify Sony/ATV that they
need to send ASCAP a letter identifying which songs are now in the Crazy
Crow catalog.

Hope this helps and I'm glad this came up so we can get everything
squared away.

Let me know if you need anything else.

Best,

Cheryl


Cheryl Beck
Copyright Administrator
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Boulevard
Los Angeles, CA 90064
Telephone:  (310) 231-5461 (direct dial)
Fax:  (310) 312-4224
Email:  cbeck@manatt.com


CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents,
files or previous e-mail messages attached to it, may contain
confidential information that is legally privileged. If you are not the
intended recipient, or a person responsible for delivering it to the
intended recipient, you are hereby notified that any disclosure,
copying, distribution or use of any of the information contained in or
attached to this message is STRICTLY PROHIBITED. If you have received
this transmission in error, please immediately notify us by reply e-mail
at cbeck@manatt.com or by telephone at (310) 231-5461, and destroy the
original transmission and its attachments without reading them or saving
them to disk. Thank you.

-----Original Message-----
From: MJenkins@ascap.com [mailto:MJenkins@ascap.com]
Sent: Friday, January 26, 2007 9:34 AM
To: Beck, Cheryl
Subject: "BIG YELLOW TAXI" (Joni Mitchell)

Hi Cheryl,

     Hope all is well with you.

     A while ago, you provided me with copyright registrations



## MEMBERSHIP AGREEMENT

# ASCAP

## AGREEMENT BETWEEN

JONI MITCHELL dba CRAZY CROW MUSIC

AND

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

ONE LINCOLN PLAZA  NEW YORK, NY 10023
PHONE (212) 621-6000



**ASCAP MEMBERSHIP AGREEMENT**

**Agreement** made between the Undersigned (for brevity called "*Owner*") and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called "*Society*"), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form); provided, how-

ever, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performances dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interest under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs," or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at anytime and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this *Agreement* shall be for a period commencing on the date hereof and continuing indefinitely thereafter unless terminated by either party in accordance with the Articles of Association.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as

provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner*'s true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise of refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

5. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time.

8. The *Owner* agrees that the apportionment and distribution of royalties by the *Society* as determined from time to time by the Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society*'s membership a just, fair, equitable and accurate apportionment and distribution of royalties.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined.** The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined.** The phrase *"musical works"* shall be construed to mean musical composition, and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in *U.S.A. v. ASCAP* as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in *U.S.A. v. ASCAP* dated March 14, 1950, and (c) the provisions of the Articles of association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this _____ day of _____ 19 ___ .

Owner { JONI MITCHELL d/b/a CRAZY CROW MUSIC

Society { AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,
By _____
President and Chairman of the Board

Page 5

# Certificate

## Registration of a Claim to Copyright

in a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*George D. Cary*

Register of Copyrights
United States of America



| CLASS | REGISTRATION NO. |
|---|---|
| E | E P 296797 |
| | DO NOT WRITE HERE |



FORM E

**1. Copyright Claimant(s) and Address(es):**

Name _SIQUOMB PUBLISHING CORP._

Address _55 LIBERTY STREET, N.Y. N.Y. 10005_

Name _____

Address _____

**2. Title:** _BIG YELLOW TAXI_
(Title of the musical composition)

**3. Authors:**

Name _JONI MITCHELL_   Citizenship _U.S.A._
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)
Domiciled in U. S. A. Yes ☒ No ☐ Address _55 LIBERTY ST NYC_   Author of _WORDS + MUSIC_
(State which: words, music, arrangement, etc.)

Name WB Music Corp., employer for hire of Al Kohn   Citizenship _U.S.A._
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)
arr., guitar
Domiciled in U. S. A. Yes ☒ No ☐ Address _6922 Hollywood Blvd. Hollywood, Cal._   Author of chords, piano acc
(State which: words, music, arrangement, etc.)

Name _____   Citizenship _____
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)
Domiciled in U. S. A. Yes ☐ No ☐ Address _____   Author of _____
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

_MAY 5 1970_

**(b) Place of Publication:**

_CANADA + U.S.A._
(Name of country)

**5. (a) Previous Registration or Publication:**

☒ Previous registration _JAN 7 1970 EU 155770_   ☐ Previous publication

**(b) New Matter in This Version:**

Piano accompaniment, guitar chords with voice line.

*Complete all applicable spaces on next page*

6. Deposit account:

7. Send correspondence to:*
Name SIQUOMB PUBLISHING CORP. Address 55 LIBERTY ST. NYC

8. Send certificate to:**

(Type or print name and address)

Name SIQUOMB PUBLISHING CORP
Address 55 LIBERTY STREET (Number and street)
NEW YORK (City) (Zone) N.Y. 10005 (State)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U. S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

*—Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

*—Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical composition should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington 25, D. C., one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $4. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*

1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. *The word "Copyright," the abbreviation "Copr.," or the symbol ©.* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1962.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

**FOR COPYRIGHT OFFICE USE ONLY**

| | |
|---|---|
| Application received APR 29 1971 MAR 13 1972 | *In notice: 1969, 1970. |
| One copy received | **Mail cert. to: WARNER BROS. MUSIC 6922 Hollywood Blvd., Suite 704 Hollywood Calif. |
| Two copies received APR 29 1971 | Authority letter received March 13, 1972 |
| Fee received $6.00 97429 APR29'71 | |

(Dec. 1963—150,000)

U.S. GOVERNMENT PRINTING OFFICE : 1963 O—714-802

# CERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America



**FORM RE**
For Renewal of a Work
UNITED STATES COPYRIGHT OFFICE

RE 781-417

EFFECTIVE DATE OF RENEWAL REGISTRATION
...... JAN. 2 0 1998 ........
(Month)        (Day)        (Year)

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

## (1) Renewal Claimant(s)

RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM: (See Instructions)

**1**
Name   Joni Mitchell   c/o Manatt, Phelps & Phillips
Address   11355 West Olympic Boulevard, Los Angeles, CA 90064
Claiming as   Author
(Use appropriate statement from instructions)

**2**
Name
Address
Claiming as
(Use appropriate statement from instructions)

**3**
Name
Address
Claiming as
(Use appropriate statement from instructions)

## (2) Work Renewed

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:**

Big Yellow Taxi

**RENEWABLE MATTER:**

Words and Music   (This is the first publication of the underlying words and music.)

**CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:**
Title of periodical or composite work.
If a periodical or other serial, give: Vol.                No.                Issue Date

**AUTHOR(S) OF RENEWABLE MATTER:**

Joni Mitchell (words and music)
WB Music Corp. employer for hire of Al Kohn (arrangement)

## (4) Facts of Original Registration

**ORIGINAL REGISTRATION NUMBER:**
Ep 296797

**ORIGINAL COPYRIGHT CLAIMANT:**
Siquomb Publishing Corp.

**ORIGINAL DATE OF COPYRIGHT:** in notice: 1969

• If the original registration for this work was made in published form, give:
DATE OF PUBLICATION. May ... 5 .. 1970
(Month)      (Day)      (Year)

OR

• If the original registration for this work was made in unpublished form, give:
DATE OF REGISTRATION
(Month)      (Day)      (Year)

This form was electronically produced by Elite Federal Forms® Forms Manager

| | | EXAMINED BY: [signature] | RENF ☐ APPLICATION RECEIVED: | |
|---|---|---|---|---|
| •Amended by Copyright Office | | CHECKED BY: ....... | JAN 20 1998 | FOR COPYRIGH OFFICE USE ONLY |
| | | CORRESPONDENCE: ☐ YES | REMITTANCE NUMBER AND DATE: | |
| | | DEPOSIT ACCOUNT FUNDS USED: ☐ | | |

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON).

**⑤** Renewal for Group of Works

**1**
Title of Contribution: .......
Title of Periodical: .............................. Vol. ..... No. .... Issue Date ..
Date of Publication: ......... (Month) (Day) (Year) ..... Registration Number ....

**2**
Title of Contribution: ........
Title of Periodical: .............................. Vol. ...... No. ..... Issue Date .............
Date of Publication: ......... (Month) (Day) (Year) ..... Registration Number ........

**3**
Title of Contribution: .
Title of Periodical: .. Vol. .. No. ...... Issue Date
Date of Publication: ............. (Month) (Day) (Year) ..... Registration Number .......

**4**
Title of Contribution: ...............
Title of Periodical: .............. Vol. .. No. ......... Issue Date ...
Date of Publication: ......... (Month) (Day) (Year) Registration Number ....

**5**
Title of Contribution: ...........................
Title of Periodical: ............. Vol. ........... No. ...... Issue Date
Date of Publication: .......... (Month) (Day) (Year) Registration Number ..........

**6**
Title of Contribution: ..........
Title of Periodical: . .... Vol. . No. .. Issue Date .....
Date of Publication: ..... (Month) (Day) (Year) Registration Number .

**DEPOSIT ACCOUNT:** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account:

Name: ................... ...........................
Account Number: ..................................

**CORRESPONDENCE:** Give name and address to which correspondence about this application should be sent:
Cheeryl Beck
Name: .. Manatt, Phelps & Phillips ........
Address: .. 11355 W. Olympic Boulevard ...... (Apt.)
.... Los Angeles, CA 90064 ..........
(City) (State) (Zip)

**⑥** Fee and Correspondence

**CERTIFICATION*** I, the undersigned, hereby certify that I am the. (Check one)

☐ renewal claimant ☒ duly authorized agent of: .. Joni Mitchell .............................
(Name of renewal claimant)

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature (X) [signature]

Typed or printed name: .. Judie Castano .
Date ............... January 5, 1998

**⑦** Certification (Application must be signed)

*17 U.S.C § 506(e): FALSE REPRESENTATION — Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

**MAIL CERTIFICATE TO**

Manatt, Phelps & Phillips .......................
(Name)

11355 W. Olympic Boulevard ..... ATTN: Cheryl Beck .
(Number, Street and Apartment Number)

Los Angeles, CA 90064-1614 ...
(City) (State) (ZIP code)

(Certificate will be mailed in window envelope)

**⑧** Address for Return of Certificate

Re 781 - 417

Page 3

# Certificate
## Registration of a Claim to Copyright

in a musical composition the author of which is a citizen or domiciliary of the United
States of America or which was first published in the United States of America

This Is To Certify that the statements set forth in this certificate have been made
a part of the records of the Copyright Office. In witness whereof the seal of the
Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**FORM E**

| CLASS | REGISTRATION NO. |
|---|---|
| **E** | **Eu 155770** |
| | DO NOT WRITE HERE |



**1. Copyright Claimant(s) and Address(es):**

Name    SIQUOMB PUBLISHING CORP.

Address    55 LIBERTY STREET, NEW YORK N.Y. 10005

Name _____

Address _____

**2. Title:**    BIG YELLOW TAXI
(Title of the musical composition)

**3. Authors:**

Name    JONI MITCHELL
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship: U.S.A. ✓    Other _____ (Name of country)
(Check if U.S. citizen)

Domiciled in U.S.A. Yes ✓ No ____ Address    55 LIBERTY ST N.Y.C.    Author of    WORDS & MUSIC
(State which: words, music, arrangement, etc.)

Name _____
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship: U.S.A. _____    Other _____ (Name of country)
(Check if U.S. citizen)

Domiciled in U.S.A. Yes ____ No ____ Address _____    Author of _____
(State which: words, music, arrangement, etc.)

Name _____
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship: U.S.A. _____    Other _____ (Name of country)
(Check if U.S. citizen)

Domiciled in U.S.A. Yes ____ No ____ Address _____    Author of _____
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

_____
(Month)    (Day)    (Year)

**(b) Place of Publication:**

_____
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes _____ No _____ Date of registration _____ Registration number _____

Was work previously published? Yes _____ No _____ Date of publication _____ Registration number _____

Is there any substantial **NEW MATTER** in this version? Yes _____ No _____ If your answer is "Yes" give a brief general
statement of the nature of the **NEW MATTER** in this version.

| EXAMINER |
|---|

*Complete all applicable spaces on next page*

6. Deposit account:

7. Send correspondence to:
Name SIQUOMB PUBLISHING CORP.    Address 55 LIBERTY STREET, N.Y.C.

8. Send certificate to:

(Type or print name and address)

Name SIQUOMB PUBLISHING CORP.
Address 55 LIBERTY STREET
              (Number and street)
NEW YORK, N.Y.        10005
(City)          (State)          (ZIP code)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

*—Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

*—Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical composition should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. *The word "Copyright," the abbreviation "Copr.," or the symbol "©."* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.

2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.

3. *The name of the copyright owner (or owners).* Example: © John Doe 1968.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br>JAN - 7 1970 | |
| One copy received<br>JAN - 7 1970 | |
| Two copies received | |
| Fee received<br>56159 JAN-7 70 | |

U.S. GOVERNMENT PRINTING OFFICE: 1968-O-320-471

Nov. 1968—250,000

Page 4

# CERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America



**FORM RE**
For Renewal of a Work
UNITED STATES COPYRIGHT OFFICE



RE 788-800

EFFECTIVE DATE OF RENEWAL REGISTRATION

...JAN. 2 0 1998.........
(Month) (Day) (Year)

---

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

## ① Renewal Claimant(s)

RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM:(See Instructions)

**1**
Name  Joni Mitchell    c/o Manatt, Phelps & Phillips
Address  11355 West Olympic Boulevard, Los Angeles, CA 90064
Claiming as  Author
(Use appropriate statement from Instructions)

**2**
Name
Address
Claiming as
(Use appropriate statement from Instructions)

**3**
Name
Address
Claiming as
(Use appropriate statement from Instructions)

## ② Work Renewed

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:**

Big Yellow Taxi

**RENEWABLE MATTER:**

Words and Music

**CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:**
Title of periodical or composite work:
If a periodical or other serial, give: Vol.                 No.                 Issue Date

## ③ Author(s)

**AUTHOR(S) OF RENEWABLE MATTER:**

Joni Mitchell (words and music)

## ④ Facts of Original Registration

**ORIGINAL REGISTRATION NUMBER:**     **ORIGINAL COPYRIGHT CLAIMANT:**

Eu 155770                             Siquomb Publishing Corp.

**ORIGINAL DATE OF COPYRIGHT:**
• If the original registration for this work was made in published form, give:
DATE OF PUBLICATION:
(Month) (Day) (Year)
OR
• If the original registration for this work was made in unpublished form, give:
DATE OF REGISTRATION: January     7,     1970.
(Month) (Day) (Year)

| EXAMINED BY: | | RENT | L APPLICATION RECEIVED: | | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|---|---|---|---|
| CHECKED BY: | | JAN 20 1998 | | | |
| CORRESPONDENCE: ☐ YES | | | REMITTANCE NUMBER AND DATE: | | |
| DEPOSIT ACCOUNT FUNDS USED: ☐ | | | | | |

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON).

**5**
Renewal for Group of Works

**1**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**2**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**3**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**4**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**5**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**6**
Title of Contribution: ...........................................................
Title of Periodical: ................................ Vol. .......... No. .......... Issue Date ..........
Date of Publication: ............................ Registration Number ..........
(Month)   (Day)   (Year)

**DEPOSIT ACCOUNT:** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account:

Name: ..........................................

Account Number: ..........................................

**CORRESPONDENCE:** Give name and address to which correspondence about this application should be sent:
Name: Cheryl Beck
Manatt, Phelps & Phillips
Address: 11355 W. Olympic Boulevard  (Apt.)
Los Angeles, CA 90064
(City)   (State)   (Zip)

**6**
Fee and Correspondent

**CERTIFICATION*** I, the undersigned, hereby certify that I am the: (Check one)

☐ renewal claimant  ☒ duly authorized agent of: Joni Mitchell
(Name of renewal claimant)

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) ..................................

Typed or printed name: Eddie Caetano

Date: January 5, 1998

**7**
Certification (Application must be signed)

*17 U.S.C. § 506(e): FALSE REPRESENTATION — Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

**MAIL CERTIFICATE TO**

Manatt, Phelps & Phillips
(Name)

11355 W. Olympic Boulevard  ATTN: Cheryl Beck
(Number, Street and Apartment Number)

Los Angeles, CA 90064-1614
(City)   (State)   (ZIP code)

(Certificate will be mailed in window envelope)

**8**
Address for Return of Certificate

Re 780-800



**MEMBERSHIP
AGREEMENT**

ASCAP

## AGREEMENT BETWEEN

SIQUOMB PUBLISHING CORP

AND
AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

ONE LINCOLN PLAZA  NEW YORK, NY  10023
PHONE (212) 621-6000

Case 1:09-cv-07074-VM-IKIPGM   Document 41-5   Filed 00/00/00   Page 207 of 402



**ASCAP MEMBERSHIP AGREEMENT**

**Agreement** made between the Undersigned (for brevity called "*Owner*") and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called "*Society*"), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form); provided, how-

ever, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic p rformances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performances dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interest under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs," or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at anytime and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this *Agreement* shall be for a period commencing on the date hereof and continuing indefinitely thereafter unless terminated by either party in accordance with the Articles of Association.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as

provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise of refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time.

8. The *Owner* agrees that the apportionment and distribution of royalties by the *Society* as determined from time to time by the Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate apportionment and distribution of royalties.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined.** The term "*public performance*" shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined.** The phrase "*musical works*" shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in *U.S.A. v ASCAP* as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in *U.S.A. v. ASCAP*, dated March 14, 1950, and (c) the provisions of the Articles of association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this _____ day of _____ 19 _____ .

Owner { SIQUOMB PUBLISHING CORP.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS.

Society { By _____

President and Chairman of the Board

2

# BIG YELLOW TAXI

Words and Music by
JONI MITCHELL



© 1970, renewed 1998, Crazy Crow Music (BMI)
Used By Permission. All Rights Reserved. International Copyright Secured.

06038-S-1

3



4



06038-3-3

Litho in U.S.A.

870/0/25006

```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0039872                       NAME: SIQUOMB PUBLISHING CORP

CAE CODE           : 035208506
CLASS              : P
SOCIETY            : ASCAP                    S E E -
DISTRIBUTION       : DOMESTIC & FOREIGN          SONY/ATV TUNES LLC
ASCAP STATUS       : CURRENT MEMBER
MEMBERSHIP AGRMNT  : RETURNED SIGNED             M-CODE IS 0031935
ROYALTY HOLD       : GROUP MAILING
SOC SEC #            XXX-XX-8539
APPLICATION HOLD   : NO

APPLICATION DATE   : 08 / 21 / 1997
ELECTION DATE      : 06 / 27 / 1997
CREDITED DATE      : 10 / 01 / 1996

BMI RELEASE EFF    : 06 / 30 / 1997
REPRESENTATIVE     : MITCHELL JONI


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT O

# CERTIFICATE OF COPYRIGHT REGISTRATION



**OFFICIAL SEAL**

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
*United States of America*

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA 215-907

| PA | PAU |

EFFECTIVE DATE OF REGISTRATION

JUL 02 1984

| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

JUMP

**PREVIOUS OR ALTERNATIVE TITLES ▼**

None

**NATURE OF THIS WORK ▼** See instructions

Words and Music

## 2

**NAME OF AUTHOR ▼**

a. Van Halen Music Company

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ U.S.A. }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

b.

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____ }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

c.

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____ }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1983 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** ❋
Complete this information ONLY if this work has been published.
Month ▶ January Day ▶ 9 Year ▶ 1984
U.S.A. ◀ Nation

## 4

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼

Van Halen Music Company
c/o Bushkin, Gaims, Gaines & Jonas
2029 Century Park East, 25th Floor
Los Angeles, California 90067

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼

APPLICATION RECEIVED
JUL -2 1984
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL -2 1984

REMITTANCE NUMBER AND DATE
251297 JUL 28 4

*DO NOT WRITE HERE — OFFICE USE ONLY*

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions   • Sign the form at line 8

DO NOT WRITE HERE

EXAMINED BY

CHECKED BY

FORM PA

*Date in notice = 1983

PA     215-907

| CORRESPONDENCE | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| ☐ Yes | |
| ☐ DEPOSIT ACCOUNT FUNDS USED | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION**   Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a.  **Preexisting Material**   Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

See instructions before completing this space.

b.  **Material Added to This Work**   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                          **Account Number** ▼

**7**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

Fredric W. Ansis, Esq.
Bushkin, Gaims, Gaines & Jonas
2029 Century Park East, 25th Floor
Los Angeles, California 90067

Be sure to give your daytime phone ◄ number.

                    Area Code & Telephone Number ►   (213) 553-6666

**CERTIFICATION\***   I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   Van Halen Music Company
                    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

       David Lee Roth                                    date ► June 27, 1984

       Handwritten signature (X) ▼

**MAIL CERTIFI-CATE TO**

| Name ▼   Van Halen Music Company |
|---|
| c/o Bushkin, Gaims, Gaines & Jonas |
| Number/Street/Apartment Number ▼   2029 Century Park East, 25th Floor |
| City/State/ZIP ▼  Los Angeles, California 90067 |
| Attention:  Fredric W. Ansis, Esq. |

**Certificate will be mailed in window envelope**

**Have you:**
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to *Register of Copyrights*?
• Enclosed your deposit material with the application and fee?
**MAIL TO:** Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**9**

\* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Nov. 1983—300,000

☆U.S. GOVERNMENT PRINTING OFFICE: 1983: 421-278/508

3

# JUMP

Words and Music by
EDWARD VAN HALEN, ALEX VAN HALEN,
MICHAEL ANTHONY and DAVID LEE ROTH



© 1983 VAN HALEN MUSIC COMPANY
All Rights Reserved







7









```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
M-CODE:  1396475                       NAME: VAN HALEN MUSIC


CAE CODE          : 075072677
CLASS             : P
SOCIETY           : ASCAP                  S E E -
DISTRIBUTION      : DOMESTIC & FOREIGN       W B MUSIC CORP
ASCAP STATUS      : CURRENT MEMBER
MEMBERSHIP AGRMNT : RETURNED SIGNED          M-CODE IS 1420280
ROYALTY HOLD      : GROUP MAILING
SOC SEC #           XXX-XX-6597
APPLICATION HOLD  : NO

APPLICATION DATE  : 04 / 25 / 1979    BOARD DATE        : 05 / 24 / 1979
ELECTION DATE     : 02 / 16 / 1978
CREDITED DATE     : 07 / 01 / 1977


REPRESENTATIVE    : VANHALEN EDWARD


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT P

Additional Certificate (17 U.S.C. 706)    **FORM E**

# Certificate

## Registration of a Claim to Copyright

in a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United State of America

**This Is To Certify** that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

| CLASS | REGISTRATION NO. |
|---|---|
| **E** | Ep 325108 |
| | DO NOT WRITE HERE |

*David L. Ladd*
**Register of Copyrights**
**United States of America**

**1. Copyright Claimant(s) and Address(es):**

Name ........ AMERICAN BROADCASTING MUSIC, INC.

Address ........ 8255 Beverly Boulevard - Los Angeles, California 90048

Name ........

Address ........

**2. Title:** ........ RIKKI, DON'T LOSE THAT NUMBER
                      (Title of the musical composition)

**3. Authors:**

(As Employer for Hire)

Name .. American Broadcasting Music, Inc. ........ Citizenship: U.S.A. _X_  Other ........
          (Legal name followed by pseudonym if latter appears on the copies)    (Check if U.S. citizen)    (Name of country)

Domiciled in U.S.A.  Yes _X_ No ____  Address 8255 Beverly Boulevard ........ Author of Piano Arrangement
                                              Los Angeles, California    (State which: words, music, arrangement, etc.)

Name ........
          (Legal name followed by pseudonym if latter appears on the copies)    Citizenship: U.S.A. ____  Other ........
                                                                                 (Check if U.S. citizen)    (Name of country)

Domiciled in U.S.A.  Yes ____ No ____  Address ........ Author of ........
                                                         (State which: words, music, arrangement, etc.)

Name ........
          (Legal name followed by pseudonym if latter appears on the copies)    Citizenship: U.S.A. ____  Other ........
                                                                                 (Check if U.S. citizen)    (Name of country)

Domiciled in U.S.A.  Yes ____ No ____  Address ........ Author of ........
                                                         (State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

........ May ____ 14 ____ 1974 ........
         (Month)   (Day)   (Year)

**(b) Place of Publication:**

........ Toronto, Canada ........
         (Name of country)

**5. Previous Registration or Publication:**

Was work previously registered?  Yes _X_ No ____  Date of registration ... 3/18/74 ...  Registration number ... EU 469054

Was work previously published?  Yes ____ No _X_  Date of publication ........  Registration number ........

Is there any substantial **NEW MATTER** in this version?  Yes _X_ No ____  If your answer is "Yes," give a brief general statement of the nature of the **NEW MATTER** in this version.

........ Piano Arrangement ........

| EXAMINER |
|---|
| |

*Complete all applicable spaces on next page*

**6. Deposit account:**

AMERICAN BROADCASTING MUSIC, INC.

**7. Send correspondence to:**

Name _____ same as below _____    Address _____

**8. Send certificate to:**

(Type or print name and address)

Name    AMERICAN BROADCASTING MUSIC, INC.

Address    8255 Beverly Boulevard    ATTN:  KERRY COWIN
(Number and street)

Los Angeles, California    90048
(City)        (State)        (ZIP code)

## Information concerning copyright in musical compositions

*When to Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

—*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

—*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How to Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned so do not send your only copy.

*Procedure to Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How to Secure Copyright in a Published Musical Composition:*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that

all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:
1. *The word "Copyright," the abbreviation "Copr.,"* or the symbol ©. Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1970.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br>MAY 28. 1974 | |
| One copy received | |
| Two copies received<br>MAY 28. 1974 | |
| Fee received | |

U.S. GOVERNMENT PRINTING OFFICE:1970—O-403-636    Nov. 1970—500,000    *Page 4*

# FORM RE
**For Renewal of a Work**
UNITED STATES COPYRIGHT OFFICE



RE 851-845

EFFECTIVE DATE OF RENEWAL REGISTRATION

**DEC 3 1 2001**
Month   Day   Year



124399976

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (RE/CON).**

## 1

**RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM ▼**   (See Instructions)

**1**
Name  American Broadcasting Music, Inc., employer for hire of Walter Becker and Donald Fagen

Address  c/o Universal Music Publishing Group, 2440 Sepulveda Blvd., Los Angeles, CA 90064

Claiming as  proprietor of copyright in a work made for hire
(Use appropriate statement from Instructions)

**2**
Name

Address

Claiming as

**3**
Name

Address

Claiming as

## 2

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED ▼**

RIKKI, DON'T LOSE THAT NUMBER
(words & music: Walter Becker & Donald Fagen)

**RENEWABLE MATTER ▼**

arrangement

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or other composite work, give information about the collective work in which the contribution appeared.          Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼          Number ▼          Issue Date ▼

## 3

**AUTHOR(S) OF RENEWABLE MATTER ▼**

American Broadcasting Music, Inc., employer for hire of Walter Becker and Donald Fagen

## 4

**ORIGINAL REGISTRATION NUMBER ▼**          **ORIGINAL COPYRIGHT CLAIMANT ▼**

EP 325108                              American Broadcasting Music, Inc.

**ORIGINAL DATE OF COPYRIGHT**
If the original registration for this work was made in published form, give:          If the original registration for this work was made in unpublished form, give:

DATE OF PUBLICATION:     05-14-1974          OR     DATE OF REGISTRATION:
(Month)     (Day)     (Year)                    (Month)     (Day)     (Year)

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-8) on the reverse side of this page.          **DO NOT WRITE HERE**
                      • See detailed instructions.          • Sign the form at space 7.          Page 1 of **2** pages

This form was electronically produced by Elite Federal Forms, Inc.

| | |
|---|---|
| RENEWAL APPLICATION RECEIVED | FORM RE |
| DEC 31 2001 | |
| CORRESPONDENCE ☐ YES | FOR COPYRIGHT OFFICE USE ONLY |
| EXAMINED BY 𝒦 | |
| CHECKED BY | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET (RE/CON).**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON). **5**

**1**
Title of Contribution: .......................................................................................................................................
Title of Periodical: ........................................ Vol: .......... No: .......... Issue Date: ...............
Date of Publication: ........................................ Registration Number: .......................................
                     (Month)   (Day)   (Year)

**2**
Title of Contribution: .......................................................................................................................................
Title of Periodical: ........................................ Vol: .......... No: .......... Issue Date: ...............
Date of Publication: ........................................ Registration Number: .......................................
                     (Month)   (Day)   (Year)

**3**
Title of Contribution: .......................................................................................................................................
Title of Periodical: ........................................ Vol: .......... No: .......... Issue Date: ...............
Date of Publication: ........................................ Registration Number: .......................................
                     (Month)   (Day)   (Year)

**4**
Title of Contribution: .......................................................................................................................................
Title of Periodical: ........................................ Vol: .......... No: .......... Issue Date: ...............
Date of Publication: ........................................ Registration Number: .......................................
                     (Month)   (Day)   (Year)

**DEPOSIT ACCOUNT:** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account. **6**

Name     Universal Music Publishing Group

Account Number     DAO 65471

**CORRESPONDENCE:** Give name and address to which correspondence about this application should be sent.

Name     Lisa Lippman-LeMone c/o Universal Music Publishing

Address     2440 Sepulveda Blvd., Suite 100                (Apt)

Los Angeles,               CA          90064
(City)                     (State)     (ZIP)

Area Code and Telephone Number ▶     (310) 235-4733

Be sure to give your daytime phone number ◀

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the: (Check one) **7**
☐ renewal claimant    ☒ duly authorized agent of _____ renewal claimant(s)
                                              (Name of renewal claimant) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼                                    Date ▼
         Lisa Lippman-LeMone                              01-02-2002

☞  Handwritten signature (X) ▼    *Lisa Lippman-LeMone*     12/31/01  PHR

**MAIL CERTIFI-CATE TO**

Name ▼
         Lisa Lippman-LeMone c/o Universal Music Publishing Group
Number/Street/Apt ▼
         2440 Sepulveda Blvd., Suite 100
City/State/ZIP ▼
         Los Angeles, CA 90064

**Certificate will be mailed in window envelope**

**8**

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 7

**SEND ALL ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $45 filing fee in check or money order payable to Register of Copyrights

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.



# Copyright Office of the United States of America
## THE LIBRARY OF CONGRESS

THIS IS TO CERTIFY that the attached is a true copy of the instrument recorded in the Copyright Office records in Volume 1711, pages 395 through 431 on March 13, 1979.

IN WITNESS WHEREOF, the seal of this Office is affixed hereto on November 12, 1980.

David L. Ladd
Register of Copyrights

By: Dennis R. Everett
Head, Certifications &
Documents Section
Information & Reference
Division

C-82
Feb. 1972—8,000

TO CERTIFY THAT THE ATTACHED DOCUMENT
RDED IN THE COPYRIGHT OFFICE ON THE DATE
E PLACE SHOWN BELOW.
RTIFICATE IS ISSUED UNDER THE SEAL OF THE

KNOW ALL MEN BY THESE PRESENTS:

The undersigned:

Name:    AMERICAN BROADCASTING MUSIC, INC.

Address:    8255 Beverly Blvd. - Los Angeles, Ca. 90048

Name:

Address:

("Assignor(s)")

for good and valuable consideration now received, hereby sells and assigns unto:

Name:    MCA MUSIC A DIV. OF MCA INC.    (A DELAWARE CORPORATION)

Address:    100 Universal City Plaza - Universal, Ca. 91608

("Assignee")

and its succesors and assigns forever, the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of the undersigned Assignors in and to, the following musical composition(s) which was (were) written by the person(s) herein specified:

Title(s)                    Writer(s)

SEE ATTACHED SCHEDULE "A"

THIS INSTRUMENT is subject to all the terms and conditions of the Agreement dated    January 31 , 19 79 between Assignor(s) and Assignee.

DATED: 3/4/79                    AMERICAN BROADCASTING MUSIC, INC.

STATE OF California )

COUNTY OF Los Angeles )    BY: Don Bied

On this 4th day of March , 1979, before me came Don Biederman to me known to be the individual(s) described in and who executed the foregoing instrument, and duly acknowledged that he executed the same.

OFFICIAL SEAL
BERYL L. SELIGMAN
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires DEC 3, 1982

Beryl L. Seligman
Notary Public

| Title | Names | |
|---|---|---|
| YEAR BOOK ... LAGUN | CROCE, J. | ABM |
| ✗RECKLESS ROOSTER MARCH | MERRILL, B. | ABM |
| ✗REO | PHILLIPS, D. | ABM |
| ✓REO IS RED | | |
| ✗REO ROADSTER | WEST, P. T. | ABM |
| ✓REELIN' IN THE YEARS | GALE, SCOTT | ABM |
| | BECKER, W. | ABM |
| | FAGEN, D. | |
| ✗REINCARNATION | DANOFF, W. | ABM |
| ✗RELAX | BONAMBA, B. | ABM |
| ✗RENDEZVOUS WITH FREEDOM | DUFFY, J. | ABM |
| ✗REPRISE | SHANKAR, R. | ABM |
| ✓REST IS UP TO YOU, THE | CHARTIAN, S. | ABM |
| | CHARTIAN, M. | |
| ✗RICH MAN BLUES | GRASSO, T. | ABM |
| ✓RICHARD AND ME | JONNIE, C. | |
| | PISTILLI | ABM |
| ✓RIDDLE OF THE MAYAN CAVE | WEST | |
| ✗RIDE, RIDE, RIDE | ELLIOTT, C. | ABM |
| ✗RIG-A-MAROLE | LOGGINS, K. | ABM |
| | DOUNA, D | ABM |
| ✓RIGHT FROM THE START | PALMER, D | |
| | CHARTIAN, S. | ABM |
| ✓RIGHT IS RIGHT | CHARTIAN, M. | |
| | KHAN | ABM |
| | MAIDEN | |
| | MURPHY | |
| ✓RIGHT TIME OF THE NIGHT | MCCANN, P. | ABM |
| ✓RIKKI DON'T LOSE THAT | FAGEN, D. | ABM |
| | BECKER, W. | |
| ✓RING OF BRIGHT WATER | CORDELL, F. | ABM |
| ✓RING OF BRIGHT WATER | CORDELL, F. | ABM |
| ✓RING OF SORROW | BOTLEY, B. | |
| ✗RIP YOU UP | STEARN, E. | ABM |
| ✗ROCK AND ROLL MOOD (&&c) | YEAGER A. | ABM |
| | LOGGINS, K. | ABM |
| ✓ROAD AHEAD, THE | CHARTIAN, M. | |
| | PRICE, H. | ABM |
| | WALSH, D. | |
| | BROWN, S. | |
| ✓ROCK AND ROLL BAND | BARRI, S. | |
| ✗ROARING OF THE LAMB, THE | S. CHRISTENSON | ABM |
| | BECKER, W. | ABM |
| | FAGEN, D. | |
| ✓ROLLER DERBY QUEEN | CROCE, J. | ABM |
| ✓ROLLING STONE | BLACK, K. | ABM |
| ✓RONDENA | MONTOYA, C. | ABM |
| ✓ROOMS | PHILLIPS, J. | ABM |
| ✓ROSE AND A STAR, A | CARR, L. | ABM |
| | VANCE, P. | |
| ✗ROSE COLORED GLASSES | HARJO, G. | ABM |
| ✗ROSE DARLING | FAGEN, D. | ABM |
| | BECKER, W. | |
| ✗ROSE PETALS | ROBERTS, A. | ABM |
| ✗ROSES TO GROCERIES | MARTIN, M. | ABM |
| | DONALD, L. G. | |
| ✗ROUND ROUND | F. BUTOPAC | ABM |
| ✓ROY'S GUITAR BOOGIE | SHECK, R. | ABM |
| ✓RUFUSIZED | FISCHER | ABM |
| | KHAN | |
| | MAIDEN | |
| | MURPH | |
| ✓RUN FOR COVER | DASHIELL, R. | ABM |
| ✗RUNNIN' CHILD | BECKER, W. | ABM |
| | FAGEN, D. | |
| ✗RUNNING AWAY FROM LOVE | REEVES, E. | ABM |
| | SOBER, E. | |
| ✗RUSSIAN DUKE, THE | SEGALL | ABM |
| ✗SAD AND HAPPY | HAMLISCH, M. | ABM |
| ✓SAD LITTLE GIRL | KENT, W. | ABM |
| | VANCE, P. | |
| ✓SAETA | MONTOYA, C. | ABM |
| ✓SAFE IN MY GARDEN | PHILLIPS, J. | ABM |
| ✗SAIL THE WATERWAY | BECKER, W. | ABM |
| | FAGEN, D. | |
| ✗SAILING AROUND | VINCENT, N. | ABM |
| | BAYHA, C. | |

*✗ Retained by ABC*

State of Delaware

# Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "MCA INC.", CHANGING ITS NAME FROM "MCA INC." TO "UNIVERSAL STUDIOS, INC.", FILED IN THIS OFFICE ON THE NINTH DAY OF DECEMBER, A.D. 1996, AT 9 O'CLOCK A.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.

Edward J. Freel, Secretary of State

0529616   8100

960358707

AUTHENTICATION:          8227940

DATE:                    12-09-96

CERTIFICATE OF AMENDMENT
OF
RESTATED CERTIFICATE OF INCORPORATION
OF
MCA INC.

\*    \*    \*

Pursuant to Section 242 of the
General Corporation Law of the State of Delaware

MCA INC., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (hereinafter called the "Corporation"), DOES HEREBY CERTIFY:

FIRST:  That the Board of Directors of the Corporation (the "Board") filed with the minutes of the Corporation duly adopted resolutions setting forth a proposed amendment to the Restated Certificate of Incorporation of said Corporation, declaring said amendment to be advisable and proposing such amendment to the sole stockholder of the Corporation for such stockholder's consideration and approval.  The resolutions setting forth the proposed amendment and the approval of such submission to the sole stockholder are as follows:

"RESOLVED, that the Board of Directors hereby deems it advisable and in the best interests of the Corporation and its stockholder that Article FIRST of the Restated Certificate of Incorporation of the Corporation (the "Charter") be amended in full to read as follows:

'FIRST:

The name of the corporation is Universal Studios, Inc.'

RESOLVED FURTHER, that the foregoing amendment to the Charter be, and the same hereby is, approved and adopted, subject to the approval of such amendment by the sole stockholder of the Corporation.

RESOLVED FURTHER, that the submission of the foregoing amendment for approval by the sole stockholder of the Corporation be, and the same hereby is, approved."

SECOND:  That thereafter, by written consent filed with the minutes of the Corporation, the sole stockholder of the Corporation approved said amendment as adopted by the Board.

THIRD:  That the foregoing amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said MCA INC. has caused this certificate to be signed by Karen Randall, Senior Vice President and General Counsel of the Corporation, and attested by Michael Samuel, Secretary of the Corporation, this __9th__ day of ___May___, 1996.

MCA INC.

By: _____
Name: Karen Randall
Title: Senior Vice President
and General Counsel

ATTEST:

By: _____
Michael Samuel, Secretary

U:\WA\KRM\CA\BEA\INCAMND.CER

2

2

# RIKKI, DON'T LOSE THAT NUMBER

Words and Music by
WALTER BECKER
and DONALD FAGEN



Copyright © 1974 AMERICAN BROADCASTING MUSIC, INC. (ASCAP), 8255 Beverly Blvd., Los Angeles, Calif. 90048
International Copyright Secured                    Made in U.S.A.                    All Rights Reserved

1684 - 4



4



1684 - 4



Page: 1 Document Name: untitled

```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0826550                   NAME: UNIVERSAL MCA MUSIC PUBLISHING
                                           DIV OF UNIVERSAL STUDIOS INC
  CAE CODE   .        : 343667743    PSEU: MCA MUSIC (USA)
  CLASS               :  P
  SOCIETY             : ASCAP
  DISTRIBUTION        : DOMESTIC & FOREIGN
  ASCAP STATUS        : CURRENT MEMBER
  MEMBERSHIP AGRMNT : RETURNED SIGNED
  ROYALTY HOLD        : FEDERAL EXPRESS
  TAX ID  #             XX-XXX1468
  APPLICATION HOLD  : NO

  APPLICATION DATE  : 11 / 06 / 1958
  ELECTION DATE     : 11 / 20 / 1958
  CREDITED DATE     :    /    /


  REPRESENTATIVE    : RENZER DAVID


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:38:00 PM

# EXHIBIT Q

# CERTIFICATE OF REGISTRATION



**FORM PA**
UNITED STATES COPYRIGHT OFFICE

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.



REGISTER OF COPYRIGHTS

OFFICIAL SEAL

REGISTRATION NUMBER

**PA    584  517**

PA                     PAU

EFFECTIVE DATE OF REGISTRATION

**SEP 25 1992**

Month          Day          Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

---

**1**

**TITLE OF THIS WORK ▼**

God Will Make A Way

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

Words and Music

---

**2**

**NAME OF AUTHOR ▼**

a    Don Moen

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

1950

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ United States
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

Words and Music

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the em-

b    **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1987 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information Month ▶ October   Day ▶ 24   Year ▶ 1990
ONLY if this work has been published.    USA                                            ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Integrity Music, Inc.
d/b/a Integrity's Hosanna! Music
P.O. Box 16813
Mobile, AL 36616

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

APPLICATION RECEIVED
SEP 25 1992
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
SEP 25 1992
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE

Page _____ of _____ pages

I will even make a roadway in the wilderness, rivers in the desert. Isaiah 43:19

## God Will Make a Way

**391**

Words and Music by
DON MOEN



God will make a way where there seems to be no way,



He works in ways we can-not see, He will make a way



for me; He will be my guide, hold me



close - ly to His side, with love and strength for

© 1990 Integrity's Hosanna! Music
c/o Integrity Music, Inc., P.O. Box 16813, Mobile, AL 36616
All rights reserved. International copyright secured.
Used by permission.







```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
M-CODE:  0008841                         NAME: INTEGRITY'S HOSANNA! MUSIC

CAE CODE             : 127723772
CLASS                : P
SOCIETY              : ASCAP
DISTRIBUTION         : DOMESTIC & FOREIGN
ASCAP STATUS         : CURRENT MEMBER
MEMBERSHIP AGRMNT    : RETURNED SIGNED
ROYALTY HOLD         : GROUP MAILING
TAX ID  #              XX-XXX2549
APPLICATION HOLD     : NO

APPLICATION DATE     : 04 / 13 / 1988
ELECTION DATE        : 04 / 29 / 1988
CREDITED DATE        : 10 / 01 / 1987


REPRESENTATIVE       : COLEMAN P MICHAEL


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT R

# Certificate

## Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United
States of America or which was first published in the United States of America

This Is To Certify that the statements set forth on this certificate have been made
a part of the records of the Copyright Office. In witness whereof the seal of the
Copyright Office is hereto affixed.

*Barbara Ringer*

Register of Copyrights
United States of America

FORM E

CLASS
E

REGISTRATION NO.
Eu 560193

DO NOT WRITE HERE



**1. Copyright Claimant(s) and Address(es):**

Name ___ CALICO PUBLISHING COMPANY ___

Address ___ 400 Bakewell Building, Pittsburgh 19, Pennsylvania ___

Name ___

Address ___

**2. Title:** "SINCE I DON'T HAVE YOU"

(Title of the musical composition)

**3. Authors:**

Name ___ James Beaumont, Janet Vogel, Joseph Verscharen, Walter Lester, John Taylor (Known as "The Skyliners')
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship ___ U. S. A. ___ (Name of country)

Domiciled in U. S. A. Yes ☒ No ☐  Address 400 Bakewell Bldg., Pgh., Pa.    Author of ___ Words ___
(State which: words, music, arrangement, etc.)

Name ___ Joseph Rock ___
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship ___ U. S. A. ___ (Name of country)

Domiciled in U. S. A. Yes ☒ No ☐  Address 400 Bakewell Bldg., Pgh., Pa.    Author of ___ Music ___
(State which: words, music, arrangement, etc.)

Name ___ Lennie Martin ___
(Legal name followed by pseudonym if latter appears on the copies)    Citizenship ___ U. S. A. ___ (Name of country)

Domiciled in U. S. A. Yes ☒ No ☐  Address 400 Bakewell Bldg., Pgh., Pa.    Author of ___ Music ___
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

___

**(b) Place of Publication:**

___

(Name of country)

**5. (a) Previous Registration or Publication:**

☐ Previous registration        ☐ Previous publication

**(b) New Matter in This Version:**

___

___

*Complete all applicable spaces on next page*

**6. Deposit account:**

**7. Send correspondence to:**

Name Alvin D. Capozzi     Address 400 Bakewell Building, Pgh. 19, Pa.

**8. Send certificate to:**

(Type or print name and address)

Name    Alvin D. Capozzi

Address    400 Bakewell Building
(Number and street)

Pittsburgh    19,    Pennsylvania
(City)      (Zone)      (State)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U. S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

—*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

—*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical composition should be in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington 25, D. C., one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $4. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*

1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. *The word "Copyright," the abbreviation "Copr.," or the symbol ©.* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1958.

NOTE: If copies are published without the required notice, the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| **Application received** <br><br> JAN 21 1959 | |
| **One copy received** <br><br> Dec. 29, '58 | |
| **Two copies received** <br><br><br> | |
| **Fee received** <br><br><br> 90397 Dec. 29, '58 | |

U.S. GOVERNMENT PRINTING OFFICE : 1957—O—430706      (Feb. 1958—800,000)

*Page 4*

Page 3

# Certificate
## Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Barbara Ringer*

Register of Copyrights
United States of America

FORM E

CLASS  REGISTRATION NO.

E    Ep  129897

DO NOT WRITE HERE



**1. Copyright Claimant(s) and Address(es):**

Name  CALICO PUBLISHING COMPANY

Address  400 BAKEWELL BUILDING PITTSBURGH PENN.

Name

Address

**2. Title:**  SINCE I DON'T HAVE YOU
(Title of the musical composition)

**3. Authors:**

Name  1. JAMES BEAUMONT  2. JANET VOGEL   1 & 2..  Citizenship  UNITED STATES
(Legal name followed by pseudonym if latter appears on the copies)  (Name of country)

Domiciled in U. S. A.  Yes ☒  No ☐  Address   1 & 2..  Author of  WORDS
(State which: words, music, arrangement, etc.)

Name  3. JOSEPH VERSCHAREN  4. WALTER LESTER   3 & 4..  Citizenship  UNITED STATES
(Legal name followed by pseudonym if latter appears on the copies)  (Name of country)

Domiciled in U. S. A.  Yes ☒  No ☐  Address   3 & 4..  Author of  WORDS
(State which: words, music, arrangement, etc.)

Name  5. JOSEPH ROCK  6. LENNIE MARTIN   5 & 6..  Citizenship  UNITED STATES
(Legal name followed by pseudonym if latter appears on the copies)  (Name of country)

Domiciled in U. S. A.  Yes ☒  No ☐  Address   5 & 6..  Author of  MUSIC
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

APRIL 21 1959  *

**(b) Place of Publication:**

UNITED STATES
(Name of country)

**5. (a) Previous Registration or Publication:**

☒ Previous registration          ☐ Previous publication

**(b) New Matter in This Version:**

NO NEW MATERIAL - FIRST PUBLISHED EDITION.

*Complete all applicable spaces on next page*

6. **Deposit account:**

.......... SOUTHERN MUSIC PUBLISHING CO., INC. ..........

7. **Send correspondence to:**

Name .................................................    Address ..........................................

8. **Send certificate to:**

(Type or print
name and address)

Name   SOUTHERN MUSIC PUBLISHING CO., INC.

Address   1619 BROADWAY,
(Number and street)

NEW YORK            19            N.Y.
(City)               (Zone)        (State)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U. S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

—*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

—*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical composition should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington 25, D. C., one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $4. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that

all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:
1. *The word "Copyright," the abbreviation "Copr.," or the symbol* ©. Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1958.
NOTE: If copies are published without the required notice, the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| **Application received** <br><br> APR 30 1959 <br><br> **One copy received** | * C. O. Note - In Notice: 1958  (Cert.) |
| **Two copies received** <br><br> APR 30 1959 <br><br> **Fee received** | |

# CERTIFICATE OF RENEWAL REGISTRATION

## FORM RE



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 304 of title 17, United States Code, attests that renewal registration has been made for the work identified below. The information has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
*United States of America*

**OFFICIAL SEAL**

UNITED STATES COPYRIGHT OFFICE

| REGISTRATION NUMBER |
| --- |
| RE  333-952 |

EFFECTIVE DATE OF RENEWAL REGISTRATION

MAR 30 1987
(Month) (Day) (Year)

---

**DO NOT WRITE ABOVE THIS LINE.    FOR COPYRIGHT OFFICE USE ONLY**

---

**①**
**Renewal**

**RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM:** (See Instructions)

**1**
Name  JAMES BEAUMONT          TERRANCE RAPP, GAVIN RAPP, MARLO RAPP & KIP RAPP
Address  2002 Duquesne Ave     220 Dewey Street, Edgewood, PA 15218
McKeesport, PA 15132
Claiming as  THE AUTHOR        THE WIDOWER AND CHILDREN OF THE DECEASED AUTHOR
                              JANET VOGEL
(Use appropriate statement from instructions)

**2**
Name  JOSEPH ROCK          JOSEPH VERSCHAREN      WALTER LESTER
Address  P.O. Box 1607       P.O. Box 916          6007-B Stationview Court
Pittsburgh, PA 15242  Kitty Hawk, NC 27949   Fairfax Station, VA 22039
Claiming as  THE AUTHOR      THE AUTHOR            THE AUTHOR
(Use appropriate statement from instructions)

**3**
Name  JOHN TAYLOR          MARY J. MARINO & ROBERT MARINO
Address  225 Jesmary Lane    442 Connor St., Pittsburgh, PA 15207
Santa Barbara, CA 93105
Claiming as  THE AUTHOR      THE WIDOW & CHILD OF THE DECEASED AUTHOR
(Use appropriate statement from instructions)
                            LENNIE MARTIN (a/k/a RINALDO R. MARINO)

---

**②**
**Work Renewed**

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:**

SINCE I DON'T HAVE YOU

**RENEWABLE MATTER:**

**CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:**

Title of periodical or composite work: ...............................................

If a periodical or other serial, give: Vol ................. No. ................. Issue Date ...........

---

**③**
**Author(s)**

**AUTHOR(S) OF RENEWABLE MATTER:**

WORDS:  JAMES BEAUMONT, JANET VOGEL, JOSEPH VERSCHAREN, WALTER LESTER,
        JOHN TAYLOR
MUSIC:  JOSEPH ROCK,  LENNIE MARTIN

---

**④**
**Facts of Original Registration**

**ORIGINAL REGISTRATION NUMBER:**

EU 560193

**ORIGINAL COPYRIGHT CLAIMANT:**

CALICO PUBLISHING COMPANY

**ORIGINAL DATE OF COPYRIGHT:**

• If the original registration for this work was made in published form, give:

DATE OF PUBLICATION: ................. (Month) (Day) (Year)

OR

• If the original registration for this work was made in unpublished form, give:

DATE OF REGISTRATION: January 21, 1959 (Month) (Day) (Year)

| | | EXAMINED BY: | RENEWAL APPLICATION RECEIVED: | |
| | | CHECKED BY: | | FOR |
| RE 333-952 | | CORRESPONDENCE | MAR 13 1987 | COPYRIGHT |
| | | ☐ Yes | REMITTANCE NUMBER AND DATE: | OFFICE |
| | | DEPOSIT ACCOUNT | FUNDS RECEIVED MAR 30 1987 | USE ONLY |
| | | FUNDS USED ☑ | | |

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions). give full information about each contribution. If more space is needed, request continuation sheet (Form RE. CON).

**5**
Renewal for Group of Works

**1**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**2**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**3**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**4**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**5**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**6**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**7**
Title of Contribution: .................................................
Title of Periodical: .......................... Vol. ..... No. ..... Issue Date ..........
Date of Publication: ..................................... Registration Number: ..........
(Month)    (Day)    (Year)

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)
SOUTHERN MUSIC PUBL. CO. INC.
Name: .........................................
Account Number: .......... #DA057347

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)
Name: ..... SOUTHERN MUSIC PUBL. CO. INC. ..........
Address: ..... 1740 BROADWAY ..........
        NEW YORK, N. Y. 10019 ........ (Apt.)
        (City)    (State)    (ZIP)

**6**
Fee and Correspondence

**CERTIFICATION:** I, the undersigned, hereby certify that I am the: (Check one)
☐ renewal claimant ☒ duly authorized agent of: ..... THE CLAIMANTS IN SPACE ONE .....
                                                        (Name of renewal claimant)
of the work identified in this application. and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) ..... David L. Bogart .....
Typed or printed name: ..... DAVID BOGART .....
                            Date March 13, 1987

**7**
Certification
(Application must be signed)

SOUTHERN MUSIC PUBL. CO. INC.
1740 BROADWAY        (Name)
NEW YORK, N. Y. 10019
            (Number, Street and Apartment Number)

        (City)    (State)    (ZIP code)

**MAIL CERTIFICATE TO**
(Certificate will be mailed in window envelope)

**8**
Address for Return of Certificate

March 1985—75.000

## ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS that the undersigned _____JAMES BEAUMONT_____ for and in consideration of the sum of One ($1.00) Dollar and the agreement to pay during the renewal period of copyright the writer royalties provided for in the original acquisition contracts (dates listed below) between Calico Publishing Co. and the writers, has and by these presents does hereby sell, assign, transfer and set over unto the BONNYVIEW MUSIC CORPORATION of 7120 Sunset Boulevard, Hollywood, California 90046, its successors and assigns, all of his rights, title and interest in and to the renewal copyrights covering the following musical compositions entitled:

|  |  |
|---|---|
| HOW MUCH? | RE 333-978 |
| HOW MUCH | RE 334-426 |
| (Contract Dated: September 2, 1959) | |
| | |
| IT HAPPENED TODAY | RE 333-977 |
| IT HAPPENED TODAY | RE 333-945 |
| (Contract Dated: September 2, 1959) | |
| | |
| LONELY WAY | RE 333-947 |
| MY LONELY WAY | RE 333-980 |
| (Contract Dated: September 2, 1959) | |
| | |
| LORRAINE | RE 333-979 |
| (Contract Dated: September 2, 1959) | |
| | |
| SINCE I DON'T HAVE YOU | RE 333-952 |
| (Contract Dated: December 31, 1958) | |
| | |
| THIS I SWEAR | RE 333-961 |
| THIS I SWEAR | RE 333-937 |
| (Contract Dated: June 23, 1959) | |

IN WITNESS WHEREOF, the said _____ _____James Beaumont_____ does cause this instrument to be signed on this __23rd__ day of __July_____, 19_87_.

_James Beaumont_

James Beaumont

AGREED TO:

Southern Music Publishing Co. Inc. for and in behalf of Bonnyview Music Corporation

By__ _Cecil Russo, Asst VP_

## ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS that the undersigned
_____WALTER LESTER_____
for and in consideration of the sum of One ($1.00) Dollar and the
agreement to pay during the renewal period of copyright the writer
royalties provided for in the original acquisition contracts (dates
listed below) between Calico Publishing Co. and the writers, has
and by these presents does hereby sell, assign, transfer and set
over unto the BONNYVIEW MUSIC CORPORATION of 7120 Sunset Boulevard,
Hollywood, California 90046, its successors and assigns, all of his
rights, title and interest in and to the renewal copyrights
covering the following musical compositions entitled:

     HOW MUCH?                    RE 333-978
     HOW MUCH                     RE 334-426
          (Contract Dated: September 2, 1959)

     IT HAPPENED TODAY         RE 333-977
     IT HAPPENED TODAY         RE 333-945
          (Contract Dated: September 2, 1959)

     LONELY WAY                RE 333-947
     MY LONELY WAY             RE 333-980
          (Contract Dated: September 2, 1959)

     LORRAINE                  RE 333-979
          (Contract Dated: September 2, 1959)

     SINCE I DON'T HAVE YOU     RE 333-952
          (Contract Dated: December 31, 1958)

     THIS I SWEAR              RE 333-961
     THIS I SWEAR              RE 333-937
          (Contract Dated: June 23, 1959)

        IN WITNESS WHEREOF, the said _____
_____Walter Lester_____does cause this instrument to be
signed on this ____10____ day of __July_____, 19_67__.

                        _Walter Lester_
                        Walter Lester

AGREED TO:

Southern Music Publishing Co. Inc.
for and in behalf of Bonnyview
Music Corporation

By_____Cecile Russo_____

<u>ASSIGNMENT</u>

KNOW ALL MEN BY THESE PRESENTS that the undersigned
<u>_____JOSEPH_VERSCHAREN_____</u>
for and in consideration of the sum of One ($1.00) Dollar and the
agreement to pay during the renewal period of copyright the writer
royalties provided for in the original acquisition contracts (dates
listed below) between Calico Publishing Co. and the writers, has
and by these presents does hereby sell, assign, transfer and set
over unto the <u>BONNYVIEW MUSIC CORPORATION of 7120 Sunset Boulevard,</u>
<u>Hollywood, California 90046</u>, its successors and assigns, all of his
rights, title and interest in and to the renewal copyrights
covering the following musical compositions entitled:

|  |  |
|---|---|
| HOW MUCH? | RE 333-978 |
| HOW MUCH | RE 334-426 |
|    (Contract Dated: September 2, 1959) | |
| | |
| IT HAPPENED TODAY | RE 333-977 |
| IT HAPPENED TODAY | RE 333-945 |
|    (Contract Dated: September 2, 1959) | |
| | |
| LONELY WAY | RE 333-947 |
| MY LONELY WAY | RE 333-980 |
|    (Contract Dated: September 2, 1959) | |
| | |
| LORRAINE | RE 333-979 |
|    (Contract Dated: September 2, 1959) | |
| | |
| SINCE I DON'T HAVE YOU | RE 333-952 |
|    (Contract Dated: December 31, 1958) | |
| | |
| THIS I SWEAR | RE 333-961 |
| THIS I SWEAR | RE 333-937 |
|    (Contract Dated: June 23, 1959) | |

IN WITNESS WHEREOF, the said _____
_____<u>Joseph_Verscharen</u>_____does cause this instrument to be
signed on this __<u>9 TH</u>__ day of ___<u>JULY</u>_____, 19_<u>87</u>_.

*Joseph W. Verscharen*
Joseph Verscharen
JOSEPH W. VERSCHAREN

AGREED TO:

Southern Music Publishing Co. Inc.
for and in behalf of Bonnyview
Music Corporation

By_____*Cecile Russo*_____

ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS that the undersigned _____JOHN TAYLOR_____ for and in consideration of the sum of One ($1.00) Dollar and the agreement to pay during the renewal period of copyright the writer royalties provided for in the original acquisition contracts (dates listed below) between Calico Publishing Co. and the writers, has and by these presents does hereby sell, assign, transfer and set over unto the BONNYVIEW MUSIC CORPORATION of 7120 Sunset Boulevard, Hollywood, California 90046, its successors and assigns, all of his rights, title and interest in and to the renewal copyrights covering the following musical compositions entitled:

| | |
|---|---|
| HOW MUCH? | RE 333-978 |
| HOW MUCH | RE 334-426 |
| (Contract Dated: September 2, 1959) | |
| | |
| IT HAPPENED TODAY | RE 333-977 |
| IT HAPPENED TODAY | RE 333-945 |
| (Contract Dated: September 2, 1959) | |
| | |
| LONELY WAY | RE 333-947 |
| MY LONELY WAY | RE 333-980 |
| (Contract Dated: September 2, 1959) | |
| | |
| LORRAINE | RE 333-979 |
| (Contract Dated: September 2, 1959) | |
| | |
| SINCE I DON'T HAVE YOU | RE 333-952 |
| (Contract Dated: December 31, 1958) | |
| | |
| THIS I SWEAR | RE 333-961 |
| THIS I SWEAR | RE 333-937 |
| (Contract Dated: June 23, 1959) | |

IN WITNESS WHEREOF, the said _____ _____John Taylor_____does cause this instrument to be signed on this __3\____ day of ____C.N_____, 19__7_.

_____
John Taylor

AGREED TO:

Southern Music Publishing Co. Inc.
for and in behalf of Bonnyview
Music Corporation

By_____

## ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS that the undersigned
_____JOSEPH ROCK_____
for and in consideration of the sum of One ($1.00) Dollar and the
agreement to pay during the renewal period of copyright the writer
royalties provided for in the original acquisition contracts (dates
listed below) between Calico Publishing Co. and the writers, has
and by these presents does hereby sell, assign, transfer and set
over unto the BONNYVIEW MUSIC CORPORATION of 7120 Sunset Boulevard,
Hollywood, California 90046, its successors and assigns, all of his
rights, title and interest in and to the renewal copyrights
covering the following musical compositions entitled:

    HOW MUCH?                               RE 333-978
    HOW MUCH                                RE 334-426
        (Contract Dated: September 2, 1959)

    IT HAPPENED TODAY                       RE 333-977
    IT HAPPENED TODAY                       RE 333-945
        (Contract Dated: September 2, 1959)

    LONELY WAY                              RE 333-947
    MY LONELY WAY                           RE 333-980
        (Contract Dated: September 2, 1959)

    LORRAINE                                RE 333-979
        (Contract Dated: September 2, 1959)

    SINCE I DON'T HAVE YOU                  RE 333-952
        (Contract Dated: December 31, 1958)

    THIS I SWEAR                            RE 333-961
    THIS I SWEAR                            RE 333-937
        (Contract Dated: June 23, 1959)

            IN WITNESS WHEREOF, the said _____
_____Joseph Rock_____does cause this instrument to be
signed on this ___14th___ day of ___July_____ 19_8_.

                                   Joseph Rock

AGREED TO:

Southern Music Publishing Co. Inc.
for and in behalf of Bonnyview
Music Corporation

By_____Cecile Ruoso, Asst VP

# Since I Don't Have You

Words by JAMES BEAUMONT, JANET VOGEL,
JOSEPH VERSCHAREN, WALTER LESTER and
JOHN TAYLOR

Music by JOSEPH ROCK and LENNIE MARTIN

Slowly, with a strong, Rockin' beat



Piano Arr. by George N. Terry

© Copyright 1958 by Calico Publishing Company
Sole Selling Agent: Southern Music Publishing Company, Inc., 1619 Broadway, New York 19, N. Y.
International Copyright Secured                                   Printed in U.S.A.





```
MBR18DS          P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  0165200                    NAME: BONNYVIEW MUSIC CORP

  CAE CODE          : 003677791
  CLASS             :   P
  SOCIETY           : ASCAP
  DISTRIBUTION      : DOMESTIC & FOREIGN
  ASCAP STATUS      : CURRENT MEMBER
  MEMBERSHIP AGRMNT : RETURNED SIGNED
  ROYALTY HOLD      : NO HOLD
  TAX ID  #           XX-XXX1504
  APPLICATION HOLD  : NO

  APPLICATION DATE  : 08 / 08 / 1960
  ELECTION DATE     : 10 / 20 / 1960
  CREDITED DATE     :    /    /


  REPRESENTATIVE    : EGNOIAN ARTHUR


ACTIONS:  1-ENTER NEXT ACTION CODE:
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT S

1 Lincoln Plaza, New York, NY 10023
212-621-6281   (Telephone)
212-787-1381   (Fax)
Mjenkins@ascap.com

**ASCAP**
**American Society of**
**Composers, Authors &**
**Publishers**

# Fax

| **To:** | Carolyn Edwards | **From:** | Mary A. Jenkins |
|---|---|---|---|
| | Senior Coordinator--Copyright | | Paralegal |
| | **UNIVERSAL MUSIC PUBLISHING GROUP** | | |

| **Fax:** | 310-235-4803 | **Pages:** 1 |
|---|---|---|
| **Phone:** | 310-235-4732 | **Date:**  January 26, 2007 |
| **Re:** | "WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)"  Author: Bruce T. Ballinger | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

Dear Carolyn,

   I am writing to request a copy of the **renewal** copyright certificate (front and back) and any related assignments, to the EFO 184-175 copyright registration, which we have in our file.  Also, I noticed that this song was re-registered in 1990.  If available, can you please provide me with the registrations for PA-472-593 and PA 474-479.

   This information is urgently needed for an infringement action that ASCAP has already prepared against radio stations WRJM-FM and WGEA, in Alabama, which uses this song, among others, as part of their broadcast, without authorization.  For infringement purposes, we need to provide documentation showing the current copyright owner(s).

   Thank you for your assistance with this request.

Regards,



Mary A. Jenkins

```
TL22DS        T I T L E   G E N E R A L   I N F O R M A T I O N   PAGE   1
TITLE: WE HAVE COME INTO HIS HOUSE                        T-CODE:   530241444
REQUESTED TITLE:  WE HAVE COME INTO HIS HOUSE TO WORSHIP
ASCAP REP: YES VERSN:      CPYRGHT    /    /     CPY ARR NO  % THEME: 35.0
         DURTN: 00:00 RENEWD:     /    /    LAST PERF:  4 / 2004 BKGND NQ
SEE REMARKS                W/P REG:    /    /           SNGL RCD:
              REC WK: YES  1ST PERF:  2 / 1979   PAR/SEL:
IDEN PER: NOT AVAILABLE                  PUB DOMAIN: N    /    /
SEQ# TYPE  M-CODE   ENTITLED PARTY                  PAY  SOCIETY   SHARES
 1    W    1864885  BALLINGER BRUCE T               YES  ASCAP   100.00 % D
 2    PUB  0000000  CANTICLE PUBL                   NO   SESAC     0.00 % D
 3    PUB  1280320  SOUND III INC                   YES  ASCAP   100.00 % D


PERFORMING ARTISTS:
MARANATHA SNGRS           SLAUGHTERS              MARANATHA SGRS
PRAISE III               CELEBRANTS              CONTINENTALS SINGERS
WILLARD K                CAM FLORIA CONTINENTALS  MARANATHA SINGERS/MARANA
ENTER DESIRED OPTION:
1-TITLE CODES            5-QUAL CREDITS/CROSS REF
2-ENTITLED PARTY DETAIL  6-REDISPLAY TITLE SELECTNS
3-TITLE VARIATIONS                               B-SERIOUS MUSIC CLASSIF.
4-REMARKS
       CURRENT SHARES              CONTINUED NEXT PAGE
```

NOW in renewal term

WRJM - FM

WGEA

```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  1280320                        NAME: SOUND III INC

  CAE CODE            : 089445139
  CLASS               : P
  SOCIETY             : ASCAP                  S E E -
  DISTRIBUTION        : DOMESTIC & FOREIGN        UNIVERSAL MCA MUSIC PUBLISHING
  ASCAP STATUS        : CURRENT MEMBER            DIV OF UNIVERSAL STUDIOS INC
  MEMBERSHIP AGRMNT   : RETURNED SIGNED           M-CODE IS 0826550
  ROYALTY HOLD        : FEDERAL EXPRESS
  TAX ID  #             XX-XXX5324
  APPLICATION HOLD    : NO

  APPLICATION DATE    : 05 / 10 / 1976
  ELECTION DATE       : 05 / 27 / 1976
  CREDITED DATE       : 10 / 01 / 1975


  REPRESENTATIVE      : PETERSON JESSE J


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Page 3

# Certificate
# Registration of a Claim to Copyright




**FORM E FOREIGN**

REGISTRATION NO.

**Efo 184175**

DO NOT WRITE HERE

**CLASS**

**E**

**In a musical composition the author of which is not a citizen or domiciliary of the United States of America and which was not first published in the United States of America**

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Barbara Ringer*

Register of Copyrights
United States of America



NOT VALID WITHOUT
COPYRIGHT OFFICE
IMPRESSION SEAL

**1. Copyright Claimant(s) and Address(es):**

Name ............ BRUCE T. BALLINGER

Address ........... 123 RAILROAD ST., APT. 207, BRAMPTON, ONTARIO L6X 1G9

Name ...........................

Address ..........................

**2. Title:** ...WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)
(Title of the musical composition)

**3. Authors:**

Name ............ BRUCE T. BALLINGER ............ Citizenship ...CANADA...........
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)

Domiciled in U.S.A. Yes ---- No X Address ...... AS ABOVE ...... Author of ..WORDS & MUSIC
(State which: words, music, arrangement, etc.)

Name .......................... Citizenship ..........................
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)

Domiciled in U.S.A. Yes ---- No ---- Address .......................... Author of ..........................
(State which: words, music, arrangement, etc.)

Name .......................... Citizenship ..........................
(Legal name followed by pseudonym if latter appears on the copies) (Name of country)

Domiciled in U.S.A. Yes ---- No ---- Address .......................... Author of ..........................
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

......... August 20th, 1976 .........
(Month) (Day) (Year)

**(b) Place of Publication:**

.......... CANADA ..........
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes ...... No ...... Date of registration .......... Registration number ..........

Was work previously published? Yes ...... No ...... Date of registration .......... Registration number ..........

Is there any substantial NEW MATTER in this version? Yes ...... No ...... If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version.

**EXAMINER**

*Complete all applicable spaces on next page*

0

HLT No. 000000



. Deposit account:

. Send correspondence to:

Name ..BRUCE..T..BALLINGER................... Address .....AS..ABOVE............................

. Send certificate to:

Type or
print
name and
address

| Name | BRUCE T. BALLINGER |
| Address | APT. 207, 123 RAILROAD STREET, |
| | (Number and street) |
| | BRAMPTON, ONTARIO, CANADA. L6X 1G9 |
| | (City) (State) (ZIP code) |

## Information concerning copyright in foreign musical compositions

*Copyright in Works by Foreign Authors.* In general, a work by a foreign author can be protected under the U.S. copyright law if: (a) the author was a citizen of a country with which the United States has copyright relations; or (b) the work qualifies for United States protection under the Universal Copyright Convention or the Buenos Aires Copyright Convention.

*When to Use Form E Foreign.* Form E Foreign is appropriate for both unpublished and published musical compositions

tions when: (a) the author is not a U.S. citizen and is not domiciled in the United States, and (b) the work is not first published in the United States.

*Duration of Copyright.* Statutory copyright in a musical composition begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

*How to Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20559, one complete copy of the musical composition, an application on Form E Foreign, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

*Procedure to Follow If Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection all copies published in the United States must contain a copyright notice in the required form and position.

### Published musical compositions

*The Universal Copyright Convention (the "U.C.C.").* Certain advantages are enjoyed by foreign works qualifying for protection under the Universal Copyright Convention, a treaty to which the United States is a party. To qualify for this type of protection, the author of the work must be a citizen of a country which is a party to the U.C.C., or the work must have been first published in such a country.

—*The U.C.C. Copyright Notice.* To be entitled to the special advantages of the U.C.C., all published copies of a work must bear the notice of copyright provided in the convention. This notice consists of the symbol ©, accompanied by the name of the copyright proprietor and the year of first publication. Example: © John Doe 1973. The notice must be located on the work in such a way as to give reasonable notice of the copyright claim.

—*Registration Optional.* When a foreign work meets the U.C.C. requirements as outlined above, registration in the Copyright Office for the first 28-year term is optional.

*Works Not Protected Under the U.C.C.* When a foreign musical composition does not qualify under the U.C.C. pro-

visions, protection under U.S. law generally depends upon whether the following requirements have been met:

(a) *Copyright Notice.* The law provides that the copyright notice shall appear on the title page or first page of music, and shall consist of the word "Copyright," the abbreviation "Copr.," or the symbol ©, accompanied by the name of the copyright owner and the year date of publication. Example: © John Doe 1973. Ordinarily the notice should contain the year when copies were first published, but, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it is advisable to include both dates.

(b) *Publication.* The copyright notice must appear on the copies at the time of first publication, and is required for all copies circulated in the United States. The date of publication is defined as ". . . the earliest date when copies . . . were placed on sale, sold, or publicly distributed. . . ."

(c) *Registration.* Promptly after publication the application for registration should be submitted on Form E Foreign, following the instructions on page 1.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| One copy received | |
| Two copies received | |
| Catalog card received | |
| Fee received | |

*Page 4*



# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS

### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED IS A TRUE COPY OF THE INSTRUMENT RECORDED IN THE COPYRIGHT OFFICE RECORDS IN VOLUME 1643 , PAGE(S) 188-189 , ON October 3, 1977 .

IN TESTIMONY WHEREOF, THE SEAL OF THIS OFFICE IS AFFIXED HERETO ON May 26, 1978 .

*Barbara Ringer*

**REGISTER OF COPYRIGHTS**

Certification B
(Nov. 1977—1,500)

VOL. 1643 PAGE 188

ASSIGNMENT OF COPYRIGHT

FOR VALUE RECEIVED, the undersigned, Bruce T. Ballinger

WHOSE ADDRESS IS

123 Railroad Street, Apt. 207, Brampton, Ontario

HEREBY ASSIGNS TO CANTICLE PUBLICATIONS, INC.

OF

1900 West 47th Place, Mission, Kansas, U.S.A.

ALL OF ITS RIGHT, TITLE AND INTEREST in and to the copyright and all other rights in the musical compositions, the titles, writers and copyright information of which are set forth on Schedule A attached hereto, throughout the world for the residue of the time thereof including all renewals and extensions of said copyright.

IN WITNESS WHEREOF, the undersigned has executed the foregoing this

7th day of July , 1977.

*Bruce T. Ballinger*

# Copyright Office of the United States of America
## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW. IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Barbara Ringer*
Register of Copyrights

Date of Recordation: 3Oct77

Volume: 1643     Pages: 188-189

CERTIFICATION & LPSD. 1977 19,000)

TEL No.000002



VOL. 1643 PAGE 189

SCHEDULE A

| TITLE | WRITER | COPYRIGHT DATE | REG. NO. |
|---|---|---|---|
| WE HAVE COME INTO HIS HOUSE (Let's Worship Him) | Bruce T. Ballinger | Aug. 25, 1976 | EU-154175 |

To: GENE COSME.
FROM: Tempo Music
3pages

ASSIGNMENT OF COPYRIGHT

FOR VALUE RECEIVED, THE UNDERSIGNED, Canticle Publications, Inc.

WHOSE ADDRESS IS   Leawood, Kansas

HEREBY ASSIGNS TO   Sound III, Inc.

OF   Leawood, Kansas

ALL OF ITS RIGHT, TITLE AND INTEREST IN AND TO THE COPYRIGHT
AND ALL OTHER RIGHTS IN THE MUSICAL COMPOSITIONS, THE TITLES,
WRITERS AND COPYRIGHT INFORMATION OF WHICH ARE SET FORTH ON
SCHEDULE A ATTACHED HERETO, THROUGHOUT THE WORLD FOR THE RESIDUE
OF THE TIME THEREOF INCLUDING ALL RENEWALS AND EXTENSIONS OF
SAID COPYRIGHT.

IN WITNESS WHEREOF, THE UNDERSIGNED HAS EXECUTED THE FOREGOING
THIS 1st  DAY OF    January        , 19 82 .

By _____
       Jesse Peterson

SCHEDULE A

| Tune | Writer | Copyright Reg. | Date |
|------|--------|----------------|------|
| Lord, I Believe | Jim Ailor | | |
| Jesus Is Always There | Betty Capshaw | Eu 675461 | 5/3/76 |
| Be Still and Know | Don Dunnevant | Eu 839275 | 11/7/77 |
| Someone God Can Use | Don Dunnevant | EU 839274 | 11/7/77 |
| Symphony For Thee | Don Dunnevant | Eu 839276 | 11/7/77 |
| Blessed Be the Children | Sundberg/Ayres | Eu 810195 | 8/11/77 |
| Light Up Your Lamp | Sundberg/Griffin | Eu 797031 | 6/24/77 |
| God's Love Is Jesus | Long/White | Eu 821824 | 9/12/77 |
| He's Been Good To Me | Long/Long | Eu 821825 | 9/12/77 |
| He Is Risen (Jesus, My Wonderful Lord) | Larry Sale | Eu 624465 PA 37-177 (pub.) | 10/24/75 6/26/79 |
| What If | Jim Sunderwirth | Eu 832163 | 10/17/77 |
| Everyone's Hooked On Something | Jim Sunderwirth | Eu 792579 | 6/9/77 |
| Jesus Came Walkin' On the Water | Jim Sunderwirth | Eu 792588 | 6/9/77 |
| This Promise Is Unto You | Freda Tapp | Eu 832159 | 10/17/77 |
| Let Your Light So Shine | Freda Tapp | Eu 832160 | 10/17/77 |
| Consider the Lillies | Freda Tapp | Eu 832161 | 10/17/77 |
| The Everlasting Kingdom | Freda Tapp | Eu 832162 | 10/17/77 |
| Come Let Us Sing | Pat Sapp | PAu 63-659 | 7/21/78 |
| Hark, the Herald Angels | Ron E. Long | | |
| His Hand Upon Me | Bronwyn Kessey | | |
| Apple of Your Eye | Dan Lawson | | |
| You're In Charge | Dan Lawson | | |
| Welcome Home | Dan Lawson | | |
| I Need Some Time | Dan Lawson | | |
| That I Might Know Thee | Dan Lawson | | |
| Peace of God | Debbie Amstutz | PAu 158-403 | 12/7/79 |
| Jesus | Debbie Amstutz | PA 94-152 | 12/22/80 coll. |
| Gifts | Larry Green | PAu 110-149 | 6/4/79 |
| Jesus Said It | Chas. Slagle | | |
| Things Not Seen | Chas. Slagle | | |
| The Entrance of Thy Word | Chas. Slagle | | |
| Perfect Peace | Chas. Slagle | | |
| O Give Thanks | Chas. Slagle | | |
| I Am Persuaded | Chas. Slagle | | |
| The Love We Share | Chas. Slagle (Cont.) | | |

SCHEDULE A cont.

| | | | |
|---|---|---|---|
| Psalm 51 | Chas. Slagle-music | | |
| Let the Redeemed | Chas. Slagle | | |
| He Loves You | Chas. Slagle | | |
| I Am Confident | Chas. Slagle-music | | |
| The Truth Shall Set You Free | Chas. Slagle | | |
| He is Our Peace | Chas. Slagle | | |
| | | | |
| Teach Me Thy Way | Harvey Loland | PA 94-152 (pub.) | 12/22/80 col |
| | | | |
| We Have Come Into His House | Bruce Ballinger | Efo 181475 | 8/25/76 |
| Servants Unto All | Bos/Ballinger | | |
| I Will Never Leave You | Bruce Ballinger | Eu 669700 | 3/8/76 |
| I Can Do All Things | Bruce Ballinger | Efo 40832 | 3/8/76 |
| Coming Again | Bruce Ballinger | Efo 181897 | 4/1/76 |
| Christ In You | Bruce Ballinger | Efo 187446 | 3/14/77 |
| Let's Sing Praise | Bruce Ballinger | Eu 823999 | 9/19/77 |
| And We'll Give Him All the Glory | Bruce Ballinger | Eu 824000 | 9/19/77 |
| Psalm One | Bruce Ballinger | | |
| Deep Contentment | Bruce Ballinger | | |
| How Much He Must Have Loved Me | Bruce Ballinger | | |
| Jesus In My Heart | Bruce Ballinger | | |
| Love Has Never Been Greater | Bruce Ballinger | | |
| Jesus, I Worship You | Bruce Ballinger | | |
| The New Hallelujah | Bruce Ballinger | | |
| New Life | Bruce Ballinger | | |
| Just One Touch | Bruce Ballinger | | |
| Move Upon My Heart | Bruce Ballinger | | |
| How Can I Help But Praise Him | Bruce Ballinger | | |
| Holy Hush | Bruce Ballinger | | |
| Christ the Lord Is Born Today | Bruce Ballinger | | |
| Singing Hosanna | Bruce Ballinger | PA 56-224 (pub.) | 1/18/80 |
| Come and See | Bruce Ballinger | PA 56-225 (pub.) | 1/18/80 |
| Let the Trumpet Sound | Bruce Ballinger | PA 105-481 (pub.) | 6/8/81 |
| And We'll Worship Him | Bruce Ballinger | | |
| Hallelujah Praise | Bruce Ballinger | | |
| The Presence of the Lord | Bruce Ballinger | | |
| | | | |
| My Soul Escaped | Hall | | |
| | | | |
| Love Is Flowing | Sims | | |
| | | | |
| Turn Us Again | Temple | | |

*All indexed w/ASCAP 1/5/82*



```
MBR18DS              P U B L I S H E R   I N F O R M A T I O N
  M-CODE:  1280320                    NAME: SOUND III INC

  CAE CODE            : 089445139
  CLASS               :   P
  SOCIETY             : ASCAP                    S E E -
  DISTRIBUTION        : DOMESTIC & FOREIGN          UNIVERSAL MCA MUSIC PUBLISHING
  ASCAP STATUS        : CURRENT MEMBER              DIV OF UNIVERSAL STUDIOS INC
  MEMBERSHIP AGRMNT   : RETURNED SIGNED             M-CODE IS 0826550
  ROYALTY HOLD        : FEDERAL EXPRESS
  TAX ID  #             XX-XXX5324
  APPLICATION HOLD    : NO

  APPLICATION DATE    : 05 / 10 / 1976
  ELECTION DATE       : 05 / 27 / 1976
  CREDITED DATE       : 10 / 01 / 1975


  REPRESENTATIVE      : PETERSON JESSE J


  ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
            2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

**Copyright** | **Search Records Results**

Registered Works Database (Title Search)
**Search For:** WE HAVE COME INTO THIS HOUSE TO WORSHIP HIM/WE HAVE COME INTO THIS HOUSE TO)
WORSHIP HI

**Items 1 - 3 of 3**

**For a list of commonly used abbreviations that appear in the catalog record, <u>click here</u>.**

Conduct Another Search

---

**Check one or more and then** Submit **to see Full records.**

☐ **ITEM 1.** PA-197-114: (We have come into this house to) worship Him / compiled by Jesse Peterson, Mar
Hayes. [Claimant:] Tempo Music Publications

☐ **ITEM 2.** PA-472-593: We have come into this house to worship Him, II / arr. by Bruce Ballinger ; compil
Jesse Peterson, Bruce Ballinger. [Claimant:] Canticle Publications, Inc., Sound III, Inc., Rod & Staff Publicati
Inc., Glory Alleluia Music

☐ **ITEM 3.** PA-474-479: We have come into this house to worship Him II / arr. by Bruce Ballinger ; compile
Jesse Peterson, Bruce Ballinger. [Claimant:] Sound III, Inc.

---

<u>Home</u> | <u>Contact Us</u> | <u>Legal Notices</u> | <u>Freedom of Information Act (FOIA)</u> | <u>Library of Congress</u>

U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000

# EXHIBIT T

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**
UNITED STATES COPYRIGHT OFFICE



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTRATION NUMBER

PA **266-614** PAU

EFFECTIVE DATE OF REGISTRATION

Oct 29 1985
Month  Day  Year

REGISTER OF COPYRIGHTS
*United States of America*

OFFICIAL SEAL

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

SMALL TOWN

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

WORDS AND MUSIC

## 2

**NAME OF AUTHOR ▼**

**a** Riva Music Inc. as employer for hire of John Cougar Mellencamp

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

WORDS AND MUSIC

**NAME OF AUTHOR ▼**

**b**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**c**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1985 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ AUGUST  Day ▶ 19TH  Year ▶ 1985
USA ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

RIVA MUSIC INC.,
2 NEW KINGS ROAD,
LONDON S.W.6., ENGLAND.

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
OCT. 29. 1985
ONE DEPOSIT RECEIVED
OCT. 29. 1985
TWO DEPOSITS RECEIVED
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE OFFICE USE ONLY

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions. • Sign the form at line 8

DO NOT WRITE HERE

Page 1 of ___ pages

FORM PA

PA    266-614

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
   Yes

☐ DEPOSIT ACCOUNT
   FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION**  Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a.  **Preexisting Material**  Identify any preexisting work or works that this work is based on or incorporates. ▼

b.  **Material Added to This Work**  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼          **Account Number** ▼

**7**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

RIVA MUSIC LIMITED.
2 NEW KINGS ROAD,
LONDON S.W.6. 4SA.
ENGLAND.

Area Code & Telephone Number ▶  01-731 4131

Be sure to
give your
daytime phone
number

**8**

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☐ authorized agent of _____
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

TORQUIL CREEVY          date ▶ 21ST OCTOBER 1985

Handwritten signature (X) ▼

**9**

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

MAIL
CERTIFI-
CATE TO

Certificate
will be
mailed in
window
envelope

Name ▼
RIVA MUSIC LIMITED.

Number/Street/Apartment Number ▼
2 NEW KINGS ROAD,

City/State/ZIP ▼
LONDON S.W.6. 4SA,  ENGLAND.

\* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

April 1985—200,000

## ASSIGNMENT OF COPYRIGHT

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is acknowledged by the undersigned (jointly and severally "Assignor"), Assignor hereby assigns, transfers, sets over and conveys to Windswept Pacific Entertainment Co. d/b/a Full Keel Music Co., its successors and assigns ("Assignee") an undivided fifty percent (50%) of Assignor's right, title and interest in and to the musical compositions set forth on Exhibit A annexed hereto and consisting of 7 pages and incorporated herein by this reference dated May 15, 1989 ("Compositions") and any and all agreements relating to the Compositions as well as any rights pursuant thereto as well as the entire benefit of any such agreements.

This assignment, transfer and conveyance includes, without limitation, an undivided fifty percent (50%) of Assignor's right, title and interest in the lyrics, music and title of the Compositions, any and all works derived therefrom, the United States and worldwide copyright therein, and any renewals or extensions thereof, and any and all other rights that Assignor has or to which Assignor may become entitled under prior, existing or subsequently enacted federal, state or foreign law. Assignor also assigns to Assignor an undivided fifty percent (50%) of Assignee's entire interest in and to any and all causes of action for infringement of the Compositions, past, present and future, any other causes of action related to the Compositions or any rights therein and the sole and exclusive right to administer all of Assignor and Assignee's rights in the musical compositions subject hereto, in perpetuity throughout the universe. This assignment has been executed pursuant to a written agreement between Assignor and Assignee of even date herewith and is subject to all terms and provisions thereof.

EXECUTED this 19th day of May, 1989 as of the 1st day of January, 1989 at Los Angeles, California.

RIVA MUSIC, INC.

By: _____
An Authorized Signatory

| TITLE | COMPOSER(S) | CC 'RS SHARE | ORIG. PUB'S/ COMPOSER'S SHARE OF ROYALTIES M / P | ORIG. P'/ TERRI'/ CO. RES. | RETENTION PERIOD | MAJOR RECORDING |
|---|---|---|---|---|---|---|
| ...OL' NIGHT | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | John Cougar Mellencamp 45 & lp "Scarecrow" (1985) |
| ...' MOTHER FO YA | JOHN MELLENCAMP WILL CARY | 50% 50% | 70/30 50/50 70/30 50/50 | WORLD WORLD | L.O.C. L.O.C. | John Cougar Mellencamp lp "Uh-Huh" (1984) |
| ...TS TO MEMORIES | JOHN MELLENCAMP GEORGE GREEN | 60% 40% | 70/30 50/50 | WORLD Riva Music Ltd./ USA & CANADA | L.O.C. L.O.C. | John Cougar Mellencamp lp "Scarecrow" (1985) |
| ...IGH AND PAIN | LARRY CRANE | 100% | 60/40 50/50 | WORLD | L.O.C. | John Cougar Mellencamp 45 & lp "Uh-huh" (1984) |
| ...HOUSES | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | |
| ...GUITAR | JOHN MELLENCAMP DAN ROSS Larry Crane | 33.33% 33.33% 33.33% | 70/30 50/50 70/30 50/50 | WORLD WORLD GH Music Ltd. | L.O.C. L.O.C. | John Cougar Mellencamp lp "Uh-huh" (1984) |
| ...G: THE SCARECROW | JOHN MELLENCAMP GEORGE GREEN | 50% 50% | 70/30 50/50 | WORLD Riva Music Ltd./ | L.O.C. L.O.C. | John Cougar Mellencamp lp "Scarecrow" (1985) |
| ...S OLD DOLL | LARRY CRANE | 100% | 60/40 50/50 | WORLD | L.O.C. | |
| ...C.K. IN THE USA (SALUTE TO 60'S ROCK) | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | John Cougar Mellencamp 45 & lp "Scarecrow" (1985) |
| ...ALESEXI | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | John Cougar Mellencamp 45 & lp "Scarecrow" (1985) |
| ...DE TRAILER | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | Mitch Ryder lp (1983) "Never Kick A Sleeping Dog" |
| ...IOUS BUSINESS | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | John Cougar Mellencamp lp "Uh-huh" (1983) |
| ...TOWN | JOHN MELLENCAMP | 100% | 70/30 50/50 | WORLD | L.O.C. | John Cougar Mellencamp 45 & lp "Scarecrow" (1985) |

## ASSIGNMENT OF COPYRIGHT

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is acknowledged by the undersigned (jointly and severally "Assignor"), Assignor hereby assigns, transfers, sets over and conveys to Windswept Pacific Entertainment Co. d/b/a Full Keel Music Co., its successors and assigns ("Assignee") all of Assignor's right, title and interest in and to the musical compositions set forth on Exhibit A annexed hereto and consisting of 7 pages and incorporated herein by this reference dated May 15, 1989, ("Compositions") and any and all agreements relating to the Compositions as well as any rights pursuant thereto as well as the entire benefit of any such agreements.

This assignment, transfer and conveyance includes, without limitation, all of Assignor's right, title and interest in the lyrics, music and title of the Compositions, any and all works derived therefrom, the United States and worldwide copyright therein, and any renewals or extensions thereof, and any and all other rights that Assignor has or to which Assignor may become entitled under prior, existing or subsequently enacted federal, state or foreign law.  Assignor also assigns to Assignor all of Assignee's interest in and to any and all causes of action for infringement of the Compositions, past, present and future, any other causes of action related to the Compositions or any rights therein and the sole and exclusive right to administer all of Assignor and Assignee's rights in the musical compositions subject hereto, in perpetuity throughout the universe.  This assignment has been executed pursuant to a written agreement between Assignor and Assignee of even date herewith and is subject to all terms and provisions thereof.

EXECUTED this 31st day of August, 1990, as of the 1st day of July, 1990, at Los Angeles, California.

"ASSIGNOR"

RIVA MUSIC, INC.

By: _____
     An Authorized Signatory

MAY 15 1989

| TITLE | COMPOSER(S) | CCLI's SHARE | ORIG. PUB'S/ COMPOSER'S SHARE OF ROYALTIES (M / P — 50/50) | ORIG. P'R/ PUBL CO. PES. | RETENTION PERIOD | MAJOR RECORDING |
|---|---|---|---|---|---|---|
| EY OL' NIGHT | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | John Cougar Mellencamp 45 & 1; "Scarecrow" (1985) |
| IN' MOTHER FO YA | JOHN MELLENCAMP / WILL CARY | 50% / 50% | 70/30 / 70/30 | WORLD / WORLD | L.O.C. / L.O.C. | John Cougar Mellencamp lp "Uh-Huh" (1984) |
| UTES TO MEMORIES | JOHN MELLENCAMP / GEORGE GREEN | 60% / 40% | 70/30 | WORLD / Riva Music Ltd. / USA & CANADA | L.O.C. / L.O.C. | John Cougar Mellencamp lp "Scarecrow" (1985) |
| SION AND PAIN | LARRY CRANE | 100% | 60/40 | WORLD | L.O.C. | John Cougar Mellencamp 45 & 1; "Uh-Huh" (1984) |
| K HOUSES | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | John Cougar Mellencamp lp "Uh-Huh" (1984) |
| Y GUITAR | JOHN MELLENCAMP / DAN ROSS / Larry Crane | 33.33% / 33.33% / 33.33% | 70/30 / 70/30 | WORLD / WORLD / GH Music Ltd. | L.O.C. / L.O.C. | John Cougar Mellencamp lp "Scarecrow" (1985) |
| E: C: THE SCARECROW | JOHN MELLENCAMP / GEORGE GREEN | 50% / 50% | 70/30 | WORLD / Riva Music Ltd. / | L.O.C. / L.O.C. | John Cougar Mellencamp lp "Scarecrow" (1985) |
| GH OLD DOLL | LARRY CRANE | 100% | 60/40 | WORLD | L.O.C. | John Cougar Mellencamp 45 & 1; "Scarecrow" (1985) |
| O.C.K. IN THE USA, (SALUTE TO 60'S ROCK) | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | John Cougar Mellencamp 45 & 1; "Scarecrow" (1985) |
| ABLESDAY | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | Mitch Ryder lp (1983) "Never Kick A Sleeping Dog" |
| E DE TRAILER | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | John Cougar Mellencamp lp "Uh-Huh" (1983) |
| RIOUS BUSINESS | JOHN MELLENCAMP | 100% | 70/30 | WORLD | L.O.C. | John Cougar Mellencamp 45 & 1; "Scarecrow" (1985) |
| ALL TOWN | | | | | | |

Windswept Pacific Entertainment Co.
d/b/a Full Keel Music Co. and Windswept Music
9320 Wilshire Boulevard, Suite 200
Beverly Hills, California 90212

EMI Music Publishing
1290 Avenue of the Americas
New York, New York 10104

as of June 30, 1999

American Society of Composers and Publishers
One Lincoln Plaza
New York, New York 10023

Gentlemen:

Please be advised that as of the above date Windswept Pacific Entertainment Co. d/b/a Full Keel Music Co. and Windswept Music ("Windswept") has entered into an Asset Purchase and Sale Agreement (the "Agreement) with EMI Virgin Music, Inc. ("EMI").

Pursuant to the Agreement, Windswept has sold and assigned to EMI all of Windswept's interest in all compositions contained in each of the accounts (the "Accounts") listed on the attached schedule (the "Schedule").

Accordingly, Windswept hereby irrevocably authorizes and directs you to:

1.    Pay all amounts now or hearafter due and payable to Windswept Pacific Entertainment Co., doing business as any of the Accounts and/or any of their predecessors and all of their licensees to EMI at: EMI Music Publishing Worldwide, 810 Seventh Avenue, New York, New York 10019, Attention: Vice President, Royalty Department; and

2.    Render all related statements and activity reports, notices, claims and other correspondence any other information in any other form or media related to the Accounts directly to EMI at the address listed directly above.

Kindly acknowledge your receipt of this letter by signing and returning (in the enclosed envelope) the enclosed copy of this letter.

ascap.nonmixed.dirltr

American Society of Composers and Publishers
as of June 30, 1999
Page 2

This letter constitutes an irrevocable letter of instruction from Windswept to you.

Very truly yours,

WINDSWEPT PACIFIC ENTERTAINMET CO.
d/b/a each of the Catalogs

By:_____

ACCEPTED AND AGREED:

EMI VIRGIN MUSIC, INC.

By:_____

RECEIPT IS HEREBY ACKNOWLEDGED:

AMERICAN SOCIETY OF COMPOSERS
AND PUBLISHERS (ASCAP)

By:_____

ascap.nonmixed.dirltr



EMI Music Publishing

JENNIFER INSOGNA
SENIOR VICE PRESIDENT
GENERAL & COPYRIGHT ADMINISTRATION

August 11, 1999

**BY HAND**
**URGENT/IMPORTANT**

ASCAP
One Lincoln Plaza
New York, New York 10023

Att: Ellen Meltzer-Zahn
Att: Shirley McCollin
Att: Phyllis O' Rourke
Att: Paula Katz
Att: Richard Reimer
Att: Robert Stein

RE: WINDSWEPT PACIFIC ENTERTAINMENT CO. – ASSET PURCHASE

Gentleperson:

This letter will serve as notice of EMI's <u>purchase</u> as of June 30, 1999 of compositions contained in the catalogs controlled by Windswept Pacific Entertainment Co. in accordance with the attached Exhibits and Schedules. All purchased compositions are now controlled by us in the following companies:

**EMI FULL KEEL MUSIC CO. (ASCAP)**
**EMI LONGITUDE MUSIC CO. (BMI)**

Previous Windswept catalog names include but are not limited to:

**LONGITUDE MUSIC CO.**
**WINDSWEPT MUSIC**
**FULL KEEL MUSIC CO.**
**WINDSWEPT PACIFIC SONGS**
**FULL NELSON MUSIC**
**HARRICK MUSIC INC.**
**SHERLYN PUBLISHING CO. INC.**
**SATURDAY MUSIC INC.**         **AND MANY OTHERS**

Would you please see to it that all of your records are changed as soon as possible. *As you will note all income regardless of when earned is to be paid to EMI.*

810 SEVENTH AVENUE        PHONE: 212·830·2005    jinsogna@emimusicpub.com
NEW YORK, NEW YORK 10019    FAX: 212·830·5198    www.emimusicpub.com

A member of The EMI Group

Windswept Notification
Page 2.

All royalties and correspondence should be directed as follows:

Royalties                                          Correspondence

c/o EMI Music Publishing              c/o EMI Music Publishing
810 Seventh Avenue                      810 Seventh Avenue
36th floor                                      36th floor
New York, New York 10019            New York, New York 10019
Att: Vice President, Royalties          Att: Senior Vice President, Copyright Administration

*Further to my previous discussions with Ellen and Paula, please immediately forward to me any*
*documents you may need executed to effect the name change of these catalogs to EMI FULL*
*KEEL MUSIC CO.*

Please do not hesitate to call on me if you have any questions.

Many thanks.

Kind regards,                                     Receipt Confirmed:

Jennifer Insogna                                  By: _____
                                                          ASCAP

                                                        Date: _____

Encls.

B. Adams, M. Bandier, J. Boris,  A. Ashby,  R. Faxon, R. Flax, R. Levatino, C. Miller, J. Rosenthal,
L. Santiago, N. Weshkoff, J. LoFrumento, A. Wallace

# SMALL TOWN

Words and Music by
JOHN MELLENCAMP



COPYRIGHT © 1985 WINDSWEPT PACIFIC ENTERTAINMENT CO. d/b/a FULL KEEL MUSIC CO.



2   Educated in a small town
    Taught the fear of Jesus in a small town
    Used to daydream in that small town
    Another boring romantic that's me

    But I've seen it all in a small town
    Had myself a ball in a small town
    Married an L.A. doll and brought her to this small town
    Now she's small town just like me

3   Got nothing against a big town
    Still hayseed enough to say
    Look who's in the big town
    But my bed is in a small town
    Oh and that's good enough for me

    Well I was born in a small town
    And I can breathe in a small town
    Gonna die in this small town
    And that's prob'ly where they'll bury me

```
MBR18DS              P U B L I S H E R    I N F O R M A T I O N
M-CODE:  0010067                          NAME: EMI FULL KEEL MUSIC

CAE CODE            : 344301696
CLASS               : P
SOCIETY             : ASCAP
DISTRIBUTION        : DOMESTIC & FOREIGN
ASCAP STATUS        : CURRENT MEMBER
MEMBERSHIP AGRMNT   : RETURNED SIGNED
ROYALTY HOLD        : PICKUP
TAX ID  #             XX-XXX4144
APPLICATION HOLD    : NO

APPLICATION DATE    : 11 / 14 / 1988
ELECTION DATE       : 12 / 02 / 1988
CREDITED DATE       : 04 / 01 / 1988


REPRESENTATIVE      : FAXON ROGER


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

# EXHIBIT U

# CERTIFICATE OF COPYRIGHT REGISTRATION

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

**REGISTER OF COPYRIGHTS**
*United States of America*

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER
PA     **157-921**

PA          PAU

EFFECTIVE DATE OF REGISTRATION
**DEC 06 1982**
Month      Day      Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**
"1999"

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions
Words and Music

## 2

**a**

**NAME OF AUTHOR ▼**
Prince Nelson

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ _____ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1982 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ September Day ▶ 15 Year ▶ 1982
United States ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼
Controversy Music
c/o Manatt, Phelps
1888 Century Park East, 21st Floor
Los Angeles, California  90067

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼
Controversy Music is sole proprietorship of
Prince Nelson

APPLICATION RECEIVED
06 DEC 1982
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
06 DEC 1982

REMITTANCE NUMBER AND DATE
63237 DEC 6 82

DO NOT WRITE HERE OFFICE USE ONLY

FORM PA

PA : 157-921

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
   Yes

☐ DEPOSIT ACCOUNT
   FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION**   Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☒ Yes  ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☒ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number ▼**        **Year of Registration ▼**

PAU 440-507          1982

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a.  **Preexisting Material**   Identify any preexisting work or works that this work is based on or incorporates. ▼

b.  **Material Added to This Work**   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                    Account Number ▼

**7**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

Ms. Judie Castano
1888 Century Park East
21st Floor
Los Angeles, California  90067

Area Code & Telephone Number ▶ (213) 556-5507

Be sure to
give your
daytime phone
◀ number.

**CERTIFICATION***   I, the undersigned, hereby certify that I am the
Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of   Controversy Music
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

L/ Lee Phillips                                    date ▶  11/19/82

Handwritten signature (X) ▼

**8**

**MAIL
CERTIFI-
CATE TO**

Name ▼
Ms. Judie Castáno
Manatt, Phelps, Rothenberg & Tunney

Number/Street/Apartment Number ▼
1888 Century Park East, 21st Floor

City/State/ZIP ▼
Los Angeles, California  90067

**Certificate
will be
mailed in
window
envelope**

Have you:
● Completed all necessary spaces?
● Signed your application in space 8?
● Enclosed check or money order for $10 payable to Register of Copyrights?
● Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

2

# 1999

Words and Music by
PRINCE



1999 - 3 - 1
4584OSMX - 3 - 1

Copyright © 1982 Controversy Music
Made In U.S.A.

International Copyright Secured     All Rights Reserved



*Verse 2:*
I was dreamin' when I wrote this,
So sue me if I go too fast;
But life is just a party,
And parties weren't meant to last.
War is all around us,
My mind says prepare to fight.
So if I gotta die I'm gonna
Listen to my body tonight.
*(To Chorus:)*

*Verse 3:*
If you didn't come to party,
Don't bother knockin' on the door.
I've got a lion in my pocket,
And, baby, he's ready to roar.
Ev'rybody's got a bomb,
We could all die any day;
But before I'll let that happen,
I'll dance my life away.

Page: 1 Document Name: untitled

```
MBR18DS              P U B L I S H E R    I N F O R M A T I O N
 M-CODE:  0309425                       NAME: CONTROVERSY MUSIC

CAE CODE           : 051282502
CLASS              : P
SOCIETY            : ASCAP                  S E E -
DISTRIBUTION       : DOMESTIC & FOREIGN        UNIVERSAL MUSIC CORPORATION
ASCAP STATUS       : CURRENT MEMBER
MEMBERSHIP AGRMNT  : RETURNED SIGNED          M-CODE IS 1388000
ROYALTY HOLD       : FEDERAL EXPRESS
SOC SEC #            XXX-XX-0807
APPLICATION HOLD   : NO

APPLICATION DATE   : 05 / 05 / 1981
ELECTION DATE      : 11 / 24 / 1981
CREDITED DATE      : 04 / 01 / 1981


REPRESENTATIVE     : NELSON PRINCE ROGERS


ACTIONS:  1-ENTER NEXT ACTION CODE:  CMNT
          2-HIT "PF2" TO RETURN TO ACTION CODE TABLE;   PF9 - MEMBER SELECTION
```

Date: 01/26/2007 Time: 2:35:42 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SIMPLEVILLE MUSIC, et al.,         )
                                   )
                Plaintiffs,        )    CIVIL ACTION NO. 1:04CV393-T
                                   )
vs.                                )
                                   )
SHELLEY BROADCASTING COMPANY,      )
INC., STAGE DOOR DEVELOPMENT,      )
INC. AND H.JACK MIZELL,            )
                Defendants.        )

AFFIDAVIT IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF NEW YORK      )

PAMELA BLANK, being sworn, states:

1.    I am now, and have been since 1988, employed by the
American Society of Composers, Authors and Publishers ("ASCAP").
I am currently and have been since 1997 an Account Manager in
ASCAP's Broadcast Licensing Department.   I am informed and
believe plaintiffs herein are members of ASCAP.

2.    I make this affidavit in support of plaintiffs' motion
for summary judgment.   I make this affidavit on the basis of my
own personal knowledge of the facts recited below.   If necessary,
I am competent to testify to the facts stated below.

1

BACKGROUND

3.    ASCAP is an unincorporated membership association whose more than 225,000 members write and publish musical compositions. Each member, including each plaintiff in this action, has granted to ASCAP a non-exclusive license to authorize public performances of the member's copyrighted music.  On behalf of all of its members, ASCAP licenses the right to perform publicly all of the hundreds of thousands of copyrighted songs in the ASCAP repertory.  ASCAP's licensees include television networks and stations, radio networks and stations, restaurants, nightclubs, hotels and many other kinds of music users.

4.    In a sense, the plaintiffs in this action were randomly selected and are representative of all of ASCAP's members.

5.    At all relevant times, defendant Shelley Broadcasting Company, Inc. has been the corporate owner and FCC licensee of radio station WGEA, licensed for the city of Geneva, Alabama.

6.    At all relevant times, defendant Stage Door Development, Inc. has been the corporate owner and FCC licensee of radio station WRJM-FM, licensed for the city of Geneva, Alabama.

7.    At all relevant times, defendant H. Jack Mizell has been the President and sole owner of Shelley Broadcasting Company, Inc. with primary responsibility for the control, management, operation and maintenance of its affairs, including the operation of radio station WGEA.

2

8.    At all relevant times, H. Jack Mizell has been the President of Stage Door Development, Inc. with primary responsibility for the control, management, operation and maintenance of its affairs, including the operation of radio station WRJM-FM.

9.    Radio stations WGEA and WRJM-FM have not been licensed by ASCAP since August 8, 2003 to perform any of the copyrighted musical works in the ASCAP repertory, including the fifteen songs owned by plaintiffs and infringed by defendants on September 20, 21 and 22, 2003, as alleged in the Complaint.

10.    Unlike the vast majority of commercial radio stations throughout this country, WGEA and WRJM-FM have been operated by defendants in a manner that demonstrated their disdain for the Copyright Law and the rights of ASCAP's members.  The "evidence" of the defendants' attitude toward ASCAP and its members is contained in copies of correspondence and memoranda which are maintained in the files of WGEA and WRJM-FM which ASCAP has kept in the course of its regularly conducted business activities.  It is, of course, ASCAP's regular practice to create and maintain such memoranda and correspondence, and the files for radio stations in several states, including Alabama, are kept in the ASCAP Broadcast Licensing Department under my personal supervision.

<u>ASCAP's DEALINGS WITH DEFENDANTS</u>

11.    ASCAP's files on WGEA and WRJM-FM show that, as noted above, at all relevant times, the stations have been owned and

3

operated by corporations owned and controlled by H. Jack Mizell.

12.  For periods prior to January 14, 1991, Mizell held license agreements from ASCAP for Radio Stations WGEA and WRJM-FM.  However, the stations consistently failed to meet their payment obligations under those agreements and those licenses expired by their own terms on December 31, 1990, with license fees owing.

13.  Subsequently, defendants did not execute new license agreements or extension agreements for WGEA or WRJM-FM and on January 14, 1991, ASCAP informed them that their stations were no longer licensed by ASCAP.

14.  Even after defendants were no longer licensed, they continued to perform ASCAP's members' copyrighted music without permission by broadcast over their radio stations.  In 1993, ASCAP obtained evidence of the unauthorized broadcasts of its members' works by broadcast over WGEA and filed a complaint for copyright infringement.  That action, <u>Bencap, Inc. et al. v. Shelley Broadcasting Company Inc. and H. Jack Mizell</u>, Civil action No. CV-93-AS-696-S (filed June 7, 1993), was settled when Shelley Broadcasting and H. Jack Mizell executed a Consent Judgment under which defendants paid a settlement amount of $10,000 to ASCAP and executed ASCAP licenses for radio stations WGEA and WRJM-FM.

15.  Although Shelley Broadcasting and Mizell executed an ASCAP license for WGEA and Stage Door Development and Mizell executed an ASCAP license for WRJM-FM, Defendants once again

4

stopped paying the license fees due under their ASCAP licenses despite repeated requests for payment.

16.  By letters dated August 14, 1997, January 8, 1998 and February 9, 1998, ASCAP informed defendants that their accounts were in arrears.

17.  By letters dated August 11, 1998, sent certified mail, ASCAP sent defendants formal notices of default, stating ASCAP's intent to terminate defendants' ASCAP licenses if all outstanding license fee payments were not received within thirty days.

18.  By letters dated November 23, 1998, ASCAP duly terminated the licenses of radio stations WGEA and WRJM-FM.  The notices stated that defendants no longer had permission to perform ASCAP's members' copyrighted musical compositions by broadcast over those radio stations.

19.  Subsequently, under a settlement agreement between ASCAP and defendants, dated June 8, 1999 and executed by H. Jack Mizell on July 6, 1999, defendants agreed to cure the defaults on their stations' accounts by paying $8,100 in 12 monthly installments and ASCAP re-licensed radio stations WGEA and WRJM-FM.

20.  The license terms and fees of the ASCAP license agreements entered into by defendants were negotiated on an industry-wide basis between ASCAP and the Radio Music License Committee, representing several thousand radio stations.  In accordance with the antitrust consent decree entered in United States v. ASCAP that largely governs ASCAP's licensing activities

(the Amended Final Judgment entered in <u>United States v. ASCAP</u>
(1950 Trade Cases (CCH) ¶ 62,595 (S.D.N.Y. March 14, 1950),
superceded by the Second Amended Final Judgment entered in <u>United
States v. ASCAP</u>, 2001 Copyright L. Dec. (CCH) ¶28,341 (S.D.N.Y.
June 11, 2001)), the license agreements were approved by United
States District Judge William C. Conner of the United States
District Court for the Southern District of New York.  Attached
hereto as Exhibit A are copies of the license agreements
previously in effect between ASCAP and the defendants, the Orders
by which Judge Conner approved those agreements as "reasonable
and non-discriminatory" and the correspondence related to those
agreements.

21.   In accordance with the terms of the license agreements
in effect between ASCAP and the defendants, ASCAP audited the
financial records of radio stations WGEA and WRJM-FM for the
period January 1, 1998 through December 31, 2001.  The audit
revealed that defendants had underreported their annual revenue
and owed an additional $4,388 in license fees for the stations.

22.   By letter dated January 23, 2003, ASCAP requested that
defendants pay the additional license fees shown to be owed by
ASCAP's audit.  Defendants did not dispute the audit claims, as
they were entitled to do under their ASCAP licenses, nor did they
pay the additional fees.

23.   In addition to their refusal to pay the audit claims,
defendants, yet again, stopped paying the license fees due under
their ASCAP licenses although payment was duly demanded.

6

24.   Subsequently, by letters dated March 17, 2003, ASCAP informed defendants that their accounts were in arrears.

25.   By letters dated June 13, 2003, sent certified mail, ASCAP sent defendants formal notices of default, stating ASCAP's intent to terminate defendants' ASCAP licenses if all outstanding license fee payments were not received within thirty days.

26.   By letters dated August 8, 2003, sent by certified mail, ASCAP duly terminated the licenses of radio stations WGEA and WRJM-FM.   The notices stated that defendants no longer had permission to perform ASCAP's members' copyrighted musical compositions by broadcast over WGEA and WRJM-FM.

27.   By letters dated December 2, 2003, ASCAP wrote defendants advising that it had obtained evidence of performances of its members' copyrighted songs broadcast over radio stations WGEA and WRJM-FM.   ASCAP's letters offered to reinstate the licenses of both stations upon the payment of license fees that would have been owed had the stations continued to be properly licensed.   Defendants did not accept ASCAP's offer.

28.   Attached hereto as Exhibit B are copies of the correspondence from ASCAP's files on WGEA and WJRM-FM recounting ASCAP's unavailing efforts to license its members' copyrighted musical compositions by broadcast over those stations.

## THE EVIDENCE OF INFRINGEMENT

29.   On August 28, 2003, ASCAP engaged Jerry Glaze to obtain tape recordings of the broadcasts of radio stations WGEA and WRJM-FM.   Mr. Glaze made tape recordings of WGEA's broadcasts on

7

September 20-21, 2003.  Those recordings of WGEA are contained on sixteen cassette tapes.  Mr. Glaze also made recordings of WRJM-FM's broadcasts on September 21-22, 2003.  Those recordings are also contained on sixteen cassette tapes.  At the same time Mr. Glaze made the tape recordings, he prepared handwritten logs identifying as many of the songs performed and contained on the tapes as he could recognize or which the stations' announcers identified.  Following the completion of his recording assignments, Mr. Glaze mailed his tape recordings and logs to ASCAP's office in New York where they have been maintained since they were received in September 2003.

<div align="center">APPROPRIATE RELIEF</div>

30.    Copyright owners have enjoyed the exclusive right of public performance for almost a century.  At this late date, it can hardly be said that any broadcaster is an innocent infringer.  Certainly, in this case, where Mizell and Shelley Broadcasting have been previously sued by members of ASCAP for copyright infringement, it cannot be said that defendants were unaware of their liability under the United States Copyright Law.

31.    Defendants have willfully infringed copyrighted songs by broadcasting ASCAP's members' music on a daily basis over radio station WGEA and WRJM-FM without a license from ASCAP or, I believe, permission obtained directly from ASCAP's members.  Based on the last license fee report submitted by the stations for years prior to 2002, I estimate that if properly licensed by ASCAP to date, the total owed for both stations for license fees,

auidit charges and finance charges would be $8,600 (separately, WGEA would owe $1,750 and WRJM-FM would owe $6,850), subject to audit.

32.  Finally, at my request, WGEA and WRJM were monitored again from February 24 to 27, 2006.  The tape recordings of the stations' broadcasts show that the stations continue to broadcast performances of music in the ASCAP repertory.

_____
PAMELA BLANK

Sworn to and subscribed before me
this _13__ day of _June_, 2006.

_____
NOTARY PUBLIC

SUSAN HAUGH
Notary Public, State of New York
No. 41-4752612
Qualified in Queens County
Certificate Filed in New York County
Commission Expires __9/30/10/12__

9

# EXHIBIT A

AMERICAN SOCIETY OF COMPOSERS,
    AUTHORS AND PUBLISHERS
One Lincoln Plaza
New York, N.Y. 10023

Re:

WRJM-FM
Stage Door Development, Inc. (al)
409 East Broad Street
Ozark, Al  36360

Gentlemen:

The radio license agreement in effect between us will expire December 31, 1995. We understand that you and the Radio Music License Committee ("the Committee") have commenced negotiations on license terms and conditions for the period commencing January 1, 1996. We also understand that the Committee represents stations employing all kinds of formats. The stations range from very small to very large stations and they are located throughout the United States. We choose neither to be represented by the Committee nor to negotiate separately with you for this period.

We wish to have the benefit of the new licenses on the same basis as stations represented by the Committee, and also to be licensed by you after December 31, 1995 if agreement on new terms has not been reached by that date. Accordingly, you and we hereby agree that:

1. You and we shall be bound for the next license term commencing January 1, 1996, by the license terms and conditions which you and the Committee agree on or which are determined by the Court for such term in any proceeding brought by, or under the auspices of, the Committee under the Amended Final Judgment in *United States v. ASCAP.*

2. (a) If you and the Committee have not agreed on new license terms and conditions by December 31, 1995, or if you and we have not entered into a new license agreement by that date, you and we further agree to extend the agreement between us which will expire December 31, 1995, and all of the terms, conditions and provisions thereof (except the provision that the term of the license shall end on December 31, 1995), for the interim license term commencing January 1, 1996.

(b) For the period after December 31, 1995, this license extension is subject to retroactive adjustment to January 1, 1996, on the basis of the terms and conditions arrived at for the term beginning January 1, 1996 (i) by negotiation between you and the Committee or (ii) by Court determination of reasonable fees in any proceeding brought by, or under the auspices of, the Committee under the Amended Final Judgment in *United States v. ASCAP.*

(c) This proposed extension is for the interim license term beginning January 1, 1996 and may only be terminated by substitution of agreements for the period commencing January 1, 1996, that are either negotiated by ASCAP and the Committee or that embody fees determined by the Court to be reasonable for similarly situated stations. In addition, ASCAP shall have the right to terminate the license in the extended term in accordance with the provisions of Paragraph 8 of the agreement, and either of us shall have the right to terminate the agreement in accordance with Paragraph 10 of the agreement.

3. At the conclusion of the negotiations or Court proceedings described above, you will offer and we shall accept the same license agreements on the same terms and conditions as are made available to stations represented by the Committee.

4. We have voluntarily chosen not to be formally represented by the Committee in negotiations or in any proceeding the Committee may bring, or to make our own application under the Amended Final Judgment. We hereby waive our right to make an application to you or to the Court under the Amended Final Judgment for the license period commencing January 1, 1996 and ending as agreed upon by you and the Committee or determined by the Court, for terms and conditions other than those arrived at by your negotiations with the Committee or determined by the Court.

Your signature underneath the word "ACCEPTED", together with our signature below, will make this a valid, binding, and enforceable extension agreement between us.

Sincerely yours,

Stage Door Development, Inc.

LICENSEE _____
(Full corporate or other name of station owner)

By _____

President (2/28/95)
(fill in capacity in which signed)

ACCEPTED:

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

By _____

Dated ____ JAN 9 1996

(a) If corporation, state corporate office held;

(b) If partnership, write word "partner" under signature of signing partner;

(c) If individual owner, write "individual owner" under signature.

LOCAL STATION BLANKET RADIO LICENSE

**AGREEMENT** made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("Society") and    STAGE DOOR DEVELOPMENT, INC.

("Licensee") as follows:

1.    **Term and Scope of License.** Society grants to Licensee and Licensee accepts for a period commencing as of    January 1,    , 199 4    and ending December 31, 1995, a license to perform publicly by radio broadcasting on "Licensee's Radio Programs" from Radio Station    WRJM FM

located at
409 East Broad Street, Ozark, AL 36360

("the Station") non-dramatic performances of the separate musical compositions in the "Society's Repertory". This license does not extend to or include the public performance by radio broadcasting or otherwise of any rendition or performance of any opera, operetta, musical comedy, play or like production, as such, in whole or in part. Nothing in this agreement shall be construed as granting, or as authorizing Licensee to grant, to others any right to perform publicly or reproduce in any manner any of the musical compositions licensed under this agreement, or as authorizing any receiver of any radio broadcast to perform publicly or reproduce the same in any manner. The radio broadcast performances licensed under this agreement may originate at the Station or at any other place but nothing in this agreement shall be deemed to grant a license to anyone authorizing any public performance in such other place of any such composition.

2.    **Definitions.** As used in this agreement:

A.    "Society's Repertory" means all musical compositions which the Society has the right to license for public performance now or hereafter during the term of this agreement. Included for the full term of this agreement are all compositions written and copyrighted by members of Society and in the repertory on the date this agreement is executed. Compositions later written or copyrighted by members during the license term shall be included for the full balance of the term.

B.    "Licensee's Radio Programs" means all programs and announcements broadcast by the Station, all of "Licensee's Simulcast Programs", and all of "Licensee's Occasional Network Programs", whether originated by the Station or by any other source, including those furnished by networks, or by any other program suppliers, whether or not such networks or other program suppliers are licensed by Society.

C.    "Licensee's Simulcast Programs" means all programs broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts by two or more stations owned by Licensee or for which Licensee acts as a time broker.

D.    "Licensee's Occasional Network Programs" means all programs that Licensee (or any company under the same or substantially the same ownership, management or control as the Station) causes to be broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts on any group of two or more radio stations affiliated with Licensee for the purpose of broadcasting such programs. For the purposes of this agreement any sports network operated by Licensee (or any company under the same or substantially the same ownership, management or control as the Station) shall be deemed to be an occasional network.

E.    "Time Broker" means any person, firm or corporation not under the same or substantially the same ownership, management or control as the Station that engages in "time brokerage".

F.    "Time Brokerage" means any arrangement between a station and a time broker that:

(1)    authorizes the resale by the time broker of the radio broadcasting facilities of the station;

(2)    permits the time broker to provide programs for 10% or more of the time the station is on the air; and

(3)    provides for the sale by the time broker of all or substantially all announcements within the brokered time.

G.    "Gross Revenue" means all cash payments made by or on behalf of:

(1)    sponsors or donors for the use of radio broadcasting facilities of the Station;

(2)    sponsors of, or donors to, Licensee's simulcast programs;

(3)    sponsors of, or donors to, Licensee's occasional network programs;

(4)    time brokers who each provide programs for less than 10% of the time the Station is on the air, or recognized wholly independent companies engaged in arrangements with radio or television stations generally for the resale of the radio broadcasting facilities of the Station; and

(5) wholly independent networks or other program suppliers for the broadcasting of such networks' or program suppliers' programs or announcements by the Station.

Such payments shall include all payments made directly to, or as authorized by, Licensee, its employees, representatives, agents or any other person acting on Licensee's behalf, and all payments made to any company, firm or corporation under the same or substantially the same ownership, management or control as the Station. Such payments shall not include payments made to third parties, such as networks or program suppliers, that are not under the same ownership, management or control as the Station, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter".

H.    "Adjusted Gross Revenue" means gross revenue less:

(1)    advertising agency commission not to exceed 15% actually allowed to an advertising agency that has no direct or indirect ownership or managerial connection with Licensee or the Station;

(2)    any sums received from Licensee's political radio programs;

(3)    bad debts actually written off and discounts allowed or rebates paid; and

(4)    rate card discounts, cash, quantity and/or frequency actually allowed.

I.    "Revenue Subject to Fee" means adjusted gross revenue or, at Station's option, adjusted gross revenue less the total of the following itemized deductions which exceeds 15% of adjusted gross revenue:

(1)    All compensation over and above the total annual amount indicated below, actually paid by the Station to personnel whose duties primarily are acting as (a) master of ceremonies or disc jockey on musical programs; or (b) vocalist or instrumentalist engaged for a specific program; or (c) featured newscaster and news commentator; or (d) featured sportscaster; or (e) master of ceremonies on an entertainment program; or (f) announcer:

| Station's Annual "Adjusted Gross Revenue" | Total Annual Amount Not Deductible |
|---|---|
| Under - $ 50,000 | $ 6,200 |
| $ 50,000 - $149,999 | $18,600 |
| $150,000 - $299,999 | $27,900 |
| $300,000 - $499,999 | $41,900 |
| $500,000 - $749,999 | $46,500 |
| $750,000 - $999,999 | $53,700 |
| $1,000,000 and Over | $62,000 |

Licensee may not deduct any compensation paid to any person who has a stock or other ownership interest in Licensee or in the station of 40% or more.

(2)    The actual payment by the Station to an independent supplier of news ticker or news audio service (i.e., AP or UPI or other similar agencies) for news ticker or news audio service.

(3)    The following actual costs incurred by the Station for a specific program: (a) payments to the telephone company or like transmission utility for remote pick-up necessary to broadcast such program from a point outside a studio of the Station; and (b) rights for broadcasting a sports or other special event.

(4)    The following actual payments made by the Station to a wholly independent network not licensed by Society for a specific local program: (a) if such network is owned and operated by a college or university, the actual payment made by the Station to such college or university; (b) if such network is not owned and operated by a college or university, the actual payments made for talent and for broadcast rights (which may not exceed the amount actually paid to or for the original holder of the broadcast rights for the particular program), and the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast the program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

(5)    The following actual costs incurred in connection with Licensee's occasional network programs: (a) the payments to its affiliated stations in connection with such programs; (b) the actual payments made for talent and broadcast rights (which may not exceed the amount actually paid to or for the original holder of such broadcast rights); and (c) the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast that program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

3.    **Music Reports.** Licensee agrees to furnish to Society upon request a list of all musical compositions on Licensee's local radio programs, showing the title, composer and author of each composition. Licensee shall not be obligated to furnish such list for a period or periods which in the aggregate, exceed one month of any one calendar year during the term of this agreement.

4. **Right to Restrict.**

A.   The members of Society shall have the right to restrict the radio broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon other interests under the copyrights of such works; provided, however, that (1) the maximum number of compositions which may be restricted at any time shall not exceed 500; (2) limited licenses will be granted upon application to Society entirely free of additional charge as to restricted compositions, if and when the copyright owners thereof are unable to show reasonable hazards to their major interests likely to result from such radio broadcasting; (3) such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; (4) in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and (5) in no event shall any composition, after the initial radio broadcast thereof, be restricted for the purpose of confining further radio broadcasts thereof to a particular artist, station, network or program.

B.   Society reserves the further right in good faith to restrict the radio broadcasting of any composition, over and above the number specified in the previous paragraph, only as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the Society's repertory or on a claim that Society does not have the right to license the public performance of such composition by radio broadcasting.

5. **License Fee.**

A.   In consideration of the license herein granted, Licensee agrees to pay to Society for each year during the term of this agreement a fee which is the applicable percentage of "Revenue Subject to Fee", or Minimum Fee, whichever is greater:

| Year | Percentage Fee | Minimum Fee |
|------|---------------|-------------|
| 1991 | 1.575% | $400 |
| 1992 | 1.585% | |
| 1993 | 1.600% | |
| 1994 | 1.605% | |
| 1995 | 1.615% | |

The minimum fee for each year 1992 through 1995 shall be the minimum fee for the prior year adjusted annually in accordance with any increase in the Consumer Price Index (National, all items) between the preceding October and the next preceding October.

B.   In the event that Licensee's payment of fees under this agreement causes Society to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of Society's receipts from Licensee, and (1) Society has taken reasonable steps to be exempted or excused from paying such tax; and (2) Society is permitted by law to pass through such tax to its licensees, Licensee shall pay to Society the full amount of such tax.

6. **Reports and Payments.**

A.   On or before the first day of April in each year commencing 1992, Licensee shall send to Society a report of the license fee due for the preceding calendar year. Each such report shall be made by completing fully the Statement of Account form supplied free of charge by Society. A copy of the Statement of Account form is annexed and made a part of this agreement.

B.   For each month during the term of this agreement, Licensee shall pay to Society on or before the first day of the following month, a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any increase in the Consumer Price Index (National, all items) between the preceding October and the next preceding October. If the report required by Paragraph 6.A. for any calendar year is not received by Society when due, the monthly payments shall be in the amount of the monthly payments due for the preceding year, plus 24%, and payments at that rate shall continue until the late report is received by Society. If the station commenced broadcasting after January 1, 1991, Licensee shall furnish Society with a good faith estimate of its revenue for the first year of operation and the monthly payments during the first calendar year of broadcasting shall be 1/12th of the fee provided in Paragraph 5.A. for a station having such Revenue Subject to Fee.

C.   Each report required by Paragraph 6.A. of this agreement for the preceding calendar year shall be accompanied by payment to Society of the license fee due over and above all amounts paid to Society for the preceding calendar year pursuant to Paragraph 6.B. If the amount paid by Licensee for the preceding calendar year exceeds the license fee due for the year, Licensee shall apply the excess payment against future monthly

payments. If the excess payment is greater than three monthly payments required by Paragraph 6.B., Society shall, upon written request of Licensee, refund the excess payment.

D. If any payment required under Paragraph 6.B. or 6.C. is not received by Society before the first day of the month following the date when the payment was due, Licensee agrees to pay Society a finance charge of 1½% per month from the date the payment was due.

E. License fee reports shall be made on a billing basis by all stations, except that any station may report on a cash basis if (1) its books have been kept on a cash basis and (2) it reported to Society only on a cash basis and at no time on a billing basis during the entire term of its agreement with Society ending February 28, 1977, and continuously thereafter. All billings made subsequent to the termination of this agreement with respect to radio broadcasts made during the term hereof shall be accounted for by Licensee as and when such billings are made by Licensee.

F. If a report required by Paragraph 6.A. of this agreement is not received by the Society within 30 days of the date that the report was due, Society may give notice to Licensee that Licensee has an additional 30 days within which to submit the report on either the "Adjusted Gross Revenue" or "Adjusted Gross Revenue less itemized deductions" basis. If Licensee fails to submit the report within the additional 30-day period, the report must be on the "Adjusted Gross Revenue" basis.

G. Licensee shall submit a single license fee report for:

(1) AM and FM stations owned by Licensee in the same city if the combined "gross revenue" for the stations is less than $75,000; or

(2) all stations owned by Licensee that simultaneously broadcast programs for 80% or more of the time the stations are on the air concurrently.

If Licensee acts as a time broker for one or more other radio stations that are licensed pursuant to this form of local station blanket radio license, Licensee shall include in its license fee reports for the Station all gross revenue relating to periods on such other station or stations that are simulcast or are sold in combination with the Station. All other stations owned by Licensee, or for which Licensee acts as a time broker, shall report and pay separately, and be treated for all purposes as separate stations.

7. **Audits.**

A. Society shall have the right by its duly authorized representatives, at any time during customary business hours, to examine the books and records of account of Licensee only to such extent as may be necessary to verify any report required by this agreement. Society shall consider all data and information coming to its attention as a result of any such examination of books and records as completely and entirely confidential.

B. The period for which the Society may audit shall be limited to the four calendar years reported preceding the year in which the audit is made; provided however, that if an audit is postponed at the request of the Station the Society shall have the right to audit for the period commencing with the fourth calendar year reported preceding the year in which notification of intention to audit was first given by the Society to the Station. This limitation shall not apply if the Station fails or refuses after written notice from the Society to produce the books and records necessary to verify any report or statement of accounting pursuant to the agreement.

C. The period for which Licensee may correct computational errors, or errors relating to deductions permitted under the agreement on its license fee reports shall be limited to four calendar years preceding the year in which such corrected reports were submitted. This provision shall not be construed to permit a station to submit a report on the "Adjusted Gross Revenue less itemized deductions" basis for a period previously reported on the "Adjusted Gross Revenue" basis.

D. In the event the Society's audit of Licensee's books and records discloses that Licensee has underpaid license fees due Society:

(1) Licensee shall pay a finance charge on such additional license fees of 1½% per month from the date(s) such fees should have been paid pursuant to this agreement if the underpayment is 5% or more, but not less than $1000.

(2) Licensee shall pay a finance charge on such additional license fees of 1½% per month beginning thirty (30) days after the date Society bills such additional license fees to Licensee if the underpayment is less than 5% or less than $1000.

(3) If Licensee disputes all or part of the Society's claim for additional fees pursuant to an audit, Licensee shall, within thirty (30) days from the date Society bills such additional fees, (i) advise Society, in writing, of the basis for such dispute and (ii) pay to Society any fees indisputably owed together with any applicable finance charges on additional fees indisputably owed in accordance with subparagraph (1) above. If there is a good faith dispute between Licensee and Society with respect to all or part of the additional fees Society has billed pursuant to this Paragraph, no finance charges shall be billed with respect to such disputed fees for a period beginning on the date Society bills such disputed fees and ending sixty (60) days from the date Society responds to Licensee's written notification of the existence of a dispute.

(4) Finance charges computed in accordance with this Paragraph and pertaining to additional fees which Licensee disputes in accordance with subparagraph (3) above shall be adjusted pro-rata to the amount arrived at by Licensee and Society in resolution of the dispute with respect to additional fees due.

8. **Breach or Default.** Upon any breach or default by Licensee of any terms herein contained relating to the reports, accountings or payments required to be made by Licensee, Society may give Licensee thirty (30) days' notice in writing to cure such breach or default, and in the event that such breach or default has not been cured within said thirty (30) days, Society may then promptly terminate this license.

9. **Time Brokerage Arrangements.** If Licensee enters into a time brokerage arrangement as defined in Paragraph 2.F. above, the license granted by this agreement shall automatically terminate thirty (30) days after the commencement date of the time brokerage arrangement unless Licensee has furnished to Society a complete copy of the time brokerage agreement and Licensee and Time Broker have executed a letter to Society in the form annexed and made a part of this agreement requesting amendment of the license agreement to add Time Broker as a party. When such a letter has been fully executed by Licensee, Time Broker and Society, this agreement shall be deemed amended accordingly.

10. **Indemnity Clause.** Society agrees to indemnify, save and hold harmless and to defend Licensee, its advertisers and their advertising agencies, and its and their officers, employees and artists, from and against all claims, demands and suits that may be made or brought against them or any of them with respect to the performance under this agreement of any compositions in the Society's repertory which are written or copyrighted by members of Society. Licensee agrees to give Society immediate notice of any such claim, demand or suit and agrees immediately to deliver to Society all papers pertaining thereto. Society shall have full charge of the defense of any such claim, demand or suit and Licensee shall cooperate fully with Society in such defense. Licensee however shall have the right to engage counsel of its own at its own expense who may participate in the defense of any such action. Society agrees at the request of Licensee to cooperate with and assist Licensee, its advertisers and their advertising agencies and its and their officers, employees and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the Society's repertory, but not copyrighted or written by members of Society. This Paragraph 10 shall not apply to performances of any works that may be restricted under Paragraph 4 of this agreement.

11. **Rights of Termination.**

A. In the event of the termination or suspension of the governmental licenses covering the Station or any substantial alteration or variation of the terms and conditions thereof, or any major interference with the operations of the Station due to governmental measures or restrictions, Licensee shall have the right to terminate this agreement upon seven (7) days' written notice.

B. In the event of:

(1) any major interference with the operation of Society in the state, territory, dependency, possession or political subdivision in which the Station is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(2) any substantial increase in the cost to the Society of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision which is applicable to the licensing of performing rights,

Society shall have the right to terminate this agreement on thirty (30) days' written notice to Licensee.

12. **Notices.** All notices required or permitted to be given by either of the parties to the other under this agreement shall be duly and properly given if:

A.    mailed to the other party by registered or certified United States mail; or

B.    sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

C.    sent by generally recognized same-day or overnight delivery service,

addressed to the party at its usual place of business.

13. **Successors and Assignees.** This agreement shall enure to the benefit of and shall be binding upon the parties and their respective successors and assignees, but no assignment shall relieve the parties of their respective obligations under this agreement.

14. **Per Program License.** The "local station per program license" for the term ending December 31, 1995 is being offered to Licensee simultaneously with this agreement. In accepting this agreement, Licensee acknowledges that it has a choice of entering into either this agreement or the per program license with Society; that Licensee has the opportunity to negotiate for separate licenses with the individual members of Society; and that Licensee is voluntarily entering into this agreement with Society. Licensee may substitute the per program agreement in place of this agreement by giving Society written notice at least 60 days prior to the commencement of any month during the term of this agreement. In such event, effective with the commencement of that month, the per program agreement shall be in full force and effect between Licensee and Society for the balance of the license term.

15. **Applicable Law.** The fees set forth in this agreement have been approved by the United States District Court for the Southern District of New York as reasonable and non-discriminatory in accordance with the Amended Final Judgment in *United States v. ASCAP.* The meaning of the provisions of this agreement shall be construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, this agreement has been duly executed by Society and Licensee this    30th    day of    March     , 199 4

APR 07 1994

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

By _____

LICENSEE

STAGE DOOR DEVELOPMENT, INC.
_____
(Full corporate or other name of station owner)

By _____

H. Jack Mizell, President
_____

(a)    If corporation, state corporate office held;
(b)    If partnership, write word "partner" under signature of signing partner;
(c)    If individual owner, write "individual owner" under signature.

AMERICAN SOCIETY OF COMPOSERS,
   AUTHORS AND PUBLISHERS
One Lincoln Plaza
New York, N.Y. 10023

Re:

RADIO STATION    WGEA
SHELLEY BCG COMPANY INC.
409 E BROAD STREET
OZARK                    AL 36360

Gentlemen:

The radio license agreement in effect between us will expire December 31, 1995. We understand that you and the Radio Music License Committee ("the Committee") have commenced negotiations on license terms and conditions for the period commencing January 1, 1996. We also understand that the Committee represents stations employing all kinds of formats. The stations range from very small to very large stations and they are located throughout the United States. We choose neither to be represented by the Committee nor to negotiate separately with you for this period.

We wish to have the benefit of the new licenses on the same basis as stations represented by the Committee, and also to be licensed by you after December 31, 1995 if agreement on new terms has not been reached by that date. Accordingly, you and we hereby agree that:

1. You and we shall be bound for the next license term commencing January 1, 1996, by the license terms and conditions which you and the Committee agree on or which are determined by the Court for such term in any proceeding brought by, or under the auspices of, the Committee under the Amended Final Judgment in *United States v. ASCAP*.

2. (a) If you and the Committee have not agreed on new license terms and conditions by December 31, 1995, or if you and we have not entered into a new license agreement by that date, you and we further agree to extend the agreement between us which will expire December 31, 1995, and all of the terms, conditions and provisions thereof (except the provision that the term of the license shall end on December 31, 1995), for the interim license term commencing January 1, 1996.

(b) For the period after December 31, 1995, this license extension is subject to retroactive adjustment to January 1, 1996, on the basis of the terms and conditions arrived at for the term beginning January 1, 1996 (i) by negotiation between you and the Committee or (ii) by Court determination of reasonable fees in any proceeding brought by, or under the auspices of, the Committee under the Amended Final Judgment in *United States v. ASCAP*.

(c) This proposed extension is for the interim license term beginning January 1, 1996 and may only be terminated by substitution of agreements for the period commencing January 1, 1996, that are either negotiated by ASCAP and the Committee or that embody license fees determined by the Court to be reasonable for similarly situated stations. In addition, ASCAP shall have the right to terminate the license in the extended term in accordance with the provisions of Paragraph 8 of the agreement and either of us shall have the right to terminate the agreement in accordance with Paragraph 10 of the agreement.

3. At the conclusion of the negotiations or Court proceedings described above, you will offer and we shall accept the same license agreements on the same terms and conditions as are made available to stations represented by the Committee.

4. We have voluntarily chosen not to be formally represented by the Committee in negotiations or in any proceeding the Committee may bring, or to make our own application under the Amended Final Judgment. We hereby waive our right to make an application to you or to the Court under the Amended Final Judgment for the license period commencing January 1, 1996 and ending as agreed upon by you and the Committee or determined by the Court, for terms and conditions other than those arrived at by your negotiations with the Committee or determined by the Court.

Your signature underneath the word "ACCEPTED", together with our signature below, will make this a valid, binding, and enforceable extension agreement between us.

Sincerely yours,

LICENSEE _SHELLEY BROADCASTING Co, INC_
(Full corporate or other name of station owner)

By _____

_Presiden_____
(fill in capacity in which signed)

ACCEPTED:

AMERICAN SOCIETY OF COMPOSERS,
    AUTHORS AND PUBLISHERS

By _____

Dated _____

(a) If corporation, state corporate office held;

(b) If partnership, write word "partner" under signature of signing partner;

(c) If individual owner, write "individual owner" under signature.

LOCAL STATION BLANKET RADIO LICENSE

**AGREEMENT** made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("Society") and SHELLEY BROADCASTING COMPANY, INC.

("Licensee") as follows:

1.  **Term and Scope of License.** Society grants to Licensee and Licensee accepts for a period commencing as of *January 1*, 199*4* and ending December 31, 1995, a license to perform publicly by radio broadcasting on "Licensee's Radio Programs" from Radio Station *WGEA*

located at
   P.O. Box 339, Geneva, Alabama 36340

("the Station") non-dramatic performances of the separate musical compositions in the "Society's Repertory". This license does not extend to or include the public performance by radio broadcasting or otherwise of any rendition or performance of any opera, operetta, musical comedy, play or like production, as such, in whole or in part. Nothing in this agreement shall be construed as granting, or as authorizing Licensee to grant, to others any right to perform publicly or reproduce in any manner any of the musical compositions licensed under this agreement, or as authorizing any receiver of any radio broadcast to perform publicly or reproduce the same in any manner. The radio broadcast performances licensed under this agreement may originate at the Station or at any other place but nothing in this agreement shall be deemed to grant a license to anyone authorizing any public performance in such other place of any such composition.

2.  **Definitions.** As used in this agreement:

   A.  "Society's Repertory" means all musical compositions which the Society has the right to license for public performance now or hereafter during the term of this agreement. Included for the full term of this agreement are all compositions written and copyrighted by members of Society and in the repertory on the date this agreement is executed. Compositions later written or copyrighted by members during the license term shall be included for the full balance of the term.

   B.  "Licensee's Radio Programs" means all programs and announcements broadcast by the Station, all of "Licensee's Simulcast Programs", and all of "Licensee's Occasional Network Programs", whether originated by the Station or by any other source, including those furnished by networks, or by any other program suppliers, whether or not such networks or other program suppliers are licensed by Society.

   C.  "Licensee's Simulcast Programs" means all programs broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts by two or more stations owned by Licensee or for which Licensee acts as a time broker.

   D.  "Licensee's Occasional Network Programs" means all programs that Licensee (or any company under the same or substantially the same ownership, management or control as the Station) causes to be broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts on any group of two or more radio stations affiliated with Licensee for the purpose of broadcasting such programs. For the purposes of this agreement any sports network operated by Licensee (or any company under the same or substantially the same ownership, management or control as the Station) shall be deemed to be an occasional network.

   E.  "Time Broker" means any person, firm or corporation not under the same or substantially the same ownership, management or control as the Station that engages in "time brokerage".

   F.  "Time Brokerage" means any arrangement between a station and a time broker that:

      (1)  authorizes the resale by the time broker of the radio broadcasting facilities of the station;

      (2)  permits the time broker to provide programs for 10% or more of the time the station is on the air; and

      (3)  provides for the sale by the time broker of all or substantially all announcements within the brokered time.

   G.  "Gross Revenue" means all cash payments made by or on behalf of;

      (1)  sponsors or donors for the use of radio broadcasting facilities of the Station;

      (2)  sponsors of, or donors to, Licensee's simulcast programs;

      (3)  sponsors of, or donors to, Licensee's occasional network programs;

      (4)  time brokers who each provide programs for less than 10% of the time the Station is on the air, or recognized wholly independent companies engaged in arrangements with radio or television stations generally for the resale of the radio broadcasting facilities of the Station; and

(5) wholly independent networks or other program suppliers for the broadcasting of such networks' or program suppliers' programs or announcements by the Station.

Such payments shall include all payments made directly to, or as authorized by, Licensee, its employees, representatives, agents or any other person acting on Licensee's behalf, and all payments made to any company, firm or corporation under the same or substantially the same ownership, management or control as the Station. Such payments shall not include payments made to third parties, such as networks or program suppliers, that are not under the same ownership, management or control as the Station, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter".

H. "Adjusted Gross Revenue" means gross revenue less:

(1) advertising agency commission not to exceed 15% actually allowed to an advertising agency that has no direct or indirect ownership or managerial connection with Licensee or the Station;

(2) any sums received from Licensee's political radio programs;

(3) bad debts actually written off and discounts allowed or rebates paid; and

(4) rate card discounts, cash, quantity and/or frequency actually allowed.

I. "Revenue Subject to Fee" means adjusted gross revenue or, at Station's option, adjusted gross revenue less the total of the following itemized deductions which exceeds 15% of adjusted gross revenue:

(1) All compensation over and above the total annual amount indicated below, actually paid by the Station to personnel whose duties primarily are acting as (a) master of ceremonies or disc jockey on musical programs; or (b) vocalist or instrumentalist engaged for a specific program; or (c) featured newscaster and news commentator; or (d) featured sportscaster; or (e) master of ceremonies on an entertainment program; or (f) announcer:

| Station's Annual "Adjusted Gross Revenue" | Total Annual Amount Not Deductible |
|---|---|
| Under - $ 50,000 | $ 6,200 |
| $ 50,000 - $149,999 | $18,600 |
| $150,000 - $299,999 | $27,900 |
| $300,000 - $499,999 | $41,900 |
| $500,000 - $749,999 | $46,500 |
| $750,000 - $999,999 | $53,700 |
| $1,000,000 and Over | $62,000 |

Licensee may not deduct any compensation paid to any person who has a stock or other ownership interest in Licensee or in the station of 40% or more.

(2) The actual payment by the Station to an independent supplier of news ticker or news audio service (i.e., AP or UPI or other similar agencies) for news ticker or news audio service.

(3) The following actual costs incurred by the Station for a specific program: (a) payments to the telephone company or like transmission utility for remote pick-up necessary to broadcast such program from a point outside a studio of the Station; and (b) rights for broadcasting a sports or other special event.

(4) The following actual payments made by the Station to a wholly independent network not licensed by Society for a specific local program: (a) if such network is owned and operated by a college or university, the actual payment made by the Station to such college or university; (b) if such network is not owned and operated by a college or university, the actual payments made for talent and for broadcast rights (which may not exceed the amount actually paid to or for the original holder of the broadcast rights for the particular program), and the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast the program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

(5) The following actual costs incurred in connection with Licensee's occasional network programs: (a) the payments to its affiliated stations in connection with such programs; (b) the actual payments made for talent and broadcast rights (which may not exceed the amount actually paid to or for the original holder of such broadcast rights); and (c) the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast that program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

3. **Music Reports.** Licensee agrees to furnish to Society upon request a list of all musical compositions on Licensee's local radio programs, showing the title, composer and author of each composition. Licensee shall not be obligated to furnish such list for a period or periods which in the aggregate, exceed one month of any one calendar year during the term of this agreement.

4.    **Right to Restrict.**

A.    The members of Society shall have the right to restrict the radio broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon other interests under the copyrights of such works; provided, however, that (1) the maximum number of compositions which may be restricted at any time shall not exceed 500; (2) limited licenses will be granted upon application to Society entirely free of additional charge as to restricted compositions, if and when the copyright owners thereof are unable to show reasonable hazards to their major interests likely to result from such radio broadcasting; (3) such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; (4) in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and (5) in no event shall any composition, after the initial radio broadcast thereof, be restricted for the purpose of confining further radio broadcasts thereof to a particular artist, station, network or program.

B.    Society reserves the further right in good faith to restrict the radio broadcasting of any composition, over and above the number specified in the previous paragraph, only as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the Society's repertory or on a claim that Society does not have the right to license the public performance of such composition by radio broadcasting.

5.    **License Fee.**

A.    In consideration of the license herein granted, Licensee agrees to pay to Society for each year during the term of this agreement a fee which is the applicable percentage of "Revenue Subject to Fee", or Minimum Fee, whichever is greater:

| Year | Percentage Fee | Minimum Fee |
|------|----------------|-------------|
| 1991 | 1.575% | $400 |
| 1992 | 1.585% | |
| 1993 | 1.600% | |
| 1994 | 1.605% | |
| 1995 | 1.615% | |

The minimum fee for each year 1992 through 1995 shall be the minimum fee for the prior year adjusted annually in accordance with any increase in the Consumer Price Index (National, all items) between the preceding October and the next preceding October.

B.    In the event that Licensee's payment of fees under this agreement causes Society to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of Society's receipts from Licensee, and (1) Society has taken reasonable steps to be exempted or excused from paying such tax; and (2) Society is permitted by law to pass through such tax to its licensees, Licensee shall pay to Society the full amount of such tax.

6.    **Reports and Payments.**

A.    On or before the first day of April in each year commencing 1992, Licensee shall send to Society a report of the license fee due for the preceding calendar year. Each such report shall be made by completing fully the Statement of Account form supplied free of charge by Society. A copy of the Statement of Account form is annexed and made a part of this agreement.

B.    For each month during the term of this agreement, Licensee shall pay to Society on or before the first day of the following month, a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any increase in the Consumer Price Index (National, all items) between the preceding October and the next preceding October. If the report required by Paragraph 6.A. for any calendar year is not received by Society when due, the monthly payments shall be in the amount of the monthly payments due for the preceding year, plus 24%, and payments at that rate shall continue until the late report is received by Society. If the station commenced broadcasting after January 1, 1991, Licensee shall furnish Society with a good faith estimate of its revenue for the first year of operation and the monthly payments during the first calendar year of broadcasting shall be 1/12th of the fee provided in Paragraph 5.A. for a station having such Revenue Subject to Fee.

C.    Each report required by Paragraph 6.A. of this agreement for the preceding calendar year shall be accompanied by payment to Society of the license fee due over and above all amounts paid to Society for the preceding calendar year pursuant to Paragraph 6.B. If the amount paid by Licensee for the preceding calendar year exceeds the license fee due for the year, Licensee shall apply the excess payment against future monthly

payments. If the excess payment is greater than three monthly payments required by Paragraph 6.B., Society shall, upon written request of Licensee, refund the excess payment.

D. If any payment required under Paragraph 6.B. or 6.C. is not received by Society before the first day of the month following the date when the payment was due, Licensee agrees to pay Society a finance charge of 1½% per month from the date the payment was due.

E. License fee reports shall be made on a billing basis by all stations, except that any station may report on a cash basis if (1) its books have been kept on a cash basis and (2) it reported to Society only on a cash basis and at no time on a billing basis during the entire term of its agreement with Society ending February 28, 1977, and continuously thereafter. All billings made subsequent to the termination of this agreement with respect to radio broadcasts made during the term hereof shall be accounted for by Licensee as and when such billings are made by Licensee.

F. If a report required by Paragraph 6.A. of this agreement is not received by the Society within 30 days of the date that the report was due, Society may give notice to Licensee that Licensee has an additional 30 days within which to submit the report on either the "Adjusted Gross Revenue" or "Adjusted Gross Revenue less itemized deductions" basis. If Licensee fails to submit the report within the additional 30-day period, the report must be on the "Adjusted Gross Revenue" basis.

G. Licensee shall submit a single license fee report for:

(1) AM and FM stations owned by Licensee in the same city if the combined "gross revenue" for the stations is less than $75,000; or

(2) all stations owned by Licensee that simultaneously broadcast programs for 80% or more of the time the stations are on the air concurrently.

If Licensee acts as a time broker for one or more other radio stations that are licensed pursuant to this form of local station blanket radio license, Licensee shall include in its license fee reports for the Station all gross revenue relating to periods on such other station or stations that are simulcast or are sold in combination with the Station. All other stations owned by Licensee, or for which Licensee acts as a time broker, shall report and pay separately, and be treated for all purposes as separate stations.

7. Audits.

A. Society shall have the right by its duly authorized representatives, at any time during customary business hours, to examine the books and records of account of Licensee only to such extent as may be necessary to verify any report required by this agreement. Society shall consider all data and information coming to its attention as a result of any such examination of books and records as completely and entirely confidential.

B. The period for which the Society may audit shall be limited to the four calendar years reported preceding the year in which the audit is made; provided however, that if an audit is postponed at the request of the Station the Society shall have the right to audit for the period commencing with the fourth calendar year reported preceding the year in which notification of intention to audit was first given by the Society to the Station. This limitation shall not apply if the Station fails or refuses after written notice from the Society to produce the books and records necessary to verify any report or statement of accounting pursuant to the agreement.

C. The period for which Licensee may correct computational errors, or errors relating to deductions permitted under the agreement on its license fee reports shall be limited to four calendar years preceding the year in which such corrected reports were submitted. This provision shall not be construed to permit a station to submit a report on the "Adjusted Gross Revenue less itemized deductions" basis for a period previously reported on the "Adjusted Gross Revenue" basis.

D. In the event the Society's audit of Licensee's books and records discloses that Licensee has underpaid license fees due Society:

(1) Licensee shall pay a finance charge on such additional license fees of 1½% per month from the date(s) such fees should have been paid pursuant to this agreement if the underpayment is 5% or more, but not less than $1000.

(2) Licensee shall pay a finance charge on such additional license fees of 1½% per month beginning thirty (30) days after the date Society bills such additional license fees to Licensee if the underpayment is less than 5% or less than $1000.

(3) If Licensee disputes all or part of the Society's claim for additional fees pursuant to an audit, Licensee shall, within thirty (30) days from the date Society bills such additional fees, (i) advise Society, in writing, of the basis for such dispute and (ii) pay to Society any fees indisputably owed together with any applicable finance charges on additional fees indisputably owed in accordance with subparagraph (1) above. If there is a good faith dispute between Licensee and Society with respect to all or part of the additional fees Society has billed pursuant to this Paragraph, no finance charges shall be billed with respect to such disputed fees for a period beginning on the date Society bills such disputed fees and ending sixty (60) days from the date Society responds to Licensee's written notification of the existence of a dispute.

(4) Finance charges computed in accordance with this Paragraph and pertaining to additional fees which Licensee disputes in accordance with subparagraph (3) above shall be adjusted pro-rata to the amount arrived at by Licensee and Society in resolution of the dispute with respect to additional fees due.

8. **Breach or Default.** Upon any breach or default by Licensee of any terms herein contained relating to the reports, accountings or payments required to be made by Licensee, Society may give Licensee thirty (30) days' notice in writing to cure such breach or default, and in the event that such breach or default has not been cured within said thirty (30) days, Society may then promptly terminate this license.

9. **Time Brokerage Arrangements.** If Licensee enters into a time brokerage arrangement as defined in Paragraph 2.F. above, the license granted by this agreement shall automatically terminate thirty (30) days after the commencement date of the time brokerage arrangement unless Licensee has furnished to Society a complete copy of the time brokerage agreement and Licensee and Time Broker have executed a letter to Society in the form annexed and made a part of this agreement requesting amendment of the license agreement to add Time Broker as a party. When such a letter has been fully executed by Licensee, Time Broker and Society, this agreement shall be deemed amended accordingly.

10. **Indemnity Clause.** Society agrees to indemnify, save and hold harmless and to defend Licensee, its advertisers and their advertising agencies, and its and their officers, employees and artists, from and against all claims, demands and suits that may be made or brought against them or any of them with respect to the performance under this agreement of any compositions in the Society's repertory which are written or copyrighted by members of Society. Licensee agrees to give Society immediate notice of any such claim, demand or suit and agrees immediately to deliver to Society all papers pertaining thereto. Society shall have full charge of the defense of any such claim, demand or suit and Licensee shall cooperate fully with Society in such defense. Licensee however shall have the right to engage counsel of its own at its own expense who may participate in the defense of any such action. Society agrees at the request of Licensee to cooperate with and assist Licensee, its advertisers and their advertising agencies and its and their officers, employees and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the Society's repertory, but not copyrighted or written by members of Society. This Paragraph 10 shall not apply to performances of any works that may be restricted under Paragraph 4 of this agreement.

11. **Rights of Termination.**

A. In the event of the termination or suspension of the governmental licenses covering the Station or any substantial alteration or variation of the terms and conditions thereof, or any major interference with the operations of the Station due to governmental measures or restrictions, Licensee shall have the right to terminate this agreement upon seven (7) days' written notice.

B. In the event of:

(1) any major interference with the operation of Society in the state, territory, dependency, possession or political subdivision in which the Station is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(2) any substantial increase in the cost to the Society of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision which is applicable to the licensing of performing rights,

Society shall have the right to terminate this agreement on thirty (30) days' written notice to Licensee.

12.  **Notices.** All notices required or permitted to be given by either of the parties to the other under this agreement shall be duly and properly given if:

A.  mailed to the other party by registered or certified United States mail; or

B.  sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

C.  sent by generally recognized same-day or overnight delivery service,

addressed to the party at its usual place of business.

13.  **Successors and Assignees.** This agreement shall enure to the benefit of and shall be binding upon the parties and their respective successors and assignees, but no assignment shall relieve the parties of their respective obligations under this agreement.

14.  **Per Program License.** The "local station per program license" for the term ending December 31, 1995 is being offered to Licensee simultaneously with this agreement. In accepting this agreement, Licensee acknowledges that it has a choice of entering into either this agreement or the per program license with Society; that Licensee has the opportunity to negotiate for separate licenses with the individual members of Society; and that Licensee is voluntarily entering into this agreement with Society. Licensee may substitute the per program agreement in place of this agreement by giving Society written notice at least 60 days prior to the commencement of any month during the term of this agreement. In such event, effective with the commencement of that month, the per program agreement shall be in full force and effect between Licensee and Society for the balance of the license term.

15.  **Applicable Law.** The fees set forth in this agreement have been approved by the United States District Court for the Southern District of New York as reasonable and non-discriminatory in accordance with the Amended Final Judgment in *United States v. ASCAP*. The meaning of the provisions of this agreement shall be construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, this agreement has been duly executed by Society and Licensee this     30th     day of     March     APR 07 1994 1994

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

By _____

LICENSEE

SHELLEY BROADCASTING COMPANY, INC.
_____
(Full corporate or other name of station owner)

By _____

H. Jack Mizell, President
_____

(a)  If corporation, state corporate office held;
(b)  If partnership, write word "partner" under signature of signing partner;
(c)  If individual owner, write "individual owner" under signature.

## LOCAL STATION PER PROGRAM RADIO LICENSE

AGREEMENT made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("We", "Us" or "ASCAP") and

 WGEA-AM/Shelley Broadcasting (Your License as follows):

1. **Term of License.** This license is for the term commencing as of July 1, 1999 and ending December 31, 2000.

2. **Licensed Radio Station.** The radio station licensed by this agreement is:

Call Letter:    WGEA-AM
Frequency:    1150 AM
Type of license: renewal   Ala.

All references to "you", "your", "the Station", or "your station" include any company, firm or corporation that you own or that is under the same or substantially the same ownership, management or control as the Station. "Independent" refers to any firm or corporation that is not under the same or substantially the same ownership, management or control as the Station.

3. **Grant.** This license grants you the right to perform publicly by radio broadcasting on *local radio programs* from your radio station or from any other place non-dramatic performances of the separate musical compositions in the ASCAP *repertory*.

4. **Limitations on License.** This agreement does not license the performance of any dramatic-musical works, such as operas, operettas, musical comedies or plays, in whole or in part; grant you any other rights in the musical compositions licensed under this agreement; authorize you to grant to others any performance or other rights in any of the musical compositions licensed under this agreement; extend to the receiver of any of your radio broadcasts, or to any place at which the performances licensed by this agreement originate, if other than at the station.

5. **Definitions.** When used in this agreement the *defined words and phrases* appear in italics and have the following meanings:

A. ASCAP *"Repertory"* means all musical compositions which ASCAP has the right to license for public performance now or hereafter during the term of this agreement. All compositions written and copyrighted by our members and in the repertory on the date this agreement is executed are included for the full term of this agreement. Compositions written or copyrighted by our members during the license term are included for the full balance of the term.

B. *"Local radio program"* means any program broadcast from the Station other than a network radio program or a program for which all of the music in the ASCAP *repertory* contained in the program has been licensed for performance by the station either by ASCAP or the ASCAP members in interest. A particular period of radio broadcasting will be considered one program if, with respect to the period, any two of the following questions may be answered in the affirmative:

(1) Is the period referred to by substantially the same title throughout?

(2) Is the dominant personality the same substantially throughout?

(3) Is the period presented to the public as a single show notwithstanding that it may have different parts?

(4) Is the format substantially constant throughout?

For the purposes of this agreement, programs furnished by networks not licensed by ASCAP are deemed to be "local radio programs".

C. *"Program subject to fee"* means any *local radio program* which uses any of the compositions in the ASCAP *repertory*, except any program making only *incidental use* as defined in subdivision "H" of this paragraph of compositions in the *repertory*.

If a *local radio program* exceeds one hour in duration, the "program subject to fee" will be deemed to mean any clock hour (that is, any sixty minute period beginning on the hour) within the program which uses any of the compositions in the ASCAP *repertory* other than as an *incidental use*. If within that clock hour there is a period of radio broadcasting to which the definition of *local radio program* would apply (for example, a fifteen minute news program within a four hour entertainment program) and which does not use any of the compositions in the ASCAP *repertory* other than as an *incidental use*, that period will be excluded from the *program subject to fee* if it is five minutes or longer, or three minutes or longer if it is a "public service announcement" as defined in note 4 of Section 73.112 of the Federal Communications Commission Rules and Regulations in effect on January 1, 1978.

1

D. "Network radio program" means a program broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more affiliated stations.

E. "Affiliated station" means any radio broadcasting station in the United States which regularly broadcasts network radio programs of a radio network or which appears on the radio rate card of the network and is interconnected with the network by wire or any other means. A station will only be deemed to be an affiliated station so long as it regularly broadcasts such programs or appears on such rate cards. All radio broadcasting stations in the United States which are owned and operated by a network and which broadcast the network's radio programs are deemed to be affiliated stations for the purpose of this agreement, whether or not they appear on the network's radio rate cards.

F. "Time Broker" means any independent person, firm or corporation that engages in *time brokerage*.

G. "Time Brokerage" means any arrangement between a station and a *time broker* that:

    (1) authorizes the resale by the *time broker* of the radio broadcasting facilities of the station;

    (2) permits the *time broker* to provide programs for 10% or more of the time the station is on the air; and

    (3) provides for the sale by the *time broker* of all or substantially all announcements within the brokered time.

H. "Incidental use" means use in any of the following ways: as commercial jingles (not to exceed 60 seconds in duration), bridge or background music, themes or signatures, arrangements of works in the public domain, or incidental to the broadcast of a public or sports event.

I. "Net Promotional Revenue" means all cash payments that you receive from third parties for the direct or indirect promotion of their businesses via the broadcast facilities of the station other than paid programs or commercial announcements (such as, but not limited to, Bridal or Craft Shows, Direct Mailings, Special Sponsored Events or Publications, produced and promoted by the station) less those out-of-the-ordinary costs, such as booth rentals, printing and mailing expenses, and cost of goods sold, that would not have otherwise been incurred without the promotional activity. Deductible costs may not exceed the cash payments received.

J. "Gross Revenue" means all:

    (1) cash payments made by or on behalf of:

    a. sponsors or donors for the use of the radio broadcasting facilities of the Station, and

    b. *time brokers* who each provide programs for less than 10% of the time a station is on the air or recognized independent companies engaged in arrangements with radio or television stations generally for the resale of the radio broadcasting facilities of the Station; and

    (2) *net promotional revenue*.

Such payments shall include all payments made directly to, or as authorized by, you, your employees, representatives, agents or any other person acting on your behalf. Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter".

K. "Adjusted Gross Revenue" means *gross revenue* less:

    (1) any sums received from networks licensed by ASCAP with respect to network radio programs: this deduction does not apply to that portion of the sums received from a licensed network attributable to announcements in a network program not broadcast by the Station, or to announcements furnished by the network not related to network programs;

    (2) advertising agency commission not to exceed 15% actually allowed to an independent advertising agency;

    (3) any sums received from your political local radio programs and announcements, net of agency commissions;

    (4) bad debts actually written off and discounts allowed or rebates paid;

    (5) rate card discounts, cash, quantity and/or frequency actually allowed; and

    (6) any sums received with respect to a program for which all of the music in the ASCAP *repertory* contained in the program has been licensed for performance by the station either by ASCAP or the ASCAP members in interest.

L. "Weighted Hours" means the total number of hours of *local radio programs* during a reporting period in each of the following time periods multiplied by the applicable weight set forth below:

| | Time Period | Applicable Weight |
|---|---|---|
| Weekdays: | Midnight to 6:00 A.M. | .25 |
| | 6:00 A.M. to 10:00 A.M. | 1.00 |
| | 10:00 A.M. to 3:00 P.M. | .50 |
| | 3:00 P.M. to 7:00 P.M. | .75 |
| | 7:00 P.M. to Midnight | .50 |
| Weekends: | Saturdays and Sundays | .25 |

M. "Revenue per Weighted Hour" means the *adjusted gross revenue* for a full calendar year divided by the total number of *weighted hours* in the year.

N. "Revenue Subject to Fee" means *revenue per weighted* hour multiplied by the total number of *weighted hours* of *programs subject to fee.*

6. **Right to Restrict.**

A. Our members may restrict the radio broadcasting of their compositions up to a maximum of 500 at any given time, only for the purpose of preventing harmful effect upon other interests under the copyrights of such works; provided, however, that (1) limited licenses will be granted upon application to us entirely free of additional charge if the copyright owners are unable to show reasonable hazards to their major interests likely to result from such radio broadcasting; (2) the right to restrict any composition will not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of the composition; (3) in no case will any charges, "free plugs", or other consideration be required for permission to perform a restricted composition; and (4) in no event will any composition be restricted after its initial radio broadcast for the purpose of confining further radio broadcasts to a particular artist, station, network or program.

B. We may also in good faith restrict the radio broadcasting of any composition, over and above the number specified in the previous paragraph, only as to which any suit has been brought or threatened on a claim that the composition infringes a composition not contained in the ASCAP *repertory* or on a claim that we do not have the right to license the public performance of the composition by radio broadcasting.

7. **License Fee.**

A. You agree to pay us for each year during the term of this agreement the total of the following fees:

( 1)  Base Fee. a. .24 % of *adjusted gross revenue* except for 1996 and 1997 for *grandfathered* stations as set forth below.

b.  A "grandfathered" station is a station that had per program license agreements with ASCAP for the period ending December 31, 1990 and for the full period January 1, 1991 through December 31, 1995, and paid the "base fee" pursuant to Paragraph 4A(1)a. of the 1991-1995 agreement. The base fee for 1996 for a *grandfathered* station is the total of (i) one-third of the fee calculated at .24% of *adjusted gross revenue*, and (ii) two-thirds of the fee calculated in accordance with Paragraph 4A(1)a. of the 1991-1995 per program license. The base fee for 1997 for a *grandfathered* station is the total of (i) two-thirds of the fee calculated at .24% of *adjusted gross revenue* and (ii) one-third of the fee calculated in accordance with Paragraph 4A(1)a. of the 1991-1995 per program license.

(2)  Additional Fee. a. 4.22% of *revenue subject to fee* for the first 10% of the Station's weighted hours up to 400 *weighted hours*; and

b.  2.135% of *revenue subject to fee* for all additional *weighted hours*.

B. In the event that your payment of fees under this agreement causes us to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of our receipts from you, and (1) we have taken reasonable steps to be exempted or excused from paying such tax; and (2) we are permitted by law to pass through such tax to our licensees, you will pay us the full amount of such tax.

8. **Music Reports.** A. You will furnish us on or before the 20th day of each month for the preceding month, on forms which we will supply free of charge, statements setting forth:

(1)  the computation of *weighted hours*;

(2)  a summary of all *local radio programs* which contained any musical content other than solely *incidental uses* ("programs with music"), showing as to each program:(a) the title of the program; (b) the time of broadcast; (c) the date of broadcast; and (d) whether the program contained performances of musical compositions in the ASCAP *repertory*.

If we do not receive the report required by Paragraph 9.A. for any calendar year when due, the monthly payments will be in the amount of the monthly payments due for the preceding year, plus 24%, and payments at that rate will continue until we receive the late report.

C. Annual Adjustments. If the monthly payments that you have made to us for a year pursuant to Paragraph 9.B. are less than the license fee for that year, you will pay us the additional amount due with the annual report. If the amount that you paid for that year exceeds the license fee due for the year we will apply the excess payment against your future monthly payments, or refund it to you upon your written request if it is greater than three monthly payments required by Paragraph 9.B.

D. Billing Basis. License fee reports will be made on a billing basis by all stations, except that any station may report on a cash basis if (1) its books have been kept on a cash basis and (2) it reported to us only on a cash basis and at no time on a billing basis during the entire term of its agreement with us ending February 28, 1977, and continuously thereafter. You will account for all billings made subsequent to the termination of this agreement with respect to radio broadcasts made during the term of the agreement as and when you make such billings.

E. Late Payments. If we do not receive any payment required under Paragraph 8.C, 9.B. or 9.C. before the first day of the month following the date when the payment was due, you will pay us a finance charge of 1½% per month from the date the payment was due.

F. Multiple Station Reports. You will submit a single license fee report for all stations that you own or act as a time broker for that are licensed on the per program basis and that simultaneously broadcast all programs during the time the stations are on the air concurrently.

G. Combination Sales. If the use of the broadcasting facilities of the station is sold in combination with any other stations that you own, operate or control that are licensed by us under a form of agreement other than this form of local station per program radio license, the combination revenue shall be allocated among the stations on a reasonable basis taking into account factors such as, but not limited to, separate sales by the stations for comparable facilities during the report period or the immediately preceding period, and/or the relative ratings of the stations during the report period.

10. Audits.

A. Right to Audit. We have the right by our duly authorized representatives, at any time during customary business hours, upon reasonable notice, to examine your books and records of account (including logs and all other records relating to the musical compositions performed on your *local radio programs*) only to the extent necessary to verify any report required by this agreement. We will consider all data and information coming to our attention as a result of any such examination of books and records as completely and entirely confidential.

B. Audit Period. The period for which we may audit is limited to the four calendar years reported preceding the year in which the audit is made. However, if you request a postponement, we have the right to audit for the period commencing with the fourth calendar year reported preceding the year in which we first notified you of our intention to audit. This limitation does not apply if you fail or refuse after written notice from us to produce the books and records necessary to verify any report or statement of accounting pursuant to the agreement.

C. Correction of Errors. You may correct computational errors, or errors relating to deductions permitted under the agreement on your license fee reports for the four calendar years preceding the year in which the corrected reports are submitted.

D. Audit Finance Charges. If our audit discloses that you underpaid license fees due us:

(1)  You will pay a finance charge on the additional license fees of 1½% per month from the date(s) the fees should have been paid pursuant to this agreement if the underpayment is 5% or more, but not less than $1000.

(2)  You will pay a finance charge on the additional license fees of 1½% per month beginning thirty (30) days after the date we bill the additional license fees to you if the underpayment is less than 5% or less than $1000.

(3)  You may dispute all or part of our audit claim. If you do, you must, within thirty (30) days from the date that we bill the additional fees,(i) advise us, in writing, of the basis for your dispute and (ii) pay us any fees indisputably owed together with any applicable finance charges. If there is a good faith dispute between us with respect to all or part of the additional fees that we have billed pursuant to this Paragraph, no finance charges will be billed with respect to the disputed fees for a period beginning on the date we billed the fees to you and ending sixty (60) days from the date that we respond to your written notification of the existence of a dispute.

(4)  Finance charges computed in accordance with this Paragraph and pertaining to additional fees which you dispute in accordance with subparagraph (3) above will be adjusted pro-rata to the amount arrived at by you and us in resolution of the dispute.

11. Breach or Default. If you fail to perform any of the terms or conditions of this agreement relating to the reports, accountings or payments required to be made by you, we may give you thirty (30) days' notice in writing to cure your breach or default. If you do not do so within the thirty (30) days, we may then promptly terminate this license.

**12. Computer Readable Reports.** A. In lieu of the monthly statements provided in Paragraph 8 of this agreement, we have the option to require that the data called for on those statements be reported in computer readable form. We may exercise this option on the following basis:

(1) We will give you sixty (60) day's notice of our exercise of the option;

(2) We will provide you with software to enable you to enter the data required on PC diskettes or transmit the data electronically to us;

(3) We will, at our option, either furnish you with PC diskettes free of charge for entry of the required data or credit you for the cost of the diskettes.

B. If, following our exercise of this option, you fail to report the required data in accordance with the requirements furnished by us, you will pay us a data entry charge of $6.00 per page for each month that the data is reported on the monthly statements rather than electronically or on the diskettes.

**13. Time Brokerage Arrangements.** If you enter into a *time brokerage* arrangement, the license granted by this agreement will automatically terminate thirty (30) days after the commencement date of the *time brokerage* unless you have furnished us a complete copy of the *time brokerage* agreement and you and *time broker* have executed a letter to us in the form annexed and made a part of this agreement requesting amendment of the license agreement to add *time broker* as a party. When that letter has been fully executed by you, *time broker* and us, this agreement will be amended accordingly.

**14. Indemnity Clause.** We will indemnify, save and hold harmless and defend you, your advertisers and their advertising agencies, and your and their officers, employees and artists, from and against all claims, demands and suits that may be made or brought against you or them with respect to the performance under this agreement of any compositions in the ASCAP *repertory* which are written or copyrighted by our members. You will give us immediate notice of any such claim, demand or suit and immediately deliver to us all papers pertaining thereto. We will have full charge of the defense of any such claim, demand or suit and you agree to cooperate fully with us in such defense. You may however engage your own counsel at your own expense who may participate in the defense of any such action. At your request we will cooperate with and assist you, your advertisers and their advertising agencies and your and their officers, employees and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the ASCAP *repertory*, but not copyrighted or written by members of ASCAP. This Paragraph 14 does not apply to performances of any works that may be restricted under Paragraph 6 of this agreement.

**15. Rights of Termination.**

A. You have the right to terminate this license on seven (7) days' written notice in the event of the termination, suspension or any substantial alteration or variation of the terms and conditions of the governmental licenses covering the Station, or any major interference with the operations of the Station due to governmental measures or restrictions.

B. We have the right to terminate this license on thirty (30) days' notice if there is any major interference with, or substantial increase in the cost of, our operation as a result of any law of the state, territory, dependency, possession or political subdivision in which the Station is located which is applicable to the licensing of performing rights.

**16. Notices.** All notices required or permitted to be given by either of us to the other under this agreement will be duly and properly given if:

A. mailed to the other party by registered or certified United States mail; or

B. sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

C. sent by generally recognized same-day or overnight delivery service;

addressed to the party at its usual place of business.

**17. Successors and Assignees.** This agreement will enure to the benefit of and be binding upon you and us and our respective successors and assignees, but no assignment will relieve either of us of our respective obligations under this agreement.

**18. Blanket License.** The "local station blanket license" for the term ending December 31, 2000 is being offered to you simultaneously with this agreement. In accepting this agreement, you acknowledge that you have a choice of entering into either this agreement or the blanket license with us; that you have the opportunity to negotiate for separate licenses with our individual members; and that you are voluntarily entering into this agreement with us. You may substitute the blanket agreement in place of this agreement by giving us written notice at least 10 days prior to the commencement of any month during the term of this agreement. In that event, effective with the commencement of that month, the blanket agreement will be in full force and effect between us.

**19. Applicable Law.** The fees set forth in this agreement have been approved by the United States District Court for the Southern District of New York as reasonable and non-discriminatory in accordance with the Amended Final Judgment in United States v. ASCAP. The meaning of the provisions of this agreement will be construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, this agreement has been duly executed by ASCAP and Licensee this _____ day of _____ 199 /2000.



AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

*Ellen Lachapelle*



(Fill in capacity in which signed)

(a) If corporation, state corporate office held;

(b) If partnership, write word "partner" under signature of signing partner

(c) If individual owner, write "individual owner" under signature

**LOCAL STATION BLANKET RADIO LICENSE**

AGREEMENT made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("We", "Us" or "ASCAP") and

Stage Door Development Inc.                                    ("You" or "Licensee") as follows:

1.  **Term of License.** This license is for the term commencing as of January 1, 1996 and ending December 31, 2000.

2.  **Licensed Radio Station.** The radio station licensed by this agreement is:

    Call Letters  WRJM-FM
    Frequency  93.7
    City of License  Geneva

All references to "you", "your", "the Station", or "your station" include any company, firm or corporation that you own or that is under the same or substantially the same ownership, management or control as the Station. "Independent" refers to any firm or corporation that is not under the same or substantially the same ownership, management or control as the Station.

3.  **Grant.** This license grants you the right to perform publicly by radio broadcasting on *radio programs* from your Station or from any other place non-dramatic performances of the separate musical compositions in the ASCAP *repertory*.

4.  **Limitations on License.** This agreement does not: license the performance of any dramatic-musical works, such as operas, operettas, musical comedies or plays, in whole or in part; grant you any other rights in the musical compositions licensed under this agreement; authorize you to grant to others any performance or other rights in any of the musical compositions licensed under this agreement; extend to the receiver of any of your radio broadcasts, or to any place at which the performances licensed by this agreement originate if other than at the station.

5.  **Definitions.** When used in this agreement the defined words and phrases appear in italics and have the following meanings:

    A.  ASCAP *"Repertory"* means all musical compositions which ASCAP has the right to license for public performance now or hereafter during the term of this agreement. All compositions written and copyrighted by our members and in the repertory on the date this agreement is executed are included for the full term of this agreement. Compositions written or copyrighted by our members during the license term are included for the full balance of the term.

    B.  Your *"Radio Programs"* means all programs and announcements broadcast by the Station, all of your *simulcast programs*, and all of your *occasional network programs*, whether originated by the Station or any other source, including those furnished by networks, or other program suppliers, whether or not those networks or program suppliers are licensed by us.

    C.  Your "Simulcast Programs" means all programs broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts by two or more stations that you own or for which you act as a *time broker*.

    D.  Your "Occasional Network Programs" means all programs that you cause to be broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts on any group of two or more radio stations that are affiliated with you for the purpose of broadcasting those programs. For the purposes of this agreement any sports network which you operate is deemed to be an occasional network.

    E.  "Time Broker" means any independent person, firm or corporation that engages in *time brokerage*.

    F.  "Time Brokerage" means any arrangement between a station and a *time broker* that:

        (1)  authorizes the resale by the *time broker* of the radio broadcasting facilities of the station;

        (2)  permits the *time broker* to provide programs for 10% or more of the time the station is on the air; and

        (3)  provides for the sale by the *time broker* of all or substantially all announcements within the brokered time.

    G.  "Net Promotional Revenue" means all cash payments that you receive from third parties for the direct or indirect promotion of their businesses via the broadcast facilities of the station other than paid programs or commercial announcements (such as, but not limited to, Bridal or Craft Shows, Direct Mailings, Special Sponsored Events or Publications, produced and promoted by the station), less those out-of-the-ordinary costs, such as booth rentals, printing and mailing expenses, and cost of goods sold, that would not have otherwise been incurred without the promotional activity. Deductible costs may not exceed the cash payments received.

1

H.  "Gross Revenue" means all:

    (1)  cash payments made by or on behalf of:

        a. sponsors or donors for the use of radio broadcasting facilities of the Station,

        b. sponsors of, or donors to, your *simulcast programs,*

        c. sponsors of, or donors to, your *occasional network programs,*

        d. *time brokers* who each provide programs for less than 10% of the time the Station is on the air, or recognized independent companies engaged in arrangements with radio or television stations generally for the resale of the radio broadcasting facilities of the Station, and

        e. independent networks or other program suppliers for the broadcasting of such networks' or program suppliers' programs or announcements by the Station; and

    (2)  *net promotional revenue*

Such payments shall include all payments made directly to, or as authorized by, you, your employees, representatives, agents or any other person acting on your behalf. Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter".

I.  "Adjusted Gross Revenue" means *gross revenue* less:

    (1)  advertising agency commission not to exceed 15% actually allowed to an independent advertising agency;

    (2)  any sums received from your political radio programs and announcements, net of agency commissions;

    (3)  bad debts actually written off and discounts allowed or rebates paid; and

    (4)  rate card discounts, cash, quantity and/or frequency actually allowed.

J.  "Revenue Subject to Fee" means *adjusted gross revenue* or, at Station's option, *adjusted gross revenue* less the total of the following itemized deductions which exceeds 11% of *adjusted gross revenue:*

    (1) All compensation over and above the total annual amount indicated below, actually paid by the Station to personnel whose duties primarily are acting as (a) master of ceremonies or disc jockey on musical programs, or (b) vocalist or instrumentalist engaged for a specific program; or (c) featured newscaster and news commentator; or (d) featured sportscaster, or (e) master of ceremonies on an entertainment program, or (f) announcer:

| Station's Annual *Adjusted Gross Revenue* | Total Annual Amount Not Deductible |
|---|---|
| Under - $ 50,000 | $ 6,200 |
| $ 50,000 - $ 149,999 | $18,600 |
| $ 150,000 - $ 299,999 | $27,900 |
| $ 300,000 - $ 499,999 | $41,900 |
| $ 500,000 - $ 749,999 | $46,500 |
| $ 750,000 - $ 999,999 | $53,700 |
| $ 1,000,000 and Over | $62,000 |

You may not deduct any compensation paid to any person who has a stock or other ownership interest in Licensee or in the station of 40% or more.

    (2)  The actual payment by the Station to an independent supplier of general news service (such as AP or UPI) or specialized news service (such as weather, traffic, business or agricultural reports).

    (3)  The following actual costs incurred by the Station for a specific program: (a) payments to the telephone company or like transmission utility for remote pick-up necessary to broadcast the program from a point outside a studio of the Station; and (b) rights for broadcasting a sports or other special event.

    (4)  The following actual payments made by the Station to an independent network not licensed by ASCAP for a specific local program: (a) If the network is owned and operated by a college or university, the actual payment made by the station to the college or university; (b) If the network is not owned and operated by a college or university, the actual payments made for talent and for broadcast rights (which may not exceed the amount actually paid to or for the original holder of the broadcast rights for the particular program), and the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast the program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

2

(5) The following actual costs incurred in connection with your *occasional network programs*: (a) the payments to your affiliated stations in connection with those programs; (b) the actual payments made for talent and broadcast rights (which may not exceed the amount actually paid to or for the original holder of such broadcast rights); and (c) the actual payments made to or for the telephone company or like transmission utility for interconnecting lines and remote lines necessary to broadcast that program from a point outside the studio of the Station, which may not exceed the amount actually paid to or for the telephone company or like transmission utility.

6. **Music Reports.** You agree to furnish to us upon request a list of all musical compositions on your *radio programs*, showing the title, composer and author of each composition. You will not be obligated to furnish such list for a period or periods which in the aggregate exceed one month in any one calendar year during the term of this agreement.

7. **Right to Restrict.**

A. Our members may restrict the radio broadcasting of their compositions up to a maximum of 500 at any given time, only for the purpose of preventing harmful effect upon other interests under the copyrights of such works; provided, however, that (1) limited licenses will be granted upon application to us entirely free of additional charge if the copyright owners are unable to show reasonable hazards to their major interests likely to result from such radio broadcasting; (2) the right to restrict any composition will not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of the composition; (3) in no case will any charges, "free plugs", or other consideration be required for permission to perform a restricted composition; and (4) in no event will any composition be restricted after its initial radio broadcast for the purpose of confining further radio broadcasts to a particular artist, station, network or program.

B. We may also in good faith restrict the radio broadcasting of any composition, over and above the number specified in the previous paragraph, only as to which any suit has been brought or threatened on a claim that the composition infringes a composition not contained in the ASCAP *repertory* or on a claim that we do not have the right to license the public performance of the composition by radio broadcasting.

8. **License Fee.**

A. You agree to pay us the following license fee for each year of the agreement:

(1) Gross Revenue up to $150,000. If your annual (or annualized) *gross revenue* is $150,000 or less use the following fee schedule to determine your annual fee for the year. Any period of less than a year should be annualized and the applicable annual fee for a station with that annualized revenue should be pro-rated for the period.

| Annual Revenue | License Fee |
|---|---|
| Up to $50,000 | $ 450 |
| $50,001 - $75,000 | $ 800 |
| $75,001 - $100,000 | $1150 |
| $100,001 - $125,000 | $1450 |
| $125,001 - $150,000 | $1800 |

(2) Gross Revenue over $150,000. If your annual (or annualized) *gross revenue* is over $150,000 your fee is 1.615% of your *revenue subject to fee* but not less than 1% of your *adjusted gross revenue*.

B. In the event that your payment of fees under this agreement causes us to incur a liability to pay a gross receipts, sales, use, business use, or other tax which is based on the amount of our receipts from you, and (1) we have taken reasonable steps to be exempted or excused from paying the tax; and (2) we are permitted by law to pass through the tax to our licensees, you will pay us the full amount of the tax.

9. **Reports and Payments.**

A. Annual Reports. You will send us a report of the license fee due for each year of this agreement, by April 1st of the following year, by fully completing the Statement of Account form which we will supply free of charge. A copy of the Statement of Account form is annexed and made a part of this agreement.

B. Monthly Payments. For each month during the term of this Agreement, you will pay us on or before the first day of the following month, a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any increase in the Consumer Price Index (National, all items) between the preceding October and the next preceding October. If we do not receive the report required by Paragraph 9.A. for any calendar year when due, the monthly payments will be in the amount of the monthly payments due for the preceding year, plus 24%, and payments at that rate will continue until we receive the late report. If the station commenced broadcasting after January 1, 1996, you will furnish us with a good faith estimate of your revenue for the first year of operation and the monthly payments during the first calendar year of broadcasting will be 1/12th of the fee provided in Paragraph 8.A. for a station having such revenue.

C. Annual Adjustments. If the monthly payments that you have made to us for a year pursuant to Paragraph 9.B. are less than the license fee for that year, you will pay us the additional amount due with the annual report. If the amount that you paid for that year exceeds the license fee due for the year we will apply the excess payment against

3

your future monthly payments, or refund it to you upon your written request if it is greater than three monthly payments required by Paragraph 9.B.

D.  Late Payments. If we do not receive any payment required under Paragraph 9.B. or 9.C. before the first day of the month following the date when the payment was due, you will pay us a finance charge of 1½% per month from the date the payment was due.

E.  Billing Basis. License fee reports will be made on a billing basis by all stations, except that any station may report on a cash basis if (1) its books have been kept on a cash basis and (2) it reported to us only on a cash basis and at no time on a billing basis during the entire term of its agreement with us ending February 28, 1977, and continuously thereafter. You will account for all billings made subsequent to the termination of this agreement with respect to radio broadcasts made during the term of the agreement as and when you make such billings.

F.  Late Reports. If we do not receive a report required by Paragraph 9.A. of this agreement within 30 days of the date that the report was due, we may give you notice that you have an additional 30 days within which to submit the report on either the *adjusted gross revenue* or *adjusted gross revenue* less itemized deductions basis. If you fail to submit the report within the additional 30-day period, the report must be on the *adjusted gross revenue* basis.

G.  Multiple Station Reports. You will submit a single license fee report for:

(1)  AM and FM stations that you own in the same city if the combined *gross revenue* for the stations is less than $75,000, or

(2)  all stations that you own that simultaneously broadcast programs for 80% or more of the time the stations are on the air concurrently.

If you act as a *time broker* for one or more other radio stations that are licensed pursuant to this form of local station blanket radio license, you will include in your license fee reports for the Station all *gross revenue* relating to periods on those other station or stations that are simulcast or are sold in combination with the Station. All other stations that you own or act as a *time broker* for will report and pay separately, and be treated for all purposes as separate stations.

H.  Combination Sales. If the use of the broadcasting facilities of the station is sold in combination with any other stations that you own, operate or control that are licensed by us under a form of agreement other than this form of local station blanket radio license, the combination revenue shall be allocated among the stations on a reasonable basis taking into account factors such as, but not limited to, separate sales by the stations for comparable facilities during the report period or the immediately preceding period, and/or the relative ratings of the stations during the report period.

10.  Audits.

A.  Right to Audit. We have the right by our duly authorized representatives, at any time during customary business hours, upon reasonable notice, to examine your books and records of account only to the extent necessary to verify any report required by this agreement. We will consider all data and information coming to our attention as a result of any such examination of books and records as completely and entirely confidential.

B.  Audit Period. The period for which we may audit is limited to the four calendar years reported preceding the year in which the audit is made. However, if you request a postponement, we have the right to audit for the period commencing with the fourth calendar year reported preceding the year in which we first notified you of our intention to audit. This limitation does not apply if you fail or refuse after written notice from us to produce the books and records necessary to verify any report or statement of accounting pursuant to the agreement.

C.  Correction of Errors. You may correct computational errors, or errors relating to deductions permitted under the agreement on your license fee reports for the four calendar years preceding the year in which the corrected reports are submitted. However, you may not submit a report on the *adjusted gross revenue* less itemized deductions basis for a period previously reported on the *adjusted gross revenue* basis.

D.  Audit Finance Charges. If our audit discloses that you underpaid license fees due us:

(1)  You will pay a finance charge on the additional license fees of 1½% per month from the date(s) the fees should have been paid pursuant to this agreement if the underpayment is 5% or more, but not less than $1000.

(2)  You will pay a finance charge on the additional license fees of 1½% per month beginning thirty (30) days after the date we bill the additional license fees to you if the underpayment is less than 5% or less than $1000.

(3)  You may dispute all or part of our audit claim. If you do, you must, within thirty (30) days from the date that we bill the additional fees,(i) advise us, in writing, of the basis for your dispute and (ii) pay us any fees indisputably owed together with any applicable finance charges. If there is a good faith dispute between us with respect to all or part of the additional fees that we have billed pursuant to this Paragraph, no finance charges will be billed with respect to the disputed fees for a period beginning on the date we billed the fees to you and ending sixty (60) days from the date that we respond to your written notification of the existence of a dispute.

4

(4) Finance charges computed in accordance with this Paragraph and pertaining to additional fees which you dispute in accordance with subparagraph (3) above will be adjusted pro-rata to the amount arrived at by you and us in resolution of the dispute.

11. **Breach or Default.** If you fail to perform any of the terms or conditions of this agreement relating to the reports, accountings or payments required to be made by you, we may give you thirty (30) days' notice in writing to cure your breach or default. If you do not do so within the thirty (30) days, we may then promptly terminate this license.

12. **Time Brokerage Arrangements.** If you enter into a *time brokerage* arrangement, the license granted by this agreement will automatically terminate thirty (30) days after the commencement date of the *time brokerage* unless you have furnished us a complete copy of the *time brokerage* agreement and you and *time broker* have executed a letter to us in the form annexed and made a part of this agreement requesting amendment of the license agreement to add *time broker* as a party. When that letter has been fully executed by you, *time broker* and us, this agreement will be amended accordingly.

13. **Indemnity Clause.** We will indemnify, save and hold harmless and defend you, your advertisers and their advertising agencies, and your and their officers, employees and artists, from and against all claims, demands and suits that may be made or brought against you or them with respect to the performance under this agreement of any compositions in the ASCAP *repertory* which are written or copyrighted by our members. You must give us immediate notice of any such claim, demand or suit and immediately deliver to us all papers pertaining thereto. We will have full charge of the defense of any such claim, demand or suit and you agree to cooperate fully with us in such defense. You may however engage your own counsel at your own expense who may participate in the defense of any such action. At your request we will cooperate with and assist you, your advertisers and their advertising agencies and your and their officers, employees and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the ASCAP *repertory*, but not copyrighted or written by members of ASCAP. This Paragraph 13 does not apply to performances of any works that may be restricted under Paragraph 7 of this agreement.

14. **Rights of Termination.**

A. You have the right to terminate this license on seven (7) days' written notice in the event of the termination, suspension or any substantial alteration or variation of the terms and conditions of the governmental licenses covering the Station, or any major interference with the operations of the Station due to governmental measures or restrictions.

B. We have the right to terminate this license on thirty (30) days' notice if there is any major interference with, or substantial increase in the cost of, our operation as a result of any law of the state, territory, dependency, possession or political subdivision in which the Station is located which is applicable to the licensing of performing rights.

15. **Notices.** All notices required or permitted to be given by either of us to the other under this agreement will be duly and properly given if:

A. mailed to the other party by registered or certified United States mail; or

B. sent by electronic transmission (i.e., Mailgram, facsimile or similar transmission); or

C. sent by generally recognized same-day or overnight delivery service;

addressed to the party at its usual place of business.

16. **Successors and Assignees.** This agreement will enure to the benefit of and be binding upon you and us and our respective successors and assignees, but no assignment will relieve either of us of our respective obligations under this agreement.

17. **Per Program License.** The "local station per program license" for the term ending December 31, 2000 is being offered to you simultaneously with this agreement. In accepting this agreement, you acknowledge that you have a choice of entering into either this agreement or the per program license with us; that you have the opportunity to negotiate for separate licenses with our individual members; and that you are voluntarily entering into this agreement with us. You may substitute the per program agreement in place of this agreement by giving us written notice at least 10 days prior to the commencement of any month during the term of this agreement. In such event, effective with the commencement of that month, the per program agreement will be in full force and effect between us.

18. **Applicable Law.** The fees set forth in this agreement have been approved by the United States District Court for the Southern District of New York as reasonable and non-discriminatory in accordance with the Amended Final Judgment in United States v. ASCAP. The meaning of the provisions of this agreement will be construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, this agreement has been duly executed by ASCAP and Licensee this 7-th day of April , 1997/2000.

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

By _____



(Fill in capacity in which signed)

(a)  If corporation, state corporate office held;

(b)  If partnership, write word "partner" under signature of signing partner

(c)  If individual owner, write "individual owner" under signature

6

# EXHIBIT B



**A S C A P**

December 2, 2003

Shelley Bcg Company Inc.
Radio Station WGEAAM
409 E Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

RE:  Balance due: $1,563.49; Annual Reports due: NONE (Subject to Audit)

Dear Broadcaster:

As you know, your radio station has not been licensed by ASCAP, and you were previously
advised that unauthorized performances of copyrighted musical compositions in the Society's
repertory would constitute infringements of copyright.

Tape recordings of the station's broadcasts made during the unlicensed period disclose evidence
of performances of works in the ASCAP repertory.  A partial list is enclosed.

Under the circumstances, these performances constitute infringements of copyright.

We are prepared to resolve claims for infringement arising from these and other unauthorized
performances on the basis of retroactive licensing upon payment of license fees and
reimbursement of our monitoring expenses.  The balance (including monitoring expenses) and
any reports due that would be owed if licensed to date are indicated above.  If you wish to
proceed on this basis, you must now submit all items indicated above.

This offer will remain open for ten (10) days.  If the items requested are received within this
period, we will license your station retroactive to date.  Otherwise, this offer will automatically
be withdrawn and claims will be referred to counsel.  If that is necessary, we shall seek
reimbursement of all additional expenses, including attorney's fees and court costs, if
infringement claims are subsequently to be resolved on the basis of retroactive licensing.

Please give this matter your immediate attention.

Sincerely,

Pamela L. Blank

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com
Encls.

## <u>LIST OF INFRINGING PERFORMANCES ON WGEA</u>

IT HAPPENED TODAY

WHEN I FALL IN LOVE

SINCE I'VE SEEN YOU LAST

LIFE HAPPENED

MINE ALL MINE

STRANGER IN MY HOUSE

WALKING IN MEMPHIS

SHE WANTS TO KNOW LOVE

I LOVE YOU THIS MUCH

MAYBE MAYBE NOT

I CAN ONLY IMAGINE

BACK OF YOUR HAND

WHAT THE WORLD NEEDS

SHE IS A HERO

LEAVIN' ON MY MIND

PEACE SPEAKER



A S C A P

December 2, 2003

Stage Door Development Inc.
Radio Station WRJMFM
409 E Broad Street
Ozark, AL 36360
Attn: Jack Mizell, General Manager

RE: Balance due: $5,350.15; Annual Reports due: NONE (Subject to Audit)

Dear Broadcaster:

As you know, your radio station has not been licensed by ASCAP, and you were previously advised that unauthorized performances of copyrighted musical compositions in the Society's repertory would constitute infringements of copyright.

Tape recordings of the station's broadcasts made during the unlicensed period disclose evidence of performances of works in the ASCAP repertory. A partial list is enclosed.

Under the circumstances, these performances constitute infringements of copyright.

We are prepared to resolve claims for infringement arising from these and other unauthorized performances on the basis of retroactive licensing upon payment of license fees and reimbursement of our monitoring expenses. The balance (including monitoring expenses) and any reports due that would be owed if licensed to date are indicated above. If you wish to proceed on this basis, you must now submit all items indicated above.

This offer will remain open for ten (10) days. If the items requested are received within this period, we will license your station retroactive to date. Otherwise, this offer will automatically be withdrawn and claims will be referred to counsel. If that is necessary, we shall seek reimbursement of all additional expenses, including attorney's fees and court costs, if infringement claims are subsequently to be resolved on the basis of retroactive licensing.

Please give this matter your immediate attention.

Sincerely,

Pamela L. Blank

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
One Lincoln Plaza   New York, NY   10023
1-800-99ASCAP, Fax - 212-621-6446.

Encls.

## LIST OF INFRINGING PERFORMANCES ON WRJM-FM

WE SHALL BEHOLD HIM

POWER AND THE GLORY THEME

ALL I EVER HAVE TO BE

LORD I LIFT YOUR NAME ON HIGH

LET IT RISE

ABOVE ALL

WELCOME HOME

THERE'S SOMETHING ABOUT THAT NAME

HIS NAME IS WONDERFUL

L A WOMAN

SOME VELVET MORNING

LADYBIRD

ON A MISSION

LUCK BE A LADY

A MIGHTY WIND



A S C A P

| TERMINATION NOTICE |

August 08, 2003

Stage Door Development Inc.
Radio Station WRJMFM
409 E Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

RE:  Balance due: $5,028.83; (Subject to Audit)

Dear Broadcaster:

Enclosed is a copy of our certified notice of breach and default in which we advised you of your default and called on you to submit certain items within thirty days.

The thirty-day period has now expired, but your default has not been cured.

Accordingly, the license is hereby terminated.

Any performances of copyrighted musical compositions in the ASCAP repertory without advance permission from the respective members-in-interest, will constitute infringements of the respective copyrights. If such infringing performances are given, appropriate steps will be taken under the United States Copyright Law to protect the rights of our members.

Enclosed are a special notice concerning monitoring expenses, a fact sheet that describes "The ASCAP Repertory" and a CD Rom that contains both a list of ASCAP's members and an extensive, searchable database of works in the ASCAP repertory.

Sincerely,

Pamela L. Blank

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com

Certified Mail
Return Receipt Required
CC: Ordinary Mail

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
One Lincoln Plaza  New York, NY  10023
1-800-99ASCAP, Fax - 212-621-6446.

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *Donald Dawkins*  ☐ Agent  ☐ Addressee<br>B. Received by (*Printed Name*)  C. Date of Delivery<br>*Donald Dawkins*  8-11-03 |
| 1. Article Addressed to:<br><br>Stage Door Development Inc.<br>Radio Station WRJM-FM<br>409 E. Broad Street<br>Ozark, AL 36360<br>Attn: H. Jack Mizell, President | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☒ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*)  7099 3400 0002 8515 8526 | |
| PS Form 3811, August 2001    Domestic Return Receipt    2ACPRI-03-Z | |



**A S C A P**

| TERMINATION NOTICE |
| --- |

August 08, 2003

Shelley Bcg Company Inc.
Radio Station WGEAAM
409 E Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

RE: Balance due: $839.03; (Subject to Audit)

Dear Broadcaster:

Enclosed is a copy of our certified notice of breach and default in which we advised you of your
default and called on you to submit certain items within thirty days.

The thirty-day period has now expired, but your default has not been cured.

Accordingly, the license is hereby terminated.

Any performances of copyrighted musical compositions in the ASCAP repertory without
advance permission from the respective members-in-interest, will constitute infringements of the
respective copyrights. If such infringing performances are given, appropriate steps will be taken
under the United States Copyright Law to protect the rights of our members.

Enclosed are a special notice concerning monitoring expenses, a fact sheet that describes "The
ASCAP Repertory" and a CD Rom that contains both a list of ASCAP's members and an
extensive, searchable database of works in the ASCAP repertory.

Sincerely,

Pamela L. Blank
Accounts Manager
212-621-6406
pblank@ascap.com

Certified Mail
Return Receipt Required
CC: Ordinary Mail    AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
/Encls.                    One Lincoln Plaza   New York, NY  10023
                                   1-800-99ASCAP, Fax - 212-621-6446.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Shelley Bcg. Company Inc.
Radio Station WGEA-AM
409 E. Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Donald Dawkis_    ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
_Donald Dawkins_    8-11-05

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7009 7400 0002 8515 8557

PS Form 3811, August 2001    Domestic Return Receipt    2ACPRI-03-Z-0985



A S C A P

<div style="border:1px solid black; display:inline-block; padding:4px;">NOTICE OF DEFAULT</div>

June 13, 2003

Stage Door Development Inc.
Radio Station WRJMFM
409 E. Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

RE: Balance due: $4,870.24;  (Subject to Audit)

Dear Broadcaster:

Your failure to pay license fees is a substantial default under our agreement.

We direct your attention to paragraph "11" of that agreement, which reads as follows:

> "11".  If you fail to perform any of the terms or conditions of this agreement
> relating to the reports, accountings or payments required to be made by you, we
> may give you thirty (30) days' notice in writing to cure your breach or default.  If
> you do not do so within the thirty (30) days, we may then promptly terminate this
> license."

Pursuant to this provision, you are hereby notified that your license will be terminated after thirty
(30) days unless all license fee payments due have been received.

Sincerely,

Pamela L. Blank

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com

Certified Mail
Return Receipt Required
CC: Ordinary Mail

**SENDER:** *COMPLETE THIS SECTION*

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Received by (Please Print Clearly) | B. Date of Delivery
R. Holland | 6-16-03

C. Signature
X R. H⸺

☐ Agent
☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Stage Door Development Inc.
Radio Station WRJM FM
409 E. Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
7099 3400 0002 8515 9608

102595-00-M-0952

PS Form 3811, July 1999    Domestic Return Receipt



# A S C A P

| NOTICE OF DEFAULT |
|---|

June 13, 2003

Shelley Bcg Company Inc.
Radio Station WGEA
409 E Broad Street
Ozark, AL 36360
Attn: H. Jack Mizell, President

RE:  Balance due: $811.71: (Subject to Audit)

Dear Broadcaster:

Your failure to pay license fees is a substantial default under our agreement.

We direct your attention to paragraph "11" of that agreement, which reads as follows:

> "11". If you fail to perform any of the terms or conditions of this agreement
> relating to the reports, accountings or payments required to be made by you, we
> may give you thirty (30) days' notice in writing to cure your breach or default. If
> you do not do so within the thirty (30) days, we may then promptly terminate this
> license."

Pursuant to this provision, you are hereby notified that your license will be terminated after thirty
(30) days unless all license fee payments due have been received.

Sincerely,

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com

Certified Mail
Return Receipt Required
CC: Ordinary Mail

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature
X  K. H_____                    ☐ Agent
                                   ☐ Addressee

B. Received by (*Printed Name*)    C. Date of Delivery
R. Hollzal                         6-16-03

1. Article Addressed to:

   Shelley Bcg. Company Inc.
   Radio Station WGEA
   409 E. Broad Street
   Ozark, AL 36360
   Attn: H. Jack Mizell, President

D. Is delivery address different from item 1?  ☐ Yes
   if YES, enter delivery address below:       ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered         ☑ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)          ☐ Yes

2. Article Number
   (*Transfer from service label*)  7099 3400 0002 8515 9639

PS Form 3811, August 2001          Domestic Return Receipt          2ACPRI-03-Z-098



**A S C A P**

March 17, 2003

Mr. Jack Mizell
General Manager
Stage Door Development Inc.
Radio Station WRJM-FM
409 E. Broad Street
Ozark, AL 36360

RE: <u>Balance due: $4,331.47: (Subject to Audit)</u>

Dear Mr. Mizell:

Your account is in arrears with respect to the above items.

If you have any questions concerning this matter, please contact us promptly. Otherwise, we ask that this account be brought up to date as soon as possible.

Sincerely,

Pamela L. Blank

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com



A S C A P

March 17, 2003

Mr. H. Jack Mizell
President
Shelley Bcg Company Inc.
Radio Station WGEAAM
409 E Broad Street
Ozark, AL 36360

RE:  Balance due: $771.00;  (Subject to Audit)

Dear Mr. Mizell:

Your account is in arrears with respect to the above items.

If you have any questions concerning this matter, please contact us promptly.  Otherwise, we ask
that this account be brought up to date as soon as possible.

Sincerely,

Pamela Blank
Accounts Manager
212-621-6406
pblank@ascap.com



# ASCAP

HUGO R. DELBOVE
RADIO ACCOUNTS MANAGER

**BROADCAST LICENSING/RADIO**

January 23, 2003

Mr. Jack Mizell, President
Shelly Broadcasting Co., Inc. &
Stage Door Development
409 East Broad Street
Ozark, AL 36360

Re: Radio Stations: WGEA & WRJM-FM - Geneva, AL

Dear Mr. Mizell:

Our Auditing Department has completed its examination of the stations' books and records. Additional license fees were found to be due as follows:

| STATION | AUDIT PERIOD | AMOUNT |
|---------|--------------|--------|
| WGEA | 01/01/98 - 12/31/01 | $    790 |
| WRJM-FM | 01/01/98 - 12/31/01 | 3,598 |
| TOTAL AMOUNT DUE: | | $ 4,388 |

Supporting schedules and a statement of audit adjustment are enclosed.

As you know, the license agreement provides for finance charges on audits and a timetable for resolving good faith disputes concerning audit items. Finance charges of 1-1/2% per month on additional license fees found due for WGEA will start to accrue in thirty days. Finance charges for WRJM-FM are included in the audit and will continue to accrue monthly

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
ONE LINCOLN PLAZA, NEW YORK, NY 10023
212.621.6424 Fax 212.621.6446 www.ascap.com e-mail: Hdelbove@ascap.com

2

Jack Mizell
Radio Stations WGEA/WRJM-FM
January 23, 2003

If there is a good faith dispute concerning all or part of the audit claim, you may defer the billing of finance charges by *advising us in writing* within thirty (30) days of the basis for your dispute and paying the undisputed portion of the audit fees. No finance charges will then be billed on the disputed fees until sixty (60) days after we have responded to you. This will allow us a reasonable period in which to resolve our differences. Of course, any finance charges on disputed items will be adjusted in accordance with our resolution of the dispute.

During the course of the audit examination, you mentioned to our auditor about a third station. Our records show you own television station WRJM-TV (UPN-67). As you may know, the TV blanket license agreement is somewhat different from the radio agreement in that the TV blanket license is not a revenue based license, but rather calculated based on a percentage of market share and ratings. Accordingly, there is no provision to audit TV stations under the blanket license.

I am sure you are aware that our TV Licensing Department has in the past requested you sign ASCAP licenses and pay the license fees in accordance with that agreement. The latter now total $1,257.98. The balance is based on a monthly charge of $45.00 plus finance charges. To date, there has been no response to our letters or phone calls. I urge you to reconsider your decision and get the TV station licensed and pay the fees called for under the agreement.

Please feel free to call me if you have any questions.

Sincerely,

Hugo R. Del Bove

HDB: h
Enclosures

Account Executive:    hela Blank

Auditor:   Greg Kaempfe

Date: January 10, 2003

Group:  None

|  | Stations | Location | License Fees | Finance Charges | Total | Audit Period |
|---|---|---|---|---|---|---|
| 1 | WGEA-AM | Geneva, AL | $790 | - | $790 | 1/1/98 - 12/31/01 |
|  | (Licensed to Shelley Bcg Co, Inc) | | | | | |
| 2 | WRJM-FM | Geneva, AL | 2,808 | $790 | 3,598 | 1/1/98 - 12/31/01 |
|  | (Licensed to Stage Door Development) | | | | | |
|  | Totals | | $3,598 | $790 | $4,388 | |



**A S C A P**

June 8, 1999

Mr. Jack Mizell
General Manager
Stage Door Development Inc.
Radio Station WRJM-FM/WGEA
409 E. Broad Street
Ozark, AL  36360

Dear Mr. Mizell:

      Pursuant to our conversation, this is to confirm our payment arrangements to cure the default on Radio Stations WRJM-FM and WGEA.

      Regarding WRJM-FM, we would be willing to accept a settlement of $8,100.00, through May 1999, subject to audit.  Further, you indicated that this amount would be paid in 12 monthly installments, which amounts to $675 per month, plus you would submit the current monthly license fee of $194 for a total of $869 per month.

      Turning to WGEA, we would accept a settlement of $700, through May 1999, subject to audit.  Accordingly, 12 monthly payments of $60 would be acceptable along with the current monthly fee license fee of $38, for a total of $98 per month.

      If this is acceptable, please sign this letter where indicated below and submit with the first payment totaling $967 by June 30, 1999.  Upon receipt, we will offer you new licenses and reinstate your accounts.

      Until then, Radio Stations WRJM-FM and WGEA remain unlicensed to perform ASCAP members' copyrighted musical compositions.  Further, any use of our members' music, without permission from the member-in-interest, will and continue to constitute copyright infringement.

      Please call me if you have any questions.

Sincerely,

Pamela Blank
Account Manager
212-621-6406
pblank@ascap.com

Agreed and Accepted:

By: _J. Jack Mizell_

Date: _7/6/99_



# A S C A P

November 23, 1998

| TERMINATION NOTICE |

Mr. H. Jack Mizell
President
Shelley Bcg. Company Inc.
Radio Station WGEA-AM
409 E Broad Street
Ozark, AL  36360

RE:  Balance due: $1,154.21; (Subject to Audit)

Dear Mr. Mizell:

Enclosed is a copy of our certified notice of breach and default in which we advised you of your default and called on you to submit certain items within thirty days.

The thirty-day period has now expired, but your default has not been cured.

Accordingly, the license is hereby terminated.

Any performances of copyrighted musical compositions in the ASCAP repertory without advance permission from the respective members-in-interest, will constitute infringements of the respective copyrights.  If such infringing performances are given, appropriate steps will be taken under the United States Copyright Law to obtain redress.

A special notice concerning monitoring expenses is enclosed.

Sincerely,

Pamela Blank

Pamela Blank
Account Manager
212-621-6406
pblank@ascap.com

Certified Mail
Return Receipt Required
CC: Ordinary Mail

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
One Lincoln Plaza   New York, NY  10023
1-800-99ASCAP, Fax - 212-621-6446.



A S C A P

August 11, 1998

NOTICE OF DEFAULT

Mr. H. Jack Mizell
President
Shelley Bcg Company Inc.
Radio Station WGEA-AM
409 E Broad Street
Ozark, AL 36360

RE: Balance due: $1,038.02; (Subject to Audit)

Dear Mr. Mizell:

Your failure to pay license fees is a substantial default under our agreement.

We direct your attention to paragraph "8" of that agreement, which reads as follows:

> "8". Upon any breach or default by licensee of any terms herein contained relating to the
> reports, accountings or payments required to be made by licensee, Society may give
> licensee thirty (30) days' notice in writing to cure such breach or default, and in the event
> that such breach or default has not been cured within said thirty (30) days, Society may
> then promptly terminate this license.

Pursuant to this provision, you are hereby notified that your license will be terminated after thirty
(30) days unless all license fee payments due have been received.

Sincerely,

Pamela Blank

Pamela Blank
Account Manager
212-621-6406

Certified Mail
Return Receipt Required
CC: Ordinary Mail

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS
One Lincoln Plaza  New York, NY  10023
1-800-99ASCAP, Fax - 212-621-6446.

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

MR. H. JACK MIZELL, Pres.
Shelley BCg Company Inc
Radio Station WGEA-AM
409 E Broad Street
OZARK, AL 36360

4a. Article Number
2 369 504 728

4b. Service Type
- ☐ Registered
- ☐ Express Mail
- ☒ Return Receipt for Merchandise
- ☒ Certified
- ☐ Insured
- ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

8. Addressee's Address (Only if requested and fee is paid)

PS Form 2596-98-B-0229    Domestic Return Receipt



**A S C A P**

August 11, 1998

NOTICE OF DEFAULT

Mr. H. Jack Mizell
President
Stage Door Development Inc.
Radio Station WRJM-FM
409 E. Broad Street
Ozark, AL 36360

RE: Balance due: $5,826.00; (Subject to Audit)

Dear Mr. Mizell:

Your failure to pay license fees is a substantial default under our agreement.

We direct your attention to paragraph "11" of that agreement, which reads as follows:

> "11". Breach or default. If you fail to perform any of the terms or conditions of this agreement relating to the reports, accountings or payments required to be made by you, we may give you thirty (30) days' notice in writing to cure your breach or default. If you do not do so within the thirty (30) days, we may then promptly terminate this license."

Pursuant to this provision, you are hereby notified that your license will be terminated after thirty (30) days unless all license fee payments due have been received.

Sincerely,

Pamela Blank

Pamela Blank
Account Manager
212-621-6406

Certified Mail
Return Receipt Required
CC: Ordinary Mail

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

MR. H JACK MIZELL, Pres
STAGE DOOR Development INC
Radio Station WRIM FM
409 E. Broad Street
OZARK, AL 36360

4a. Article Number

Z369 504 730

4b. Service Type
- ☐ Registered
- ☐ Express Mail
- ☒ Return Receipt for Merchandise
- ☒ Certified
- ☐ Insured
- ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X                    8-17-98

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994          102595-98-9-0229    Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.



# A S C A P

BROADCAST LICENSING

FEBRUARY  9, 1998

```
RADIO STATION WGEA/WRJM FM                    ********
SHELLEY BCG COMPANY INC.                      *SECOND*
409 E BROAD STREET                            *NOTICE*
OZARK AL 36360                                ********
```

BALANCE:   $7,914.02
(SUBJECT TO AUDIT)

DEAR BROADCASTER:

THERE HAS BEEN NO REPLY TO OUR PREVIOUS CORRESPONDENCE REGARDING
YOUR PAST-DUE ACCOUNT.

IN VIEW OF THE INCREASING DELINQUENCY, WE ARE PREPARED TO INVOKE
PARAGRAPH "11" OF THE LICENSE AGREEMENT.  WHICH GIVES ASCAP THE
RIGHT TO TERMINATE YOUR LICENSE FOR BREACH AND DEFAULT. WE WILL
DO SO IF YOUR ACCOUNT IS NOT CLEARED PROMPTLY.

PLEASE GIVE THIS MATTER YOUR IMMEDIATE ATTENTION.

VERY TRULY YOURS,

PAMELA BLANK



A S C A P

BROADCAST LICENSING

JANUARY   8, 1998

RADIO STATION WGEA/WRJM FM
SHELLEY BCG COMPANY INC.
409 E BROAD STREET
OZARK AL 36360

BALANCE:   $7,598.36
(SUBJECT TO AUDIT)

DEAR BROADCASTER:

YOUR ACCOUNT IS IN ARREARS WITH RESPECT TO THE ABOVE ITEMS.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS MATTER, PLEASE CONTACT
US PROMPTLY.   OTHERWISE, WE ASK THAT THIS ACCOUNT BE BROUGHT UP
TO DATE AS SOON AS POSSIBLE.

SINCERELY,

PAMELA BLANK

ASCAP BUILDING, ONE LINCOLN PLAZA, NEW YORK, NY 10023 ♦ 1-800-99ASCAP ♦ FAX 1-800-392-7227
FILE COPY

# ASCAP

BROADCAST LICENSING

AUGUST 14, 1997

RADIO STATION WGEA/WRJM FM
SHELLEY BCG COMPANY INC.
409 E BROAD STREET
OZARK AL 36360

BALANCE:    $6,165.20
(SUBJECT TO AUDIT)

DEAR BROADCASTER:

YOUR ACCOUNT IS IN ARREARS WITH RESPECT TO THE ABOVE ITEMS.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS MATTER, PLEASE CONTACT
US PROMPTLY.  OTHERWISE, WE ASK THAT THIS ACCOUNT BE BROUGHT UP
TO DATE AS SOON AS POSSIBLE.

SINCERELY,

PAMELA BLANK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BENCAP, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | CV-93-A-696-S |
| SHELLEY BROADCASTING CO., INC., | ) | |
| and H. JACK MIZELL, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND CONSENT JUDGMENT

The Complaint in the above-captioned action having been filed on June 7, 1993 and served upon defendant Shelley Broadcasting Corporation and H. Jack Mizell ("Defendants") on June 14, 1993; and the parties, by their undersigned counsel of record, having agreed that the Court may find (1) that Plaintiffs were, on the dates alleged on Schedule A to the complaint, the respective owners of valid copyrights in the nine (9) songs listed on Schedule A to the complaint; (2) that Plaintiffs' song were performed publicly by Defendants by broadcast over Defendants' radio station WGEA in Geneva, Alabama and without permission of the Plaintiffs or license from their performing rights licensing organization, the American Society of Composers, Authors and Publishers ("ASCAP"); (3) that such performances of Plaintiffs' copyrighted songs were willful infringements of Plaintiffs' copyrights; and (4) that there is a danger that such infringing conduct will continue, thereby causing irreparable injury to Plaintiffs for which damages cannot be accurately computed, and necessitating the granting of injunctive relief against Defendants' continued infringing conduct; and the Court having hereby adopted the foregoing findings;

BARW_1/112463.

and the parties having further agreed, by their undersigned counsel of record, that the Court shall enter judgment on the foregoing findings; it is therefore

ORDERED, ADJUDGED and DECREED:

1.    Defendants are enjoined and restrained permanently from publicly performing any or all of the Plaintiffs' copyrighted musical compositions and from causing or permitting Plaintiffs' copyrighted musical compositions to be publicly performed by broadcast over Radio Station WGEA in Geneva, Alabama or any other facility owned, operated or conducted by Defendants, and from aiding and abetting public performances of such compositions, unless Defendants shall have previously obtained permissions to render such performances either directly from the Plaintiffs, or by license from ASCAP.

2.    Plaintiffs shall recover of and from the Defendant damages in the amount of Ten Thousand and no/100 Dollars ($10,000.00). Execution on such judgment shall be stayed so long as said judgment is paid by Defendants to the American Society of Composers, Authors and Publishers ("ASCAP") on behalf of the Plaintiffs on or before January 1, 1994.

3.    Contemporaneously with the execution of this Consent Judgment, ASCAP shall offer, and Defendants shall accept and execute, ASCAP Local Station Blanket Radio License/Local Station per Program Radio License for Radio Station WGEA for the term commencing January 1, 1994 (currently projected at $48.00 per month), and Defendants agree that they will comply with all of the terms and conditions of the ASCAP License Agreement.

4.    The monthly license fee payments for WGEA, Geneva, Alabama shall be paid to ASCAP immediately following the execution of the license agreements. The

amounts due ASCAP under defendants' ASCAP licenses pursuant to this paragraph are in addition to the amounts owed and incorporated in the judgment amount set forth in Paragraph 2 above.

5. Upon timely receipt of the aforementioned sum of $10,000.00, Defendant shall be deemed to have paid ASCAP license fees through December 31, 1993; and Plaintiffs shall file a satisfaction of Judgment with this Court.

6. Each party shall bear its own costs.

The parties stipulate to the entry of judgment consistent with the terms and conditions stated herein.

DONE and ORDERED this ____ day of December, 1993.

William H. Albritton, III
United States District Judge

APPROVED FOR PLAINTIFFS

BY: _James W. Gewin_
     James W. Gewin
BRADLEY, ARANT, ROSE & WHITE
1400 Park Place Tower
Birmingham, Alabama 35203
Phone: (205) 521-8000

APPROVED FOR DEFENDANTS

BY: _Bryant F. Williams_
     Bryant F. Williams, Jr.
Attorney for Defendants
424 North Union Avenue
Post Office Box 399
Ozark, AL 36360

BARW_1/112463.                    3

# ascap

American Society of Composers, Authors & Publishers

RADIO DEPARTMENT                                JANUARY 14, 1991

RADIO STATION WGEA                          P 854 800 002
SHELLEY BCG COMPANY INC, O. I. P.
409 E BROAD STREET
OZARK                    AL 36360

                                    BALANCE:  $3,122.15
                                    (SUBJECT TO AUDIT)

                                    REPORTS DUE: 3YP

DEAR BROADCASTER:

   YOUR STATION'S ASCAP LICENSE EXPIRED DECEMBER 31, 1990.
THOUGH WE HAVE REPEATEDLY ADVISED YOU OVER THE LAST SEVERAL MONTHS
THAT THE LICENSE WOULD NOT BE EXTENDED BECAUSE OF YOUR DEFAULT IN PAYMENT
OF LICENSE FEES, YOU HAVE FAILED TO CURE THE DEFAULT.  THE BALANCE DUE
THROUGH DECEMBER 31, 1990 IS INDICATED ABOVE.

   ACCORDINGLY, AS OF JANUARY 1, 1991, YOUR STATION IS NOT LICENSED
BY ASCAP TO PERFORM COPYRIGHTED MUSICAL COMPOSITIONS IN OUR REPERTORY.
ANY SUCH PERFORMANCES WITHOUT ADVANCE WRITTEN PERMISSION FROM THE
ASCAP MEMBERS IN INTEREST CONSTITUTE INFRINGEMENTS OF COPYRIGHT.
LEGAL ACTION WILL BE TAKEN WITH RESPECT TO INFRINGING PERFORMANCES.

   YOU CAN STILL OBTAIN A LICENSE EXTENSION BY PROMPTLY SUBMITTING
FULL PAYMENT OF ALL FEES DUE.  WE URGE YOU TO DO SO NOW SO THAT THE
VAST REPERTORY OF OUR MEMBERS' MUSIC WILL BE AVAILABLE FOR BROADCAST
BY YOUR STATION.

                        VERY TRULY YOURS,

                        *Camille Miled* (signature)
                        CAMILLE MILED

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
BY ORDINARY MAIL

**SENDER:** Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.

Put your address in the "RETURN TO" Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.

1. ☐ Show to whom delivered, date, and addressee's address.    2. ☐ Restricted Delivery
     ↑ *(Extra charge)* ↑                ↑ *(Extra charge)* ↑

| 3. Article Addressed to: | 4. Article Number |
|---|---|
| | |
| | **Type of Service:** |
| | ☐ Registered    ☐ Insured |
| | ☒ Certified     ☐ COD |
| | ☐ Express Mail |
| | Always obtain signature of addressee or agent and DATE DELIVERED. |

| 5. Signature — Addressee | 8. Addressee's Address *(ONLY if requested and fee paid)* |
|---|---|
| X | |
| 6. Signature — Agent | |
| X | |
| 7. Date of Delivery | |
| 2-5-91 | |

**PS Form 3811,** Mar. 1987    ★U.S.G.P.O. 1987-178-268         DOMESTIC RETURN RECEIPT

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOELSONGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:06CV774-MHT |
| SHELLEY BROADCASTING COMPANY, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| State of Florida | ) |
| | ) ss: |
| County of Lake | ) |

JERRY GLAZE, being sworn, states:

1.     My address is 1183 Lakeview Drive, Clermont, Florida 34711. From time to time, I have been engaged by the American Society of Composers, Authors and Publishers (ASCAP), of which I am informed and believe plaintiffs herein are members, to make recordings of the broadcasts of certain radio and television stations unlicensed to perform the copyrighted musical compositions in the ASCAP repertory. I make this affidavit on the basis of my own personal knowledge of the facts contained therein.

2.     I was engaged by ASCAP to make tape recordings of broadcasts of radio stations WGEA and WRJM-FM, which I am informed are both licensed for the city of Geneva, Alabama.

3.     Pursuant to instructions from ASCAP employees, I made tape recordings of radio station WGEA's broadcasts at the Briarwood Inn in Geneva, Alabama on February 25, 2006 between approximately 2:30 p.m. and 10:00 p.m.; on February 26, 2006 between approximately

1

7:45 p.m. and 12:15 a.m.; on February 27, 2006 between approximately 9:00 a.m. and 9:00 p.m. These tape recordings are contained on sixteen cassette tapes.

4.    Pursuant to instructions from ASCAP employees, I also made tape recordings of radio station WRJM-FM's broadcasts at the Briarwood Inn in Geneva, Alabama on February 24, 2006 between approximately 7:00 p.m. and 11:30 p.m.; on February 25, 2006 between approximately 6:00 a.m. and 1:30 p.m.; and on February 26, 2006 between approximately 7:30 a.m. and 7:30 p.m.  These tape recordings are contained on sixteen cassette tapes.

5.    At the same time as I made my tape recordings, I also prepared logs of the stations' broadcasts.

6.    After I completed my recording assignments, I prepared and affixed to each tape a label identifying the tape as a recording of broadcasts of WGEA made on February 25, 26, or 27, 2006, or of broadcasts of radio station WRJM-FM made on February 24, 25, or 26, 2006.  I then mailed the tapes and my logs to ASCAP's offices in New York.

7.    I am able to state with certainty that the tape recordings which are evidence of performance of the songs involved in this action are those I made on February 24-27, 2006.

_____
JERRY GLAZE

Sworn to before me this _6th_
day of February 2007.

_____
NOTARY PUBLIC

NOTARY PUBLIC-STATE OF FLORIDA
Jaime L. Mahon
Commission # DD522480
Expires:  APR. 11, 2010
Bonded Thru Atlantic Bonding Co., Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

```
JOELSONGS, et al.,              )
                               )
            Plaintiffs,         )  CIVIL ACTION NO. 1:06CV774-MHT
                               )
vs.                            )
                               )
SHELLEY BROADCASTING COMPANY,   )
INC., STAGE DOOR DEVELOPMENT,   )
INC. AND H. JACK MIZELL,        )
            Defendants.         )
```

AFFIDAVIT OF OLEKSANDER KUZYSZYN IN SUPPORT
OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

```
STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )
```

OLEKSANDER KUZYSZYN, being sworn, states:

1.  I reside at 557 Barron Avenue, Woodbridge, New Jersey 07095 and since 1984 have been and presently am employed by the American Society of Composers, Authors and Publishers ("ASCAP"), of which I am informed and believe plaintiffs in this case are members. I make this affidavit on the basis of my own personal knowledge of the facts set forth below and, to the extent that knowledge is based on information and belief, I believe it to be true.

2.  I am also a professional musician. I received a Bachelor of Arts degree in Music from Columbia University in 1980 and a Master of Arts degree in Music (with a concentration

in Music Theory) from Columbia in 1984.   I am a songwriter,
composer, arranger, freelance record producer and music editor.
I also occasionally perform music, as a bandleader, vocalist and
keyboard player in a band that plays club dates.

3.   My professional musical training enables me to read and
write musical notation, and I can readily identify works I hear
performed by comparing the melody with the sheet music.

4.   As Manager of approximately forty (40) employees in
ASCAP's Radio, Internet and Other Surveys Department, I am
occasionally called upon to confirm performances of particular
compositions on tape recordings made to determine whether
certain radio stations, television stations and other music
users that do not hold an ASCAP license are, nevertheless,
performing copyrighted musical compositions written, composed
and published by ASCAP's members.

5.   On January 29, 2007, I was asked by an ASCAP attorney
to listen to two (2) sets of tape recordings of broadcasts of
radio stations WGEA and WRJM-FM, both licensed in the city of
Geneva, Alabama; which I understand were made by Jerry Glaze, on
January 24, 25,26 and 27, 2006.   The first set of recordings
are contained on sixteen (16) cassette tapes bearing labels
indicating that they are recordings of broadcasts of radio
station WGEA made on January 25, 26, 27, 2006.   The second set

2

of recordings are contained on sixteen (16) cassette tapes bearing labels indicating that they are recordings of broadcasts of radio station WRJM-FM made on January 24, 25 and 26 2006.

6. Having compared the sheet music of each of the songs involved in this action with the tape recordings, I am able to state with certainty that the following songs are on the tape recordings described in the preceding paragraphs for the stations indicated: "WE DIDN'T START THE FIRE," "LITTLE WING," "HEY THERE," "BEGIN THE BEGUINE," "PINK HOUSES," "PANAMA," "THIS WILL BE (AN EVERLASTING LOVE)," "RASPBERRY BERET," "FAITH," "MASTERS OF PUPPETS," "LITTLE RED CORVETTE," "LIGHT MY FIRE," "BIG YELLOW TAXI," "JUMP," "RIKKI, DON'T LOSE THAT NUMBER," "GOD WILL MAKE A WAY," "SINCE I DON'T HAVE YOU," "WE HAVE COME INTO HIS HOUSE (TO WORSHIP HIM)," "SMALL TOWN" and "1999."

_____
OLEKSANDER KUZYSZYN

Sworn to before me this
6th day of February, 2007.

_____
NOTARY PUBLIC

SUSAN HAUGH
Notary Public, State of ew York
No. 01HA4722612
Qualified in Queens County
Certificate Filed in New York County
Commission Expires 9/30/2010

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOELSONGS, et al.,                              )
                                                )
      Plaintiffs,                           )
                                                )
v.                                              )       CIVIL ACTION NO.
                                                )       1:06CV774-MHT
SHELLEY BROADCASTING COMPANY,                   )
INC., et al.,                                   )
                                                )
      Defendants.                           )

## AFFIDAVIT OF DYLAN C. BLACK

STATE OF ALABAMA        )
                        :
JEFFERSON COUNTY        )

Dylan C. Black, being duly sworn, deposes and says:

1.     I am an attorney in the Birmingham office of Bradley Arant Rose & White LLP ("Bradley Arant") and am counsel of record for the plaintiffs in the above-captioned action: Joelsongs, Experience Hendrix, L.L.C., Richard Adler d/b/a Lakshmi Puja Music Ltd., Judith Coulter and Janie Coulter Hartbarger d/b/a J & J Ross Co., Warner Bros., Inc., EMI Full Keel Music Co., Van Halen Music Company, Chappell & Co., Inc., Jay's Enterprises, Inc., Controversy Music, Creeping Death Music, Doors Music Company, Siquomb Publishing Corp., Universal Studios Inc. (MCA Music Publishing Division), Integrity's Hosanna Music, Bonnyview Music Corp., and Sound III, Inc. ("Plaintiffs"). I have access to records reflecting

1

the costs and fees incurred by Plaintiffs in the prosecution of this action, and am competent to testify concerning these costs and fees.

2.      Through February 6, 2007, Plaintiffs have incurred, in connection with this action, a total in fees and costs of $10,338.97.  This amount reflects $9,237.50 in fees and $1,101.47 in costs.

3.      Further affiant saith not.

Dated this _____ day of February, 2007.

_____
D̶ylan C. Black

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOELSONGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06cv774-MHT |
| | ) | |
| SHELLEY BROADCASTING COMPANY, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' REQUESTS FOR ADMISSION

Plaintiffs, by their representative, the American Society of Composers, Authors, and Publishers ("ASCAP"), hereby propound the following Requests for Admission to defendants Shelley Broadcasting Company, Inc., Stage Door Development, Inc., and H. Jack Mizell, and each of them, to be admitted or denied separately and severally within thirty days, as required by Rule 36 of the Federal Rules of Civil Procedure.

### Instructions

A.    The term **"Defendants,"** as used in these requests, shall mean and refer to Shelley Broadcasting Company, Inc., Stage Door Development, Inc., and H. Jack Mizell, the defendants in this case, and their employees, agents, representatives, attorneys and all other persons acting on their behalf, including specifically but without limitation those individuals associated with the operation of radio stations identified in the Complaint in this case by the call letters WRJM-FM and WGEA.

B.    The term **"performed"** and **"perform"** as used herein shall mean and refer to a live performance of a musical composition as well as the broadcast of a taped, recorded,

1

televised or otherwise electronically - reproduced exhibition of the performance of a musical composition.

      C.      As to any request that is denied, plaintiffs shall conduct discovery to prove the truth of each request and shall, pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, request that the Court tax all costs incurred, including any attorney's fee, in proving the truth of such request.

      D.      Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, any request not denied within thirty (30) days shall be deemed admitted and plaintiffs shall rely upon such admission(s) in the preparation and presentation of this case.

      E.      All references to a numbered Column shall refer to columns in Schedule "A" to the Complaint.

### Requests for Admission

      1.      H. Jack Mizell, as of the dates shown in Column 9, was the President and 100% stockholder of Shelley Broadcasting Company, Inc.

      2.      H. Jack Mizell, as of the dates shown in Column 9, was the President and 100% stockholder of Stage Door Development, Inc.

      3.      H. Jack Mizell and Stage Door Development, Inc., as of the dates shown in Column 9, did own, control, manage, operate and maintain radio station WGEA.

      4.      H. Jack Mizell and Shelley Broadcasting Company, Inc., as of the dates shown in Column 9, did own, control, manage, operate and maintain radio station WRJM-FM.

5.    H. Jack Mizell and Stage Door Development, Inc., at the time of their responses to these Requests for Admissions, continue to own, control, manage, operate and maintain radio station WGEA.

6.    H. Jack Mizell and Shelley Broadcasting Company, Inc., at the time of their responses to these Requests for Admissions, continue to own, control, manage, operate and maintain radio station WRJM-FM.

7.    Musical compositions are routinely performed for the public as part of the programming on radio station WRJM-FM.

8.    Musical compositions are routinely performed for the public as part of the programming on radio station WGEA.

9.    The musical compositions listed in Column 3 were copyrighted by the composers named in Column 4.

10.    On the dates shown in Column 9, the plaintiffs in this case were the owners of the copyrights in the musical compositions listed in Column 3.

11.    Defendants have no knowledge or information of any facts demonstrating that the plaintiffs in this case are not the owners of valid copyrights in the musical compositions involved in this action.

12.    The copyrights to the musical compositions identified in Column 3 were in full force and effect as of the dates shown in Column 9.

13.    Defendant did not have a license from plaintiffs or the American Society of Composers, Authors and Publishers ("ASCAP") on the dates shown in Column 9.

14.    Defendant did not obtain permission from plaintiffs or ASCAP (written, oral or otherwise) to publicly perform the selections identified in Column 3 on the dates shown in Column 9.

15.    Each musical composition identified in Column 3 was broadcast over either radio station WGEA or radio station WRJM-FM (collectively, the "Stations") on the dates of infringement specified in Column 9.

16.    Each musical composition identified in Column 3 was broadcast over the Stations on occasions prior to the dates of infringement specified in Column 9.

17.    Each musical composition identified in Column 3 has been broadcast over the Stations on occasions subsequent to the dates of infringement specified in Column 9.

18.    Other musical compositions for which ASCAP members own the copyrights have been broadcast over the Stations during the three years prior to the commencement of this action.

19.    Defendants, by written and oral communications with ASCAP representatives and by previous litigation, were alerted to the necessity of obtaining an ASCAP license prior to the dates of infringement specified in Column 9.

20.    Prior to the dates of infringement specified in Column 9, Defendants were aware that ASCAP members owned the copyrights to many musical selections of the type routinely broadcast over the Stations.

21.    A virtually identical action against Defendants, styled <u>Bencap, Inc. et al. v. Shelley Broadcasting Co., Inc. and H. Jack Mizell</u>, Civil Action No. CV 93-A-696-S (M.D. Ala.), was filed in 1993.

22.     A virtually identical action against Defendants, styled <u>Simpleville Music et al. v.</u>
<u>Shelley Broadcasting Co., Inc., Stage Door Development, Inc., and H. Jack Mizell</u>, Civil Action
No. 1:04cv393-T (M.D. Ala.), was filed in 2004.

23.     Prior to the dates of infringement specified in Column 9, Defendants were aware
that the United States Copyright Laws applied to musical compositions broadcast over the
Stations.

24.     Defendants have known since before the dates of infringement specified in
Column 9 that the unlicensed public performance of copyrighted musical compositions
constitutes infringements of copyright under the United States Copyright Law.

25.     Shelley Broadcasting Company, Inc. and Stage Door Development, Inc. are
operated for profit.

26.     H. Jack Mizell, Shelley Broadcasting Company, Inc. and Stage Door
Development, Inc. have a financial interest in the operation of the Stations.


_____
Dylan C. Black
One of the Attorneys for Plaintiffs

OF COUNSEL:

James W. Gewin
BRADLEY ARANT ROSE & WHITE LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000; Facsimile (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing document on:

James M. Parker, Esq.                    Steve McGowan, Esq.
11667 Highway 167                        Post Office Box 2101
Enterprise, AL  36330-7771               Dothan, AL  36302-2101

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to
their regular mailing addresses, on this _____ 7ᵗʰ _____ day of November, 2006.

_____
                                    Of Counsel

## IN THE DISTRICT COURT OF THE UNITED STATES FOR
## THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| SIMPLEVILLE MUSIC, et. al.,, | ) |
| | ) |
| PETITIONER, | ) |
| | ) |
| VS. | ) CASE NO.: 1:04cv393-MHT |
| | ) |
| H. JACK MIZELL, | ) |
| | ) |
| DEFENDANT. | ) |

### ANSWERS TO INTERROGATORIES

COMES NOW H. Jack Mizell by and through his undersigned counsel and in response to the interrogatories propounded upon him answers the following:

1.  Haywood Jackson Mizell, September 6, 1042, 285 East Broad Street, Ozark, Alabama. The business address is the same. Mizell is the name of the person answering for Stage Door and Shelley, and the address is the same.

2.  No

3.  No

4.  No

5.  No

6.  285 East Broad Street, Ozark, Alabama 36360

7.  Same as 6

8.  H. Jack Mizell, all offices

9.  Same as 8

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

10.    Doc Parker is manager of WGEA-AM

11.    H. Jack Mizell is manager

12.    Yes Brenda Simechek at WRJM-FM February 24-27, 2006 will be submitted when found.

13.    One employee, Doc Parker, General Manager

14.    Jack Mizell, General Manager

15.    WRJM-FM is programmed daily in Ozark by WireReady Software

16.    The corporations are licensed by the FCC

17.    Same as 16

18.    Same as 16 and 17

19.    H. Jack Mizell

20.    There are no musical selections made by the station

21.    The corporations are the record keepers

22.    The corporation maintains the records

23.    The corporation maintains the records

24.    Same as 23

25.    The sound recording would answer the question. Based on the reliability of the written allegations presented by ASCAP. Only sound recording establish the identity of each sound.

26.    No permission was given to air any unprotected music

27.    No

28.    $300,000.00 annually

29.    ABC Network and Action Computers

30.    Edith Windham and Five Star Credit Union

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

31.   Five Star Mortgage is $300,000.00 against a value of $75,000.00 and The Citizens Bank of Enterprise is $2,450,000 against an appraised value of $1,500,000

32.   Five Star Credit Union (ASCAP has the information having raided it over a year ago)

33.   See 32

34.   No unprotected music is played

35.   No unprotected music is played as per policy

36.   ASCAP will not permit even the license offered

37.   No one

38.   No one

39.   Yes

/s/ Steve McGowan
Steve McGowan
Attorney for Defendant
119 S. Foster St. Ste. 101
Dothan, Alabama 36301
(334) 678-8200

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent via Electronic Mail, to Dylan C. Black, Esq., Brad S. Burleson, Esq., James W. Gewin, Esq., 1 Federal Place, 1819 5th Avenue North, Birmingham, Alabama 35203-2104 this the 23rd day of January 2007.

/s/ Steve McGowan
Of Counsel

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

# TYLER EATON

**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

1    IN THE UNITED STATES DISTRICT COURT

2    MIDDLE DISTRICT OF ALABAMA

3    SOUTHERN DIVISION

4

5    CIVIL ACTION NO. 1:04cv393-T

6

7    SIMPLEVILLE MUSIC, et al.,

8          Plaintiff,

9    vs.

10   SHELLEY BROADCASTING

11   COMPANY, INC., et al.,

12         Defendants.

13

14              DEPOSITION

15                 OF

16            JACK MIZELL

17       1ST DAY OF MAY, 2006

18

19

20

21   TAKEN BEFORE:   Gary N. Morgan

22                   Registered Professional

23                   Reporter and Notary Public

# TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    I'm sure you've heard of Hot 105.7.

2         Q.    What did you do for WRJM

3    between 1982 and 1987?

4         A.    Well, my function in life,

5    calling, if you will, is to put together

6    components, and so we made it in the --

7    upgraded it to the -- according to Duncan

8    Radio, the most, you know, powerful FM in

9    the state.

10        Q.    Were you the owner of that

11   station?

12        A.    Yes.

13        Q.    Was it you personally that

14   owned it?

15        A.    Well, I had a hundred percent

16   of the shares, yes.

17        Q.    Was there an entity that was

18   the actual owner in the name?

19        A.    Yeah, it was Shelley

20   Broadcasting.

21        Q.    Is that the same Shelley

22   Broadcasting --

23        A.    Yes.

# TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

```
1          Q.      -- Company that's a defendant
2    here?
3          A.      Yes.
4          Q.      When did you form Shelley
5    Broadcasting Company?
6          A.      I didn't form it.  I purchased
7    it from Rudolph Shelley in 1982, I think
8    was the year.
9          Q.      And you said you were the
10   president and 100 percent stockholder of
11   that entity?
12         A.      (Nodding head affirmatively.)
13         Q.      Please say yes or no.
14         A.      Yes.
15         Q.      The court reporter, Mr.
16   Morgan, here, can't take down your
17   nodding of the head.
18         A.      Nods.
19         Q.      Are you still the president
20   and 100 percent stock owner of Shelley
21   Broadcasting Company?
22         A.      Yes.
23         Q.      And have you been the
```

# TYLER EATON
**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

1    president and one hundred percent stock

2    owner of that company ever since you

3    bought it in 1982?

4         A.    That's right.

5         Q.    Are there any other officers

6    in that company?

7         A.    No.

8         Q.    Are there any board members

9    other than yourself?

10        A.    No.

11        Q.    Is that a for-profit company?

12        A.    Yes, it is.

13        Q.    Does the corporation hold

14   regular meetings?

15        A.    Every second of every day.

16        Q.    Every day that you are with

17   yourself?

18        A.    (Nodding head affirmatively.)

19   As long as my heart is beating, they are

20   meeting.

21        Q.    I've got it.  I've got it.

22   There came a time, I guess, when you

23   moved station WRJM somewhere else, like

# TE TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1     A.     Well, on the table of

2  allotments by the FCC, they allocate

3  frequencies to cities or what's called

4  community of license, and the government

5  regulates that.  You can't move your city

6  of license.  It will always be there.

7     Q.     Okay.  Is there still an FM

8  station in Geneva from that purchase you

9  made in 1987?

10     A.     Yes.  It is licensed in

11  Geneva, yes.

12     Q.     And what is it called today?

13     A.     WRJM.

14     Q.     All right.  Where are the

15  headquarters of WRJM?

16     A.     Wherever I am.

17     Q.     Where is its transmitter

18  located?

19     A.     The transmitter is located, I

20  would say, four and a half to five miles

21  west of Geneva.  It depends upon whether

22  you say the courthouse is Geneva or not.

23     Q.     Where is the transmitter

# TYLER EATON
**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

1   located for WGEA?

2      A.    It's about a mile and a half

3   from the courthouse. It's on a place

4   called Radio Hill in Geneva.

5      Q.    When you say a mile and a half

6   west of the courthouse, you mean the

7   courthouse in Geneva?

8      A.    Yes, in Geneva.

9      Q.    And have those two stations --

10   how long have the transmitters of those

11   two stations been in those locations that

12   you described?

13      A.    The AM transmitter, I think,

14   was put there in '53. Of course, it's

15   been changed since then, but the location

16   has been the same.

17         The FM transmitter was at the

18   same place with the FM at one and a half

19   miles from the courthouse. I think it

20   began in 1969. And then the transmitter

21   was relocated in 1992.

22      Q.    Are you the one that was

23   responsible for having it relocated?

# ⅠＬ TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

```
1         A.      No.

2         Q.      Do you still have those board

3   meetings all the time every day?

4         A.      Every second.

5         Q.      All right.  Do you ever keep

6   minutes for Stage Door Development?

7         A.      Only in my head.

8         Q.      How about for Shelley

9   Broadcasting Company, do you ever keep

10  minutes for them?

11        A.      Same thing.

12        Q.      Is it true that Stage Door

13  Development, Inc. is the owner of radio

14  station WRJM FM?

15        A.      Yes, it is the licensee,

16  that's right.

17        Q.      All right.  And is it true

18  that Shelley Broadcasting Company is the

19  owner of WGEA?

20        A.      That's the licensee, that's

21  right.

22        Q.      And you are the president and

23  100 percent stockholder of both of those
```

# TYLER EATON
**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

1    two corporations?

2        A.      That's correct.

3        Q.      Stage Door Development is a

4    for-profit company?

5        A.      Yes, it is.

6        Q.      To the extent that Stage Door

7    Development or Shelley Broadcasting

8    Company enjoy any profits, those would

9    inure to your benefit, correct?

10       A.      That's correct.

11       Q.      And to the extent they lost

12   money, you would bear those losses as

13   well?

14       A.      Yes.

15       Q.      What other business operations

16   does Shelley Broadcasting Company have

17   other than radio station WGEA?

18       A.      None.

19       Q.      What business operations does

20   Stage Door Development have other than

21   radio station WRJM?

22       A.      None.

23       Q.      Do you draw a salary from

# ⅡⅬ TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1  decade.

2      Q.      During the entire time that

3  you've been running WGEA --

4      A.      Yes.

5      Q.      -- you've broadcast those?

6      A.      Yes.

7      Q.      Do either of the two radio

8  stations have someone with the title

9  station manager?

10      A.      We don't use titles.

11      Q.      Okay.  So, nobody has that

12  title at either of those stations?

13      A.      Well, now, it all depends upon

14  what you define, see, because I --

15  certainly it's not our label.  To use

16  your definition, I don't know.

17      Q.      Well, that's fair.  I asked

18  you whether there was anybody with the

19  title station manager, and I gather the

20  answer is no?

21      A.      No.

22      Q.      Are you the one who is

23  responsible for the broadcast and the

# TLE TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    business activities of WGEA?

2        A.    I'm the licensee's

3    representative, yeah.

4        Q.    How about for WRJM, are you

5    the one that's responsible for the

6    broadcast activities and business

7    operations of WRJM?

8        A.    I'm the licensee.

9        Q.    Okay.

10        MR. PARKER:  Before you get

11    too far away from this point, I'd like to

12    ask two quick questions, if I might.

13        MR. BLACK:  Do you have an

14    objection?

15        MR. PARKER:  No.

16        MR. BLACK:  Is it something we

17    can handle at a break?

18        MR. PARKER:  No, it needs to

19    be on the record, I think.  Is James

20    Tolver the same as Martin Tolver?

21        A.    Martin Tolver, yes, that's

22    right.

23        MR. PARKER:  So, the mention

# TYLER EATON
**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

1          A.      Well, it's Doc Parker who

2    makes the placement in Geneva.

3          Q.      Doc Parker who works for you?

4          A.      Right, he's the guy who does

5    it all in Geneva.   There are no other

6    employees.

7          Q.      Did you hire Doc Parker to do

8    what he does at the radio station?

9          A.      Yes, in '91, I think it was.

10         Q.      All right.   And I guess you

11   hired your son, Boyd, to do what he does

12   at the radio station?

13         A.      Yes.

14         Q.      Does anyone else have hiring

15   authority for Shelley Broadcasting

16   Company other than you?

17         A.      Not at this time.   I'm not

18   saying it wouldn't ever happen but not at

19   this time.

20         Q.      Has anyone ever had hiring

21   authority for Shelley Broadcasting

22   Company --

23         A.      No.

# TYLER EATON

### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    Q.    -- other than you?

2    A.    (Shaking head negatively.)

3    Q.    Same questions for WRJM.  Do

4    you hire all of the employees for WRJM?

5    A.    That is correct.

6    Q.    Excuse me.  I should have said

7    do you hire all the employees of Stage

8    Door Development?

9    A.    That's right.

10    Q.    And have you always hired all

11    the employees?

12    A.    Yes.

13    Q.    Does anyone else have the

14    authority to hire for Stage Door

15    Development?

16    A.    Not at this time.

17    Q.    If Doc Parker makes a decision

18    regarding the programmimg on WGEA and you

19    disagree with it, can you force him to

20    change it?

21    A.    He's been there since '91, and

22    our agreement was that he not embarrass

23    me and not violate the rules, so that is

# TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    a subjective question, speculative, I

2    suppose.

3         Q.    As long as he keeps up his end

4    of the bargain, you're happy with what he

5    does?

6         A.    Well, that's what -- I made

7    the bargain, and he keeps it.

8         Q.    If he didn't keep up his end

9    of the bargain, you could make him

10   change, correct, or fire him?

11        A.    Yes.

12        Q.    Okay.  How about for WRJM,

13   what is the format of that station?

14        A.    Well, we have Coast to Coast

15   from twelve to four, and Jim Bohannon

16   from four to five.

17        Q.    Is that 12 a.m. to 4 a.m.?

18        A.    Yes.  And Wall Street Journal

19   from five to six, and then from six to

20   seven we have Laura Ingram, and seven to

21   nine we have a local talk show, call-in

22   show, and that varies with people

23   involved.  Sometimes it's an eye doctor,

# ⊓Ɛ TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    Q.    Okay.  Why did you sign this

2  Exhibit 3, Local Station Per Program

3  Radio License?

4    A.    I have a notion that every

5  composer who offers his music should be

6  paid, and that the payment should be

7  forwarded directly from the performer to

8  the composer.  I don't see that being

9  done necessarily as a blanket.  In fact,

10  there's no assurance that it's being

11  done.

12    Q.    Do you accept as a proposition

13  that if there are performances of musical

14  selections over your radio stations that

15  the persons who own the copyrights to

16  those musical selections should be paid?

17    A.    Absolutely without exception.

18    Q.    Have you ever played anybody's

19  copyrighted musical selections over your

20  radio stations without compensating the

21  person who owned the copyright to those

22  selections?

23    A.    I suppose I have, but not

# TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1   deposition that you have the right to

2   play music in the ASCAP -- or play ASCAP

3   members' songs?

4        A.    Now, say that one more time.

5        Q.    Do you understand that if you

6   enter into license agreements such as are

7   marked as Exhibits 1 to 4 of your

8   deposition that that gives you the right

9   to perform ASCAP members' songs over your

10  radio stations either on a blanket basis

11  or on a per program basis?

12       A.    I think that's what they are

13  purported to do, yes.

14       Q.    Don't you think that's what

15  they do?

16       A.    Well, we -- we -- we're in a

17  suit now to answer the question. There's

18  no infringement, and yet I'm here. What

19  does that -- I haven't infringed, so what

20  do you do? How do you answer that

21  question?

22       Q.    Is it your contention that you

23  are currently covered by an ASCAP license

# TYLER EATON
### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

1    agreement?

2         A.    No, I'm not.

3         Q.    Is it your contention that at

4    any time since 2003 that you've been

5    covered by an ASCAP license agreement?

6         A.    No, I have not.

7         Q.    Is it therefore your

8    understanding that since 2003 you do not

9    have the right to play ASCAP members'

10   songs over your radio station?

11        A.    That's exactly right.

12        Q.    And if those members' songs

13   were played over your radio stations,

14   that that would be a violation of

15   copyright law?

16        A.    Exactly.  That would be an

17   infringement.

18        Q.    That's right.  You've

19   understood since at least 1993 that, in

20   order to play ASCAP members' songs over

21   your radio stations, you must have a

22   license, right?

23        A.    Since 1993, is that what you

# TYLER EATON

### TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

```
 1    said?

 2        Q.    My question was you've

 3    understood since at least 1993 that, in

 4    order to play ASCAP members' songs over

 5    your radio stations, you must have a

 6    license?

 7        A.    Correct.

 8        Q.    And you've understood since

 9    that time that, if you play ASCAP

10    members' songs over your radio stations

11    without a license, that you've infringed

12    their copyright?

13        A.    Exactly.

14        Q.    What steps do you take to make

15    sure that doesn't happen?

16        A.    We do not put any ASCAP

17    licensed songs on the computers, so it

18    can't be played.

19        Q.    So, your contention is that,

20    since you don't put any ASCAP licensed

21    songs on the computer, that it is an

22    impossibility that an ASCAP licensed song

23    could be played over your radio station?
```