IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
JOELSONGS, et al.,           )
                             )
    Plaintiffs,              )
                             )      CIVIL ACTION NO.
    v.                       )       1:06cv774-MHT
                             )            (WO)
SHELLEY BROADCASTING         )
COMPANY, INC., et al.,       )
                             )
    Defendants.              )
```

OPINION

The plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP"), to which they have granted a non-exclusive right to license non-dramatic public performances of their copyrighted musical compositions.[1] The plaintiffs brought this lawsuit against defendants Shelly Broadcasting Company, Inc., Stage Door

---

1. The plaintiffs are: Joelsongs; Experience Hendrix, LLC; Richard Adler, d/b/a Lakshmi Puja Music, Ltd.; Judith Coulter, d/b/a J&J Ross, Co.; Janie Coulter Hartbarger d/b/a J&J Ross, Co.; Warner Bros., Inc.; Emi Full Keel Music Co.; Van Halen Music Co.; Chappell & Co., Inc.; Jay's Enterprises, Inc.; Controversy Music; Creeping Death Music; Doors Music Company; Siquomb Publishing Corp.; Universal Studios, Inc.; Integrity's Hosanna Music; Bonnyview Music, Corp.; and Sound III, Inc.

Development, Inc., and H. Jack Mizell, charging that they violated the Copyright Act, 17 U.S.C. §§ 101-1332, by playing ASCAP's copyrighted musical compositions on the radio without authorization.  This court has jurisdiction under 28 U.S.C. § 1338(a) (copyright) and § 1331 (federal question).

Currently before the court is the plaintiffs' motion for summary judgment.  The motion will be granted.


I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  FACTS

On February 25 and 27, 2006, several ASCAP copyrighted compositions were broadcast over radio-station WGEA, which is operated by Shelley Broadcasting.  On February 24, 25, and 26, 2006, additional selections of ASCAP copyrighted songs were broadcast on radio-station WRJM-FM, which is operated by Stage Door. Mizell is the owner of Shelley

Broadcasting and Stage Door. A total of 20 ASCAP-copyrighted songs were broadcast over the defendants' radio stations. Neither station had ASCAP's permission to perform these compositions.

The 20 broadcasted songs are "We Didn't Start The Fire," "Little Wing," "Hey There," "Begin The Beguine," "Pink Houses," "Panama," "This Will Be (An Everlasting Love)," "Raspberry Beret," "Faith," "Master Of Puppets," "Little Red Corvette," "Light My Fire," "Big Yellow Taxi," "Jump," "Rikki, Don't Lose That Number," "God Will Make A Way," "Since I Don't Have You," "We Have Come Into His House (To Worship Him)," "Small Town," and "1999."

## III. DISCUSSION

"To establish a prima-facie copyright infringement case for a musical composition, a plaintiff may prove (1) ownership of a valid copyright and (2) 'public performance' of the copyrighted work without authorization." <u>Simpleville Music v. Mizell</u>, 451 F. Supp. 2d 1293, 1291 (M.D. Ala. 2006) (Thompson, J.) (citing 17

U.S.C. § 106(4) (subject to specific exclusions outlined in the Copyright Act, "the owner of copyright ... has the exclusive rights ... in the case of ... musical ... works ... to perform the copyrighted work publicly")); cf. Feist Publications, Inc. v. Rural Telephone Service Co., Inc. 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").

The plaintiffs have satisfied the first element by submitting copies of the copyright-registration certificates which, pursuant to 17 U.S.C. § 410(c), constitute prima-facie evidence of copyright ownership. 17 U.S.C. § 410 (c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); see also Simpleville Music, 451 F. Supp. 2d at 1296 ("The

plaintiffs have satisfied the first element by submitting copies of the copyright registration certificates.").

In satisfaction of the second element, the plaintiffs present the affidavits of Jerry Glaze, who recorded the broadcasts off radio-stations WGEA and WRJM-FM on the days in dispute, and Oleksander Kuzyszyn, who listened to the tapes and identified that the 20 compositions constituting the basis of this lawsuit were found on the tape recordings. By failing to respond to the plaintiffs' request for admissions, the defendants admitted to the songs being played, see Fed. R. Civ. P. 36(a), and the defendants also admit that they did not have permission to broadcast the 20 songs.

The defendants, however, assert three defenses to the copyright claims: that (1) the music was played as part of satellite programming for which they did not need a license; (2) only the radio stations, not Mizell, should be liable for the alleged infringements; and (3) they did not intend to violate copyright laws. The court will discuss the validity of each defense.

A.  Songs Played During Satellite Programming

The defendants contend that all the songs were played during satellite programming and that the satellite companies assured Mizell that no copyrighted material would be played. Although the defendants have not presented any physical evidence to support this contention, the assurances, even if made, do not absolve the defendants of liability because "a broadcaster who is aware of his obligations under copyright law remains responsible for ensuring that copyrighted music is not aired without permission." <u>Jobete Music Co., Inc. v. Johnson Communications, Inc.</u>, 285 F.Supp.2d 1077, 1089 (S.D. Ohio 2003) (Rice, C.J.); <u>see also</u> <u>Simpleville Music</u>, 451 F. Supp. 2d at 1299 ("Although Mizell did not produce the commercial or the radio shows himself, he was still responsible for ensuring that all of the licensing fees were paid. Consequently, Mizell's no-intent defense is meritless."). Therefore, although the copyrighted music was aired through satellite programming, the defendants

7

were still responsible for ensuring that all of the licensing fees were paid; the defendants are still liable for violating the Copyright Act.

## B. Intent

The defendants protest that they did not intend to play copyrighted material and took measures to protect against such infringements. However, "intention to infringe is not essential under the [Copyright] Act." Buck v. Jewell-LaSalle Realty Co., 283 U.S. 191, 198 (1931); see also Simpleville Music, 451 F. Supp. 2d at 1299; 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.08 (2006) ("In actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability."). The defendants' lack of intent does not shield them from liability.

C.  Personal Liability of Owner

Mizell denies liability on the ground that he did not personally participate in, or profit from, the infringement; he says he performed his duties as only the owner.  However, the record is clear that, as the president, owner, and sole stockholder of the companies that own WGEA and WRJM-FM, he was essentially a one-man show.  A person, "including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement."  Southern Bell. Tel. & Tel. Co. v. Associated Tel. Directory Publishers, Inc., 756 F.2d 801, 811 (11th Cir. 1985) (citation omitted).  Similarly, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements."

9

Simpleville Music, 451 F. Supp. 2d at 1299 (quoting Quartet Music v. Kissimmee Broadcasting, Inc., 795 F. Supp. 1100, 1103 (M.D. Fl. 1992) (Kellam, J.).  "The record is clear that Mizell fits the bill of being the supervising, dominant figure at the two radio stations." Id.  As such, he is personally liable for the Copyright Act violations.

### D.  Damages

17 U.S.C. § 504(c) of the Copyright Act allows a plaintiff to recover "statutory damages" in lieu of actual damages.[2]  The court without finding wilfulness can award

---

2.  In relevant part, § 504(c) provides:

> "(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, ... in a sum of not less than $ 750 or more than $ 30,000 as the court considers just....

> "(2) In a case where the copyright owner
>                                      (continued...)

up to $ 30,000 per infringement in statutory damages. Id. A finding of wilfulness allows the court to raise the statutory award to no more than $ 100,000 per infringement. Id. The plaintiffs are seeking $ 5,000 in statutory damages per infringement. Because plaintiffs are seeking less than $ 30,000, willfulness on the part of the defendants is not required. However, the record shows that the defendants did willfully infringe on the plaintiffs' copyrights.

The defendants argue that they did not willfully violate the Copyright Act because the alleged infringement

---

2.  (...continued)
    sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $ 150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $ 200...."

occurred prior to the resolution of Simpleville Music, where this court found that the same defendants had infringed other ASCAP-member plaintiffs' copyrights; the defendants contend that up until that point they did not know that they were violating the Copyright Act.  However, the record indicates, and the defendants do not dispute, that before this or any other lawsuit was filed against them, ASCAP repeatedly offered them an ASCAP license, which would have permitted them to play the plaintiffs' copyrighted works legally.  ASCAP further informed the defendants that, without a proper license, their conduct would violate copyright laws.  Nevertheless, the defendants refused ASCAP's offers of a license, while continuing to broadcast copyrighted songs.

Moreover, in 1993, in Bencap v. Shelley Broadcasting, civil action no. 93-A-696-S (M.D. Ala. Dec. 28, 1993), Shelley Broadcasting and Mizell agreed to a consent judgment where they admitted to "willfully" infringing the copyrights of the ASCAP-member plaintiffs, and they were permanently enjoined from publicly performing the

plaintiffs' musical compositions in the future. And, in 2004, in Simpleville Music, before entry of a final judgment against Mizell in that case and before the infringements in the instant case, this court entered a default judgment in the amount of $ 48,000 against Shelley Broadcasting and Stage Door for infringing the copyrights of the ASCAP-member plaintiffs in that case.

In light of the defendants' previous, continuous, and knowing and willful infringements of ASCAP-members' copyrights, it is indisputable that their violations of the Copyright Act here were willful. However, the court does not find it appropriate to increase the statutory damages above the amount requested by the plaintiffs; the court will award statutory damages in the amount of $ 5,000 per violation.

### E.  Injunction

The plaintiffs also seek, pursuant to § 502 of the Copyright Act, to enjoin the defendants from publicly performing ASCAP members' copyrighted music. Section

13

502(a) of the Copyright Act specifically authorizes this court to "grant ... final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." See Pacific & Southern Co., Inc. v. Duncan, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984) (the Copyright Act authorizes an injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"), cert. denied, 471 U.S. 1004 (1985).

While the court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," 17 U.S.C. § 502(a), that grant is not unlimited; the court may, as a general matter, do so only when there is a substantial likelihood of further infringement of a plaintiff's copyrights. Simpleville Music, 451 F. Supp. 2d at 1300; see also 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14-06[B](2006).

The plaintiffs contend that the defendants are likely to continue infringing on the copyrighted compositions that belong to them and all other ASCAP members as

demonstrated by the fact that the defendants have been sued twice already, and yet they have willfully continued to infringe on the copyrights of ASCAP members. As stated, in 1993, in Bencap, Shelley Broadcasting and Mizell agreed to a consent judgment where they admitted to "willfully" infringing the copyrights of the ASCAP-member plaintiffs, and they were permanently enjoined from publicly performing the plaintiffs' musical compositions in the future, and, in 2004, in Simpleville Music, before the infringements in the instant case, this court entered a default judgment in the amount of $ 48,000 against Shelley Broadcasting and Stage Door for infringing the copyrights of the ASCAP-member plaintiffs in that case. The defendants have, therefore, unsuccessfully defended two prior lawsuits in which money judgments were awarded against them, and yet they continued to violate the Copyright Act by broadcasting copyrighted compositions without first obtaining a proper license. It is indisputable that money judgments have not been an

effective tool to "prevent or restrain infringement[s] of ... copyright[s]," 17 U.S.C. § 502(a), by the defendants.

The court recognizes that the injunction the plaintiffs seek goes beyond a prohibition of the unauthorized broadcasting of the plaintiffs' songs only. The court nevertheless considers such a broad injunction warranted for several reasons. First, the defendants have not objected to the breadth of the injunction. Second, while it would appear that this lawsuit is brought by the named plaintiffs, it is really brought by ASCAP as the enforcement organization on behalf of the named plaintiffs. ASCAP is "a clearing house for copyright owners and users" that facilitates the negotiation of licences and the monitoring and enforcement of infringements where it would be impractical for individual copyright owners to do so on their own. Broadcast Music, Inc. v. Columbia Broadcasting System, Inc. 441 U.S. 1, 5 (1979). "[I]ts ... members grant it nonexclusive rights to license non-dramatic performances of their works," id., and the license includes "the ... enforcement against

unauthorized copyright use." Id. at 20. Therefore, it is ASCAP, acting through its members, that is asking for the broad injunction here. Third, there is substantial and longstanding precedent for such broad injunctions in circumstances similar to those presented here. See, e.g., Harrison Music Corp. v. Tesfaye, 293 F. Supp. 2d 80, 83 (D.D.C. 2003) (Leon, J.); All Nations Music v. Christian Family Network, Inc., 989 F. Supp. 863 (W.D. Mich 1997) (Miles, J.); Cross Keys Publ. Co. v. Wee, Inc., 921 F. Supp. 479, 481 (W.D. Mich. 1995) (Quist, J.).

Therefore the plaintiffs are entitled to an injunction prohibiting the defendants from directly or indirectly infringing on the copyright rights of all ASCAP members.

***

Because, without question, the plaintiffs have established a prima-facie case of copyright infringement of each of the 20 songs and the defendants have failed to offer valid defenses, summary judgment in favor of the

17

plaintiffs will be entered. The judgment will include an assessment of a $ 5,000 statutory fee for each of the 20 infringements, for a total of $ 100,000.00 (20 x $ 5,000 = $ 100,000.00), along with appropriate injunctive relief.

DONE, this the 8th day of June, 2007.

                                        /s/ Myron H. Thompson
                                  UNITED STATES DISTRICT JUDGE